1
2
3
4
5

ENU MAINIGI (*pro hac vice*)
LESLIE COOPER VIGEN (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC  20005-5901
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail: emainigi@wc.com
lvigen@wc.com

6
7
8
9

JEFFREY E. FAUCETTE (No. 193066)
SKAGGS FAUCETTE LLP
One Embarcadero Center, Suite 500
San Francisco, CA 94111
Telephone: (415) 315-1669
Facsimile: (415) 433-5994
E-mail: jeff@skaggsfaucette.com

10

Attorneys for Defendant Carrie Tolstedt

11
12

UNITED STATES DISTRICT COURT

13

NORTHERN DISTRICT OF CALIFORNIA

14

SAN FRANCISCO DIVISION

15
16
17
18

IN RE WELLS FARGO & COMPANY
SHAREHOLDER DERIVATIVE
LITIGATION

Lead Case No. 3:16-CV-05541-JST

**DEFENDANT CARRIE TOLSTEDT'S
NOTICE OF MOTION AND MOTION
TO DISMISS**

19
20
21

Hearing:    August 24, 2017
Time:       2:00 p.m.
Place:      Courtroom 9
Judge:      Honorable Jon S. Tigar

22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 24, 2017, at 2:00 p.m., or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 9, located at 450 Golden Gate Avenue, San Francisco, California, 94102, defendant Carrie Tolstedt, through her undersigned counsel will, and hereby does, move to dismiss the Consolidated Amended Verified Stockholder Derivative Complaint pursuant to Rule 12(b)(6) for failure to state a claim with respect to federal securities causes of action (Counts Five, Six, and Seven), the state-law insider trading causes of action (Counts Three and Eight), and the contribution and indemnification claim (Count Eleven).

The motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the complete files and records in this action, and such additional material and arguments as may be considered at the hearing.

DATED:  June 5, 2017

Respectfully submitted,

_____
  /s/
  JEFFREY E. FAUCETTE
  SKAGGS FAUCETTE LLP

  WILLIAMS & CONNOLLY LLP
  ENU MAINIGI (*pro hac vice*)
  LESLIE COOPER VIGEN (*pro hac vice*)

  Attorneys for CARRIE TOLSTEDT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................1

ARGUMENT ....................................................................................................3

I.      LEGAL STANDARDS ..........................................................................4

II.     THE SECURITIES CAUSES OF ACTION ARE INADEQUATELY
        PLEADED ...........................................................................................5

        A.      The Complaint Fails To Allege Multiple Required Elements of a Section
                10(b) Claim ...............................................................................5

                1.      Ms. Tolstedt was the "maker" of only three alleged
                        misstatements.................................................................5

                2.      The Complaint fails to allege an actionable
                        misrepresentation by Ms. Tolstedt.......................................8

                3.      The Complaint does not support a "strong inference" of
                        scienter as to Ms. Tolstedt's statements. ...........................11

        B.      Claims under Sections 20A and 29(b) Are Both Derivative of the
                Securities Fraud Claim and Otherwise Inadequately Pleaded.................15

                1.      The Complaint fails to plead an independent violation or
                        contemporaneous trades, as required under Section 20A...15

                2.      The Complaint fails to plead an independent violation or a
                        contract, as required under Section 29(b). ..........................16

III.    THE STATE-LAW CLAIMS SHOULD BE DISMISSED ................................16

        A.      The State Law Insider Trading Claims Are Inadequately Pleaded..........17

                1.      The Complaint fails to allege scienter, as required under
                        Delaware law. ..............................................................17

                2.      The California insider trading claim is not pleaded with
                        particularity.................................................................19

        B.      The Contribution and Indemnification Claims Are Not Ripe .................20

CONCLUSION................................................................................................21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................................4

*Bly–Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) ....................................................4

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988).....................................................17

*Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*, 964 F. Supp. 2d 1128 (N.D. Cal. 2013)..........................................................................................5, 8

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045 (N.D. Cal. 2012) ....6

*Curry v. Hansen Med., Inc.*, No. C 09-5094 CW, 2012 WL 3242447 (N.D. Cal. Aug. 10, 2012) .6

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ......................................................................20

*Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008) ...............................14

*Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2016)...................................6

*Hefler v. Wells Fargo & Co.*, Case No. 3:16-cv-05479-JST (N.D. Cal.) ......................................5

*In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM, 2013 WL 174119 (C.D. Cal. Jan. 16, 2013)..................................................................................................................7

*In re Asyst Techs., Inc. Derivative Litig.*, No. C-06-04669 EDL, 2008 WL 4891220 (N.D. Cal. Nov. 12, 2008) ..............................................................................................................16

*In re Atmel Corp. Deriv. Litig.*, No. C 06-4592 JF (HRL), 2007 WL 2070299 (N.D. Cal. July 16, 2007) ............................................................................................................................19

*In re Atmel Corp. Deriv. Litig.*, No. C 06-4592 JF (HRL), 2008 WL 2561957 (N.D. Cal. June 25, 2008) ............................................................................................................................17

*In re Brocade Comm'ns Sys., Inc. Deriv. Litig.*, 615 F. Supp. 2d 1018 (N.D. Cal. 2009) ...........20

*In re Coinstar Inc. Sec. Litig.*, No. C11-133 MJP, 2011 WL 4712206 (W.D. Wash. Oct. 6, 2011) ..............................................................................................................................6

*In re Convergent Techs. Sec. Litig.*, 948 F.2d 507 (9th Cir. 1991).................................................8

*In re Finisar Corp. Deriv. Litig.*, No. C-06-07660 RMW, 2012 WL 2873844 (N.D. Cal. July 12, 2012) ............................................................................................................................17

*In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145 (D. Or. 2015)............................15

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ..........................................................4

*In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023 (S.D. Cal. 2014)...............................14

*In re Netflix, Inc. Sec. Litig.*, 923 F. Supp. 2d 1214 (N.D. Cal. 2013)...........................................15

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) ..........................................................8

*In re Questcor Sec. Litig.*, No. SA CV 12-01623 DMG, 2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) ...............................................................................................................................14

*In re Sagent Tech., Inc., Deriv. Litig.*, 278 F. Supp. 2d 1079 (N.D. Cal. 2003) ...........................20

*In re Tibco Software*, No. C 05-2146 SBA, 2006 WL 1469654 (N.D. Cal. May 25, 2006) ......7, 8

*In re Verisign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173 (N.D. Cal. 2007) ....................................19

*Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)........................5, 6, 8

*Johnson v. Aljian*, 490 F.3d 778 (9th Cir. 2007)...............................................................................15

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588 (7th Cir. 2006)....................................7

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008) .............. passim

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Resource Dev. Servs., Inc.*, No. C 10-01324 RS, 2011 WL 13153239 (N.D. Cal. Dec. 7, 2011).........................................................................20

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598 (9th Cir. 2014) ............... passim

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051 (9th Cir. 2014)...................9

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2012 WL 1868874 (N.D. Cal. May 22, 2012) ........................................................................................14

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268 (9th Cir. 2017).................................................................................................8, 10

*Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011) .......................................................7

*Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001)............................................................................12

*S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008).......................................................13

*Sanford v. MemberWorks, Inc.*, 625 F.3d 550 (9th Cir. 2010) ......................................................17

*SEC v. Daifotis*, No. C 11-00137 WHA, 2011 WL 3295139 (N.D. Cal. Aug. 1, 2011) ...............6

*Shaev v. Baker*, Case No. 16-cv-05541-JST, 2017 WL 1735573 (N.D. Cal. May 4, 2017) ....1, 12, 14, 16

*Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) ....................................15

*Silverberg v. Gold*, C.A. No. 7646-VCP, 2013 WL 6859282 (Del. Ch. Dec. 31, 2013).............17

*Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004)....................7

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008) ...................................5

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) .......................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................12

*Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029 (N.D. Cal. 2016) ...........6, 15

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) .................................................9

*Winer Family Trust v. Queen*, 503 F.3d 319 (3rd Cir. 2007) .......................................7

*Zoumboulakis v. McGinn*, Case No. 5:13-CV-02379-EJD, 2014 WL 3926565 (N.D. Cal. Aug. 7, 2014) ...............................................................................................19

**STATE CASES**

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ........................................................17

*In re Oracle Corp. Deriv. Litig.*, 867 A.2d 904 (Del. Ch. 2004) ....................................17

*Rattner v. Bidzos*, No. Civ. A 19700, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003) .................18

**OTHER AUTHORITIES**

15 U.S.C.A. § 78u-4(b) ............................................................................................5

15 U.S.C. § 78t–1(a) ..............................................................................................15

15 U.S.C. § 78u–4(b)(2) .........................................................................................11

28 U.S.C. § 1367(c)(3) ...........................................................................................16

California Corporations Code § 25402 ....................................................4, 17, 19, 20

Fed. R. Civ. P. 9(b) ....................................................................................4, 17, 19

1    Defendant Carrie Tolstedt respectfully submits this Memorandum of Points and Authorities in

2    support of her motion to dismiss the Consolidated Amended Verified Stockholder Derivative

3    Complaint (the "Complaint") in part, with respect to her.

4                                    **INTRODUCTION**

5           Plaintiffs have filed a massive, 596-paragraph, 181-page Complaint lodging eleven causes of

6    action against 20 individual defendants.  Weeding through this morass to determine which causes of

7    action are adequately pleaded against which defendants is no simple feat.  But focusing on one of

8    those 20 defendants, Carrie Tolstedt, makes plain that the majority of the claims asserted are not

9    pleaded sufficiently with respect to her.  Ms. Tolstedt is one of only two defendants who was not a

10   director, who is not alleged to have signed SEC filings, and who, save for in a few very limited

11   instances, did not make public statements to investors.  She traded the least of any of the executives

12   highlighted in the Complaint and did so on a regular schedule.  Perhaps for these reasons, the

13   Complaint includes very few specific allegations about Ms. Tolstedt.  These scant allegations are

14   insufficient to meet the elevated pleading standards of the majority of the causes of action Plaintiffs

15   have chosen to bring, almost all of which require particularity if not an even greater level of detail.  In

16   particular, the securities fraud, insider trading, and contribution causes of action are not viable as to

17   Ms. Tolstedt.  Those claims should therefore be dismissed for the reasons set forth below.

18                                    **BACKGROUND**

19          On May 4, 2017, the Court granted in part and denied in part the motion to dismiss on demand

20   futility grounds of nominal defendant Wells Fargo & Company ("Wells Fargo").  *Shaev v. Baker*, Case

21   No. 16-cv-05541-JST, 2017 WL 1735573 (N.D. Cal. May 4, 2017).  In determining whether Plaintiffs

22   were excused from making a demand on the Wells Fargo Board of Directors, that Order addressed the

23   Directors' potential liability, finding that the Complaint plausibly alleged that a majority of the Board

24   consciously disregarded their duties to monitor or oversee Wells Fargo.  *Id.* at *10, 15.  This motion

25   does not seek to relitigate that Order; it instead focuses on the inadequacy of the Complaint with

26   respect to one of the 20 individual defendants: Carrie Tolstedt.  Because the Court has already

27   discussed in detail the Complaint's lengthy allegations in its May 4, 2017 Order, this section focuses

28   on those allegations specific to Carrie Tolstedt and relevant to this motion.

Carrie Tolstedt was the Senior Executive Vice President in charge of Community Banking at Wells Fargo from 2007 to 2016.  Compl. ¶ 72.  Neither during that period, nor at any other time, was Ms. Tolstedt a member of the Wells Fargo Board of Directors.  Ms. Tolstedt did not sign quarterly reports, annual reports, proxy statements, or other submissions to the Securities and Exchange Commission identified in the Complaint.  There is no allegation that she spoke during quarterly earnings calls or at investor conferences other than Wells Fargo's biennial Investor Day.  Indeed, according to the Complaint, she rarely addressed investors directly.  Her public statements to the market were largely limited to a presentation on Community Banking every other year at Wells Fargo's Investor Day conference.  *See id.* ¶¶ 332, 350, 363.

The Complaint attributes only three of the alleged misstatements in its 181 pages to Ms. Tolstedt.  Each of these statements occurred during an Investor Day presentation.  Specifically, the Complaint alleges that Ms. Tolstedt made the following statements:

- **2012 Investor Day Presentation:**  "I believe that cross-sell model is more important than it has ever been before.  With the current headwinds, it's more difficult for retail bank households with only one or two products to be profitable.  We build our products with that in mind, offering packages to customers to provide more value.  The good news is, even though we've been at this for a very long time, we still have some distance from achieving our goal of 8 cross-sells, which we estimate to be an over $5 billion revenue opportunity even in lower interest rate environment.  On the upper right-hand, you can see that customers with greater cross-sell and tenure continue to purchase products from us.  Currently, our customers hold around 6; the East is 5.5.  We know that 8 cross sells can be done.  Already, our best region is approaching a goal of 7.5." *Id.* ¶ 332.

- **2014 Investor Day Presentation:**  Ms. Tolstedt allegedly stated that Wells Fargo's cross selling strategy was "helping [its] customers succeed financially and meet[] all of their needs."  She also stated:

  o  "The beneficial cycle of cross-sell continues.  The more products the customers have with us, the better deal and greater value we can provide. . . .Our retail bank household cross-sell is now at 6.17 products, up from two years ago 5.98, and at the time of the

merger we were at 5.2. Our long-term goal continues to be an average cross-sell of 8 and achieving this goal will come with higher household purchase rates and growth in profitability."

o    "Together, the density and cross-sell model drive revenue. . . We are bullish on cross-sell, we are confident on cross-sell, and we still believe that we can get to an eight cross-sell." *Id.* ¶ 350.

- **2016 Investor Day Presentation:**  Ms. Tolstedt allegedly stated that with respect to "products per household or cross-sell, the first thing we anchor ourselves on is our vision of satisfying our customers' needs and helping them succeed financially," and so "everything that we do is really about them." *Id.* ¶ 363.

The Complaint includes few other specific allegations about Ms. Tolstedt's activities during her tenure at Wells Fargo.  It alleges she was responsible for approving store manager incentive plans, *id.* ¶ 147, and that other individuals within the Community Bank investigated complaints of sales integrity issues, *id.* ¶¶ 161-62, or responded to employee complaints, *id.* ¶ 206.  It alleges that her compensation was based, in part, on Wells Fargo's financial performance, including cross-sell goals. *Id.* ¶¶ 268-69.  And it makes various allegations about statements made by others concerning her retirement. *Id.* ¶ 365.

Finally, the Complaint alleges that Ms. Tolstedt engaged in the purchase and sale of Wells Fargo stock during the relevant period.  Specifically, she made 18 sales, on a fairly regular schedule, between January 2012 and July 2016 for a total of 2,482,857 shares. *Id.* ¶ 386.  (This is the smallest number of sales by any of the so-called "insider selling defendants." *See id.* ¶¶ 75, 383, 386, 388, 390.)  Between May 2014 and April 2015, Ms. Tolstedt also purchased 1,251,090 shares of Wells Fargo stock via the exercise of employee stock options. *Id.* ¶ 387.  She sold the shares resulting from these exercises on the same day she acquired them. *Id.*

## ARGUMENT

Plaintiffs have alleged nine causes of action against Ms. Tolstedt: breach of fiduciary duty (Count One); unjust enrichment (Count Two); breach of fiduciary duty for insider selling and misappropriation of information (Count Three); violations of section 10(b) of the Securities Exchange

Act and SEC Rule 10b–5 (Count Five); violations of section 20(A) of the Securities Exchange Act (Count Six); violations of section 29(b) of the Securities Exchange Act (Count Seven); violation of section 25402 of the California Corporations Code (Count Eight); and for contribution and indemnification (Count Eleven).  Taking into account the Court's May 4, 2017 Order regarding the motion to dismiss on demand futility grounds, Ms. Tolstedt hereby moves to dismiss the federal securities causes of action (Counts Five, Six, and Seven), the state-law insider trading causes of action (Counts Three and Eight), and the contribution and indemnification claim (Count Eleven).

## I.  LEGAL STANDARDS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if a complaint fails to plead sufficient facts to state a claim for relief "that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While courts must accept factual allegations in the complaint as true, they do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

For causes of action sounding in fraud, plaintiffs must meet the additional requirement to plead with particularity the circumstances constituting fraud.  Fed. R. Civ. P. 9(b).  Under Rule 9(b), a complaint must be dismissed if it does not include details regarding the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation and quotation omitted). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and quotations omitted).

With respect to securities fraud claims, Rule 9(b) not only "applies to all elements," *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014), but the Private Securities Litigation Reform Act of 1995 ("PSLRA") mandates even higher pleading standards.  Specifically, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading," and "state with particularity facts giving rise to a strong inference that the

defendant acted with the required state of mind." 15 U.S.C.A. § 78u-4(b).  Failure to meet these

requirements requires dismissal.  *Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett*

*Packard Co.*, 964 F. Supp. 2d 1128, 1137 (N.D. Cal. 2013) (Tigar, J.).

## II.   THE SECURITIES CAUSES OF ACTION ARE INADEQUATELY PLEADED

### A.   The Complaint Fails To Allege Multiple Required Elements of a Section 10(b) Claim

To survive a motion to dismiss a claim under Section 10(b) and Rule 10b–5, a plaintiff must

allege with particularity "(1) a material misrepresentation or omission by the defendant; (2) scienter;

(3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4)

reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008).  The failure to meet the

stringent pleading standards under the Federal Rules of Civil Procedure and the PSLRA as to any one

of these elements requires dismissal of that claim.  Here, the Complaint alleges no actionable

misstatements on the part of Ms. Tolstedt.  Nor does it allege facts sufficient to create a strong

inference of scienter on the part of Ms. Tolstedt in making the alleged misstatements.  Accordingly,

the securities fraud cause of action must be dismissed as to Ms. Tolstedt.[1]

### 1.   Ms. Tolstedt was the "maker" of only three alleged misstatements.

The first element of a securities fraud claim is a "material misrepresentation or omission *by the*

*defendant*." *Stoneridge Inv. Partners*, 552 U.S. at 157 (emphasis added).  Accordingly, when

addressing an individual defendant, a threshold inquiry is which statements she should be deemed

responsible for making.  In *Janus Capital Group, Inc. v. First Derivative Traders*, the Supreme Court

determined that a defendant is a "maker" of a statement only where she has "ultimate authority over

the statement, including its content and whether and how to communicate it."  564 U.S. 135, 142

---

[1] A putative class action lawsuit asserting nearly identical securities fraud claims, arising from essentially the same conduct, against Ms. Tolstedt and other defendants is also pending before this Court.  *See Hefler v. Wells Fargo & Co.*, Case No. 3:16-cv-05479-JST (N.D. Cal.).  Responses to the Consolidated Class Action Complaint in that matter are due June 19, 2017.  *See id.*, Order To Set Briefing Schedule (May 3, 2017) [Dkt. 90].  Should the Court dismiss the federal securities claims in *Hefler* for any reason—including on grounds not raised in this brief—that decision should apply equally to this action.

1  (2011).  Typically "attribution within a statement or implicit from surrounding circumstances is strong

2  evidence that a statement was made by—and only by—the party to whom it is attributed."  *Id.* at 142-

3  43.  Although *Janus* focused on outside advisors, it has been widely interpreted to apply equally to

4  corporate insiders.  *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 425 (7th Cir.

5  2016); *see also In re Coinstar Inc. Sec. Litig.*, No. C11-133 MJP, 2011 WL 4712206, at *10 (W.D.

6  Wash. Oct. 6, 2011).

7          Under *Janus*, even high-ranking corporate officers can be liable only for those statements for

8  which they themselves were ultimately responsible.  *Glickenhaus*, 787 F.3d at 428.  In *Glickenhaus*,

9  for example, the Seventh Circuit found that the executive in charge of a business unit in which

10  employees were engaging in predatory lending practices that were a source of the company's alleged

11  misrepresentations could be held liable only for the statements he personally delivered to the public.

12  *Id.* at 426-29.  That court specifically disagreed with plaintiffs' argument that the executive could be

13  held liable for any statement that he reviewed and approved because of his position within the

14  company.  *Id.* at 428.  Although the Ninth Circuit has yet to opine on this issue, numerous courts

15  within this district have held that directors or corporate officers may be liable only for statements

16  publicly attributed to them.  *See, e.g.*, *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F.

17  Supp. 2d 1045, 1071 (N.D. Cal. 2012) (finding Board Chairman could be held liable only for

18  statements he signed); *Curry v. Hansen Med., Inc.*, No. C 09-5094 CW, 2012 WL 3242447, at *4-5

19  (N.D. Cal. Aug. 10, 2012) (dismissing claim against executive to whom no allegedly fraudulent

20  statement was attributed); *SEC v. Daifotis*, No. C 11-00137 WHA, 2011 WL 3295139, at *2-4 (N.D.

21  Cal. Aug. 1, 2011) (distinguishing between statements "made" by corporate insiders and statements

22  not attributed to them); *cf. Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1047-

23  48 (N.D. Cal. 2016) (Tigar, J.) (specific allegations that defendants signed SEC filings were sufficient

24  under *Janus*).

25          Here, the Complaint alleges that Ms. Tolstedt made only three purported misstatements: one at

26  the Wells Fargo Investor Day conference for each of 2012, 2014, and 2016.  *See* Compl. ¶¶ 332, 350,

27  363.  It does not allege that she signed SEC filings, spoke during investor calls, presented at other

28  investor conferences, or otherwise made public representations to investors.  Nor does it make any

CARRIE TOLSTEDT'S MOTION TO DISMISS
LEAD CASE NO. 3:16-CV-05541-JST

6

specific allegation that she somehow had ultimate authority over any such statements, despite not having uttered or signed them.  Accordingly, the three statements from the Investor Day conferences represent the full extent of Ms. Tolstedt's potential individual liability under section 10(b).

Plaintiffs attempt to avoid this conclusion by invoking the "group pleading doctrine."  Compl. ¶¶ 404-05.  They generally allege, without more, that *all twenty-one* defendants (presumably including nominal defendant Wells Fargo) "participated in the drafting, preparation, or approval of the various shareholder and investor reports and other communications concerning Wells Fargo identified in this Complaint," and that *all twenty-one* defendants, "because of their positions of control and authority as officers or directors of Wells Fargo, were able to and did control the content of the various SEC filings, press releases, and other public statements pertaining to the Company." *Id.*  Such vague claims are not pleaded with particularity, and do not pass muster under either the PSLRA or *Janus.*

Indeed, although the Ninth Circuit has not specifically addressed the question, numerous courts within the Ninth Circuit have recognized that the group pleading doctrine did not survive the passage of the PSLRA. *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2013 WL 174119, at *25 (C.D. Cal. Jan. 16, 2013) (collecting cases). The Courts of Appeals to have considered the issue concur.  *See Winer Family Trust v. Queen*, 503 F.3d 319, 337 (3rd Cir. 2007); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 602-03 (7th Cir. 2006) *overruled on other grounds by Tellabs*, 551 U.S. 308 (2007); *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) ("Consistent with our rejection of the 'group pleading' doctrine, we do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant . . . .").

Even if the group pleading doctrine were still viable post-PSLRA, however, Plaintiffs would nonetheless be required to satisfy the particularity requirements of the PSLRA.  *See In re Tibco Software, Inc.*, No. C 05-2146 SBA, 2006 WL 1469654, at *27 (N.D. Cal. May 25, 2006).  And the Ninth Circuit has recognized that *Janus* "sets the pleading bar even higher in private securities fraud actions seeking to hold defendants primarily liable for the misstatements of others."  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 694 n.8 (9th Cir. 2011).  Even before *Janus*, conclusory, non-specific allegations that all defendants "participated in the drafting, preparation, or approval of the various

1 shareholder and investor reports and other communications," Compl. ¶ 404, or that they "were able to

2 and did control the content of the various SEC filings, press releases, and other public statements," *id.*

3 ¶ 405, would not pass muster under the PSLRA.  *See In re Tibco Software*, 2006 WL 1469654, at *27.

4 It is clear that post-*Janus*, one who allegedly participates in the drafting or preparation of reports or

5 other communications, and can "merely suggest what to say," but lacks "ultimate authority" is not the

6 maker of those statements.  *See Janus*, 564 U.S. at 142 ("One who prepares or publishes a statement

7 on behalf of another is not its maker.").

8          For these reasons, Ms. Tolstedt's potential liability is limited to the three statements the

9 Complaint attributes to her.

10                    **2.       The Complaint fails to allege an actionable misrepresentation by Ms.**

11                              **Tolstedt.**

12          None of the statements the Complaint alleges Ms. Tolstedt made is an actionable

13 misrepresentation.  An alleged misrepresentation is not actionable unless it is both misleading and

14 material.  *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*

15 (hereinafter *Retail Wholesale*), 845 F.3d 1268, 1274 (9th Cir. 2017).  To demonstrate that a statement

16 is misleading, plaintiffs must show "that a particular statement, when read in light of all the

17 information then available to the market, or a failure to disclose particular information, conveyed a

18 false or misleading impression." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010)

19 (quoting *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991)).  Statements can be

20 misleading only if they are "capable of objective verification."  *Oregon Pub. Emps. Ret. Fund,* 774

21 F.3d at 606.  Defendants must state with particularity not only what the alleged misstatement is, but

22 *why* it is misleading.  *Retail Wholesale*, 845 F.3d at 1274.  Indeed, one of the PSLRA's goals in

23 requiring such specificity is to "prevent[] a plaintiff from skirting dismissal by filing a complaint laden

24 with vague allegations of deception unaccompanied by a particularized explanation stating why the

25 defendant's alleged statements or omissions are deceitful."  *Metzler Inv. GMBH v. Corinthian*

26 *Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  A statement is not material unless it "would have

27 been viewed by the reasonable investor as having significantly altered the 'total mix' of information

28 made available."  *Cement & Concrete Workers Dist. Council Pension Fund*, 964 F. Supp. 2d at 1138

1    (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

2         Instances of corporate "puffing"—"expressions of opinion" and other "vague statements of

3    optimism like 'good,' 'well-regarded,' or other feel good monikers"—cannot constitute material

4    misrepresentations as a matter of law. *Oregon Pub. Emps. Ret. Fund*, 774 F.3d at 606; *see also Retail*

5    *Wholesale*, 845 F.3d at 1275-77. This is because such statements are neither "capable of objective

6    verification," nor are investors likely to rely upon such "mildly optimistic, subjective assessment[s]."

7    *Oregon Pub. Emps. Ret. Fund*, 774 F.3d at 606.

8         The majority of quotes the Complaint attributes to Ms. Tolstedt are corporate "puffing":

9    "expressions of opinion," "vague statements of optimism," or "subjective assessment[s]." *See id.*

10   Certain portions of these statements are forward-looking expressions of optimism regarding Wells

11   Fargo's ability to increase its sales per household. *See* Compl. ¶ 332 ("[W]e still have some distance

12   from achieving our goal of 8 cross-sells, which we estimate to be an over $5 billion revenue

13   opportunity even in lower interest rate environment."); *id.* ("We know that 8 cross sells can be done.");

14   *id.* ¶ 350 ("Our long-term goal continues to be an average cross-sell of 8 and achieving this goal will

15   come with higher household purchase rates and growth in profitability."); *id.* ("Together, the density

16   and cross-sell model drive revenue. . . . We are bullish on cross-sell, we are confident on cross-sell,

17   and we still believe that we can get to an eight cross-sell."). Such subjective assessments of future

18   performance are "the antithesis of facts." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759

19   F.3d 1051, 1060 (9th Cir. 2014); *see also Oregon Pub. Emps. Ret. Fund*, 774 F.3d at 606-07 (finding

20   statements that were "subjective and preceded by qualifiers, such as 'we believe'" were "inherently

21   subjective 'puffing' and would not induce the reliance of a reasonable investor").

22         Other portions of Ms. Tolstedt's statements are vague references to the value Wells Fargo

23   seeks to provide its customers. *See* Compl. ¶ 332 ("With the current headwinds, it's more difficult for

24   retail bank households with only one or two products to be profitable. We build our products with that

25   in mind, offering packages to customers to provide more value."); *id.* ("[Y]ou can see that customers

26   with greater cross-sell and tenure continue to purchase products from us."); *id.* ¶ 350 (Wells Fargo was

27   "helping [its] customers succeed financially and meet[] all of their needs."); *id.* ("The beneficial cycle

28   of cross-sell continues. The more products the customers have with us, the better deal and greater

CARRIE TOLSTEDT'S MOTION TO DISMISS
LEAD CASE NO. 3:16-CV-05541-JST

9

value we can provide."); *id.* ¶ 363 ("[T]he first thing we anchor ourselves on is our vision of satisfying our customers' needs and helping them succeed financially."); *id.* ("[E]verything that we do is really about [customers]."). These statements are akin to "aspirational" representations regarding "what actions are preferable, as opposed to [implications] that all staff, directors, and officers always adhere to . . . aspirations." *See Retail Wholesale*, 845 F.3d at 1276. The Ninth Circuit has recently confirmed such statements are not actionable. *See id.* And since none of these statements is objectively verifiable, none is a proper basis for securities fraud liability.

Although the Complaint arguably alleges that Ms. Tolstedt made three representations that are capable of objective verification, it does not explain with particularity *why* these statements are false. The statements that fall within this category are, for 2012: "Currently, our customers hold around 6 [products per household]; the East is 5.5," Compl. ¶ 332; "Our best region is approaching a goal of 7.5 [products per household]," *id.*; and for 2014: "Our retail bank household cross-sell is now at 6.17 products, up from two years ago 5.98, and at the time of the merger we were at 5.2," *id.* at ¶ 350. To demonstrate falsity, the Complaint generally alleges that, over the course of an unspecified time period, "[t]he 'retail bank household cross-sell' metrics disclosed in the quarterly and annual filings, which ranged from 5.79 to 6.17, were artificially inflated because Wells Fargo employees were fraudulently opening millions of unauthorized checking accounts, credit cards, and other accounts and services." *Id.* at 368(a).

Such an allegation is not the "particularized explanation" of falsity mandated by the PSLRA. *Metzler Inv. GMBH*, 540 F.3d at 1061. The Complaint does not connect the alleged unauthorized account opening with "how and why" Ms. Tolstedt's statements were allegedly false. *See id.* At best, the Complaint alleges an aggregate number of accounts that "might have been unauthorized" over the span of 2011 to 2015. Compl. ¶ 255. It never claims that Wells Fargo restated or otherwise disavowed its cross-sell metrics (and Wells Fargo did not). It provides no information about how cross-sell metrics were calculated, the effect that the opening of a checking or credit card account had on those figures, or whether an unused account would be included in such calculations. It does not allege how many fraudulent accounts were purportedly created in any given year, or how that number compared to the number of unproblematic accounts. Although the Complaint relies on a plethora of

allegations regarding the opening of unauthorized accounts, it alleges no facts that would tend to show the figures Ms. Tolstedt recited specific to 2012 and 2014 were false.

Under a similar set of facts, the Ninth Circuit held in *Metzler Investments* that allegations of a "company-wide scheme to inflate enrollment figures" by a for-profit college operator were insufficient to demonstrate that factual statements about the company's financial status were false.  540 F.3d at 1056, 1070.  That complaint included a wealth of allegations about the alleged fraudulent conduct, including that employees engaged in a widespread scheme of "manipulating student enrollment by counting students not yet enrolled," "manipulating or falsifying student grades to maintain federal funding eligibility," "delaying notification to federal officials of dropped students," and "manipulating job placement data in order to satisfy federal and state regulatory requirements," such that "as many as 50% to 60% of the people . . . represented to the U.S. government as being qualified, attending 'students' were either 'no shows' in class or unqualified for admission and federal funds from the outset."  *Id.* at 1055.  Despite this alleged pervasive fraud, the Ninth Circuit affirmed dismissal of plaintiffs' securities fraud claims for failure to connect the allegations to the company's purportedly false statements regarding its financial situation.  *Id.* at 1070.  In other words, that complaint could not survive a motion to dismiss because the "explanation of the how and why the statements were false [was] decidedly vague."  *Id.*

The same result is warranted here.  Without information about how, in 2012 and 2014, alleged unauthorized account creation translated into purportedly false cross-sell metrics recited by Ms. Tolstedt, the Complaint has not stated with particularity *why* Ms. Tolstedt's statements were misleading.  The Complaint therefore fails to allege an actionable misstatement attributable to Ms. Tolstedt.

### 3.   The Complaint does not support a "strong inference" of scienter as to Ms. Tolstedt's statements.

As explained, the PSLRA mandates that securities fraud plaintiffs "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2) (emphasis added).  To meet this requirement, a complaint must allege "specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless

false or misleading nature of the statements *when made.*"  *Metzler Inv. GMBH*, 540 F.3d at 1066 (quoting *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001)) (emphasis added).  It must allege scienter with particularity as to each individual defendant. *Oregon Pub. Emps. Ret. Fund*, 774 F.3d at 607.  "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences"—including those unfavorable to plaintiffs. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *see also Metzler Inv. GMBH*, 540 F.3d at 1061.  It must also consider the facts alleged "collectively."  *Tellabs*, 551 U.S. at 322-23.

Even if the statements the Complaint attributes to Ms. Tolstedt were actionable, the Complaint fails to allege with specificity facts that would create a "strong inference" that Ms. Tolstedt knew or should have known, in 2012 and 2014, that the cross-sell figures she stated publicly were false.  To be sure, this Court found in its May 4, 2017 Order that the Complaint plausibly alleged that the director defendants acted consciously in failing to oversee and monitor Wells Fargo.  *Shaev*, 2017 WL 1735573, at *10-15.  But the same result is not warranted with respect to Ms. Tolstedt in connection with the securities fraud claim for three reasons.  First, as explained, when analyzing a securities-fraud claim, the Court is not required to make all inferences in favor of Plaintiffs; it must take competing inferences into account.  *See Metzler Inv. GMBH*, 540 F.3d at 1061.  Second, the Complaint makes almost no specific references to Ms. Tolstedt's knowledge.  And third, the Complaint does not plausibly allege that Ms. Tolstedt spoke with knowledge that Wells Fargo's cross-sell figures were false in 2012 and 2014.  It is this allegation—*not* that Ms. Tolstedt had some general knowledge of inappropriate sales practices—that would be required to properly allege scienter on the part of Ms. Tolstedt with respect to her alleged misstatements.

The allegations that certain defendants purportedly knew or should have known that some instances of inappropriate sales behavior had occurred within Wells Fargo's bank branches over a number of years never attribute knowledge directly to Ms. Tolstedt, relying upon the reader to make such an inference.  But this is not permissible under the heightened pleading requirements of the PSLRA.  In the absence of specific allegations regarding Ms. Tolstedt's knowledge, the inference that she was not aware of certain information is equally plausible.  Indeed, the Ninth Circuit has recognized that "[w]here a complaint relies on allegations that management had an important role in

the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784–85 (9th Cir. 2008).

For example, the Complaint alleges that Wells Fargo had within its systems information about "[a]ctions taken on Wells Fargo computers by employees" and "[i]nformation about customer accounts," such that "Defendants" could have monitored the accounts opened by each employee every day. Compl. ¶¶ 148-150. But it does not allege that Ms. Tolstedt monitored these individual computer systems or had knowledge of the information Plaintiffs suppose was contained there. The more plausible inference is that she, as a high-ranking executive, would not have reviewed the records of individual account openings by the Community Bank's 100,000 employees. In the absence of an allegation that specific information was conveyed to an individual, the mere existence of computer monitoring systems does not create a "strong" inference of knowledge. *See Metzler Inv. GMBH*, 540 F.3d at 1067-68.

Likewise, the Complaint alleges that Wells Fargo's EthicsLine tracked complaints regarding sales practices since at least 2008, Compl. ¶ 159, but it does not provide any facts as to the number of complaints, nor is there any allegation that Ms. Tolstedt received any reports aggregating these complaints. The Complaint alleges that individuals reported inappropriate behavior directly to John Stumpf and to the Board, but it includes no allegation that Ms. Tolstedt received direct complaints. *See id.* ¶¶ 196-211. The Complaint alleges that the task of addressing complaints was assigned to Ms. Tolstedt's group in 2012, Compl. ¶ 161, and that this group found evidence of "simulated funding" in two markets in 2013, *id.* ¶ 162, but it does not suggest that Ms. Tolstedt was kept apprised of the investigation, or provide any figures that would suggest that the scope of simulated funding was large enough to call into question the cross-sell metrics. Likewise, allegations regarding the complaints identified by the *Los Angeles Times* and individual lawsuits do not state that Ms. Tolstedt was aware of this information. Of course, these allegations permit an inference that Ms. Tolstedt was aware that *some* inappropriate sales activities were occurring, particularly following the publication of the *Los Angeles Times* article. But the Court must take into account other plausible inferences—including that some of this information, such as one-off, individual complaints not addressed to her, may not have

reached Ms. Tosltedt or that she, as a non-attorney executive, would not have been aware of lawsuits filed prior to the highly publicized Los Angeles City Attorney suit in 2015.  At bottom, the Complaint does not plausibly allege that Ms. Tolstedt was aware of all of the "red flags" the Court found were plausibly alleged with respect to the directors.  *See Shaev*, 2017 WL 1735573, at *10-15.

More importantly, the allegations do *not* permit the inference that whatever knowledge of inappropriate sales practices Ms. Tolstedt had in 2012 or 2014 rose to a level that would make her aware that the cross-sell figures she presented to the public were false.  Critically, the Complaint does not allege that an investigation into the quantity of accounts that "might have been unauthorized" began until August 2015—more than a year after the most recent-in-time alleged statement by Ms. Tolstedt regarding cross-sell metrics.  Compl. ¶¶ 253-56.  The quantity of any unauthorized accounts is a critical pre-condition to the alleged falsity of the aggregate figures presented by Ms. Tolstedt.  As explained above, the Complaint includes no allegation as to *why* the cross-sell figures uttered by Ms. Tolstedt were false at the time they were made.  Nor does it allege facts that permit a "strong inference" that Ms. Tolstedt *knew or should have known* that such figures were false.

The allegation that Ms. Tolstedt's compensation provides the basis for a "strong inference" of scienter fares no better.  *See* Compl. ¶ 263.  The Complaint alleges that one of many considerations factoring into Ms. Tolstedt's compensation was the success of Wells Fargo, including achieving its cross-sell goals.  *Id.* ¶¶ 268-69.  But the Ninth Circuit has held that without more, "evidence of a personal profit motive on the part of officers and directors . . . is insufficient to raise a strong inference of scienter." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008).  Other courts within this Circuit have specifically applied that reasoning to performance-based compensation.  *See, e.g.*, *In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1044–45 (S.D. Cal. 2014) ("[I]f the existence of performance-based compensation and motive to increase short-term profits were enough to establish scienter, scienter could be found for almost any executive."); *In re Questcor Sec. Litig.*, No. SA CV 12-01623 DMG, 2013 WL 5486762, at *19 (C.D. Cal. Oct. 1, 2013) ("Because incentive compensation packages are common, however, this fact alone cannot raise an inference of scienter."); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2012 WL 1868874, at *23 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014) ("[T]he sheer fact that Defendants

1  had performance-based compensation packages does not support an inference of scienter.").  Thus,

2  Ms. Tolstedt's compensation is not a proper basis for a finding of a "strong inference" of scienter.[2]

3           For all of these reasons, the securities fraud cause of action is inadequately pleaded as to Ms.

4  Tolstedt, and must be dismissed.

5       **B.    Claims under Sections 20A and 29(b) Are Both Derivative of the Securities Fraud**

6             **Claim and Otherwise Inadequately Pleaded**

7             **1.    The Complaint fails to plead an independent violation or contemporaneous**

8                   **trades, as required under Section 20A.**

9           To state a claim under Section 20A, plaintiffs must allege (1) a violation of a substantive

10 provision of the Exchange Act, (2) a contemporaneous sale or purchase of securities by the plaintiff

11 and the defendant, and (3) "possession of material, nonpublic information."  15 U.S.C. § 78t–1(a).

12 The Complaint fails to plead either the primary violation or contemporaneous sale/purchase

13 requirement.

14          As a preliminary matter, "[c]laims under Section 20A are derivative and therefore require an

15 independent violation of the Exchange Act." *Johnson v. Aljian*, 490 F.3d 778, 781 (9th Cir. 2007).  For

16 the reasons explained above, the Complaint fails adequately to plead a primary violation by Ms.

17 Tolstedt.  This fact alone warrants dismissal of the Section 20A claim.  *See, e.g.*, *Oregon Pub. Emps.*

18 *Ret. Fund*, 774 F.3d at 610; *In re Netflix, Inc. Sec. Litig.*, 923 F. Supp. 2d 1214, 1226 (N.D. Cal. 2013).

19          Second, the Complaint fails to allege that Wells Fargo, on whose behalf Plaintiffs purport to

20 sue, made trades that were contemporaneous with Ms. Tolstedt's.  The Ninth Circuit has not set forth a

21 specific definition of "contemporaneous" trading, and courts within the Circuit have reached varying

22 conclusions as to the window of time that constitutes a "contemporaneous" trade, spanning from one

23 day to several.  *See, e.g.*, *Thomas*, 167 F. Supp. 3d 1029, 1049 (N.D. Cal. 2016) (finding trading on the

24 day after to be sufficient); *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1204 (D.

25

26          [2] To the extent Plaintiffs attempt to allege scienter based on Ms. Tolstedt's trading activities,
   that effort must also fail.  The Complaint makes no allegation that Ms. Tolstedt's stock sales were
27 "suspicious" or "dramatically out of line with [her] prior trading practices at times calculated to
   maximize the personal benefit."  *See Metzler Inv. GMBH*, 540 F.3d at 1066-67 (quoting *Silicon*
28 *Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *superceded by statute on other grounds*).

CARRIE TOLSTEDT'S MOTION TO DISMISS
LEAD CASE NO. 3:16-CV-05541-JST

Or. 2015) (observing that "district courts within the Ninth Circuit require trades ranging from one day to up to eight days" and collecting cases).  Here, the Complaint's allegations are too general even to permit such an analysis.  Rather, the Complaint alleges only that Wells Fargo purchased a certain number and dollar value of shares during various months.  Compl. ¶ 316.  These allegations are inadequate to show that Wells Fargo's trades were contemporaneous with Ms. Tolstedt's.  Accordingly, and for this independent reason, the Section 20A claim must be dismissed.

> **2.      The Complaint fails to plead an independent violation or a contract, as required under Section 29(b).**

Similar to Section 20A, and as the Court correctly observed in its May 4, 2017 Order, "Section 29(b) itself does not define a substantive violation of the securities laws; rather, it is the vehicle through which private parties may rescind contracts that were made or performed in violation of other substantive provisions." *Shaev*, 2017 WL 1735573, at *20 (quoting *In re Asyst Techs., Inc. Derivative Litig.,* No. C-06-04669 EDL, 2008 WL 4891220, at *9 (N.D. Cal. Nov. 12, 2008)).  Thus, because the Complaint has not stated a claim for securities fraud as to Ms. Tolstedt, the Section 29(b) cause of action must likewise be dismissed.

The Section 29(b) claim should also be dismissed for the independent reason that the Complaint fails to identify to which contract or contracts it seeks to rescind respect to Ms. Tolstedt.  Instead, it alleges that "Defendants violated provisions of the Exchange Act while performing their duties arising under various employment and other contracts they entered into with Wells Fargo." Compl. ¶ 574.  The vague reference to "various employment and other contracts" is insufficient to provide Ms. Tolstedt with notice as to what the Complaint is asserting.  As such, she is not in a position to defend against the claim that her performance under an unspecified contract was in violation of the federal securities laws.  This cause of action is inadequately pleaded even under the more forgiving requirements of Federal Rule of Civil Procedure 8, and should therefore be dismissed.

## III.     THE STATE-LAW CLAIMS SHOULD BE DISMISSED

For the reasons stated, all of the federal causes of action against Ms. Tolstedt should be dismissed.  If that occurs, the Court should exercise its discretion and decline to exercise supplemental jurisdiction over the remaining state-law claims.  *See* 28 U.S.C. § 1367(c)(3).  Factors including

"judicial economy, convenience, fairness, and comity" counsel in favor of this result. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Indeed, a parallel derivative action raising the same state-law claims is currently pending in California Superior Court.  *See In re Wells Fargo & Co. Derivative Litig.* Lead Case No. CGC-16-554407 (Cal. Super. Ct.).  If the Court chooses to retain jurisdiction over the state-law causes of action, however, three of the claims against Ms. Tolstedt should be dismissed.

### A. The State Law Insider Trading Claims Are Inadequately Pleaded

Plaintiffs bring two state-law insider trading claims: for alleged breach of fiduciary duty under Delaware law, and for alleged violation of California Corporations Code § 25402.[3]  Because insider trading is a fraudulent practice, Plaintiffs must plead these claims with particularity under Rule 9(b).  *See In re Atmel Corp. Deriv. Litig.*, No. C 06-4592 JF (HRL), 2008 WL 2561957, at *14 (N.D. Cal. June 25, 2008).

### 1. The Complaint fails to allege scienter, as required under Delaware law.

To state a claim for insider trading under Delaware law, Plaintiffs must plead that "(1) the corporate fiduciary possessed material, nonpublic company information; and (2) the corporate fiduciary used that information improperly by making trades because she was motivated, wholly or in part, by the substance of that information."  *See In re Finisar*, No. C-06-07660 RMW, 2012 WL 2873844, at *20 (N.D. Cal. July 12, 2012) (quoting *In re Oracle Corp. Deriv. Litig.*, 867 A.2d 904, 934 (Del. Ch. 2004)).  Simply alleging that Ms. Tolstedt sold stock while in possession of material, nonpublic information is not sufficient to survive a motion to dismiss.  The Complaint must also show that she "consciously acted to exploit" any information she possessed.  *See Guttman v. Huang*, 823 A.2d 492, 505 (Del. Ch. 2003).  Such a showing is typically made by alleging that the timing or amount of particular trades raises an inference of conscious exploitation.  *See Silverberg v. Gold*, C.A. No. 7646-VCP, 2013 WL 6859282, at *14 (Del. Ch. Dec. 31, 2013) (analyzing whether "requisite scienter reasonably can be inferred from the timing and size of [Directors'] stock sales").

---

[3] Because Wells Fargo is incorporated in Delaware, Delaware law applies to the breach of fiduciary duty claim.  *See In re Finisar Corp. Deriv. Litig.*, No. C-06-07660 RMW, 2012 WL 2873844, at *19 (N.D. Cal. July 12, 2012).

The Complaint comes nowhere near the showing required to state an insider trading claim under Delaware law.  It is wholly devoid of particularized allegations that Ms. Tolstedt sold Wells Fargo stock because she was motivated by the substance of any nonpublic information.  The only allegations in the Complaint related to Ms. Tolstedt's motivations are conclusory: that she "sold Wells Fargo common stock on the basis of" nonpublic information, *see* Compl. ¶ 542, or that she used nonpublic information "for [her] own benefit when [she] sold Wells Fargo common stock," *see* Compl. ¶ 543.  These are not facts, and under any pleading standard, much less the heightened pleading standard that applies to insider trading claims, the Court should disregard them.

The only other section of the Complaint related to Ms. Tolstedt's stock sales does nothing more than list the instances in which Ms. Tolstedt sold Wells Fargo stock between January 2012 and July 2016.  It does not allege that the timing or amount of any stock sale was suspicious.  *See* Compl. ¶¶ 386-87.  To the contrary, the allegations reveal that rather than time her sales for maximum benefit, Ms. Tolstedt sold stock on a regular schedule.  For instance, she sold stock on March 15 in 2012, 2013, 2014, 2015, and 2016; on July 1 in 2012, 2013, and 2014; and on July 22 in 2015 and 2016.  *Id.*

Delaware law compels dismissal of insider trading claims that "fail[] to allege any facts with particularity that would permit [the Court] to draw a reasonable inference that the challenged sales were executed upon the basis and because of non-public information." *Rattner v. Bidzos*, No. Civ. A 19700, 2003 WL 22284323, at *12 (Del. Ch. Sept. 30, 2003).  This is equally so when the Complaint "does not assist in determining whether the pattern of executed trades was the product of an orchestrated scheme to defraud the market and the Company's shareholders or good faith adherence to Company policy or consistent with prior individual practices." *Id.*

The claim for breach of fiduciary duty based on insider trading fails here for these exact reasons.  The Complaint alleges no particularized facts demonstrating that Ms. Tolstedt sold Wells Fargo stock "upon the basis and because of" any nonpublic information, and it alleges no details regarding the timing of Ms. Tolstedt's sales that would raise an inference of improper motivation.  If anything, the timing of Ms. Tolstedt's sales demonstrates that she did not deviate from her usual practice during the Relevant Period.  The Delaware insider trading claim should be dismissed.

### 2. The California insider trading claim is not pleaded with particularity.

Plaintiffs fare no better with their insider trading claim under California Corporations Code § 25402. That statute makes it unlawful for officers of an issuer of stock to "purchase or sell any security of the issuer . . . at a time when [she] knows material information about the issuer . . . which would significantly affect the market price of that security and which is not generally available to the public." Cal. Corp. Code § 25402. "[A]s insider trading under California law is a fraudulent practice," a claim pursuant to this provision must be pled with particularity under Federal Rule of Civil Procedure 9(b). *See In re Verisign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1221 (N.D. Cal. 2007).

While the language of the statute is broad, California courts have made clear that in order to state a valid claim, a plaintiff must do more than generally allege that an officer knew of material, nonpublic information at the time she made a trade. They must explain exactly which facts "each of the selling defendants knew, when each knew of those facts, how they acquired the knowledge, or which sales were made when defendants were in possession of which inside information." *See id.*

As detailed above, Plaintiffs have not pleaded their insider trading claim with particularity. They have made no attempt to allege which facts Ms. Tolstedt knew during particular stock sales. Instead, their allegations related to her stock sales consist only of a list of each sale, and conclusory allegations that she made those sales on the basis of nonpublic information. That does not satisfy the heightened pleading standard that applies to Section 25402 claims. *See In re Atmel Corp. Deriv. Litig.*, No. C 06-4592 JF (HRL), 2007 WL 2070299, at *11 (N.D. Cal. July 16, 2007) (dismissing Section 25402 claim because it was "not pled with sufficient particularity"). Moreover, Plaintiffs' failure to allege that any of Ms. Tolstedt's stock sales deviated from her previous practice provides an additional ground for dismissal. *See Zoumboulakis v. McGinn*, Case No. 5:13-CV-02379-EJD, 2014 WL 3926565, at *12 (N.D. Cal. Aug. 7, 2014) (dismissing Section 25402 claim because plaintiff failed to allege sales were "made due to alleged insider information" or "unusual from previous trading practices").

In sum, Plaintiffs have not pleaded their insider trading claims with particularity, and have failed to raise sufficient facts to permit an inference that Ms. Tolstedt sold stock on the basis of

1  material, nonpublic information.  The claims should be dismissed.[4]

2  **B.   The Contribution and Indemnification Claims Are Not Ripe**

3  Finally, the claim for contribution and indemnification "in the event [Wells Fargo] is found

4  liable for violating the federal securities laws" must be dismissed because it is not ripe.  *See* Compl. ¶

5  595.  Plaintiffs contend that if Wells Fargo is held liable in a separate suit alleging violations of federal

6  securities laws, that liability will arise in part because of the alleged acts or omissions of Ms. Tolstedt,

7  and thus Wells Fargo is entitled to contribution or indemnification from her.  *See id.*  But contribution

8  and indemnification claims are not ripe until liability in the underlying suit has been finally

9  determined.  *See In re Brocade Comm'ns Sys., Inc. Deriv. Litig.*, 615 F. Supp. 2d 1018, 1049 (N.D.

10  Cal. 2009) ("As there is no final judgment in that case, the claim for contribution is not ripe and is

11  hereby dismissed . . . ."); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Resource Dev. Servs.,*

12  *Inc.*, No. C 10-01324 RS, 2011 WL 13153239, at *6 (N.D. Cal. Dec. 7, 2011) (dismissing contribution

13  claim as unripe because final judgment had not been entered in underlying action).  Because the

14  federal securities suit against Wells Fargo is ongoing and no judgment has been entered, Plaintiffs'

15  contribution and indemnification claims are not ripe and should be dismissed.

16

17

18

19

20

21

22

23

24

---

25  [4]   In addition, the Section 25402 claim should be dismissed because it is barred by the internal
26  affairs doctrine.  *See Edgar v. MITE Corp.*, 457 U.S. 624, 645-46 (1982); *In re Sagent Tech., Inc.,
      Deriv. Litig.*, 278 F. Supp. 2d 1079, 1092 (N.D. Cal. 2003).  Indeed, the California Superior Court
27  recently dismissed identical claims in the parallel state derivative action on the ground that Section
      25402 does not apply to derivative actions brought on behalf of foreign corporations.  *See In re Wells
28  Fargo & Co. Deriv. Litig.*, Lead Case No. CGC-16-554407, slip op. at 12 (Cal. Super. Ct. May 10,
      2017).

1

**<u>CONCLUSION</u>**

2

      For the foregoing reasons, Carrie Tolstedt's partial motion to dismiss should be granted and the

3

claims against her discussed herein should be dismissed.

4

5

DATED:  June 5, 2017

6

7

                        Respectfully submitted,

8

9

                      /s/
                      JEFFREY E. FAUCETTE
                      SKAGGS FAUCETTE LLP

10

11

                      WILLIAMS & CONNOLLY LLP
                      ENU MAINIGI (*pro hac vice*)
                      LESLIE COOPER VIGEN (*pro hac vice*)

12

13

                      Attorneys for CARRIE TOLSTEDT

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28