Stuart J. Baskin (*pro hac vice*)
  sbaskin@shearman.com
Jaculin Aaron (SBN 133983)
  jaaron@shearman.com
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY  10022-6069
Telephone: 212.848.4000
Facsimile: 212.848.7179

John F. Cove, Jr. (SBN 212213)
  john.cove@shearman.com
Emily V. Griffen (SBN 209162)
  egriffen@shearman.com
Lisa M. Valenti-Jordan (SBN 300161)
  lisa.valenti-jordan@shearman.com
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA  94105-2997
Telephone:  415.616.1100
Facsimile:   415.616.1199

*Attorneys for Defendants John D. Baker II, Elaine L. Chao, John S. Chen, Lloyd H. Dean, Elizabeth A. Duke, Susan E. Engel, Enrique Hernandez, Jr., Donald M. James, Cynthia H. Milligan, Federico F. Peña, James H. Quigley, Judith M. Runstad, Stephen W. Sanger, Susan G. Swenson, and Suzanne M. Vautrinot*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION<br><br>This Document Relates To:  All Actions. | Lead Case No. 3:16-cv-05541-JST<br><br>(Consolidated with Nos. 3:16-CV-05592; 3:16-CV-05745; 3:16-CV-05817; 3:16-CV-05915; 3:16-CV-06262; 3:16-CV-06624; AND 3:16-CV-06631)<br><br>**INDEPENDENT DIRECTOR DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>Judge:      Hon Jon S. Tigar<br>Courtroom: 9, 19th Floor<br>Date:        August 24, 2017<br>Time:        2:00 p.m. |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................1

ARGUMENT ..................................................................................................................................1

    I.    THE COMPLAINT FAILS TO PLEAD A SECTION 10(b) CLAIM WITH THE REQUISITE PARTICULARITY ......................................................................1

        A.    The Complaint Fails To Satisfy the Particularity Requirements of Rule 9(b) and the PSLRA ..........................................................................1

        B.    The Group Pleading Doctrine Does Not Apply And Would Not Cure Plaintiffs' Pleading Deficiencies If It Did ..................................................4

    II.    PLAINTIFFS' SECTION 14(a) CLAIM FAILS TO STATE A CLAIM ..............7

        A.    The Complaint Does Not Plead Causation ....................................................7

        B.    Claims of Mismanagement or Breach of Fiduciary Duty Are Not Actionable Under Section 14(a) ....................................................................9

        C.    The Complaint Does Not Plead Actionable Misrepresentations for Purposes of Section 14(a) ..........................................................................11

    III.    THE SECTION 29(b) CLAIM IS NOT ACTIONABLE AND MUST BE DISMISSED IN THE ABSENCE OF UNDERLYING EXCHANGE ACT VIOLATIONS ........................................................................................................12

    IV.    AFTER DISMISSAL OF THE FEDERAL CLAIMS, THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS ...............................................................13

CONCLUSION ............................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acri v. Varian Assocs., Inc.*,
   114 F.3d 999 (9th Cir. 1997)..................................................................................................14

*In re Am. Apparel, Inc. S'holder Litig.*,
   2013 WL 174119 (C.D. Cal. Jan. 16, 2013)............................................................................11

*In re Asyst Techs., Inc. Deriv. Litig.*,
   2008 WL 4891220 (N.D. Cal. Nov. 12, 2008).........................................................................13

*Atlas v. Accredited Home Lenders Holding Co.*,
   556 F. Supp. 2d 1142 (S.D. Cal. 2008)......................................................................................5

*In re Cadence Design Sys., Inc. Sec. Litig.*,
   692 F. Supp. 2d 1181 (N.D. Cal. 2010) ....................................................................................4

*Carnegie–Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988) ................................................................................................................14

*City of Colton v. Am. Promotional Events, Inc.-W.*,
   614 F.3d 998 (9th Cir. 2010)...................................................................................................14

*City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*,
   875 F. Supp. 2d 359 (S.D.N.Y. 2012).......................................................................................5

*In re Countrywide Fin. Corp. Deriv. Litig.*,
   554 F. Supp. 2d 1044 (C.D. Cal. 2008).............................................................................10, 11

*Desaigoudar v. Meyercord*,
   223 F.3d 1020 (9th Cir. 2000)...................................................................................................9

*Destfino v. Reiswig*,
   630 F.3d 952 (9th Cir. 2011).....................................................................................................2

*In re Diamond Foods, Inc. Deriv. Litig.*,
   2012 WL 1945814 (N.D. Cal. May 29, 2012) ..........................................................................7

*ECA, Local 134 IBEW Joint Pension Tr. v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)....................................................................................................11

*Espinosa v. Bluemercury, Inc.*,
   2017 WL 1079553 (N.D. Cal. Mar. 22, 2017) ..........................................................................3

*Gaines v. Haughton*,
    645 F.2d 761 (9th Cir. 1981), *overruled in part on other grounds*,
    *In re McLinn*, 739 F.2d 1395 (9th Cir. 1984) ........................................................................... 9, 10

*In re Gupta Corp. Sec. Litig.*,
    1995 WL 338893 (N.D. Cal. Apr. 18, 1995) ....................................................................................... 6

*In re Hansen Nat. Corp. Sec. Litig.*,
    527 F. Supp. 2d 1142 (C.D. Cal. 2007) .............................................................................................. 4

*In re HP Deriv. Litig.*,
    2012 WL 4468423 (N.D. Cal. Sept. 25, 2012) .................................................................................... 8

*In re JPMorgan Chase Deriv. Litig.*,
    2014 WL 5430487 (E.D. Cal. Oct. 24, 2014) ........................................................................ 9, 10, 11

*In re LifeLock, Inc. Sec. Litig.*,
    __ F. App'x __, 2017 WL 1957520 (9th Cir. May 11, 2017) ........................................................... 9

*In re New Century*,
    588 F. Supp. 2d 1206 (C.D. Cal. 2008) .............................................................................................. 5

*In re Oak Tech. Sec. Litig.*,
    1997 WL 448168 (N.D. Cal. Aug. 1, 1997) ....................................................................................... 6

*Omega Overseas Partners Ltd. v. Griffith*,
    2014 WL 3907082 (S.D.N.Y. Aug. 7, 2014) .................................................................................... 13

*In re Questcor Sec. Litig.*,
    2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) ...................................................................................... 5

*In re Refco, Inc. Sec. Litig.*,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007) ................................................................................................ 5

*Rosenbloom v. Pyott*,
    765 F.3d 1137 (9th Cir. 2014) ............................................................................................................ 2

*In re Secure Computing Corp. Sec. Litig.*,
    120 F. Supp. 2d 810 (N.D. Cal. 2000) ............................................................................................... 5

*Sollberger v. Wachovia Sec., LLC*,
    2010 WL 2674456 (C.D. Cal. June 30, 2010) ................................................................................... 3

*In re Stratosphere Corp. Sec. Litig.*,
    1 F. Supp. 2d 1096 (D. Nev. 1998) .................................................................................................... 5

*In re VeriSign, Inc. Deriv. Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ............................................................................................. 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ................................................................................12

*Warshaw v. Xoma Corp.*,
    74 F.3d 955 (9th Cir. 1996)....................................................................................................12

*Wool v. Tandem Computs., Inc.*,
    818 F.2d 1433 (9th Cir. 1987)..................................................................................................6

**Statutes**

15 U.S.C. § 78cc(b)......................................................................................................................12

15 U.S.C. § 78u–4(b)(1)............................................................................................................2, 4

28 U.S.C. § 1367(c)................................................................................................................13, 14

**INTRODUCTION**

Plaintiffs' Opposition to the Independent Directors' motion to dismiss does not establish that Plaintiffs have met the demanding pleading standards applicable to the federal securities claims pursued here under Sections 10(b), 14(a) and 29(b) of the Exchange Act.

The Section 10(b) claim does not plead with the requisite particularity under the PSLRA which false or misleading statements each of the Independent Directors are alleged to have made, and why each was false or misleading when made. Instead, the Complaint is an improper puzzle pleading that leaves it to each Independent Director, and this Court, to attempt to sort through the mass of allegations made against all the Defendants. *See* Section I, *infra*.

Plaintiffs cannot state a Section 14(a) claim because the votes solicited in the 2014, 2015, and 2016 proxies did not cause the harm alleged in this case related to alleged sales practices at Wells Fargo. Even if they did, proxy claims alleging corporate mismanagement or breaches of fiduciary duty are not actionable as a matter of law. In any event, the statements about Wells Fargo's risk management and corporate governance alleged in the proxies are so vague as to be immaterial as a matter of law. *See* Section II, *infra*.

The Section 29(b) claim fails absent an underlying Exchange Act violation, but it also fails because Plaintiffs have not alleged any particular contracts signed by the Independent Directors with Wells Fargo that are subject to rescission, much less that any such contracts were entered into or performed in violation of the Exchange Act as required to state a claim. *See* Section III, *infra*.

Lastly, upon dismissal of the federal claims asserted against the Independent Directors, the Court should exercise its discretion to decline supplemental jurisdiction over the state claims. *See* Section IV, *infra*.

**ARGUMENT**

**I.   THE COMPLAINT FAILS TO PLEAD A SECTION 10(b) CLAIM WITH THE REQUISITE PARTICULARITY**

   **A.   The Complaint Fails To Satisfy the Particularity Requirements of Rule 9(b) and the PSLRA**

Plaintiffs' Opposition repeatedly confuses the pleading requirements for demand futility

with the requirements of a motion to dismiss.  Demand futility requires that "Plaintiffs' particularized allegations create a reasonable doubt as to whether a *majority* of the board of directors faces a substantial likelihood of personal liability for breaching the duty of loyalty." *Rosenbloom v. Pyott*, 765 F.3d 1137, 1150 (9th Cir. 2014) (emphasis added).  Rule 9(b) and the PSLRA address a completely different aspect of the Complaint requiring that the Complaint outline for *each* defendant *each* materially false or misleading statement made, and *particularized facts* explaining why that statement was false. *See* 15 U.S.C. § 78u–4(b)(1)(B) ("[T]he complaint shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading . . . ."); Fed. R. Civ. P. 9(b) ("[A] party must state *with particularity* the circumstances constituting fraud or mistake[.]") (emphasis added).

In their Opposition, Plaintiffs continue to lump the Independent Directors in with the other Defendants no fewer than 20 times.  *See, e.g.*, Opp. at 9-15.  Although  Plaintiffs point to a purported "roadmap"  – paragraph 367 – which contains a chart listing which Defendant signed which filing, Plaintiffs later claim the Defendants are liable for other statements "as to which they are not explicitly identified as the speaker or signatory." *Id.* at 11, 22 n.13 (citing ¶¶ 404-405[1]); *see also ¶* 404 ("[T]he group pleading doctrine also applies to render Defendants responsible for statements as to which they are not explicitly identified as the speaker or signatory.").[2]  Plaintiffs then expect Defendants to pick through 148 additional paragraphs to piece together which statements are allegedly false, in which filing, and why each was false. *Id.*  Similarly, in the next section, each Independent Director is left to wonder if she or he is one of the "numerous Director Defendants" who misrepresented risk-management processes. *Id.* at 12.  Plaintiffs' Opposition

---

[1] Unless otherwise noted, all "¶" references are to the Complaint.  These facts are taken from the Complaint, and are assumed to be true for purposes of this motion only.

[2] Plaintiffs also claim that they allege "all Defendants consciously disregarded" all alleged red flags. Opp. at 14.  Not only is this impossible, as some of the Defendants were not even on the Board Committees that allegedly saw certain red flags, but it again confuses the demand futility standard with pleading standards, claiming that the Court's finding with respect to the Board's ability to consider a demand somehow negates Plaintiffs' burden to plead with particularity each element of the substantive claims alleged against each Independent Director. *Id.* at 15.  This is the exact type of pleading that Plaintiffs admit is improper (and claim they did not do) when they distinguish *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (making "'everyone did everything' allegations" is a form of impermissible shotgun pleading); Opp. at 16.

| DIRECTOR DEFS.' REPLY I/S/O MOT. TO DISMISS | 2 | LEAD CASE NO. 3:16-CV-05541-JST |
|---|---|---|

demonstrates exactly why this shotgun approach is improper.  As just one example, Plaintiffs allege all undifferentiated Defendants are responsible for "routinely punishing or terminating employees who complained" and "fail[ing] to address customer complaints" (Opp. at 13), implausibly ascribing to the Independent Directors responsibilities and knowledge for complaints at a level far below a board of directors' normal functions.

Plaintiffs are correct that incorporation by reference of prior allegations *alone* does not an impermissible puzzle or shotgun pleading make.  *Espinosa v. Bluemercury, Inc.*, 2017 WL 1079553, at *5 (N.D. Cal. Mar. 22, 2017).  But incorporation by reference of prior allegations, when combined with a Complaint that monochromatically lumps twenty Defendants together across 180 pages and 596 paragraphs, is the very *definition* of shotgun pleading:

> One common type of shotgun pleading comes in cases with multiple defendants where the plaintiff uses the omnibus term "Defendants" throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong. Another type is where the plaintiff recites a collection of general allegations toward the beginning of the Complaint, and then "each count incorporates every antecedent allegation by reference[.]"

*Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010).  While in *Espinosa* plaintiffs only lumped two defendants together, and those two defendants were in a parent-subsidiary relationship, here there are *twenty* individual Defendants, who were exposed to different information at different times and in different capacities, each of whom is faced with almost six hundred paragraphs of allegations through which she must sift to attempt to determine exactly which allegations she faces.  *See Espinosa*, 2017 WL 1079553, at *5.  Federal pleading standards, especially for a Section 10(b) action, require more particularized information from Plaintiffs.

Finally, Plaintiffs assert the cases cited by the Independent Directors are inapposite because this Court previously held under the demand futility standard that the Complaint adequately alleged that there was a reasonable doubt as to whether a majority of the Board knew about the alleged illegal activity, fundamentally confusing the demand futility standard and the standards imposed by the PSLRA and the Federal Rules.  Opp. at 15-16.  Further, Plaintiffs say

that their Complaint has none of the following "deficiencies" noted in the cases they attempt to distinguish (Opp. at 16 n.7), when in fact a review of the Complaint proves otherwise:

- Paragraphs with "extensive block quotes with multiple statements" (*see, e.g.*, ¶¶ 3, 108, 120, 130-31, 133, 135, 141-144, 274-76, 280, 287-88);
- Statements that do not identify which of the individual Defendants made each statement (*see, e.g.*, ¶¶ 267, 268-270; *see also e.g.*, ¶¶ 323-26 (incorporating statements by senators in the section related to misstatements and omissions); ¶ 337 (incorporating analyst statements));
- Allegations that do not state the specific date, time, or circumstances of each alleged statement (*see* ¶¶ 327, 328);
- Section setting out counts makes "no attempt to lay out which conduct constituted the violations alleged, instead "simply paraphrasing or quoting the language of the statutes and rules" (*see* ¶¶ 524-96); and
- Every count re-alleges all the paragraphs noted in the summary section (*id.*).

In short, Plaintiffs fail to plead with particularity that the Independent Directors each violated Section 10(b) by knowingly making allegedly false or misleading statements.

### B. The Group Pleading Doctrine Does Not Apply And Would Not Cure Plaintiffs' Pleading Deficiencies If It Did

Plaintiffs defend their failure to plead particularized facts against individual directors or to distinguish between individual Defendants on the basis of the so-called "group pleading doctrine," which under certain circumstances permits statements in group-published documents to be attributed to individuals who did not participate in making the statements. Plaintiffs' reliance on this "doctrine" is misplaced. First, the group pleading doctrine is not compatible with the PSLRA because the PLSRA requires plaintiffs to "allege[] that *the defendant* . . . made an untrue statement of a material fact . . . ," and that "the complaint shall specify *each statement* alleged to have been misleading . . . ." 15 U.S.C. § 78u–4(b)(1) (emphasis added). Almost every recent district court case in the Ninth Circuit to analyze the issue has concluded that the group pleading doctrine no longer applies following the PSLRA. *See In re Cadence Design Sys., Inc. Sec. Litig.*, 692 F. Supp. 2d 1181, 1193 (N.D. Cal. 2010) (noting that the group pleading doctrine "has been rejected by a majority of district courts in this circuit and this district"); *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1153-54 (C.D. Cal. 2007) (group pleading doctrine can no longer be used in cases subject to the PSLRA); *see also In re New Century,* 588 F. Supp. 2d 1206, 1223-24 (C.D.

Cal. 2008) ("All of the Circuit courts that have expressly considered whether group pleading is compatible with the PSLRA have concluded that it is not."). While "the Ninth Circuit has yet to address whether the group pleading doctrine survives *Janus* . . . district courts in this circuit have largely concluded that the doctrine is incompatible with the PSLRA." *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *9 (C.D. Cal. Oct. 1, 2013).

Plaintiffs argue that this Court should ignore the vast majority of the district courts in the Ninth Circuit that have directly addressed the issue, citing a handful of outdated, inapposite, and out-of-district cases. *In re Secure Computing Corp. Securities Litigation*, 120 F. Supp. 2d 810, 812, 821-22 (N.D. Cal. 2000) (Opp. at 22), offers little reasoning for its decision to apply the group pleading doctrine, and only applies it to officer defendants, not outside directors such as the Independent Directors. Similarly, *Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1155 (S.D. Cal. 2008) (Opp. at 23-24), makes the blanket assertion that the group pleading doctrine applies with no discussion as to how it survived the PSLRA. *In re Stratosphere Corp. Securities Litigation*, 1 F. Supp. 2d 1096, 1108 (D. Nev. 1998) (Opp. at 23-24), decided just three years after the PSLRA was enacted, applied group pleading because "Defendants offer[ed] no case authority for their proposition that group pleading has been sub silentio abolished by the PSLRA[.]" *Id*. That is plainly no longer the case. Finally, Plaintiffs cite two cases from the Southern District of New York, which do not even apply the doctrine to outside (non-officer) directors such as the Independent Directors. *See City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 375 (S.D.N.Y. 2012) (applying group pleading doctrine to a single officer – with no mention of directors, let alone outside directors); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 641 (S.D.N.Y. 2007) (applying group pleading doctrine to officer defendants only).[3]

Even if group pleading were compatible with the PSLRA's requirements of specificity in pleading federal securities fraud claims, Plaintiffs have shown no basis for applying it to the Independent Directors. Plaintiffs acknowledge that the doctrine could be applied to outside, non-

---

[3] District courts in the Second Circuit have split on whether the PSLRA has abrogated the group pleading doctrine, with the Circuit Court silent on the issue.

management directors only if the complaint pled the outside directors' involvement with the "day-to-day-corporate activities" of the corporation, or that they had a "special relationship with the corporation such as participation in preparing or communicating group information at particular times." *In re Oak Tech. Sec. Litig.*, 1997 WL 448168, at *10 (N.D. Cal. Aug. 1, 1997) (quoting *In re GlenFed Sec. Litig.*, 60 F. 3d 591, 593 (9th Cir. 1995)); *Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1440 (9th Cir. 1987) (group pleading doctrine applies only to "collective actions of *the officers*") (emphasis added); Opp. at 23; *see also* Opp. at 17 (stating that liability for statements under group pleading doctrine extends to "senior executives," not the Independent Directors). The Complaint makes no such allegations (*see* ¶¶ 404-05), and the Opposition's attempt to point to allegations that meet the "day-to-day" or "special relationship" requirement simply confirms that no such allegations exist. *See* Opp. at 23-24 (citing to ¶¶ 100-115, which allege only Board Committee responsibilities, not "day-to-day" involvement in corporate affairs).

Plaintiffs also rely on *In re Gupta Corp. Securities Litigation*, 1995 WL 338893, at *6 (N.D. Cal. Apr. 18, 1995), a pre-PSLRA case, for the proposition that the group pleading doctrine applies to outside directors.[4] But *Gupta* itself acknowledges that "[o]utside directors ordinarily do not engage in the day-to-day management of the companies on whose boards they sit, and therefore may not typically be held liable for alleged fraud under the group pleading doctrine." *Id*. The Court noted however that the case presented unusual facts, in that the complaint alleged that the outside directors "directly approved" the fraudulent activity at issue. *Id.* Even if a pre-PSLRA case were persuasive, which it is not, no such allegations of direct approval of fraudulent sales practices exist here.

As a result, Plaintiffs cannot take advantage of the group pleading doctrine to assert that the Independent Directors may be liable for statements "as to which they are not explicitly identified as the speaker or signatory." ¶ 404.[5]

---

[4] It is no surprise that Plaintiffs rely on *Gupta*, a twenty-two year old case that does not apply the PSLRA's heightened pleading requirements, as it is the only case from this District to both apply the group pleading doctrine and to conclude that a complaint's allegations against outside directors satisfy the group pleading doctrine.

[5] The only statements that Plaintiffs allege the Independent Directors made are those found in Wells Fargo's Forms 10-K, which are signed each year by all directors. *See* ¶ 367.

## II. PLAINTIFFS' SECTION 14(a) CLAIM FAILS TO STATE A CLAIM

Plaintiffs do not dispute that a complaint under Section 14(a) is subject to heightened pleading standards under the PSLRA and Rule 9(b). The Complaint's allegations in support of the Section 14(a) claim do not meet these pleading standards.[6]

### A. The Complaint Does Not Plead Causation

Section 14(a) claims for monetary damages must plead that (1) votes for a particular corporate action were obtained via a false proxy statement, and (2) the transaction at issue was the direct cause of the plaintiff's pecuniary injury. In other words, Plaintiffs must plead an "essential link" between an allegedly false proxy statement and a corporate transaction which was authorized by that false proxy statement and directly caused monetary harm. Plaintiffs point to three votes solicited by the 2014, 2015, and 2016 proxies at issue here, none of which caused the harm alleged in the Complaint: (i) re-election of directors; (ii) an advisory "say on pay" resolution regarding executive compensation; and (iii) a shareholder proposal requiring an independent Chairman.

First, re-election of directors is not the type of harm that satisfies the "essential link" element of a Section 14(a) claim, and Plaintiffs have not shown otherwise. *See* Mem. at 8-9 (citing cases). Plaintiffs attempt to distinguish *In re Diamond Foods, Inc. Derivative Litigation*, 2012 WL 1945814, at *7 (N.D. Cal. May 29, 2012), which held that "re-election of directors who have allegedly mismanaged the company is insufficient to meet the 'essential link' requirement of Section 14(a)," by now arguing that they are not alleging mismanagement on the part of the Independent Directors and by positing a convoluted causal chain in which, by "reelecting the Director Defendants based on incomplete information, shareholders unwittingly allowed them to perpetuate those policies, which encouraged the underlying illegal sales practices." Opp. at 54. But this logic proves too much; it would expose every proxy statement for director re-election to a

---

[6] Plaintiffs imply that the Independent Directors should have raised particular arguments about the Section 14(a) and 29(b) claims previously or should be barred by the Court's prior Order (Opp. at 46-47, 49, 56). This ignores (1) that they previously stipulated to permit the Individual Defendants to pursue Rule 12 motions, including for failure to state a claim, separately from the threshold motion for demand futility (*see* ECF No. 85), and (2) the demand futility finding under Delaware law with regard to the potential liability of a majority of directors simply addresses different issues than those posed under federal law and the PSLRA as to the adequacy of the claims against each director.

| DIRECTOR DEFS.' REPLY | | LEAD CASE NO. |
| I/S/O MOT. TO DISMISS | 7 | 3:16-CV-05541-JST |

Section 14(a) claim, regardless of the relationship to the claim, and is contrary to well-established precedent.  Courts have consistently rejected Section 14(a) claims based on director re-elections because damages are available "'only when the votes for a specific corporate transaction . . . are obtained by a false proxy statement, and that transaction was the *direct cause* of the pecuniary injury.'" *In re HP Deriv. Litig.*, 2012 WL 4468423, at *11 (N.D. Cal. Sept. 25, 2012) (quoting *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992)) (emphasis added).  *See also In re VeriSign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1213 (N.D. Cal. 2007) (plaintiffs "allege no *direct injury* suffered by VeriSign as a corporation as a *direct result* of the transaction that was at immediate issue in the proxy (election of directors)") (emphasis added).  There is no direct causal connection between re-election of directors due to proxies in 2014, 2015, and 2016 and the alleged improper sales practices.[7]

Second, Plaintiffs claim that the allegedly false proxies caused shareholders to approve executive compensation packages.  Plaintiffs fail to mention in their Opposition – though they are forced to concede in the Complaint – that the executive compensation votes solicited in the 2014, 2015 and 2016 proxies were in fact what are known as "say on pay" *advisory* resolutions, and as such, had no force or binding effect of any kind on Wells Fargo or on the executive compensation at issue.  ¶¶ 267 ("Although your vote is advisory and not binding on the Company, the Board values our stockholders' views on executive compensation matters . . . ."), 280 ("[T]he say on pay vote is advisory and not binding on our Board . . . ."), 292 (same).  A vote one way or the other on such an advisory resolution could not directly cause harm, since it had no binding effect in any event.

Third, Plaintiffs point to proxy statements relating to shareholder proposals requiring an independent Chairman.  Like votes re-electing directors, the votes on whether or not to require an independent Chairman do not establish the direct causal link with the claimed harm that can

---

[7] Plaintiffs claim that they "plausibly allege that had shareholders known of the underlying misconduct at the Company, they would not have voted to keep the same Directors who were allowing the illegal sales practices to continue."  Opp. at 53.  This is not well taken in light of the undeniable fact that all of the directors who ran for re-election in 2017, after the alleged disclosure of sales practice issues, were in fact re-elected by shareholders. *See, e.g.*, https://www.nytimes.com/2017/04/25/business/dealbook/wells-fargo-board.html.

trigger a Section 14(a) claim. *See In re JPMorgan Chase Deriv. Litig.*, 2014 WL 5430487, at *24 (E.D. Cal. Oct. 24, 2014).[8] This is particularly true where, as here, those votes have nothing to do with the underlying alleged wrongdoing (sales practices) that allegedly caused Wells Fargo harm. Votes to reject a shareholder proposal for an independent Chairman, like re-election of directors or advisory votes on executive compensation, are not votes that could possibly have caused the "loss-generating corporate action," relating to sales practices not even mentioned in any of the proxies. Plaintiffs' tortured causation argument – that the allegedly misleading statements about Wells Fargo's governance structure in the proxies somehow caused shareholders to vote to re-elect directors, approve executive compensation, and reject an independent Chairman proposal, which in turn caused the damages stemming from alleged sales practices – in no way satisfies the "essential link" causation element.[9]

### B. Claims of Mismanagement or Breach of Fiduciary Duty Are Not Actionable Under Section 14(a)

The "false or misleading representations" that Plaintiffs allege in the proxy statements are merely claims that the Independent Directors failed to disclose their alleged mismanagement. Such alleged omissions are not material as a matter of law under longstanding Ninth Circuit precedent which Plaintiffs ignore. *See Gaines v. Haughton*, 645 F.2d 761, 779 (9th Cir. 1981), *overruled in part on other grounds*, *In re McLinn*, 739 F.2d 1395, 1397 (9th Cir. 1984); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1024 (9th Cir. 2000); *In re LifeLock, Inc. Sec. Litig.*,

---

[8] Neither of the cases cited by Plaintiffs in support of their assertions about the independent Chairman vote addressed such a situation. *See* Opp. at 54 (citing *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986 (N.D. Cal. 2007), and *In re Maxim Integrated Prods., Inc., Deriv. Litig.*, 574 F. Supp. 2d 1046 (N.D. Cal. 2008)) (both stock option backdating cases).

[9] Plaintiffs claim that because there is some temporal overlap between the alleged sales practices and the 2014-2016 proxies, the votes solicited by the proxies were capable of having caused the harm arising from the sales practices. However, the 2014-2016 proxies did not and could not have caused the alleged harm that is alleged to have been ongoing for almost a decade. This is the same situation present in *JPMorgan*, in which the Court rejected a similar argument that somehow "the harm 'could have been avoided or mitigated' if the shareholders had appointed an independent director as chairman or had appointed independent directors to the board in 2011 or 2012." 2014 WL 5430487, at *24. The *JPMorgan* court found that "[i]t is implausible that by electing different directors JPMorgan could have avoided the entirety of the harm it suffered as a result of its RMBS business. Significant damage had been done before 2011. . . . In 2011 or 2012, newly elected independent directors could not have undone the sale of the securities JPMorgan created and marketed in the past." *Id.*

1  \_\_ F. App'x \_\_, 2017 WL 1957520, at *7 (9th Cir. May 11, 2017).  Plaintiffs rely primarily on *In*

2  *re Countrywide Financial Corp. Derivative Litigation*, 554 F. Supp. 2d 1044 (C.D. Cal. 2008).

3  But the Court in *Countrywide* found that the "allegations that the directors breached their duties in

4  failing to monitor" were "of secondary importance" to the allegations of failure to disclose that

5  Countrywide had abandoned its underwriting standards and exposed itself to heightened risk,

6  which led to one of the most severe financial implosions in the last decade's financial crisis.  *Id.* at

7  1077; Opp. at 47-49.  As a result, the *Countrywide* court concluded that the plaintiffs' allegations

8  of Section 14(a) violations were independent of their fiduciary duty allegations and not barred by

9  *Gaines*.  That is simply not the case here.

10         Fundamentally, Plaintiffs misconstrue the nature of their Section 14(a) claim, which

11 plainly does not focus on the failure to disclose improper sales practices by Bank employees but

12 instead alleges a failure to disclose alleged mismanagement in the form of, among other things,

13 "ineffective internal and disclosure controls," "reporting failures," and "Board-approved

14 compensation programs."  Opp. at 48 n.28 (citing ¶ ¶ 278, 289, 290); *see also* ¶¶ 274-288.  These

15 are, at bottom, failures to disclose mismanagement or breach of fiduciary duty (a failure to

16 monitor), which are precluded by *Gaines* and its progeny.

17         In fact, this case more closely resembles *JPMorgan*, which alleged that the directors of

18 JPMorgan signed proxies that were "false and misleading because they stated and implied that the

19 Board, with Dimon as both Chairman and CEO, was exercising effective oversight of

20 management, when in fact the directors knew that was not the case," leading JPMorgan to be

21 exposed to liability with respect to residential mortgage-backed securities ("RMBS").  2014 WL

22 5430487, at *2.  *Compare id.* at *2 (complaint alleging the directors "either turned a blind eye to

23 or expressly authorized the inadequate controls in JPMorgan's RMBS business, hiding

24 deficiencies from investors") *with* ¶ 481 ("The Director Defendants' misconduct . . . include[es]

25 knowingly and consciously presiding over the Company's systematic deficiencies and unsound

26 practices in the Bank's risk management and oversight of the Bank's sales practices, as well as

27 concealing the illicit account-creation scheme . . . .").  Far from being a "secondary" claim,

28

Plaintiffs' allegations of mismanagement are at the heart of their Complaint, and fail to "stand on their own feet as § 14(a) violations." *JPMorgan*, 2014 WL 5430487, at *20.

This is in stark contrast to *Countrywide*, in which the Court found that the "essence" of the Section 14(a) claim was the failure to disclose the company's true condition resulting from RMBS practices contemporaneous with the proxy statements. Plaintiffs admit that they "allege the Proxy Statements omitted material facts regarding the Company's ineffective internal and disclosure controls" (Opp. at 52), which is nothing more than a claim of failure to disclose mismanagement which is immaterial as a matter of law.

### C.  The Complaint Does Not Plead Actionable Misrepresentations for Purposes of Section 14(a)

Plaintiffs' Opposition confirms that the statements allegedly attributable to the Independent Directors are no more than inactionable, non-material puffery. Opp. at 10-14, 49-52. For example, statements touting the strategy of cross selling as a means of "satisfying all of [Wells Fargo's] customers' financial needs as [Wells Fargo] builds lifelong relationships," or the strength of the Banks' controls and processes, are simply not capable of objective verification. *Id.* at 10, 12-14. That some improperly opened accounts may have been included in the non-financial cross-sell averages does not render these statements either knowingly or materially false. Plaintiffs' attempt to contrast the alleged misrepresentations here with those found to be immaterial puffery in the cases relied on by the Independent Directors (Mem. at 13-14) falls flat. Opp. at 51. The language at issue here – such as "effective independent oversight of management," "sound and effective corporate governance principles and practices," and "active oversight and monitoring" – is almost identical to language commonly rejected by courts as puffery. *See ECA, Local 134 IBEW Joint Pension Tr. v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) (statements regarding a company's "highly disciplined" risk management and "standard-setting reputation for integrity" "are no more than 'puffery' which does not give rise to securities violations"); *JPMorgan*, 2014 WL 5430487, at *23 ("Because 'effective' and 'appropriate' are vague and may describe a wide variety of results in the context of a 'leadership structure' and 'oversight,' they are not material."); *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 174119, at *31 (C.D. Cal. Jan.

16, 2013) (statements that "company was trying to build a 'world class financial team,'" improve internal controls, and "sought to 'pursue a strict corporate orthodoxy as far as financial issues,' . . . do not constitute actionable misrepresentations"); *see also* ¶111 ("[T]he Board consistently trumpeted the efficacy and importance of Wells Fargo's corporate governance standards, repeatedly claiming '[t]he Company's governance structure is working effectively as evidenced by the Company's strong financial performance.'").[10]

### III. THE SECTION 29(b) CLAIM IS NOT ACTIONABLE AND MUST BE DISMISSED IN THE ABSENCE OF UNDERLYING EXCHANGE ACT VIOLATIONS

Plaintiffs do not dispute that, if the Sections 10(b) and 14(a) claims are dismissed, the Section 29(b) claim must be also. Even absent dismissal of the underlying Section 10(b) and 14(a) claims, the Section 29(b) claim must be dismissed for independent reasons.

First, though the Section 29(b) claim seeks rescission of certain contracts, Plaintiffs have not even alleged what contracts the Independent Directors entered into with Wells Fargo as to which they seek rescission. Thus, the claim fails to provide even the most basic notice under Rule 8(a). Plaintiffs argue that they have adequately pled that "Defendants violated Sections 10(b) and 14(a) of the Exchange Act during the time they were subject to employment contracts with Wells Fargo." Opp. at 56. Once again, Plaintiffs' habit of grouping all Defendants together is fatal to adequately pleading a claim, as the Independent Directors are, by definition, not employees and therefore do not have employment contracts with Wells Fargo.

Second, even if Plaintiffs could allege the particular contracts at issue, they have not alleged that any such contract was entered into or performed in violation of the Exchange Act, as required in order to plead an essential element of a Section 29(b) claim. *See* 15 U.S.C. § 78cc(b)

---

[10] The cases relied on by Plaintiffs, none of which involve Section 14(a) claims, are nothing like the present case. In *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996), plaintiffs pointed to "optimistic public statements that the E5 FDA-approval process was progressing positively," which is a much more specific statement about a particular issue (FDA approval of a specific drug) than the general assertions about the strength of Wells Fargo's corporate governance and risk oversight at issue here. *See also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 66281, at *17 (N.D. Cal. Jan. 4, 2017) (statements at issue related to "clean diesel" and being environmentally friendly). Plaintiffs attempt to connect the statements in the proxies about executive compensation to the alleged sales practices, Opp. at 49-50 & n.30, but this is comparing apples to oranges, as the sales goals and incentives that allegedly led to sales practice violations in the Community Bank were for rank-and-file employees.

| DIRECTOR DEFS.' REPLY I/S/O MOT. TO DISMISS | 12 | LEAD CASE NO. 3:16-CV-05541-JST |
|---|---|---|

("Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder . . . shall be void . . . ."). To void or rescind a contract under Section 29(b), Plaintiffs must show that "the contract involved a prohibited transaction" or was made or performed "in violation of any provision" of the Exchange Act or rules promulgated thereunder. *In re Asyst Techs., Inc. Deriv. Litig.*, 2008 WL 4891220, at *9 (N.D. Cal. Nov. 12, 2008) (quoting *Berckeley Inv. Group Ltd v. Colkitt*, 455 F.3d 195, 205 (3d Cir. 2006));[11] *Omega Overseas Partners Ltd. v. Griffith*, 2014 WL 3907082, at *4 (S.D.N.Y. Aug. 7, 2014). Plaintiffs have failed to so plead. Instead, Plaintiffs argue that "Defendants committed violations of the securities laws *while performing* their employment contracts entered into with Wells Fargo" (Opp. at 56-57 (emphasis added)), in other words, that the two things happened at the same time. This is not the same as pleading that the *contracts themselves* were entered into or performed *in violation* of the Exchange Act or involved a prohibited transaction. To hold otherwise would prove too much, as every violation of the Exchange Act by a person while employed under contract would constitute a Section 29(b) claim. The Section 29(b) claim therefore fails to state a claim.

### IV. AFTER DISMISSAL OF THE FEDERAL CLAIMS, THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS

The Court can and should use its discretion to decline to exercise supplemental jurisdiction over the remaining state law claims asserted in the Complaint upon dismissal of the federal claims asserted against the Independent Directors. A court may decline supplemental jurisdiction under 28 U.S.C. § 1367(c) if: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court dismissed all claims over which it has original jurisdiction, or

---

[11] Plaintiffs block quote *Asyst* for the proposition that they need not specify particular contracts. Opp. at 57. But *Asyst* only confirms how far from adequately pleading a Section 29(b) claim Plaintiffs are here: in *Asyst*, certain of the defendant directors entered into stock option contracts for and received stock options that were allegedly improperly backdated, and it is those stock option contracts – which were the subject of the alleged Section 10(b) and Rule 10b-5 claim – that the court held were adequately pled under Section 29(b). 2008 WL 4891220, at *9 ("Plaintiffs allege that the '*option contracts [received by the defendants] should be rescinded* under § 29 because those defendants violated § 10(b) and SEC Rule 10(b)–5 *in the performance of administering Asyst's stock option plans*.' . . . . Plaintiffs allege that Asyst is in privity with the defendants *with respect to stock options granted to Defendants*, that Defendants have engaged in prohibited conduct . . . .") (emphasis added).

| DIRECTOR DEFS.' REPLY I/S/O MOT. TO DISMISS | 13 | LEAD CASE NO. 3:16-CV-05541-JST |
|---|---|---|

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. At least two of the four alternative reasons for declining supplemental jurisdiction apply here.

First and most importantly, once the "district court [has] dismissed all [federal] claims over which it has original jurisdiction, it may decline supplemental jurisdiction over the state law claims." 28 U.S.C. § 1367(c)(3). *See, e.g.*, *City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998 (9th Cir. 2010). Plaintiffs argue that because a single defendant, Mr. Stumpf, has not moved to dismiss two of the federal claims asserted against him, the Court should exercise its discretion to assert supplemental jurisdiction over the fifteen Independent Directors and four other Officer Defendants – *nineteen* other individual Defendants in all – with respect to the *six* remaining state law claims alleged against them. Opp. at 68-69. The tail should not wag the dog in this way. *See, e.g.*, *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (court's discretion "is informed by the . . . values 'of economy, convenience, fairness, and comity'"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Second, even if the Court were to give weight to the two remaining federal claims against Mr. Stumpf, it is undeniable that the state claims asserted in this case "substantially predominate[] over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). This case is, at bottom, a breach of fiduciary duty case against Wells Fargo's directors and officers arising from what Plaintiffs describe as "Defendants' remarkable and disturbing breach of the trust reposed in them by Wells Fargo's banking customers." ¶ 1. The federal claims are tagged on to what is plainly the predominant theory of wrongdoing asserted, which is violation of the Defendants' duties to Wells Fargo under Delaware law.

# CONCLUSION

For all of the foregoing reasons, the Independent Directors respectfully request that the Court dismiss the Section 10(b), 14(a), and 29(b) claims for failure to state a claim pursuant to Rule 12(b)(6), and decline to exercise supplemental jurisdiction over the state law claims.

DATED: July 26, 2017 **SHEARMAN & STERLING LLP**

By:  */s/ Jaculin Aaron*
        Jaculin Aaron

*Attorneys for the Independent Directors*