ENU MAINIGI (*pro hac vice*)
LESLIE COOPER VIGEN (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC  20005-5901
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail: emainigi@wc.com
lvigen@wc.com

JEFFREY E. FAUCETTE (No. 193066)
SKAGGS FAUCETTE LLP
One Embarcadero Center, Suite 500
San Francisco, CA 94111
Telephone: (415) 315-1669
Facsimile: (415) 433-5994
E-mail: jeff@skaggsfaucette.com

Attorneys for Defendant Carrie Tolstedt

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION | Lead Case No. 3:16-CV-05541-JST<br><br>**DEFENDANT CARRIE TOLSTEDT'S REPLY IN SUPPORT OF HER MOTION TO DISMISS**<br><br>The Honorable Jon S. Tigar<br><br><u>Hearing Date and Time:</u><br>August 24, 2017, 2:00 p.m. |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ....................................................................................................1

ARGUMENT .........................................................................................................2

I.   THE SECURITIES FRAUD CLAIM FAILS BECAUSE THE COMPLAINT DOES NOT ADEQUATELY ALLEGE AN ACTIONABLE MISSTATEMENT BY MS. TOLSTEDT OR SCIENTER AS TO HER STATEMENTS.................2

     A.   The Complaint Alleges No False Statement Made by Ms. Tolstedt with Scienter. ........................................................................................3

          1.   Vague statements about "value" and "goals" are quintessential puffing. ...........................................3

          2.   The Complaint fails to allege either that cross-sell figures were false or that Ms. Tolstedt should have known they were purportedly false. ...........................................4

     B.   The Group Pleading Doctrine Has Been Widely Rejected, and the Complaint's Allegations Are Insufficient Regardless. ...........................7

II.   THE SECTION 20A AND 29(B) CLAIMS FALL ALONG WITH THE SECURITIES FRAUD CLAIM, AND ARE OTHERWISE INADEQUATELY PLEADED. .................................................................10

     A.   The Complaint Fails To Allege Contemporaneous Trades, as Required to State a Section 20A Claim. ...................................................10

     B.   The Complaint Fails To Allege a Contract that Could Not Be Performed without Violating the Securities Laws, as Required to State a Section 29(b) Claim. ...........................................................................11

III.  THE STATE-LAW INSIDER TRADING, CONTRIBUTION, AND INDEMNIFICATION CLAIMS SHOULD BE DISMISSED. ...........................12

     A.   The Delaware Insider-Selling Allegations Fail to State a Claim. ............12

     B.   The Section 25402 Claim Is Inadequately Pleaded. ................................14

     C.   The Contribution and Indemnification Claims Are Not Ripe. .................14

CONCLUSION.....................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3

*Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142 (S.D. Cal.
    2008) ..................................................................................................................8

4

5

*Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006)...........................................11

6

*Biotechnology Value Fund, LP v. Celera Corp.*, 2014 WL 988913 (N.D. Cal. Mar. 10,
    2014) ..................................................................................................................7

7

8

*Boguslavsky v. Kaplan*, 159 F.3d 715 (2d Cir. 1998) ....................................................11

9

*Buban v. O'Brian*, 1994 WL 324093 (N.D. Cal. June 22, 1994) ..................................11

10

*City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*, 875
    F. Supp. 2d 359 (S.D.N.Y. 2012) .............................................................................8

11

12

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045 (N.D. Cal.
    2012) ................................................................................................................10

13

14

*Curry v. Hansen Med., Inc.*, 2012 WL 3242447 (N.D. Cal. Aug. 10, 2012).................10

15

*Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015)...............9, 10

16

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ...........................................12, 13, 14

17

*Hallam v. Gemini Ins. Co.*, 2015 WL 11237479 (S.D. Cal. Apr. 8, 2015)....................15

18

*In re Am. Apparel, Inc. Shareholder Litig.*, 2013 WL 174119 (C.D. Cal. Jan. 16, 2013)7

19

*In re Asyst Techs., Inc. Derivative Litig.*, 2008 WL 4891220 (N.D. Cal. Nov. 12,
    2008) ................................................................................................................11

20

21

*In re Brocade Comm'ns Sys., Inc. Deriv. Litig.*, 615 F. Supp. 2d 1018 (N.D. Cal.
    2009) ................................................................................................................15

22

23

*In re Connetics Corp. Sec. Litig.*, 2008 WL 3842938 (N.D. Cal. Aug. 14, 2008) ...10, 11

24

*In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) ........10

25

*In re Hansen Natural Corp.*, 527 F. Supp. 2d 1142 (C.D. Cal. 2007)............................7

26

*In re New Century*, 588 F. Supp. 2d 1206 (C.D. Cal. 2008).......................................7, 8

27

*In re Nextcard Sec. Litig.*, 2006 WL 708663 (N.D. Cal. Mar. 20, 2006) ...................7, 8

28

*In re Oracle Corp. Derivative Litig.*, 867 A.2d 904 (Del. Ch. 2004) ............................12

*In re Questcor Sec. Litig.*, 2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) .........................7

*In re Tibco Software, Inc.*, 2006 WL 1469654 (N.D. Cal. May 25, 2006).................7, 9

*In re Verisign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173 (N.D. Cal. 2007) .....................14

*Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)..............8, 9

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008) ...4, 5, 6

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ........................................11

*NuCal Foods, Inc., v. Quality Egg LLC*, 918 F. Supp. 2d 1037 (E.D. Cal. 2013)..........15

*Okla. Firefighters Pension & Retirement Sys. v. IXIA*, 50 F. Supp. 3d 1328 (C.D. Cal. 2014) ..........................................................................................7

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598 (9th Cir. 2014) ..........6

*Petrie v. Electronic Game Card Inc.*, 2011 WL 165402 (C.D. Cal. Jan. 12, 2011) .........7

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051 (9th Cir. 2014)3, 4

*Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008)........................................7, 8

*Rattner v. Bidzos*, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003).................................13

*Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011) .......................................9

*Regional Props., Inc. v. Fin. and Real Estate Consulting Co.*, 678 F.2d 552 (5th Cir. 1982) ..........................................................................................11

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268 (9th Cir. 2017) ..........................................................4

*Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001)..........................................................5

*Royal Air Props., Inc. v. Smith*, 312 F.2d 210 (9th Cir. 1962) ......................................12

*SEC v. Daifotis*, 2011 WL 3295139 (N.D. Cal. Aug. 1, 2011).....................................10

*Siebert v. Gene Sec. Network, Inc.*, 2013 WL 5645309 (N.D. Cal. Oct. 16, 2013)........15

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004) ....7, 8

*Stepak v. Ross*, 1985 WL 21137 (Del. Ch. Sept. 5, 1985) ............................................12

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008) .................2, 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## OTHER AUTHORITIES

2   15 U.S.C. § 78u-4(b) .................................................................................3, 8

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Defendant Carrie Tolstedt respectfully submits this reply memorandum in support of her

2    Motion to Dismiss (the "Motion") [Dkt. 140] the Consolidated Amended Verified Stockholder

3    Derivative Complaint (the "Complaint") [Dkt. 83] in part, with respect to her.

4                                    **INTRODUCTION**

5    Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss (the "Opposition") [Dkt.

6    151] reveals Plaintiffs' apparent strategy in this matter: to gloss over pleading standards requiring

7    *specific* allegations with respect to *each* defendant, in the hope that their general descriptions of "illicit

8    account creation" will be enough to move this matter past the motion-to-dismiss stage.  Such a strategy

9    might work with the media.  Unfortunately for Plaintiffs, they are in a court of law.  Here, Plaintiffs

10   are bound by strict pleading requirements as to *each* of the twenty defendants against whom they have

11   asserted claims, and as Ms. Tolstedt explained in her Motion, they have failed to meet them with

12   respect to Ms. Tolstedt in the securities claims (Counts Five, Six, and Seven) and the state-law insider

13   trading claims (Counts Three and Eight) lodged against her.  The contribution and indemnification

14   claim (Count Eleven) must likewise be dismissed as unripe.

15   All of the securities fraud claims against Ms. Tolstedt fail because the Complaint does not meet

16   the requirements to state a claim under section 10(b) of the Securities Exchange Act—which is, in

17   turn, an element of the claims under sections 29(b) and 20A.  Indeed, the Complaint lacks sufficient

18   allegations to plead the foundational element of the section 10(b) cause of action: an actionable

19   misrepresentation *made by Ms. Tolstedt*.  The few public statements she made to investors are either

20   corporate "puffery" or inadequately alleged to be false.  Plaintiffs' fallback position—that Ms.

21   Tolstedt should be held liable for alleged misstatements *not* attributed to her under the "group pleading

22   doctrine"—has been widely rejected.  In addition, Plaintiffs do not (nor could they) refute the fact that

23   the Complaint lacks *specific* scienter allegations regarding Ms. Tolstedt's statements.  And although

24   Plaintiffs' claims under section 29(b) and Section 20A must be dismissed because of the Complaint's

25   failure to allege a primary violation of the securities laws, they also should be rejected due to

26   insufficiently specific allegations as to the other elements of those causes of action.

27   Plaintiffs' state-law claims fare no better.  The Complaint does not adequately plead facts

28   raising an inference that Ms. Tolstedt's trades were motivated by material, nonpublic information,

1   offering nothing more than conclusory allegations which do not satisfy the heightened pleading

2   standards under Delaware or California law.  And the Opposition's arguments that Ms. Tolstedt's

3   trades were suspicious in either time or amount ignore well-settled law that simply alleging an officer

4   traded shortly after a public statement, without more, does not state a claim for insider trading.  Nor

5   does alleging that an officer traded a large volume over time.  Finally, Plaintiffs' contribution and

6   indemnification claim is not ripe, and the cases the Opposition cites to the contrary are inapposite.

7          For these and other reasons, Plaintiffs' securities claims, state-law insider trading claims, and

8   contribution and indemnification claim should be dismissed as to Ms. Tolstedt.

9                                          **ARGUMENT**

10          Ms. Tolstedt has moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the

11  following causes of action brought against her: breach of fiduciary duty for insider selling and

12  misappropriation of information (Count Three); violations of section 10(b) of the Securities Exchange

13  Act and SEC Rule 10b–5 (Count Five); violations of section 20(A) of the Securities Exchange Act

14  (Count Six); violations of section 29(b) of the Securities Exchange Act (Count Seven); violation of

15  section 25402 of the California Corporations Code (Count Eight); and for contribution and

16  indemnification (Count Eleven).  The Motion sets forth that (1) the securities fraud cause of action

17  must be dismissed because the Complaint fails to plead an actionable misstatement by her or scienter

18  as to her statements; (2) the section 29(a) and 20A causes of action fail because the Complaint does

19  not allege either a primary violation of the securities laws or other required elements of those claims;

20  (3) the state-law insider trading claims must be dismissed for failure to allege scienter and lack of

21  particularity; and (4) the contribution and indemnification claim should be dismissed as premature.

22  Plaintiffs' Opposition fails to adequately rebut these arguments.

23  **I.     The Securities Fraud Claim Fails Because the Complaint Does Not Adequately Allege an**

24  **        Actionable Misstatement by Ms. Tolstedt or Scienter as to her Statements.**

25          A claim under Section 10(b) and Rule 10b–5 should be dismissed unless a Complaint alleges

26  with particularity *each* of the following elements: "(1) a material misrepresentation or omission by the

27  defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase

28  or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6)

1  loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008).  Ms.

2  Tolstedt has shown at least two of these elements are lacking: a material misrepresentation by her and

3  scienter as to her statements.  Specifically, the Motion demonstrates that the statements attributed to

4  Ms. Tolstedt are either puffery or inadequately pleaded to be false. Mot. 5-11. It also shows that the

5  Complaint fails to raise a "strong inference" of scienter as to her alleged statements.  Mot. 11-15.

6        Plaintiffs argue that Ms. Tolstedt's statements are not puffery, and that they have adequately

7  pleaded falsity.  Opp. 18-21.  They also assert that generalized scienter allegations pertaining to all

8  defendants are sufficient to raise the requisite level of scienter as to Ms. Tolstedt's specific statements.

9  Opp. 27-35.  And finally—perhaps recognizing the weakness of their allegations as to Ms. Tolstedt—

10  Plaintiffs contend that she should be held liable for statements she did *not* make under the oft-rejected

11  "group pleading doctrine."  Opp. 22-24.  All of these arguments fail.

12        **A.      The Complaint Alleges No False Statement Made by Ms. Tolstedt with Scienter.**

13        Plaintiffs do not contest that the Complaint attributes only three alleged misstatements to Ms.

14  Tolstedt.  *See* Mot. 5-7.  They assert, however, that no portion of these statements is inactionable

15  puffery, and that the Complaint adequately pleads falsity as to each.  Opp. 18-22.  Plaintiffs are wrong.

16  The Complaint fails to demonstrate "the reason or reasons why [these] statement[s] [are] misleading,"

17  as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA").  15 U.S.C. § 78u-

18  4(b).  Nor does it state with the requisite particularity facts giving rise to a strong inference of scienter

19  on Ms. Tolstedt's part.

20        **1.      Vague statements about "value" and "goals" are quintessential puffing.**

21        Plaintiffs argue that statements Ms. Tolstedt made about the "value" Wells Fargo sought to

22  provide customers and the company's "long-term goal" of "an eight cross-sell" are not puffery,

23  purporting that they are "capable of objective verification" and that "reasonable investors would rely

24  on these statements."  Opp. 18-19.  As an initial matter, whether an investor might have relied upon

25  these statements is irrelevant here because "[a]bsent an actual misstatement, reliance does not come

26  into play."  *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014).

27  "Theoretical reliance cannot transform corporate optimism into a securities violation."  *Id.* at 1061.

28

1      Nor are these statements capable of objective verification, as Plaintiffs make plain by their

2 failure to articulate exactly *why* the statements are purportedly false.  For example, Plaintiffs argue that

3 statements like "[w]e . . . offer[] packages to customers to provide more value," and "we anchor

4 ourselves on . . . our vision of satisfying our customers' needs," are false because "Defendants were

5 not providing more 'value' to customers or prioritizing 'customers' needs.'" Opp. 19.  Plaintiffs offer

6 a blanket cite to 148 paragraphs from the Complaint, spanning 48 pages, as the basis for this argument.

7 Opp. 19.  The fact that they cannot be more specific is telling.  Moreover, the plain language of the

8 statements shows that Ms. Tolstedt is discussing what Wells Fargo hopes to achieve by "offer[ing]

9 packages" and the company's "vision" of satisfying customers.  This kind of "aspirational" statement

10 is not an objectively verifiable representation.  *See Retail Wholesale & Dep't Store Union Local 338*

11 *Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017).

12      Plaintiffs do not attempt to argue that Ms. Tolstedt's forward-looking statements about Wells

13 Fargo's "goal" of "an eight cross-sell" are false, effectively conceding that they are not.  Opp. 19.

14 Indeed, statements about "goals" are inherently subjective corporate optimism.  *See Police Ret. Sys. of*

15 *St. Louis*, 759 F.3d at 1060 (statements about "potential for growth" were "the antithesis of facts").

16      Plaintiffs' inability to express why statements about Wells Fargo's strategy for providing value

17 or cross-sell goals were false makes such statements an improper basis for a securities fraud claim.

18         **2.**     **The Complaint fails to allege either that cross-sell figures were false or that**

19                  **Ms. Tolstedt should have known they were purportedly false.**

20      Although Ms. Tolstedt's statements as to specific cross-sell statistics are arguably capable of

21 objective verification, the Complaint likewise fails to allege with particularity *why* these figures were

22 false.[1]  *See* Mot. 10-11.  Plaintiffs assert that they are not required to "quantify, without discovery, the

23 amount by which the metrics were misstated."  Opp. 21.  But Plaintiffs *are* required to plead "specific

24 facts indicating why those statements were false."  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,

25 540 F.3d 1049, 1070 (9th Cir. 2008).  "[T]he PSLRA's falsity requirement is not satisfied by

26

27     [1] By acknowledging that these figures could be capable of objective verification, Ms. Tolstedt is *not*, as Plaintiffs claim, "essentially conced[ing] that [her] statements regarding the number of products per household . . . are actionable." Opp. 21.  For a statement to be actionable, it must be

28 false.  Ms. Tolstedt disputes that the Complaint alleges falsity as to the cross-sell statistics.

conclusory allegations that a company's class period statements regarding its financial well-being are *per se* false based on the plaintiff's allegations of fraud generally." *Id.*

The Complaint's allegation that "Wells Fargo's cross-selling figures were artificially inflated by at least 1,534,208 unauthorized deposit accounts and 565,443 unauthorized credit card accounts" does not pass muster; nor do unsupported and exaggerated accusations of "millions of unauthorized accounts." *See* Opp. 21. The critical missing component is context. Wells Fargo is "the world's second-largest bank by market capitalization and third-largest bank in the United States by assets"; it operates in all 50 states, the District of Columbia, and other countries. Compl. ¶¶ 66, 68. The allegedly unauthorized accounts figures are from an investigation that began in 2015, and concluded in 2016. Compl. ¶ 255. The investigation examined "all Wells Fargo accounts opened between 2011 and 2015" and found that the accounts Plaintiffs reference "*might* have been unauthorized." *Id.* (emphasis added). The Complaint provides no further information as to when these accounts might have been opened or the number of accounts that were actually unauthorized. Nor does it provide any indication of the percentage of *all* accounts within Wells Fargo that might have been affected. These types of allegations are critical to alleging with particularity that Ms. Tolstedt's statements regarding cross-sell statistics, allegedly made in 2012 and 2014, were false. *See* Compl. ¶¶ 332, 350. If, for example, Wells Fargo had 20 billion deposit accounts in 2012, and 2,000 accounts were opened without customer knowledge, that fact would not alter the veracity of the cross-sell statistics. Without this kind of detail, Plaintiffs cannot meet the PSLRA's requirement to provide "specific facts" indicating why Ms. Tolstedt's statements were purportedly false.

Even if the Court were to determine that the Complaint adequately alleges falsity, the fact that the investigation into the number of unauthorized accounts did not begin until *more than a year after* Ms. Tolstedt's most recent statement regarding cross-sell is fatal to this claim. That substantial passage of time eliminates any inference of scienter with respect to the figures offered by Ms. Tolstedt. To demonstrate scienter, a complaint must plead "specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements *when made.*" *Metzler Inv. GMBH*, 540 F.3d at 1066 (quoting *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001)) (emphasis added). Because Ms. Tolstedt could not have known about the

1   aggregate data cited by the Plaintiffs, it is unreasonable to infer that she knew the cross-sell figures

2   were purportedly false at the time she made these statements.

3         Plaintiffs argue that the "red flags" that this Court found support an inference of scienter on the

4   part of the director defendants, in the context of fiduciary-duty claims, also support an inference of

5   scienter on the part of the officer defendants, including Ms. Tolstedt.  But this collective argument

6   ignores the requirement that the Complaint must allege scienter with particularity as to each individual

7   defendant.  *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014).  And

8   the allegations of "red flags," in large part, do not mention Ms. Tolstedt.  *See* Opp. 28-33.  It is

9   unreasonable to conclude that Ms. Tolstedt—who is not alleged to have been a Board member, a

10   member of the Operating Committee, or responsible for corporate legal or risk-management

11   functions—was aware of events like communications sent to the Board or one-off whistleblower

12   lawsuits.  *See* Opp. 29.  It is also unreasonable to assume that "red flags" that occurred *after* Ms.

13   Tolstedt's statements in 2012 and 2014 support an inference of scienter on her part.  *See id.*  To the

14   extent certain allegations—such as the December 2013 *Los Angeles Times* article—permit an

15   inference that Ms. Tolstedt was aware of *some* instances of unauthorized opening of accounts, it does

16   not follow that she should have presaged an issue with the cross-sell figures.  Taking into account

17   "plausible opposing inferences," as the Court must, it is more reasonable to conclude that, without any

18   aggregate figures, Ms. Tolstedt was unaware of how allegations of unauthorized accounts might have

19   affected cross-sell figures.  *See, e.g., Metzler Inv. GMBH*, 540 F.3d at 1061.  Again, the Complaint's

20   failure to allege the number of accounts at Wells Fargo, the number of allegedly unauthorized

21   accounts opened in any given year, the components that went into the cross-sell figure, or an

22   investigation into the number of unauthorized accounts prior to 2015, sinks the Plaintiffs' argument.[2]

23         For these reasons, the Complaint fails to allege an actionable misstatement or scienter on the

24   part of Ms. Tolstedt.  Accordingly, the securities fraud claim against her must be dismissed.

25

26

27        [2] Although Plaintiffs attempt to salvage their scienter allegations by reference to Ms. Tolstedt's
incentive compensation, they concede that "allegations regarding incentive compensation cannot alone

28   raise an inference of scienter."  Opp. 35 (internal quotation marks and citation omitted).

CARRIE TOLSTEDT'S REPLY IN SUPPORT OF MOTION TO DISMISS
LEAD CASE NO. 3:16-CV-05541-JST

**B.**      **The Group Pleading Doctrine Has Been Widely Rejected, and the Complaint's Allegations Are Insufficient Regardless.**

Plaintiffs attempt to maintain their securities fraud claim against Ms. Tolstedt by seeking to hold her responsible for statements they concede are not attributed to her pursuant to the so-called "group pleading doctrine."  In doing so, they give the misleading impression that the use of this doctrine remains common practice within this Circuit.  Not so.  Instead, Plaintiffs urge this Court to adopt an outlier position the majority of district courts in this Circuit have rejected.  *See, e.g.*, *Biotechnology Value Fund, LP v. Celera Corp.*, 2014 WL 988913, at *5-6 (N.D. Cal. Mar. 10, 2014); *Okla. Firefighters Pension & Retirement Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1353-56 (C.D. Cal. 2014) (recognizing that most district courts in the Ninth Circuit hold that group pleading did not survive PSLRA); *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *9 (C.D. Cal. Oct. 1, 2013) ("[D]istrict courts in this circuit have largely concluded that the [group pleading] doctrine is incompatible with the PSLRA."); *In re Am. Apparel, Inc. Shareholder Litig.*, 2013 WL 174119, at *25 (C.D. Cal. Jan. 16, 2013) ("Courts within the Ninth Circuit have . . . largely concluded that group pleading is not compatible with the PSLRA's requirements."); *Petrie v. Electronic Game Card Inc.*, 2011 WL 165402, at *3 (C.D. Cal. Jan. 12, 2011) ("[T]he majority of district courts within the Circuit to confront the group pleading doctrine post-*Tellabs* have decided that the doctrine did not survive."); *In re New Century*, 588 F. Supp. 2d 1206, 1223-24 (C.D. Cal. 2008); *In re Hansen Natural Corp.*, 527 F. Supp. 2d 1142, 1153-54 (C.D. Cal. 2007); *In re Nextcard Sec. Litig.*, 2006 WL 708663, at *3 (N.D. Cal. Mar. 20, 2006).  The Court should refuse this invitation.

As this overwhelming consensus would suggest, those courts which have rejected the group pleading doctrine have done so with good reason.  The doctrine "allows unattributed corporate statements to be charged to one or more individual defendants based solely on their corporate titles."[3] *In re Am. Apparel, Inc. Shareholder Litig.*, 2013 WL 174119, at *25 (quoting *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 363 (5th Cir. 2004)); *see also Pugh v. Tribune Co.*, 521

---

[3] The doctrine does not apply to statements specifically attributed to other defendants, for which Ms. Tolstedt cannot be held liable.  *See, e.g. In re Tibco Software, Inc.*, 2006 WL 1469654, at *28 (N.D. Cal. May 25, 2006) ("[G]roup pleading does not apply to oral remarks made by others.").

1    F.3d 686, 693 (7th Cir. 2008) ("We have rejected the 'group pleading doctrine,' a judicial presumption

2    that statements in group-published documents are attributable to officers who have daily involvement

3    in company operations.").  While not specifically addressing the group pleading doctrine, both

4    Congress, in the PSLRA, and the Supreme Court, in *Janus Capital Group, Inc. v. First Derivative*

5    *Traders*, 564 U.S. 135, 142 (2011), have indicated that more detail is required to plead a securities

6    fraud cause of action against individual defendants.

7        Plaintiffs recognize that a significant number of courts have concluded that the group pleading

8    doctrine conflicts with the PSLRA because that statute mandates particularized allegations that "*the*

9    *defendant* made an untrue statement of a material fact; or omitted to state a material fact" and "that *the*

10    *defendant* acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1) (emphasis added); *see* Opp.

11    23.  "These PSLRA references to 'the defendant' may only be reasonably understood to mean 'each

12    defendant' in multiple defendant cases."  *Southland Sec. Corp.*, 365 F.3d at 364-65.  Accordingly, it

13    would be "totally inconsistent with the particularity requirements of the PSLRA to hold corporate

14    officers 'responsible for unattributed corporate statements.'"  *In re Nextcard Sec. Litig.*, 2006 WL

15    708663, at *3 (quoting *Southland Sec. Corp.*, 365 F.3d at 365).  Allowing the group pleading doctrine

16    to persist following the PSLRA would undermine Congress's intent "to impose heightened pleading

17    requirements for plaintiffs bringing fraud actions."  *In re New Century*, 588 F. Supp. 2d at 1224.

18        None of the cases Plaintiffs cite meaningfully challenge these conclusions.  For example, *Atlas*

19    *v. Accredited Home Lenders Holding Co.*—one of the few opinions Plaintiffs reference from this

20    Circuit—does no more than cite a pre-PSLRA Ninth Circuit opinion for the proposition that it is

21    permissible to presume that "group-published information" can be attributed to corporate officers.  556

22    F. Supp. 2d 1142, 1155 (S.D. Cal. 2008).  Because it fails to take into account the intervening passage

23    of the PSLRA, that opinion is not well reasoned.  For the same reason, the pre-PSLRA cases Plaintiffs

24    cite are not persuasive as to this point.  Likewise, the out-of-circuit district court opinion in *City of*

25    *Pontiac General Employees' Retirement System v. Lockheed Martin Corp.* conclusorily states "there is

26    no tension between requiring a plaintiff to allege specific facts for individual defendants and

27    presuming that multiple corporate officers may work as a group to produce particular documents."

28    875 F. Supp. 2d 359, 374 (S.D.N.Y. 2012).  But it never explains *why* "there is no tension."  These

1    cases provide no counterpoint to the position that, through the specific language of the PSLRA,

2    Congress intended to require detailed allegations as to *each* defendant.

3         Even if the PSLRA did not eliminate the group pleading doctrine entirely, the Complaint's

4    allegations would still have to meet the PSLRA's stringent pleading requirements to allege that Ms.

5    Tolstedt was the maker of group-published documents. *See In re Tibco Software*, 2006 WL 1469654,

6    at *27. They do not. As Ms. Tolstedt pointed out in the Motion, the allegations as to her role in

7    creating these statements are too vague to survive dismissal. Mot. 7-8.

8         Should any doubt remain, the Supreme Court's decision in *Janus*—which the Ninth Circuit has

9    recognized "sets the pleading bar even higher in private securities fraud actions"—makes plain the

10   need for particularized pleading as to individual defendants. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d

11   681, 694 n.8 (9th Cir. 2011). *Janus* held that, for a defendant to have "made" misstatements under

12   section 10(b) and Rule 10b–5, she must have "*ultimate authority* over the statement, including its

13   content and whether and how to communicate it." 564 U.S. at 142 (emphasis added). In contrast,

14   "[o]ne who prepares or publishes a statement on behalf of another is not its maker." *Id. Janus*

15   therefore mandates that a complaint include allegations as to each defendant's role in preparing a

16   statement, and limits liability to those with "ultimate authority" to make it.

17        The Complaint does not allege that Ms. Tolstedt had "ultimate authority" over any statement

18   not specifically attributed to her. She is not alleged to have had final approval over any press release,

19   SEC filing, or other unattributed corporate filing. She was not CEO or CFO, nor was she in charge of

20   investor relations, public relations, or financial reporting. Instead, the Complaint alleges that Ms.

21   Tolstedt headed a business unit and "report[ed] to [Timothy] Sloan." Compl. ¶ 72. Moreover, the

22   allegations that *all* defendants controlled the alleged misstatements are meaningless boilerplate:

23   "Defendants, because of their positions of control and authority as officers or directors of Wells Fargo,

24   were able to and did control the content of various [documents] . . . ." *Id.* ¶ 405. For these reasons,

25   under *Janus*, the Complaint fails to plead that Ms. Tolstedt was responsible for such statements.

26   *Accord, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 425 (7th Cir. 2015).

27        Plaintiffs attempt to avoid this conclusion by claiming that *Janus* applies only to third parties.

28   They rely upon a single, out-of-circuit opinion for this proposition. Opp. 24. As the Motion points out

CARRIE TOLSTEDT'S REPLY IN SUPPORT OF MOTION TO DISMISS
LEAD CASE NO. 3:16-CV-05541-JST

1  (and Plaintiffs fail to acknowledge), however, numerous courts within this district have applied *Janus*

2  to corporate insiders. Mot. 6; *see, e.g.*, *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F.

3  Supp. 2d 1045, 1071 (N.D. Cal. 2012); *Curry v. Hansen Med., Inc.*, 2012 WL 3242447, at *4-5 (N.D.

4  Cal. Aug. 10, 2012); *SEC v. Daifotis*, 2011 WL 3295139, at *2-4 (N.D. Cal. Aug. 1, 2011).  The one

5  court of appeals to have considered the issue likewise held that "[n]othing in *Janus* limits its holding to

6  legally independent third parties," given that "[t]he Court [was] interpret[ing] the language of Rule

7  10b–5." *Glickenhaus*, 787 F.3d at 425.  Again, the Court should follow the better-reasoned majority

8  position, rather than Plaintiffs' outlier argument.

9        For these reasons, the Complaint fails to state a securities fraud claim against Ms. Tolstedt, and

10  that cause of action should be dismissed.

11  **II.  The Section 20A and 29(b) Claims Fall Along with the Securities Fraud Claim, and Are**

12          **Otherwise Inadequately Pleaded.**

13        Plaintiffs do not contest (nor could they) that their claims under sections 20A and 29(b) cannot

14  stand if the securities fraud claim is dismissed.  *See* Mot. 15-16.  Even if the securities fraud claim

15  survives, however, these causes of action should be eliminated.

16        **A.  The Complaint Fails To Allege Contemporaneous Trades, as Required to State a**

17          **Section 20A Claim.**

18        To state a claim under Section 20A, a plaintiff is required to allege "facts showing that the

19  defendant's trade occurred 'contemporaneously' with a complementary trade by the plaintiff."  *In re*

20  *Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1202 (C.D. Cal. 2008).  "Contemporaneous

21  trading must be pled with specificity." *Id.* at 1203.  Plaintiffs assert that they have done so here by

22  alleging that Wells Fargo repurchased stock in certain months in which Ms. Tolstedt traded—even

23  though they have concededly failed to plead the dates of these alleged share repurchases.  Opp. 59.

24        The Court cannot evaluate whether the share repurchases meet the "contemporaneousness"

25  requirement—whether a few days or more[4]—without Plaintiffs alleging with particularity the dates

26

27      [4] Although courts within the Ninth Circuit have reached varying conclusions as to how close in
time a trade must be to qualify as "contemporaneous," most insist on a window of fewer than three

28  days. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1205 (requiring a trade "on the
same trading day, or one trading day after, the insider's transaction"); *In re Connetics Corp. Sec.*

upon which the shares were repurchased.  The opinion Plaintiffs cite holding that alleging the month of a trade is sufficient, Opp. 59, is not only an outlier, but arguably conflicts with guidance from the Ninth Circuit.  Although that court has not specified "the exact contours of 'contemporaneous trading,'" it has observed that most courts "have found the requirement not met if the plaintiff's trades occurred more than a few days apart from the defendant's."  *Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993).  Because Plaintiffs have not pleaded facts necessary for the Court to evaluate contemporaneousness, this cause of action should be dismissed as inadequately pleaded.

## B.  The Complaint Fails To Allege a Contract that Could Not Be Performed without Violating the Securities Laws, as Required to State a Section 29(b) Claim.

As the Motion points out, the Complaint fails to identify which contract or contracts it seeks to rescind with respect to Ms. Tolstedt.  Mot. 16.  Plaintiffs do not dispute that the Complaint lacks such detail, but assert that they are required to do no more than conclusorily state that "Defendants violated provisions of the Exchange action while performing their duties arising under various employment contracts and other contracts they entered into with Wells Fargo."  Compl. ¶ 574; *see* Opp. 56-57. That is not the law.

The Third Circuit has recently provided guidance that a contract is voidable under section 29(b) only if "the securities violations are inseparable from the underlying agreement between the parties."  *Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 206 (3d Cir. 2006); *see In re Asyst Techs., Inc. Derivative Litig.*, 2008 WL 4891220 (N.D. Cal. Nov. 12, 2008) (citing *Berckeley*).  In other words, a contract is subject to rescission only if it "cannot be performed without violating the securities laws." *Berckeley Inv. Grp.*, 455 F.3d at 206; *accord, e.g.*, *Boguslavsky v. Kaplan*, 159 F.3d 715, 722 (2d Cir. 1998) (section 29(b) claim adequately alleged where contracting entity could not legally perform a contract because it "no longer was a duly registered broker-dealer"); *Regional Props., Inc. v. Fin. and Real Estate Consulting Co.*, 678 F.2d 552, 560 (5th Cir. 1982) (section 29(b) claim adequately alleged where contracting entity could not lawfully perform the contract because it lacked SEC registration);

---

*Litig.*, 2008 WL 3842938, at *14 (N.D. Cal. Aug. 14, 2008) ("[T]rades three days apart could not have been contemporaneous . . . ."); *Buban v. O'Brian*, 1994 WL 324093, at *3 (N.D. Cal. June 22, 1994) (finding three days in between trades was too long).

1    *Royal Air Props., Inc. v. Smith*, 312 F.2d 210, 213 (9th Cir. 1962) ("[S]ection 29(b) declares . . . *illegal*

2    *contracts* void." (emphasis added)).  Plaintiffs' failure to state the contracts at issue here makes

3    determining whether they are "illegal" impossible.  And, to the extent the Court finds that the

4    Complaint pleads a contract with sufficient specificity, it should nonetheless dismiss this cause of

5    action.  The Complaint certainly does not allege any contract Ms. Tolstedt could not perform without

6    violating the securities laws.

7    **III.    The State-Law Insider Trading, Contribution, and Indemnification Claims Should Be**

8          **Dismissed.**

9          **A.    The Delaware Insider-Selling Allegations Fail to State a Claim.**

10          Plaintiffs acknowledge that to plead adequately a claim for breach of fiduciary duty for insider

11   selling under Delaware law, they must allege that Ms. Tolstedt's trades were "motivated, wholly or in

12   part, by the substance of" material, non-public information she possessed.  Opp. 60; *see In re Oracle*

13   *Corp. Derivative Litig.*, 867 A.2d 904, 934 (Del. Ch. 2004).  But neither the Opposition's repetition of

14   the Complaint's conclusory allegations, nor its invention of new allegations not present in the

15   Complaint, show that Ms. Tolstedt's trades were motivated by such information.  These allegations do

16   not state a claim for insider selling.

17          Plaintiffs argue that the volume of Ms. Tolstedt's trades over five years—"simply by virtue of

18   [its] staggering amount"—raises an inference that each of those trades was motivated by a desire to

19   exploit insider information.  Opp. 62.  This argument fails both as a matter of Delaware law and as a

20   matter of logic.  Under Delaware law, simply alleging that an officer or director sold large amounts of

21   shares over a period of time does not state a claim for insider selling.  *See Guttman v. Huang*, 823

22   A.2d 492, 503-04 (Del. Ch. 2003).  In addition, it simply does not follow that because the eighteen

23   alleged trades are substantial in the aggregate, every single one (or any single one) was improper.  The

24   cumulative amount of the trades says nothing about the motivation behind each one.

25          Moreover, under Delaware law, Plaintiffs cannot lump all of Ms. Tolstedt's trades together and

26   generally assert that they were all improper.  Instead, "it must be shown that each sale by [the]

27   defendant was entered into and completed on the basis of, and because of, adverse material non-public

28   information."  *Stepak v. Ross*, 1985 WL 21137, at *5 (Del. Ch. Sept. 5, 1985) (emphasis added).  But

the Complaint includes no allegations regarding the motivation underlying any individual trade by Ms. Tolstedt, and no allegations regarding suspicious timing or a deviation from past trading practices. Delaware law requires more.  *See, e.g.*, *Rattner v. Bidzos*, 2003 WL 22284323, at *10 (Del. Ch. Sept. 30, 2003) (dismissing claim because complaint was "devoid of any particularized facts that could lead to the inference that the timing of the trades reflected . . . impermissible insider trading" and did not "shed light upon the trading practices . . . prior to the Relevant Period").

Although the Opposition attempts to ameliorate the Complaint's failure to allege that Ms. Tolstedt's trades were suspiciously timed by connecting the dots *post hoc*, it does not succeed.  First, it alleges that her trades "increased significantly in 2013 and continued robustly in 2014, when the inflated cross-sell metric reached its peak."  Opp. 61 (internal quotation marks and citation omitted). This argument implies Ms. Tolstedt increased her trades as the cross-sell metric allegedly became more inflated—an allegation missing from the Complaint.  Even if this had been properly alleged, however, Plaintiffs' hypothesis of suspicious timing would require Ms. Tolstedt's trades to have decreased after 2014, the year the metric allegedly "reached its peak."  They did not.  According to the Complaint, Ms. Tolstedt traded more in 2015.  The allegations therefore do not allow an inference of suspicious timing across all of Ms. Tolstedt's trades, much less of any particular trade.

The Opposition specifically references only two of eighteen trades alleged in the Complaint, and it fails to show that those trades were suspiciously timed.  It claims that one trade in 2014 and one in 2015 are suspicious because they occurred shortly after allegedly misleading statements.  But that allegation alone does not raise an inference that the trades were motivated by material, non-public information under Delaware law.  In *Rattner v. Bidzos*, for instance, the Court of Chancery dismissed similar allegations, noting that "while the pattern observed does reflect trading activity on behalf of the Director Defendants after the release of allegedly misleading statements, no particularized allegation of the Amended Complaint answers whether this temporal proximity was in fact part of the Company's practice to prevent Company insiders from improperly benefiting from informational asymmetries."  2003 WL 22284323, at *10.  Similarly, in *Guttman v. Huang*, the Court of Chancery dismissed insider trading allegations where "the complaint fail[ed] to address whether the directors

1  traded because options were expiring or because IPO-related restrictions on liquidity had recently

2  ended." 823 A.2d at 503-04.

3      The Complaint here suffers from the same defects.  It contains no allegations regarding

4  whether Wells Fargo had a practice of encouraging trades shortly after public statements to diminish

5  the possibility of insiders exploiting nonpublic information.  Nor does it contain allegations regarding

6  the expiration of Ms. Tolstedt's stock options.  These failures are fatal to claims of insider trading

7  under Delaware law, and compel dismissal of those claims against Ms. Tolstedt.

8          **B.      The Section 25402 Claim Is Inadequately Pleaded.**

9      Plaintiffs do not dispute that a claim under California Corporations Code Section 25402 must

10  be pleaded with particularity. *See* Opp. 67.  But the Opposition offers only two conclusory sentences

11  in support of its argument that Plaintiffs have met this standard. *See id.*  The Opposition, like the

12  Complaint, fails to identify what nonpublic information Ms. Tolstedt allegedly possessed before

13  making each trade, and when or how she obtained it.  Nor does the Opposition cite a single case where

14  allegations as vague as those in the Complaint—a laundry list of trades accompanied by the

15  conclusory allegation that Ms. Tolstedt traded on the basis of nonpublic information—satisfied

16  heightened pleading standards.  That is for good reason: under California law, they do not. *See In re*

17  *Verisign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1221 (N.D. Cal. 2007) (section 25402 claim

18  required to allege what "each of the selling defendants knew, when each knew of those facts, how they

19  acquired the knowledge, or which sales were made when defendants were in possession of which

20  inside information").  The section 25402 claim should be dismissed.

21          **C.      The Contribution and Indemnification Claims Are Not Ripe.**

22      The Complaint seeks contribution and indemnification from Ms. Tolstedt "[i]n the event

23  [Wells Fargo] is found liable for violating the federal securities laws" in a separate lawsuit.  Compl. ¶

24  595.  Thus, the Opposition's argument that Wells Fargo has already incurred costs as a result of the

25  allegations made against it is irrelevant. *See* Opp. 67.  The Complaint does not seek contribution or

26  indemnification for costs already incurred, but rather, for those that might arise.

27      Moreover, the cases cited in the Opposition regarding the ripeness of contribution and

28  indemnification claims are inapposite.  In all three cases, the claims for contribution and

1  indemnification were dependent upon the result of the lawsuit in which they were brought.  *See*

2  *Hallam v. Gemini Ins. Co.*, 2015 WL 11237479, at *2 (S.D. Cal. Apr. 8, 2015); *NuCal Foods, Inc., v.*

3  *Quality Egg LLC*, 918 F. Supp. 2d 1037, 1041-42 (E.D. Cal. 2013); *Siebert v. Gene Sec. Network, Inc.*,

4  2013 WL 5645309, at *3 (N.D. Cal. Oct. 16, 2013).  But where, as here, a claim for contribution and

5  indemnification is dependent upon the result of an entirely separate lawsuit, it is not ripe until final

6  judgment is entered in that suit.  *See In re Brocade Comm'ns Sys., Inc. Deriv. Litig.*, 615 F. Supp. 2d

7  1018, 1048-49 (N.D. Cal. 2009).[5]  Moreover, because this suit is already farther along than the

8  securities lawsuit for which the Complaint seeks contribution, it would not serve judicial economy to

9  allow the contribution and indemnification cause of action to stand, awaiting the resolution of that

10  separate dispute.  Accordingly, this claim should be dismissed.

## CONCLUSION

12  For the foregoing reasons, and for the reasons discussed in the Motion, Carrie Tolstedt's partial

13  motion to dismiss should be granted and the claims against her discussed herein should be dismissed.

14  DATED:  July 26, 2017

16  Respectfully submitted,

18  _/s/ Jeffrey E. Faucette_____
19  JEFFREY E. FAUCETTE
   SKAGGS FAUCETTE LLP

20  WILLIAMS & CONNOLLY LLP
21  ENU MAINIGI (*pro hac vice*)
   LESLIE COOPER VIGEN (*pro hac vice*)

22  Attorneys for CARRIE TOLSTEDT

---

[5] Plaintiffs' attempt to distinguish *In re Brocade* falls flat.  They claim to seek contribution
26  only in the event a final judgment is entered against Wells Fargo, whereas the *In re Brocade* plaintiffs
   sought contribution from a settlement that had not yet been approved by the court.  But that is a
27  distinction without a difference: the determinative fact, that final judgment had not been reached in the
   separate litigation, is the same here.  *See In re Brocade*, 615 F. Supp. 2d at 1049 ("*As there is no final
28  judgment in that case*, the claim for contribution is not ripe.") (emphasis added).