Nanci L. Clarence (SBN 122286)
Josh A. Cohen (SBN 217853)
Adam F. Shearer (SBN 279073)
CLARENCE DYER & COHEN LLP
899 Ellis Street
San Francisco, CA 94109
Tel: (415) 749-1800
Fax: (415) 749-1694
nclarence@clarencedyer.com
jcohen@clarencedyer.com
ashearer@clarencedyer.com

Attorneys for Defendant
TIMOTHY J. SLOAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION | Lead Case No. 3:16-cv-05541-JST<br><br>**TIMOTHY J. SLOAN'S REPLY IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**<br><br>Date: August 24, 2017<br>Time: 2:00 p.m. |

**Introduction**

A sober analysis of the allegations against Mr. Sloan reveals that Plaintiffs have failed to plead facts sufficient to support an inference that Mr. Sloan consciously disregarded a duty to oversee, or that he made any statement with the intent to deceive or defraud.  Plaintiffs' claims for breach of fiduciary duty and § 10(b) liability accordingly fail.  Their claims for unjust enrichment, insider selling, and contribution are likewise deficient.  Mr. Sloan's motion should be granted.

**Argument**

**A.      Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty**

Plaintiffs' claim for breach of fiduciary duty rests on the allegation that he was part of senior management when alleged sales-practice issues occurred.  Plaintiffs contend that because Mr. Sloan was a member of the Operating Committee, he must have known of the various "red flags" that Plaintiffs, with the benefit of hindsight, have identified.

There are at least two fatal flaws in Plaintiffs' approach.  First, Operating Committee membership, absent more, does not suffice to support an inference of knowledge.  As Plaintiffs concede, the Operating Committee is a diverse group that includes the head of every line of business within the bank.  *See* Opp'n at 38-39.  Although Plaintiffs argue that the Operating Committee was "tasked with being informed of, and addressing, those issues," *id.* at 39, the Complaint makes no specific allegations regarding the Operating Committee's roles and responsibilities.  Nor do Plaintiffs allege, anywhere in the 596-paragraph Complaint, that any of the purported red flags was actually brought to the attention of the Operating Committee as a whole.

Plaintiffs' reliance on Stumpf's general statement in his Senate testimony that knowledge of sales-practice issues "got to the corporate level in 2013 because progress was not being made" does not salvage this cause of action.  *Id.* at 28.  The Complaint does not allege which executives at the "corporate level" were purportedly advised of the "issues," what advisement they were given, or when exactly they were given it.  Although Plaintiffs attempt to equate whatever

information "got to the corporate level" with the specific investigations, EthicsLine complaints, and suspicious activity reports that were allegedly disclosed to certain Board committees, *see* Opp'n at 28 (citing Compl. ¶ 258), any such equation is sheer speculation.  In short, based on the allegations actually contained in the Complaint, one cannot infer that Mr. Sloan was "at least as aware" as the Director Defendants.  Opp'n at 38.

The second fundamental flaw in the Complaint is that even if one were aware of these "purported red flags," his failure to heed them would not suffice to support an inference of conscious inaction.  *See In re Capital One Derivative S'holder Litig.*, 952 F. Supp. 2d 770, 788 (E.D. Va. 2013) (noting that even when there are particularized factual allegations plausibly showing multiple red flags, "there must also be allegations giving rise to a plausible inference that defendants acted in bad faith in failing to take action in light of these red flags").  It does not follow from the bare fact that sales-practice issues persisted that Mr. Sloan failed to take action, let alone that he did so in bad faith.  *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243 (Del. 2009) ("[T]here is a vast difference between an inadequate or flawed effort to carry out fiduciary duties and a conscious disregard for those duties.").  Absent well-pled allegations of bad faith, any inference in Plaintiffs' favor would be based on the "sheer possibility" that Mr. Sloan consciously failed to act.  *Iqbal*, 556 U.S. at 678.

As pled, plaintiffs' red-flag allegations amount to assertions that Mr. Sloan *must have* been aware of certain indicia of impropriety.  It is well established, however, that "must have" allegations are insufficient to plead knowledge in the absence of corroborating facts.  *See, e.g.*, *In re Cadence Design Sys., Inc. Secs. Litig.*, 654 F. Supp. 2d 1037, 1046 (N.D. Cal. 2009) ("Conclusory allegations that a defendant 'must have known' about particular wrongdoing are, standing alone, generally insufficient.") (citation omitted); *In re Atmel Corp. Deriv. Litig.*, No. C-06-4592 JF, 2008 WL 2561957, at *9 (N.D. Cal. June 25, 2008) (finding insufficient derivative plaintiffs' claim that officer participated in backdating scheme because, as a VP with "broad knowledge" of the company and as a recipient of backdated options, he "must have known of the scheme and permitted it to occur").  Accordingly, it is not sufficient to suggest, as

1    Plaintiffs do, that a letter addressed to the Board of Directors complaining about sales practices

2    in the Community Bank must have made its way to the head of Wholesale Banking.  It is not

3    enough to contend that Mr. Sloan must have been advised of the volume of terminations in the

4    Community Banking division (nor, contrary to Plaintiffs' suggestion, is he any more likely to

5    have known of those firings because he once extolled the loyalty of the Wells Fargo workforce in

6    general).  Plaintiffs cannot state a claim for conscious failure to act based on a *Los Angeles Times*

7    interview in 2013 – during with Mr. Sloan stated he was not aware of an "overbearing sales

8    culture" at Wells Fargo.  And, as Plaintiffs effectively concede, no reasonable inference can be

9    drawn that Mr. Sloan was aware of (let alone responsible for fixing) any issues the OCC may

10   have raised concerning the Community Bank when he was running Wholesale Banking between

11   May 2014 and November 2015.  *See* Opp'n at 40 n.26.

12          What remains of Plaintiffs' argument is the contention that Mr. Sloan knew or should

13   have known of OCC actions – and Community Banking issues in general – once he became

14   COO in November 2015.  Yet even if that were so, the Complaint's allegations concerning the

15   period after Mr. Sloan's promotion to COO suggest action rather than inaction, including

16   monthly meetings "throughout 2016" between the OCC and bank management to address the

17   bank's progress in implementing the corrective actions the OCC required.  Compl. ¶ 46g.

18          In reality, the only factual allegations unique to Mr. Sloan relate to statements he made

19   about cross-selling in general.  Plaintiffs acknowledge, as they must, that cross-selling is neither

20   illegal nor uncommon – then quote a politician for the proposition that "this isn't cross-selling;

21   this is fraud."  Opp'n at 41 (quoting Senator Toomey).  Yet this assertion assumes the grounds in

22   contention – and thereby underscores the absence of sufficient factual allegations from the

23   Complaint.

24          So, too, does Plaintiffs' argument that Mr. Sloan's stock sales prove his awareness of

25   cross-selling "fraud."  It is only by assuming the very thing that they have failed adequately to

26   plead – to wit, that Mr. Sloan was aware of the purported "fraud" – that Plaintiffs can allege any

27   impropriety in the timing of those sales.

28

In sum, the allegations in the Complaint do not support the inference that Mr. Sloan knew of the purported red flags.  Nor do the allegations plausibly suggest that any failure to act (if there was such a failure) was conscious or in bad faith. Absent factual allegations sufficient to support those inferences, a claim for breach of fiduciary duty cannot stand.  Counts One and Three should accordingly be dismissed.

**B.      Plaintiffs Lack Sufficient Allegations to Plead an Exchange Act Claim against Mr. Sloan**

As with the fiduciary duty claim, Plaintiffs' Opposition fails to identify allegations sufficient to state a claim against Mr. Sloan for a violation of the Exchange Act.  Plaintiffs' arguments regarding scienter are coextensive with their contentions above with respect to fiduciary duty – and fail for the same reasons.  *See* Opp'n at 36.

The flaws in the Complaint, however, are even more pronounced when measured against the PSLRA's exacting standards.  The statements Plaintiffs attribute to Mr. Sloan relate to the bank's cross-sell performance.  *See* Compl. ¶¶ 138, 329, 331, 335, 336, 345, 351, 367.  Plaintiffs fail not only to allege sufficient facts to support an inference that Mr. Sloan knew any such statements to be false, they fail to plead facts sufficient to show that any such statements *were* false.  Statements of the sort described in the Complaint – to the effect that cross-selling was a pillar of the bank's corporate strategy – neither misstated nor concealed the truth.

The § 10(b) claim fails also because of insufficient allegations regarding materiality.  *See Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir.2008) (a material misstatement is one that "would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists") (internal citation and quotation marks omitted). Plaintiffs contend that they are not required to plead materiality "at this stage" because they do not have access to discovery, Opp'n at 25, but the reality is more complex.  In the Ninth Circuit, "[a]lthough determining materiality in securities fraud cases should ordinarily be left to the trier of fact, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (citations and internal quotation marks omitted).  Indeed, it is common for courts to

1    dismiss securities claims at the pleading stage because of a failure to plead materiality. *See, e.g.*,

2    *Garber v. Legg Mason, Inc.*, 537 F.Supp.2d 597, 613 (S.D.N.Y.2008) (finding materiality

3    allegation "simply too conclusory" where plaintiffs alleged a "dramatic increase" in expenses but

4    failed to "describe in any the magnitude of the increase" and how it related to the status quo);

5    *Smith v. Circuit City Stores, Inc.*, 286 F. Supp.2d 707, 720–21 (E.D. Va. 2003) (omission of

6    increased costs totaling 3.25% of company's net annual earnings was immaterial as a matter of

7    law).

8         Plaintiffs further contend that the lack of materiality allegations is excused because

9    materiality "is not limited to a percentage of a company's total profits." Opp'n at 25 (internal

10   quotation marks omitted). This is true as far as it goes – and the Complaint leaves no doubt that

11   the metric of concern to Plaintiffs is Wells Fargo's reported cross-sell performance. The

12   problem is that Plaintiffs do not explain – in the Complaint or in their opposition to Mr. Sloan's

13   motion to dismiss – how or to what extent the alleged sales-practice issues affected that metric.

14   Plaintiffs' argument that statements regarding cross-selling are material because they

15   "conceal[ed] the unlawful account-creation scheme" is circular; it assumes that unauthorized

16   accounts materially affected the cross-sell figure without providing any factual basis from which

17   to infer this was so. Opp'n at 26.[1]

18        Finally, Plaintiffs attempt to justify the lack of materiality allegations on the grounds it is

19   "undisputed" that millions of unauthorized accounts were open. Opp'n at 21. Not so. In making

20   this claim, Plaintiffs assert that the CFPB's consent order concluded that 1,534,280 deposit

21   accounts and 565,443 credit card accounts were unauthorized. *Id.* (citing Compl. ¶ 321e, which

22   _____

23        [1] Plaintiffs' reliance on *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368 (S.D.N.Y. 2015) is
24   misplaced. The *Petrobras* court found that, while alleged asset-valuation errors may not have
     materially affected the company's overall financial statements, the errors were nonetheless
25   material because they disguised an underlying bribery scheme that *itself* was material in securing
     the company's oil-production assets. *Id.* at 380. Here, Plaintiffs not only fail to plead that the
26   opening of unauthorized accounts materially affected the bank's revenue, but also that the
27   unauthorized accounts materially affected *any* figure reported to investors.

28

cites CFPB Consent Order at 5, 7).  The order, however, merely stated that so many accounts *may* have been unauthorized, not that they actually *were*.  CFPB Consent Order at 5, 7.  And even if all those accounts were unauthorized – which, for reasons that should be equally "undisputed," they were not – Plaintiffs have still failed to plead materiality given the massive number of *authorized* accounts that were opened during the same period.

Accordingly, Plaintiffs have failed to state a claim against Mr. Sloan for a violation of § 10(b) or Rule 10b-5.  Because Plaintiffs' other Exchange Act claims rely on a violation of § 10(b), those claims likewise fail.  *See In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 711 (9th Cir. 2012) ("[T]o prevail on its claims for violations of § 20A, [a defendant] must first sufficiently allege a violation of § 10(b) or Rule 10b–5."); Compl. ¶¶ 569-578 (seeking rescission of contract based on alleged § 10(b) violation).  Count Five, Six, and Seven should therefore be dismissed.

### C.    Plaintiffs' Second Cause of Action for Unjust Enrichment Necessarily Fails

Because Plaintiffs' claim against Mr. Sloan for breach of fiduciary duty fails, their second claim for unjust enrichment—which is premised on that alleged breach—necessarily fails as well.  *See, e.g.*, *Taylor v. Kissner*, 893 F. Supp. 2d 659, 674 (D. Del. 2012) (dismissing unjust enrichment claim where plaintiff had "not properly alleged any breach of fiduciary duty or any other theory providing a factual basis to conclude that the compensation received by each Defendant was paid without justification").  Plaintiffs' unjust enrichment claim fails for the independent reason that Plaintiffs fail to allege why the receipt of compensation violated "fundamental principles of justice or equity and conscience" apart from the fact that they received it.  *See UFCW Local 1500 Pension Fund v. Mayer*, No. 16-CV-00478-RS, 2016 WL 6122458, at *12 (N.D. Cal. Oct. 19, 2016) (dismissing unjust enrichment claim—while at the same time upholding fiduciary duty claims—where plaintiff failed to explain why receipt of compensation alone violated "fundamental principles of justice or equity and conscience").  As Plaintiffs themselves concede, "the bare facts of executives' compensation cannot support a claim for unjust enrichment."  Opp'n at 58.  The Court should accordingly dismiss the Count Two.

**D.      California Corporations Code § 25402 Does Not Apply to This Derivative Action**

In defending their claim for insider selling under California Corporations Code § 25402, Plaintiffs conspicuously ignore Judge Karnow's ruling in the parallel state derivative action.  In that proceeding, Judge Karnow found that the relationships in question in the state shareholder derivative action are between Wells Fargo and its officers directors, and involve alleged actions or omissions by the defendants only in their capacity as officers or directors of Wells Fargo.  *See* Dkt. No. 139-1 at 101.  In this context, insider selling claims brought derivatively on behalf of Wells Fargo against its officers or directors fit squarely within the corporation's internal affairs. *See Vaughn v. LJ Int'l, Inc.*, 174 Cal. App. 4th 213, 225 (2009) (holding that the ability to file shareholder derivative suits "most definitely regulates the internal affairs of the corporation"); *see also* Dkt. No. 139-1 at 101, n.6 ("Derivative suits [] by definition involve internal affairs."). Because the relationship in question in this federal action is precisely the same as the relationship at issue in the state proceeding, this Court should also find that Delaware law—not California law—controls Mr. Sloan's liability to the corporation.[2]

To be clear, Mr. Sloan is not arguing that any claim brought against him involving his duties at Wells Fargo is subject to the internal affairs doctrine.  In cases brought by individuals or classes of plaintiffs, traditional choice of law analysis concerning the state's interest in protecting forum residents typically governs, and "[t]he internal affairs doctrine has no applicability."  *State Farm Mut. Auto. Ins. Co. v. Superior Court*, 114 Cal. App. 4th 434, 447 (2003*); see also Friese v. Superior Court*, 134 Cal. App. 4th 693, 701-03 (2006) (and cases cited therein).  But an analysis that focuses on the forum state's interest "is inapplicable to a derivative action, which is brought on behalf of the corporation rather than the individual citizens and shareholders of the

---

[2] In his motion, Mr. Sloan also argued that claim preclusion barred Plaintiffs' § 25402 claim.  Since he filed that motion, plaintiffs in the parallel state court proceeding filed a writ petition with the California Court of Appeals, challenging the dismissal of their § 25402 claim. Because that petition is still pending, Mr. Sloan withdraws his argument regarding claim preclusion.

1   forum state." *Vaughn*, 174 Cal. App. 4th at 229 (rejecting derivative plaintiffs' argument that the

2   court should use the "governmental interest analysis"—which "balanc[es] the interest of the

3   involved states and parties"—rather than the internal affairs doctrine); see also *In re Sagent*

4   *Tech. Inc. Derivative Litig.*, 278 F. Supp. 2d 1079, 1091 (N.D. Cal. 2003) (explaining that

5   while "California, like all states, has an interest in preserving a business climate free of fraud," it

6   does not follow that California's interests trumps Delaware's in "a derivative action seeking

7   recovery on behalf of a Delaware corporation, [] rather [than] a direct action seeking recovery on

8   behalf of a class of investors" in California).

9       Plaintiffs contend that *Friese*, "[w]ithout any qualification or limitation," allows § 25402

10  claims brought on behalf of a foreign corporation to proceed against its officers and directors.

11  Opp'n at 66.  This contention misreads *Friese*.  There, the trustee of the Peregrine Litigation

12  Trust (Robert C. Friese) brought claims, including a claim under § 25402, against the dissolved

13  company's former directors and officers on behalf of a class of former stockholders to whom the

14  company had assigned certain bankruptcy claims.  134 Cal. App. 4th at 698.  The issue before

15  the court in *Friese* was whether it was proper under the internal affairs doctrine to "limit[]

16  [California] securities laws to securities issued by domestic corporations."  *Id.* at 709.  In

17  answering no to that question, the court discussed several cases where California laws had been

18  applied to foreign corporations and their officers and directors – none of which involved a

19  derivative cause of action.  *Id.* at 701-03 (citing *Williams v. Gaylord*, 186 U.S. 157 (1902) (suit

20  between corporation's creditors); *Western Air Lines, Inc. v. Sobieski*, 191 Cal. App. 2d 399

21  (1961) (suit between the California Commissioner of Corporations and a foreign corporation);

22  *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036 (1999) (nationwide

23  California securities class action against corporation and its officers); *Clothesrigger, Inc. v.*

24  *G.T.E. Corp.*, 191 Cal. App. 3d 605 (1987) (nationwide class action alleging unfair business

25  practices against telephone companies)).

26      *Friese* also discussed *Sagent* as a case that had limited the application of California

27  securities laws.  Critically, however, *Friese* distinguished *Sagent* precisely "because of the

28

derivative nature of the claims asserted." *Id.* at 708 & n.6.  Based in large part on this distinction, *Friese* held that "*Sagent* is not persuasive authority for limitation of [California] securities laws to securities issued by domestic corporations." *Id.* at 709.  Contrary to Plaintiffs' suggestion, *Friese* did not consider, let alone decide, the question presented here, *viz.*, whether the internal affairs doctrine applies to derivative claims asserted against officers of a foreign corporation.

Plaintiffs' observation that the *Friese* court rejected the defendants' characterization of their § 25402 claim as a derivative cause of action *supports* Mr. Sloan's position.  *See* Opp'n at 66 n.49.  The claim at issue in *Friese* was asserted by the trustee on behalf of the Peregrine Litigation Trust, which existed for the sole benefit of individuals who purchased Peregrine stock during a defined class period.  Within this framework, the *Friese* court reasoned that the trustee's § 25402 claim serves the public interest "as opposed to any narrow shareholder interest" that would justify application of the internal affairs doctrine.  *Id.* at 710.  Because the claim did not serve the purposes of a derivative claim—*i.e.*, protecting the corporation and its shareholders—it could not be treated as one.  *Id.*

Here, by contrast, Plaintiffs are current Wells Fargo shareholders who purport to "bring this action derivatively on behalf and for the benefit of Wells Fargo."  Compl. ¶ 64; *see Vaughn*, 174 Cal. App. 4th at 229 ("[A derivative action] is brought on behalf of the corporation rather than the individual citizens and shareholders of the forum state."); see also Dkt. No. 139-1 at 101 (finding that the claim in *Friese* did not "protect the corporation or its shareholders").  Unlike the § 25402 claim in *Friese*, the claim asserted here is plainly derivative in nature – and hence controlled by the doctrine of internal affairs.

This Court should accordingly grant Mr. Sloan's motion to dismiss Claim Eight, without leave to amend, for failure to state a claim.

### E.      The Contribution and Indemnification Claim Is Unripe

Plaintiffs' Eleventh Claim seeks contribution and indemnification from Mr. Sloan for a hypothetical finding of liability against the company in the putative shareholder class action.

1   This claim, however, is unripe because no such finding has been made in that separate action.

2   Plaintiffs incorrectly contend that other courts within this Circuit have held that a contribution

3   claim is "properly brought, despite the fact that they are contingent upon final judgment being

4   rendered in a related action."  Opp'n at 67 (citing *Seibert v. Gene Sec. Network, Inc.*, No. 11-cv-

5   01987-JST, 2013 WL 5645309, at *3 (N.D. Cal. Oct. 16, 2013)).  Neither *Seibert*, nor any of

6   cases it cites, involves "a related action"; rather, they involve cross-claims and third-party

7   complaints brought in the *same* action.  *See Seibert*, 2013 WL 5645309, at *3 (citing cases).

8   Accordingly, until liability is found (or a settlement is approved) and final judgment is entered in

9   the separate case, Plaintiffs' contribution claim has not accrued.  *See* 15 U.S.C. § 78u-4(f)(9)

10  ("an action for contribution shall be brought not later than 6 months after the entry of a final,

11  nonappealable judgment in the action"), 15 U.S.C. § 78u-4(f)(8) (providing that a contribution

12  claim may only be brought by a party that "becomes jointly and severally liable for damages");

13  *see Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 295 (9th Cir. 1996) (holding that a

14  contribution accrues when a judgment is entered against the direct defendants); *see also In re*

15  *Brocade Communications Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1049 (N.D. Cal.

16  2009) (dismissing contribution claim as unripe because there was no final judgment in the

17  securities class action).

18  <u>**Conclusion**</u>

19      For the reasons stated above, the Court should dismiss Counts One, Two, Three, Five,

20  Six, Seven, Eight, and Eleven against Mr. Sloan.

21                                  Respectfully submitted,

22  DATED: July 26, 2017            CLARENCE DYER & COHEN LLP

23                                  By ___/s/_____

24                                      NANCI L. CLARENCE
                                        JOSH A. COHEN

25                                      ADAM F. SHEARER
                                        *Attorneys for Defendant Timothy J. Sloan*

26

27

28