Richard M. Heimann (063607)
*rheimann@lchb.com*
Katherine C. Lubin (259826)
*kbenson@lchb.com*
Mike Sheen (288284)
*msheen@lchb.com*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

*Attorneys for Co-Lead Plaintiff Fire & Police Pension*
*Association of Colorado and Co-Lead Counsel*

Maya Saxena (Pro hac vice)
*msaxena@saxenawhite.com*
Joseph E. White, III (Pro hac vice)
*jwhite@saxenawhite.com*
Lester R. Hooker (241590)
*lhooker@saxenawhite.com*
SAXENA WHITE P.A.
150 East Palmetto Park Road, Suite 600
Boca Raton, FL 33432
Telephone: (561) 394-3399
Facsimile: (561) 394-3382

[Additional Counsel on Signature Page]

*Attorneys for Co-Lead Plaintiff The City of Birmingham*
*Retirement and Relief System and Co-Lead Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION | Lead Case No. 3:16-cv-05541-JST |
| This Document Relates to: ALL ACTIONS. | **STIPULATION AND AGREEMENT OF COMPROMISE, SETTLEMENT AND RELEASE** |
| | The Honorable Jon S. Tigar |

## I.     **INTRODUCTION**

This Stipulation and Agreement of Compromise, Settlement and Release (the "Stipulation" or the "Settlement") is made and entered into by and among the following Parties (as defined, *infra*), and by and through their respective counsel: (i) Co-Lead Plaintiffs Fire & Police Pension Association of Colorado and The City of Birmingham Retirement and Relief System ("Co-Lead Plaintiffs") (on behalf of themselves and derivatively on behalf of Wells Fargo & Company ("Wells Fargo" or "the Company" or the "Bank")); (ii) John G. Stumpf, Timothy J. Sloan, Carrie L. Tolstedt, John R. Shrewsberry, and Michael J. Loughlin (the "Officer Defendants"); (iii) John D. Baker II, Elaine L. Chao, John S. Chen, Lloyd H. Dean, Elizabeth A. Duke, Susan E. Engel, Enrique Hernandez, Jr., Donald M. James, Cynthia H. Milligan, Federico F. Peña, James H. Quigley, Judith M. Runstad, Stephen W. Sanger, Susan G. Swenson, and Suzanne M. Vautrinot (the "Director Defendants"); and (iv) Nominal Defendant Wells Fargo (together with the Individual Defendants (defined *infra*), the "Defendants," and together with Co-Lead Plaintiffs, the "Parties").  This Stipulation is intended by the Parties to fully, finally and forever resolve, discharge and settle the Released Claims (as defined, *infra*) upon Court approval and subject to the terms and conditions hereof.

## II.     **THE DERIVATIVE ACTION**

### A.     **Commencement of the Derivative Action**

Beginning on September 29, 2016, separate Wells Fargo shareholders filed a series of putative shareholder derivative lawsuits in the United States District Court for the Northern District of California (the "Court"), alleging, among other things, that employees in the Company's Community Bank opened accounts without customer knowledge or authorization, and that the Officer and Director Defendants breached their fiduciary duties to Wells Fargo in connection with these and other alleged improprieties.

On December 12, 2016, the Court ordered the consolidation of the following putative derivative actions as *In re Wells Fargo & Co. Shareholder Derivative Litigation*, No. 3:16-cv-05541-JST (N.D. Cal.) (the "Derivative Action"): *Shaev v. Baker*, No. 3:16-cv-05541-JST, *Cook v. Loughlin*, No. 3:16-cv-05592-JST, *Sherman v. Stumpf*, No. 3:16-cv-05745-JST, *Elson, IRA v.*

1  *Stumpf*, No. 3:16-cv-05817-JST, *The City of Birmingham Ret. & Relief Sys. v. Baker*, No. 3:16-

2  cv-05915-JST, *LeBendig v. Wells Fargo & Co.*, 3:16-cv-06262-JST, *Hannon v. Loughlin*, 3:16-

3  cv-06624-MEJ, and *Fire and Police Pension Ass'n of Colorado v. Stumpf*, No. 3:16-cv-06631-

4  JST.  Dkt. No. 39.[1]

5          On January 12, 2017, following a hearing on the appointment of co-lead plaintiffs and co-

6  lead counsel (Dkt. No. 69), the Court issued an Order: (a) consolidating *Public School Teachers'*

7  *Pension and Ret. Fund of Chicago v. Stumpf*, Case No. 16-cv-7089-JST, into the Derivative

8  Action; (b) appointing the Fire & Police Pension Association of Colorado and the City of

9  Birmingham Retirement and Relief System as Co-Lead Plaintiffs; and (c) appointing Lieff

10  Cabraser Heimann & Bernstein, LLP and Saxena White P.A. as Co-Lead Counsel.  Dkt. No. 70.

11          On February 24, 2017, Co-Lead Plaintiffs filed a consolidated amended verified

12  shareholder derivative complaint (the "Complaint") in the Derivative Action naming as

13  defendants the Officer and Director Defendants, and alleging generally, on behalf of Wells Fargo,

14  claims against the Officer and Director Defendants for breaches of fiduciary duty, unjust

15  enrichment, breach of fiduciary duty for insider selling and misappropriation of information,

16  violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC

17  Rule 14a-9, Section 10(b) of the Exchange Act and SEC Rule 10b-5 (the "Section 10(b) Claim"),

18  Section 20A of the Exchange Act, Section 29(b) of the Exchange Act, Section 25402 of the

19  California Corporations Code, Section 25403 of the California Corporations Code, corporate

20  waste, and contribution and indemnification.  Dkt. No. 83.  As specified in the Complaint, some

21  claims were asserted against all the Officer and Director Defendants and some were asserted

22  against a subset.

23          On May 2, 2018, the Court consolidated an additional action, *Hannon v. Loughlin*, No.

24  3:17-cv-07236-JST (N.D. Cal.), into the Derivative Action.  Dkt. No. 219.  In addition to claims

25  against the Officer and Director Defendants, the plaintiff in this action alleges that third-party

26  defendant American Express Company ("American Express") aided and abetted the Officer and

27  Director Defendants' alleged breaches of fiduciary duties.

28

---

[1] The abbreviation "Dkt." refers to docket entries of the Derivative Action.

STIPULATION AND AGREEMENT OF COMPROMISE,
SETTLEMENT AND RELEASE
LEAD CASE NO: 3:16-CV-05541-JST

### B.   The Motions to Dismiss the Complaint

On March 17, 2017, Wells Fargo moved to dismiss the Complaint for failure to plead demand futility pursuant to Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure. Dkt. No. 99.  On May 4, 2017, following a hearing on Wells Fargo's motion to dismiss, the Court granted in part and denied in part Wells Fargo's motion, holding that pre-litigation demand on the Wells Fargo Board of Directors was excused and permitting Co-Lead Plaintiffs to pursue the surviving claims asserted in the Derivative Action on the Bank's behalf.  Dkt. No. 129.

On June 5, 2017, the Officer and Director Defendants filed a number of motions to dismiss the Complaint for failure to state a claim.  *See* Dkt. Nos. 139 (Sloan), 140 (Tolstedt), 141 (Loughlin), 143 (Shrewsberry), 144 (Director Defendants), 145 (Stumpf via joinder to other Officer and Director Defendants' motions to dismiss).  On July 5, 2017, Co-Lead Plaintiffs filed an omnibus opposition to the motions to dismiss.  Dkt. No. 151.  On October 4, 2017, the Court denied in large part Defendants' motions to dismiss.  Dkt. No. 174.  The Court dismissed, without prejudice, the Section 10(b) Claim against Defendant Loughlin and the claims against Defendants Sloan, Tolstedt, and Shrewsberry for indemnification and contribution.  The Court dismissed, with prejudice, Co-Lead Plaintiffs' Section 25402 California Corporations Code claim against Sloan, Tolstedt, Loughlin, and Stumpf.  The Court sustained all other claims.

### C.   Additional State Derivative Actions Relating to Improper Sales Practices

In addition to the Derivative Action, the following putative shareholder derivative litigations purportedly on behalf of Wells Fargo and against some or all of the Individual Defendants, alleging the same or a similar course of conduct related to Improper Sales Practices, defined *infra*, were filed in state court.

#### 1.   The California State Derivative Action

A putative derivative complaint, *Vladimir Gusinsky Revocable Trust v. Tolstedt*, No. CGC 16-554407 (S.F. Super.), was filed on September 21, 2016 in California Superior Court against certain of the Director and Officer Defendants and Wells Fargo, as nominal defendant, alleging breach of fiduciary duty and various other claims related to Improper Sales Practices (defined *infra*).  On November 22, 2016, the San Francisco Superior Court consolidated this action with

1    seven others (case numbers CGC 16-554444, CGC 16-554624, CGC 16-554715, CGC 16-

2    554756, CGC 16-554765, CGC 16-554899, and CGC 16-554983) under the caption *In re Wells*

3    *Fargo & Co. Derivative Litigation*, No. CGC 16-554407 (S.F. Super.) (the "California State

4    Derivative Action").  The consolidated complaint in the California State Derivative Action did

5    not survive a demurrer, and an amended consolidated complaint was filed on July 10, 2017.  The

6    California State Derivative Action has been stayed since May 14, 2018 pending resolution of the

7    Derivative Action.

**2.      The *Gordon* Actions**

9         On September 29, 2016, Natalie Gordon filed a putative derivative complaint, *Gordon v.*

10   *Baker*, No. CGC 16-554578 (S.F. Super.), in California Superior Court alleging breach of

11   fiduciary duty and various other claims related to Improper Sales Practices against certain of the

12   Individual Defendants, and Wells Fargo, as nominal defendant.  This action was voluntarily

13   dismissed without prejudice on or about February 10, 2017.

14        On November 7, 2016, Natalie Gordon filed a second putative derivative complaint,

15   *Gordon v. Baker*, C.A. No. 12877-VCG (Del. Ch.), in Delaware Chancery Court, again alleging

16   breach of fiduciary duty and various other claims related to Improper Sales Practices (as defined

17   *infra*), against certain of the Individual Defendants and Wells Fargo, as nominal defendant.  This

18   action was voluntarily dismissed without prejudice on or about July 10, 2017.

**3.      *Massachusetts Laborers* Action**

20        On May 17, 2017, in *Mass. Laborers' Pension Fund v. Wells Fargo & Co.*, C.A. No.

21   12997-VCG (Del. Ch.) (the "*Massachusetts Laborers* Action"), certain shareholders brought suit

22   in the Delaware Court of Chancery against certain of the Individual Defendants and Wells Fargo

23   to compel the production of documents in connection with allegations related to Improper Sales

24   Practices (as defined *infra*).  The parties in the *Massachusetts Laborers* Action subsequently

25   agreed to stay the action, though certain plaintiffs in that action subsequently filed the

26   *Connecticut Laborers* Action discussed below.

**4.      *Rosenfeld* Action**

28        On May 18, 2017, Barry Rosenfeld filed a putative derivative complaint in Delaware

1    Chancery Court, captioned *Rosenfeld v. Stumpf*, C.A. No. 2017-0383 (Del. Ch.) (the "*Rosenfeld*

2    Action"), against the Director and Officer Defendants and Wells Fargo, as nominal defendant,

3    alleging breach of fiduciary duty, waste of corporate assets, insider trading, contribution and

4    indemnification, unjust enrichment, and aiding and abetting related to Improper Sales Practices

5    (as defined *infra*).  On January 12, 2018, Co-Lead Plaintiffs filed a motion to stay the *Rosenfeld*

6    Action.  On May 11, 2018, the *Rosenfeld* Action was dismissed with prejudice as to plaintiff

7    Rosenfeld only.

8              **5.      *Connecticut Laborers* Action**

9              On May 22, 2017, Connecticut Laborers Pension and Annuity Funds ("Connecticut

10   Laborers") filed a putative derivative complaint in Delaware Chancery Court, captioned

11   *Connecticut Laborers Pension & Annuity Funds v. Stumpf*, C.A. No. 2017-0380-SG (Del. Ch.)

12   (the "*Connecticut Laborers* Action"), against the Director Defendants, certain of the Officer

13   Defendants, and Richard D. McCormick, Mackey J. McDonald, Nicholas G. Moore, Philip J.

14   Quigley, and Howard V. Richardson (collectively, including the Director and Officer Defendants,

15   the "Individual Defendants"), and Wells Fargo, as nominal defendant, alleging breach of

16   fiduciary duty related to Improper Sales Practices.  Connecticut Laborers filed an amended

17   complaint on December 18, 2017.

18             In addition to claims alleging Improper Sales Practices (as defined *infra*), the amended

19   complaint in the *Connecticut Laborers* Action alleges that certain Individual Defendants violated

20   their duties to the Company concerning the provision of collateral protection insurance,

21   overcharging auto loan customers for Guaranteed Asset Protection insurance, charging customers

22   related to mortgage interest rates and so-called "rate-locks," violations of the Servicemembers

23   Civil Relief Act, 50 U.S.C. App. § 3901 *et seq.*, and the fees charged to customers by the

24   Company's foreign exchange unit (collectively, these allegations are the "CPI Allegations" and

25   are explicitly not incorporated within the definition of Improper Sales Practices, *infra*).

26             On April 6, 2018, Co-Lead Plaintiffs moved to intervene in and stay the *Connecticut*

27   *Laborers* Action, and Connecticut Laborers moved to stay their own case.  On April 26, 2018, the

28   defendants in the *Connecticut Laborers* Action opposed the motion to stay filed by Co-Lead

1    Plaintiffs and Connecticut Laborers.  On June 12, 2018 the Delaware Chancery Court stayed the

2    *Connecticut Laborers* Action in its entirety pending resolution of the Derivative Action.

3                      **6.    *Herron* Action**

4          On January 30, 2018, Plaintiff Joan Herron filed a putative shareholder derivative

5    complaint in San Mateo Superior Court, captioned *Herron v. Stumpf*, 18-civ-00466 (San Mateo

6    Super.) (the "*Herron* Action"), against the Individual Defendants and Wells Fargo, as nominal

7    defendant, alleging breach of fiduciary duty, violation of Section 25402 of the California

8    Corporations Code, and breach of the duty of loyalty related to Improper Sales Practices (as

9    defined *infra*).  The *Herron* Action was coordinated with the California State Derivative Action

10   under case number CJC-18-004966 (S.F. Super) and on July 11, 2018, the San Francisco Superior

11   Court stayed the *Herron* Action in its entirety pending resolution of the Derivative Action.

12                 **D.    Discovery and Pre-Trial Proceedings**

13         In the Derivative Action, Co-Lead Plaintiffs have sought and obtained extensive

14   document discovery from the Officer and Director Defendants, Wells Fargo and third parties.

15   The parties agreed to and operated under an expedited case schedule providing for substantial

16   completion of document production by September 14, 2018, less than nine months from January

17   2018 when the schedule was set.  Dkt. No. 199.

18         On November 3, 2017, Co-Lead Plaintiffs served Wells Fargo with their first set of

19   document requests (the "First Wells Fargo RFPs").  The First Wells Fargo RFPs contained 63

20   requests for production.  On December 15, 2017, Wells Fargo served Co-Lead Plaintiffs with its

21   responses and objections to the First Wells Fargo RFPs.  Shortly after Wells Fargo's response and

22   objections to the First Wells Fargo RFPs, Wells Fargo and Co-Lead Plaintiffs commenced the

23   discovery meet-and-confer process.  On March 12, 2018, Co-Lead Plaintiff served Wells Fargo

24   with their second set of document requests (the "Second Wells Fargo RFPs").  On April 11, 2018,

25   Wells Fargo served Co-Lead Plaintiffs with its responses and objections to the Second Wells

26   Fargo RFPs.  Following the meet-and-confer process between Co-Lead Plaintiffs and Wells

27   Fargo, commencing on March 7, 2018, Wells Fargo made 14 productions before the October 17,

28   2018 Case Management Conference.  These documents came from numerous custodians,

1   including all Defendants, spanning the relevant time period.

2         On May 9, 2018, Co-Lead Plaintiffs served the Director Defendants with document

3   requests (the "Director Defendant RFPs").  The Director Defendant RFPs consisted of 68 requests

4   for production.  On June 8, 2018, the Director Defendants served Co-Lead Plaintiffs with their

5   responses and objections.  Following the meet-and-confer process between Co-Lead Plaintiffs

6   and the Director Defendants, the Director Defendants made four productions in addition to

7   documents relating to the Director Defendants that, by agreement, Wells Fargo produced.

8         On May 9, 2018, Co-Lead Plaintiffs served the Officer Defendants with document

9   requests (the "Officer Defendant RFPs").  The Officer Defendant RFPs consisted of 68 requests

10   for production.  On June 8, 2018, each Officer Defendant served Co-Lead Plaintiffs with his or

11   her responses and objections.  Following the meet-and-confer process between Co-Lead Plaintiffs

12   and the Officer Defendants, the Officer Defendants made one production in addition to

13   documents of theirs that, by agreement, Wells Fargo produced.

14         Co-Lead Plaintiffs served subpoenas to seven non-parties who collectively produced

15   4,458 pages.

16         On October 9, 2018, following the deadline for substantial completion of document

17   discovery, the parties submitted a joint case management statement, Dkt. No. 255, and appeared

18   before the Court on October 17, 2018.  Dkt. No. 260.  After a further meet and confer, Wells

19   Fargo agreed to produce to Co-Lead Plaintiffs an additional set of responsive documents totaling

20   over 520,000 documents, comprising over 2.5 million pages which Wells Fargo completed in four

21   subsequent November 2018 document productions.

22         Following the October 17, 2018 Case Management Conference, Co-Lead Plaintiffs and

23   the Director Defendants exchanged letters and held a meet and confer teleconference on

24   November 1, 2018.  The Director Defendants made additional productions of documents on

25   November 12 and December 3, 2018.

26         As of December 12, 2018, Co-Lead Counsel reviewed over 1.1 million pages of

27   documents produced in the Derivative Action, as well as tens of thousands of pages of documents

28   from other civil and regulatory proceedings, public reports, press coverage, and Congressional

STIPULATION AND AGREEMENT OF COMPROMISE,
SETTLEMENT AND RELEASE
LEAD CASE NO: 3:16-CV-05541-JST

1   testimony related to Improper Sales Practices.  On December 12, 2018, review of the documents

2   produced in the Derivative Action and further discovery work ceased altogether.

3       **E.      Mediation**

4       In a total of seven in-person mediation sessions that commenced in August 2017 and took

5   place in San Francisco and New York City, the Parties and the Insurers (defined *infra*) engaged in

6   arm's-length discussions and negotiations regarding a potential resolution of the Derivative

7   Action.  At the end of the last full-day mediation session on December 4, 2018, these mediation

8   efforts culminated in a Mediators' proposal from Judge Daniel Weinstein (Ret.) and Mr. Jed

9   Melnick, Esq. (collectively, "the Mediators") which the Parties and the Insurers accepted, that

10  would resolve the Derivative Action, each of the actions referenced in Section II.C above, and the

11  CPI Derivative Actions (defined *infra*).

12      **F.      Settlement**

13      On December 12, 2018, the Parties accepted the Mediators' proposal consisting of (i) a

14  monetary payment of $240 million to be paid by the Insurers to Wells Fargo;

15  (ii) acknowledgement from Wells Fargo that facts alleged in the Derivative Action were a

16  significant factor in causing certain corporate governance changes undertaken by Wells Fargo

17  during the pendency of the Derivative Action (the "Corporate Governance Reforms") (*see* Ex. A);

18  and (iii) acknowledgement from Wells Fargo that facts alleged in the Derivative Action were a

19  significant factor in causing certain remedial steps with respect to compensation reductions and

20  forfeitures undertaken by Wells Fargo during the pendency of the Derivative Action (the

21  "Clawbacks") (*see* Ex. B).  The Parties agreed as part of the Mediators' proposal that the

22  Corporate Governance Reforms and the Clawbacks set forth in Exhibits A and B have a

23  combined value to Wells Fargo of $80 million, for a total settlement value to Wells Fargo of $320

24  million, not including the Co-Lead Plaintiffs' counsel's fee award.  The Mediators' proposal, in

25  response to the Insurers' insistence that the CPI Derivative Actions be resolved at the same time,

26  also required the contemporaneous (but unconnected) resolution of the CPI Derivative Actions.

27      On January 16, 2019, the parties submitted a joint case management statement and notice

28  of settlement informing the Court that they had "recently reached an agreement in principle to

1   settle this action" and set forth a briefing schedule for Preliminary Approval.  Dkt. No. 266.  On

2   January 21, 2019, the Court issued an Order re Notice of Settlement and Scheduling Order that

3   adopted the parties' briefing schedule and set a Preliminary Approval Hearing on March 21,

4   2019, and vacated all previous deadlines in the case.  Dkt. No. 267.  On February 13, 2019, the

5   Court entered a stipulation modifying the parties' briefing schedule and set a Preliminary

6   Approval Hearing on April 4, 2019.  Dkt. No. 269.

7   **III.    CLAIMS OF CO-LEAD PLAINTIFFS AND BENEFITS OF SETTLEMENT**

8           Co-Lead Plaintiffs have thoroughly reviewed and analyzed the facts and circumstances

9   relating to the claims asserted in the Derivative Action, including conducting arm's length

10  discussions with counsel to the Individual Defendants and Wells Fargo, reviewing publicly

11  available information, analyzing the extensive discovery record, reviewing applicable case law

12  and other authorities and consulting with retained experts.  Co-Lead Plaintiffs brought their

13  claims in good faith and continue to believe that their claims have legal merit.  However, Co-

14  Lead Plaintiffs recognize that there are legal and factual defenses to the claims asserted in the

15  Derivative Action, which present substantial risks to the successful resolution of any litigation,

16  especially in complex shareholder derivative litigation such as the Derivative Action.

17  Accordingly, in light of these risks and based on their evaluation of the claims and their

18  substantial experience, Co-Lead Plaintiffs and Co-Lead Counsel have determined that the

19  Settlement, which confers substantial benefits upon Wells Fargo and its shareholders, is fair,

20  reasonable and adequate, and in the best interests of the Bank and its shareholders.

21  **IV.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY**

22          The Defendants have denied and continue to deny each and every one of the claims and

23  contentions alleged by the Co-Lead Plaintiffs in the Derivative Action and in all of the actions

24  referenced in Section II.C above.  The Defendants expressly have denied and continue to deny all

25  allegations of wrongdoing or liability against them or any of them arising out of, based upon or

26  related to any of the conduct, statements, acts or omissions alleged, or that could have been

27  alleged, in the Derivative Action or in any of the actions referenced in Section II.C above, and

28  contend that many of the factual allegations in the Derivative Action and the actions referenced in

STIPULATION AND AGREEMENT OF COMPROMISE,
SETTLEMENT AND RELEASE
LEAD CASE NO: 3:16-CV-05541-JST

1    Section II.C above are untrue and materially inaccurate.  The Defendants have further asserted

2    and continue to assert that, at all relevant times, they acted in good faith and in a manner they

3    reasonably believed to be in the best interests of Wells Fargo and its shareholders.

4          Nonetheless, the Defendants also have taken into account the expense, uncertainty and

5    risks inherent in any litigation, especially in complex cases like the Derivative Action.  Therefore,

6    the Defendants have determined that it is desirable and beneficial that the Derivative Action, each

7    of the actions referenced in Section II.C above, and all of the Parties' disputes related thereto, be

8    fully and finally settled in the manner and upon the terms and conditions set forth in this

9    Stipulation.  Pursuant to the terms set forth below, this Stipulation (including all of the Exhibits

10   hereto) shall in no event be construed as or deemed to be evidence of an admission or concession

11   by the Defendants with respect to any claim of fault, liability, wrongdoing, or damage

12   whatsoever.

13   **V.      TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT**

14          **NOW THEREFORE, IT IS STIPULATED AND AGREED,** subject to approval by the

15   Court pursuant to Federal Rule of Civil Procedure 23.1, by and among Co-Lead Plaintiffs (for

16   themselves and derivatively on behalf of Wells Fargo), by and through their attorneys of record,

17   the Individual Defendants, by and through their respective attorneys of record, and Wells Fargo,

18   by and through its attorneys of record, that in exchange for the consideration set forth below, the

19   Released Claims (as defined below) shall be and hereby are fully, finally and forever

20   compromised, settled, released and discontinued, and that the Derivative Action shall be

21   dismissed with prejudice as to the Defendants, upon and subject to the terms and conditions of

22   this Stipulation, as follows.

23        **A.      DEFINITIONS**

24          In addition to the terms defined herein, as used in this Stipulation and any Exhibits

25   attached hereto and made a part hereof, the following terms shall have the following meanings:

26          1.      "Clawbacks" means the stock grant forfeitures, reduced compensation, and return

27   of incentive compensation detailed in Exhibit B.

28

2.     "Court" means the United States District Court for the Northern District of California.

3.     "Co-Lead Counsel" means Lieff Cabraser Heimann & Bernstein, LLP and Saxena White P.A.

4.     "Co-Lead Plaintiffs" means Fire & Police Pension Association of Colorado and The City of Birmingham Retirement and Relief System.

5.     "Corporate Governance Reforms" means the corporate actions undertaken by Wells Fargo to address Improper Sales Practices including, but not limited to, amending certain corporate charters and bylaws, increasing oversight and monitoring of business units, leadership changes, the creation of positions, and the increased reporting from business units detailed in Exhibit A.

6.     "CPI Derivative Actions" means *In re Wells Fargo & Co Auto Ins. Derivative Litig.*, No. CGC 17-561118 (S.F. Super.), *Feuer v. Baker*, No. 3:18-cv-02866-JST (N.D. Cal.); *Himstreet v. Sloan*, No. 3:18-cv-02922-JST (N.D. Cal.); and the CPI Allegations in the *Connecticut Laborers* Action.

7.     "Defendants" means the Individual Defendants and Wells Fargo.

8.     "Derivative Action" means the consolidated federal derivative action captioned *In re Wells Fargo & Co. S'holder Derivative Litig.*, No: 3:16-cv-05541-JST (N.D. Cal.).

9.     "Director Defendants" means John D. Baker II, Elaine L. Chao, John S. Chen, Lloyd H. Dean, Elizabeth A. Duke, Susan E. Engel, Enrique Hernandez, Jr., Donald M. James, Cynthia H. Milligan, Federico F. Peña, James H. Quigley, Judith M. Runstad, Stephen W. Sanger, Susan G. Swenson, and Suzanne M. Vautrinot, collectively.

10.     "Effective Date" means the first date by which all of the events and conditions specified in Paragraph 41 of this Stipulation have been met and have occurred.

11.     "Final Date" means the date, following the Court's Final Judgment and Order of Dismissal, on which the Final Judgment and Order of Dismissal is final and no longer subject to appeal or further review, whether as a result of affirmance on or exhaustion of any possible appeal or review, lapse of time or otherwise, provided, however, and notwithstanding any

1   provision to the contrary in this Settlement, the Final Date shall not include, and the Settlement is

2   expressly not conditioned upon, the approval of an application for attorneys' fees and the

3   reimbursement of expenses to Co-Lead Counsel and/or for Reimbursement Awards as

4   contemplated in Paragraphs 44 and 45 below or any appeal or further review related thereto.

5        12.    "Final Judgment and Order of Dismissal" means an order entered by the Court,

6   substantially in the form attached hereto as Exhibit F, finally approving the Settlement, Fee

7   Application, and Reimbursement Awards and dismissing the Derivative Action with prejudice on

8   the merits and without costs to any party (except as provided in Paragraph 36 below).

9        13.    "Improper Sales Practices" means the alleged opening of accounts without

10   customer knowledge or authorization at Wells Fargo as well as any other related fraudulent,

11   improper, or unethical acts or practices alleged in the Complaint in the Derivative Action or

12   alleged in any of the complaints or amendments thereto in any of the actions listed above in

13   Section II.C.  The term Improper Sales Practices does not include the CPI Allegations, defined

14   *supra*.

15        14.    "Individual Defendants" means, collectively, the Director Defendants, the Officer

16   Defendants, and Richard D. McCormick, Mackey J. McDonald, Nicholas G. Moore, Philip J.

17   Quigley and Howard V. Richardson.

18        15.     "Insurance Agreement" means the agreement, by and among (i) Wells Fargo, (ii)

19   certain current and former officers and directors of Wells Fargo, and (iii) the Insurers, confirming

20   the Insurers' agreement to pay the Monetary Consideration and those officers' and directors'

21   releases of certain insurance claims.

22        16.    "Insurers" means those certain insurance companies, who are parties to the

23   Insurance Agreement, who issued certain directors and officers liability ("D&O") insurance for

24   the benefit of certain current and former officers and directors of Wells Fargo (the "D&O

25   Policies").

26        17.    "Monetary Consideration" means the monetary payment of $240 million to be paid

27   by the Insurers to Wells Fargo as settlement monies in connection with the Settlement

28   contemplated by this Stipulation.

18.     "Notice" means the Notice of Settlement of Shareholder Derivative Litigation and Hearing, substantially in the form attached hereto as Exhibit D.

19.     "Notice Costs" means the costs and expenses incurred in providing notice of the Settlement to Wells Fargo shareholders.

20.     "Officer Defendants" means John G. Stumpf, Timothy J. Sloan, Carrie L. Tolstedt, John R. Shrewsberry, and Michael J. Loughlin, collectively.

21.     "Person" means any individual, corporation, professional corporation, limited-liability company, partnership, limited partnership, limited-liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives or assignees.

22.     "Plaintiffs' Counsel" means Co-Lead Counsel; Glancy Prongay & Murray LLP; Robbins Arroyo LLP; Prickett, Jones & Elliott, P.A. (as Delaware Counsel for Co-Lead Plaintiffs as Interveners in the *Rosenfeld* Action and *Connecticut Laborers* Action); plaintiff's counsel in the *Rosenfeld* Action: Faruqi & Faruqi, LLP and Weiss Law LLP; plaintiffs' counsel in the *Massachusetts Laborers* Action: Andrews & Springer LLC, Berger & Montague PC, and Berman Tabacco; and plaintiffs' counsel in the *Connecticut Laborers* Action: Rosenthal Monhait & Goddess, P.A., Hach Rose Schirripa & Cheverie LLP, Friedman Oster & Tetjel PLLC, Guttman Buschner & Brooks PLLC, Safirstein Metcalf LLP, Pomerantz LLP, and Hung G. Ta, Esq. PLLC.

23.     "Preliminary Approval Order" means an order entered by the Court, substantially in the form attached hereto as Exhibit C, setting forth the date for a Settlement Hearing on the proposed Settlement, directing notice thereof and preliminarily determining, for purposes of the Settlement only, that the Derivative Action is properly maintained as a shareholder derivative action on behalf of Wells Fargo.

24.     "Reimbursement Awards" means the requested awards to Co-Lead Plaintiffs not to exceed $25,000 for each Co-Lead Plaintiff reimbursing them for their time and costs relating to the prosecution of the Derivative Action, to be paid from Co-Lead Counsel's attorneys' fees.

25.    "Related Parties" means (i) as to Wells Fargo, Wells Fargo's past or present directors and officers, employees, agents, attorneys, personal or legal representatives, consultants, experts, predecessors, successors, parents, subsidiaries, affiliates, divisions, joint ventures, assigns, general or limited partners or partnerships, limited liability companies, any entity in which Wells Fargo has a controlling interest, and all past or present officers, directors and employees of Wells Fargo's current and former subsidiaries and affiliates, the foregoing to include any Person insured under the D&O Policies, and (ii) as to the Individual Defendants (1) each spouse, immediate family member, heir, executor, estate, administrator, agent, attorney, accountant, auditor, bank, insurer (including the Insurers), co-insurer, re-insurer, advisor, consultant, expert, or affiliate of any of them, (2) any trust in respect of which any Individual Defendant, or any spouse or family member thereof serves as a settlor, beneficiary or trustee, and (3) any entity in which an Individual Defendant, or any spouse or immediate family member thereof, holds a controlling interest or for which an Individual Defendant has served as an employee, director, officer, managing director, advisor, general partner, limited partner, or member and any collective investment vehicle which is advised or managed by any of them; provided, however, that the releases set forth in this Stipulation shall in no event release any claims in connection with the D&O Policies or reinsurance of D&O coverage that the Individual Defendants or Wells Fargo may have against any of the Insurers, except as set forth in the Insurance Agreement.

26.    "Released Claims" means any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims, whether based on state, local, foreign, federal, statutory, regulatory, common or other law or rule, brought or that could be brought derivatively or otherwise by or on behalf of Wells Fargo against

any of the Released Parties, which now or hereafter are based upon, arise out of, relate in any way to, or involve, directly or indirectly, any of the actions, transactions, occurrences, statements, representations, misrepresentations, omissions, allegations, facts, practices, events, claims or any other matters, things or causes whatsoever, or any series thereof, that are, were, could have been, or in the future can or might be alleged, asserted, set forth, claimed, embraced, involved or referred to in the Derivative Action and relate to, directly or indirectly, the subject matter of the Derivative Action in any court, tribunal, forum or proceeding, including, without limitation, any and all claims by or on behalf of Wells Fargo which are based upon, arise out of, relate in any way to, or involve, directly or indirectly: (i) Improper Sales Practices; or (ii) any of the allegations in any complaint or amendment(s) thereto filed in (x) the Derivative Action or (y) any Action described above in Section II.C, with the exception, as described above, of the CPI Allegations in the *Connecticut Laborers* Action.  "Released Claims" does not include (1) claims to enforce this Settlement, (2) any direct claims on behalf of present or former Wells Fargo shareholders (*i.e.*, not derivative claims) that are or were being prosecuted in *Hefler v. Wells Fargo & Co.*, No. 3:16-cv-05479-JST (N.D. Cal.), and (3) any claims in connection with the D&O Policies or reinsurance of D&O coverage that the Individual Defendants or Wells Fargo may have against any of the Insurers, except as set forth in the Insurance Agreement.

27.     "Released Parties" means (i) the Individual Defendants; (ii) Wells Fargo, as the Nominal Defendant; (iii) American Express; and (iv) the Related Parties.

28.     "Releases" means the releases set forth in Paragraphs 37 and 38 below; provided, however, that the releases set forth in this Stipulation shall in no event release any claims in connection with the D&O Policies or reinsurance of D&O coverage that the Individual Defendants or Wells Fargo may have against any of the Insurers, except as set forth in the Insurance Agreement.

29.     "Settlement Hearing" means the hearing at which the Court will review the adequacy, fairness and reasonableness of the Settlement, Co-Lead Counsel's Fee Application, and the application for Reimbursement Awards for Co-Lead Plaintiffs, and determine whether to enter the Final Judgment and Order of Dismissal.

30. "Stipulation" means this Stipulation and Agreement of Settlement dated February 26, 2019.

31. "Summary Notice" means the Summary Notice of Settlement of Shareholder Derivative Litigation, substantially in the form attached hereto as Exhibit E.

32. "Unknown Claims" means any Released Claims which Co-Lead Plaintiffs, Wells Fargo, or any of the current Wells Fargo shareholders do not know or suspect exist in his, her or its favor at the time of the release of the Released Claims as against the Released Parties, including without limitation those which, if known, might have affected the decision to enter into or object to the Settlement.  With respect to any and all Released Claims, and although the Settlement provides for a specific release of the Released Parties, the Parties stipulate and agree that, upon the Effective Date Co-Lead Plaintiffs, Wells Fargo, and each of the current Wells Fargo shareholders shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, waived the provisions, rights and benefits of California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Co-Lead Plaintiffs, Wells Fargo, and each of the current Wells Fargo shareholders shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, waived any and all provisions, rights and benefits conferred by any law of any jurisdiction, state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542.  Any of Co-Lead Plaintiffs, Wells Fargo, or the current Wells Fargo shareholders may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the Released Claims but, upon the Court's entry of the Final Judgment and Order of Dismissal, Co-Lead Plaintiffs, Wells Fargo, and each of the current Wells Fargo shareholders shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever

settled and released any and all Released Claims known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Parties shall be deemed by operation of the Final Judgment and Order of Dismissal to have acknowledged that the foregoing waivers were separately bargained for and are key elements of the Settlement of which this release is a part.

### B.     SETTLEMENT MONETARY CONSIDERATION

33.     In consideration of the full settlement, satisfaction, compromise and release of the Released Claims, the Monetary Consideration of $240 million shall be paid by the Insurers on behalf of the Individual Defendants to Wells Fargo.  The Insurers shall cause the Monetary Consideration to be paid to Wells Fargo within thirty (30) calendar days of the Effective Date.

### C.     PRELIMINARY APPROVAL AND NOTICE PROCEDURE

34.     On or before February 28, 2019, Co-Lead Plaintiffs shall submit this Stipulation, together with its related documents, to the Court and request entry of the Preliminary Approval Order, substantially in the form of Exhibit C attached hereto, seeking, *inter alia*, (a) the preliminary approval of the Settlement set forth herein; (b) approval for the publication of the Notice and Summary Notice, substantially in the forms of Exhibits D and E; (c) setting a date for the Settlement Hearing; (d) setting dates for the receipt of objections and the filing of papers in support of a motion for final approval of the Settlement; (e) staying all proceedings in the Derivative Action except as may be necessary to implement the Settlement; and (f) granting such other and further relief as the Court deems just and proper.

35.     Notice of the proposed Settlement shall be provided to Wells Fargo shareholders in the following manner (or in such other manner directed by the Court): (i) Wells Fargo's publishing the Summary Notice, substantially in the form of Exhibit E hereto, as a quarter-page advertisement in the national and local editions of the *Wall Street Journal*, *New York Times*, *Los*

1    *Angeles Times*, and *Investor Business Daily*; (ii) Co-Lead Counsel's publishing the same or

2    substantially the same notice via a national wire service; (iii) Wells Fargo's publication of a

3    Current Report on Form 8-K with the Securities and Exchange Commission; (iv) Wells Fargo's

4    causing the Stipulation and the Notice, substantially in the form of Exhibit D hereto, to be made

5    electronically available on an Internet page created by Wells Fargo that will be accessible via a

6    link on the "Investor Relations" page of http://www.wellsfargo.com, the address of which shall be

7    contained in the Notice and Summary Notice, and sending the Notice by U.S. Mail to persons

8    who request such Notice by calling a hotline number to be identified in the Summary Notice; and

9    (v) Co-Lead Counsel's causing the Stipulation and the Notice, substantially in the form of Exhibit

10   D hereto, to be made electronically available at a website to be identified in the Summary Notice

11   created specifically for the purpose of disseminating notice.

12       36.    Wells Fargo shall bear all Notice Costs related to promulgating notice in the

13   manner set forth in Paragraph 35(i), (iii), and (iv), and Co-Lead Counsel shall bear the costs and

14   expenses related to promulgating notice in the manner set forth in Paragraph 35(ii) and (v) above.

15              **D.     <u>RELEASES</u>**

16       37.    As of the Final Date, Co-Lead Plaintiffs, Wells Fargo (on behalf of itself and each

17   of its Related Parties) and by operation of law Wells Fargo's shareholders shall and hereby do

18   completely, fully, finally and forever release, relinquish, settle, and discharge each and all of the

19   Released Parties from and with respect to any and all of the Released Claims (including the

20   Unknown Claims), and will be forever barred and enjoined from commencing, instituting or

21   prosecuting any action or proceeding, in any forum, asserting any of the Released Claims against

22   any of the Released Parties.

23       38.    As of the Final Date, the Director and Officer Defendants, individually and

24   collectively, shall and hereby do completely, fully, finally and forever release, relinquish, settle,

25   and discharge each and all of the Co-Lead Plaintiffs, Co-Lead Counsel and all other plaintiffs'

26   counsel from and with respect to any and all claims arising out of or relating to the initiation,

27   prosecution, and resolution of the Derivative Action, excepting any claim to enforce the

28   Stipulation or Settlement.

1

### E.     STAY OF PROCEEDINGS

2      39.     The Parties agree to seek a stay of proceedings in the Derivative Action, and to

3  seek or maintain a stay in all of the pending actions referred to in Section II.C above (or any other

4  putative derivative action that has been or may be filed related to Improper Sales Practices), and

5  not to initiate any proceedings other than those related to the Settlement itself.

6

### F.     DISMISSAL WITH PREJUDICE

7      40.     If the Preliminary Approval Order is granted by the Court, the Parties shall jointly

8  and promptly request that the Court enter the Final Judgment and Order of Dismissal in the

9  Derivative Action substantially in the form attached hereto as Exhibit F.  If the Final Judgment

10  and Order of Dismissal is entered by the Court, the Parties shall also jointly and promptly request

11  dismissal, with prejudice, of all of the pending actions referred to in Section II.C above (or any

12  other putative derivative action that has been or may be filed that relates to Improper Sales

13  Practices), including, but not limited to, the *Connecticut Laborers* Action to the extent it alleges

14  claims relating to Improper Sales Practices.

15

### G.     CONDITIONS OF SETTLEMENT

16      41.     This Stipulation, the Settlement and the Effective Date shall be conditioned on the

17  occurrence of all of the following events:

18          a.     The occurrence of the Final Date;

19          b.     The dismissals with prejudice provided for in Paragraph 40 above have

20  been entered and become final; and

21          c.     The contemporaneous (but unconnected) resolution of the CPI Derivative

22  Actions.

23      42.     The Settlement (including the Releases) shall be null and void and of no force and

24  effect, unless otherwise agreed by the Parties in accordance with Paragraph 64 herein, if: (i) the

25  Court does not enter the Final Judgment and Order of Dismissal; (ii) the Derivative Action and all

26  of the pending actions listed in Section II.C above are not dismissed with prejudice, without the

27  award of any damages, costs, fees or the grant of further relief except for the payment

28

1   contemplated by this Stipulation; (iii) the Parties do not obtain final approval of the Settlement for

2   any reason; or (iv) the Effective Date does not come to pass.

3        43.     In the event this Stipulation is deemed null and void, the Parties shall be deemed to

4   be in the respective positions they were in prior to the execution of this Stipulation and Wells

5   Fargo shall return to the Insurers any payment made to Wells Fargo pursuant to Paragraph 33

6   herein.  All negotiations, proceedings, documents prepared and statements made in connection

7   with this Stipulation shall be without prejudice to the Parties, shall not be deemed or construed to

8   be an admission by a Party of any act, matter, or proposition and shall not be used in any manner

9   for any purpose (other than to enforce the terms remaining in effect) in any subsequent

10  proceeding in the Derivative Action or in any other action or proceeding.  The terms and

11  provisions of this Stipulation shall have no further force and effect with respect to the Parties and

12  shall not be used in any other proceeding for any purpose, and any judgment or orders entered by

13  the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro*

14  *tunc*.

15

16  **H.     CO-LEAD COUNSEL'S SEPARATELY NEGOTIATED ATTORNEYS' FEES AND CO-LEAD PLAINTIFFS' REIMBURSEMENT AWARDS**

17       44.     After negotiating the principal terms of the Settlement, Co-Lead Counsel and

18  Wells Fargo, with the assistance of the Mediators, separately negotiated the attorneys' fees and

19  expenses the Company would pay to Co-Lead Counsel.  In light of the substantial benefits

20  conferred by Co-Lead Counsel's efforts, Wells Fargo has agreed to pay an amount not to exceed

21  $68 million, subject to Court approval.  As part of the Settlement Hearing, Co-Lead Counsel

22  intend to apply to the Court for an award of fees and expenses, not to exceed $68 million, in

23  connection with the Derivative Action (the "Fee Application").  The Parties acknowledge and

24  agree that any fees and expenses awarded by the Court in the Derivative Action shall be paid by

25  Wells Fargo within fifteen (15) calendar days of the Final Judgment and Order of Dismissal.

26       45.     As part of the Fee Application, Co-Lead Plaintiffs shall seek Reimbursement

27  Awards not to exceed $25,000 for each Co-Lead Plaintiff which awards will be paid from Co-

28  Lead Counsel's attorneys' fees.

46.     Neither the resolution of, nor any ruling regarding, the Reimbursement Awards, the Fee Application or any award of attorneys' fees and expenses shall be a precondition to the Settlement or the Final Judgment and Order of Dismissal in accordance with the terms of this Stipulation.  The Court may consider and rule upon the fairness, reasonableness and adequacy of the Settlement independently of the Reimbursement Awards, the Fee Application or any fee award, and any failure of the Court to approve the Fee Application or the Reimbursement Awards in whole or in part shall have no impact on the effectiveness of the Settlement.  Notwithstanding anything in this Stipulation to the contrary, the effectiveness of the Releases and the other obligations of the Parties under the Settlement (except with respect to the payment of attorneys' fees and expenses) shall not be conditioned upon or subject to the resolution of any appeal from any order, if such appeal relates solely to the issue of any Reimbursement Award or award of attorneys' fees or the reimbursement of expenses.

47.     Defendants and their counsel shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Plaintiffs' Counsel of any fees or expenses awarded by the Court.  Co-Lead Counsel shall be responsible for the allocation of any fees awarded to Plaintiffs' Counsel, based upon each counsel's contributions to the prosecution and/or resolution of the Derivative Action.  Any dispute regarding any allocation of fees or expenses among Plaintiffs' Counsel shall have no effect on the Settlement.  The payment of any fees and expenses by Wells Fargo shall be subject to Co-Lead Counsel's joint and several obligation to make appropriate refunds or repayments of the fees received, if, as a result of any further proceedings or collateral attack, the amount of the fee awarded is reduced, the conditions of settlement set forth in Paragraph 41 are not satisfied, the judgment of dismissal as contemplated in the Settlement is not accorded full effect, or the Defendants withdraw from the Settlement in accordance with the terms of this Stipulation. The Parties agree that the Court shall have and retain exclusive and continuing jurisdiction in the event of any claim by or on behalf of any non-party shareholders for attorneys' fees or costs in connection with the prosecution of any cause of action related to the Released Claims.

## I.      COOPERATION

48.     The Parties and their respective counsel agree to cooperate fully with one another in seeking the Court's approval of the Settlement and to use their best efforts to effect the consummation of this Stipulation and the Settlement (including, but not limited to, resolving any objections raised with respect to the Settlement).

49.     Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

## J.      STIPULATION NOT AN ADMISSION

50.     The existence of this Stipulation, its contents and any negotiations, statements or proceedings in connection therewith will not be argued to be, and will not be construed or deemed to be, a presumption, concession or admission by any of the Released Parties or any other Person of any fault, liability or wrongdoing as to any facts or claims alleged or asserted in the Derivative Action or any of the actions listed in Section II.C above; or that Wells Fargo, Co-Lead Plaintiffs or Co-Lead Counsel, any present or former shareholders of Wells Fargo or any other Person, have suffered any damage attributable in any manner to any of the Released Parties.  Nor shall the existence of this Stipulation and its contents or any negotiations, statements or proceedings in connection therewith be construed as a presumption, concession or admission by Co-Lead Plaintiffs or Co-Lead Counsel of any lack of merit of the Released Claims, or that Wells Fargo has not suffered cognizable damages caused by Defendants.  The existence of the Stipulation, its contents or any negotiations, statements or proceedings in connection therewith, shall not be offered or admitted in evidence or referred to, interpreted, construed, invoked or otherwise used by any Person for any purpose in the Derivative Action or otherwise, except as may be necessary to effectuate the Settlement.  This provision shall remain in force in the event that the Settlement is terminated for any reason whatsoever.  Notwithstanding the foregoing, any of the Released Parties may file this Stipulation or any judgment or order of the Court related hereto in any other action that has been or may in the future be brought against them, in order to support any and all defenses or counterclaims based on *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion

1   or similar defense or counterclaim, or as necessary for any of the Released Parties to pursue their

2   rights under any insurance policy.

3   **K.      CONFIDENTIALITY**

4   51.     All agreements made and orders entered during the course of the Derivative

5   Action relating to the confidentiality of information shall survive this Stipulation.

6   **L.      NO WAIVER**

7   52.     Any failure by any Party to insist upon the strict performance by any other Party of

8   any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions

9   hereof, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon

10  the strict performance of any and all of the provisions of this Stipulation by such other Party.

11  53.     No waiver, express or implied, by any Party of any breach or default in the

12  performance by another Party of its obligations under this Stipulation shall be deemed or

13  construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous,

14  under this Stipulation.

15  **M.      AUTHORITY**

16  54.     This Stipulation will be executed by the Parties' counsel, each of whom represents

17  and warrants that they have been duly authorized and empowered to execute this Stipulation on

18  behalf of such Party, and that it shall be binding on such Party in accordance with its terms.

19  **N.      SUCCESSORS AND ASSIGNS**

20  55.     This Stipulation is, and shall be, binding upon, and inure to the benefit of, the

21  Parties and their respective agents, executors, administrators, heirs, successors and assigns;

22  provided, however, that no Party shall assign or delegate its rights or responsibilities under this

23  Stipulation without the prior written consent of the other Parties.

24  **O.      GOVERNING LAW AND FORUM**

25  56.     This Stipulation, and any dispute arising out of or relating in any way to this

26  Stipulation, whether in contract, tort or otherwise, shall be governed by and construed in

27  accordance with the laws of the State of California, without regard to conflict-of-laws principles.

28  Each of the Parties:  (i) irrevocably submits to the personal jurisdiction of the United States

District Court for the Northern District of California, as well as to the jurisdiction of all courts to which an appeal may be taken from such court, in any suit, action or proceeding arising out of or relating to this Stipulation and/or the Settlement; (ii) agrees that all claims in respect of such suit, action or proceeding shall be brought, heard and determined exclusively in the Court (provided that, in the event that subject-matter jurisdiction is unavailable in the Court, then all such claims shall be brought, heard and determined exclusively in any state court sitting in San Francisco, California having subject-matter jurisdiction); (iii) agrees that it shall not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from such court; and (iv) agrees not to bring any action or proceeding arising out of or relating to this Stipulation in any other court. Each of the Parties waives any defense of inconvenient forum to the maintenance of any action or proceeding brought in accordance with this Paragraph. Each of the Parties further agrees to waive any bond, surety or other security that might be required of any other Party with respect to any such action or proceeding, including an appeal thereof; such waiver is not applicable to any bond, surety or other security that might be required of a nonparty objector to the Final Judgment and Order of Dismissal. Each of the Parties further consents and agrees that process in any such suit, action or proceeding may be served on such Party by certified mail, return receipt requested, addressed to such Party or such Party's registered agent in the state of its incorporation or organization, or in any other manner provided by law, and in the case of Co-Lead Plaintiffs by giving such written notice to Co-Lead Counsel at their addresses set forth in the signature blocks below.

### P. <u>WARRANTY</u>

57.     Co-Lead Counsel each represents, on behalf of their respective clients, that (i) their clients have been continuous shareholders of Wells Fargo at all times relevant to the allegations in the Complaint and through the date of this Stipulation; and (ii) none of the Released Claims has been assigned, encumbered or in any manner transferred in whole or in part, and that they and their respective clients will not attempt to assign, encumber or in any manner transfer in whole or in part any of the Released Claims.

58.     Each Party represents and warrants that the Party has made such investigation of the facts pertaining to the Settlement provided for in this Stipulation, and all of the matters pertaining thereto, as the Party deems necessary and advisable.

**Q.      ENTIRE AGREEMENT**

59.     This Stipulation and the attached Exhibits constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede all prior or contemporaneous oral or written agreements, understandings or representations among the Parties with respect to the subject matter hereof.  All of the Exhibits hereto are incorporated by reference as if set forth herein verbatim, and the terms of all Exhibits are expressly made part of this Stipulation.

**R.      INTERPRETATION**

60.     Each term of this Stipulation is contractual and not merely a recital.

61.     This Stipulation will be deemed to have been mutually prepared by the Parties and will not be construed against any of them by reason of authorship.

62.     This Stipulation and Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of California.

63.     The terms and provisions of this Stipulation are intended solely for the benefit of the Parties, and their respective successors and permitted assigns, and it is not the intention of the Parties to confer third-party beneficiary rights or remedies upon any other Person, except with respect to (a) any attorneys' fees and expenses to be paid to Co-Lead Counsel pursuant to the terms of this Stipulation; and (b) the Released Parties who are not signatories hereto, and who shall be third-party beneficiaries under this Stipulation entitled to enforce it in accordance with its terms.

**S.      AMENDMENTS**

64.     This Stipulation may not be amended, changed, waived, discharged or terminated (except as explicitly provided herein), in whole or in part, except by an instrument in writing signed by the Parties to this Stipulation.  Any such written instrument signed by the Parties shall be effective upon approval of the Court, without further notice to Wells Fargo shareholders, unless the Court requires such notice.

1

**T.      COUNTERPARTS**

2     65.     This Stipulation may be executed in any number of actual, telecopied or

3  electronically mailed counterparts and by each of the different Parties on several counterparts,

4  each of which when so executed and delivered will be an original.  This Stipulation will become

5  effective when the actual or telecopied counterparts have been signed by each of the Parties to

6  this Stipulation and delivered to the other Parties.  The executed signature page(s) from each

7  actual, telecopied or electronically mailed counterpart may be joined together and attached and

8  will constitute one and the same instrument.

9         **IN WITNESS WHEREOF,** the Parties have caused this Stipulation, dated as of

10 February 26, 2019, to be executed by their duly authorized attorneys.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION AND AGREEMENT OF COMPROMISE,
SETTLEMENT AND RELEASE
LEAD CASE NO: 3:16-CV-05541-JST

1

2    Dated: February 26, 2019          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

3                                      By:

4                                      Richard M. Heimann (063607)
                                       *rheimann@lchb.com*
5                                      Katherine C. Lubin (259826)
                                       *kbenson@lchb.com*
6                                      Michael K. Sheen (288284)
                                       *msheen@lchb.com*
7                                      LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                       275 Battery Street, 29th Floor
8                                      San Francisco, CA 94111-3339
                                       Telephone: (415) 956-1000
9                                      Facsimile:  (415) 956-1008

10                                     Steven E. Fineman (140335)
                                       *sfineman@lchb.com*
11                                     Daniel P. Chiplock (*Pro hac vice*)
                                       *dchiplock@lchb.com*
12                                     Nicholas Diamand (*Pro hac vice*)
                                       *ndiamand@lchb.com*
13                                     Michael J. Miarmi (*Pro hac vice*)
                                       *mmiarmi@lchb.com*
14                                     Sean Petterson (*Pro hac vice*)
                                       spetterson@lchb.com
15                                     LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                       250 Hudson Street, 8th Floor
16                                     New York, NY 10013-1413
                                       Telephone: (212) 355-9500
                                       Facsimile:  (212) 355-9592
17
                                       *Attorneys for Co-Lead Plaintiff Fire & Police Pension*
18                                     *Association of Colorado and Co-Lead Counsel*

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAXENA WHITE P.A.

By:

Maya Saxena (*Pro hac vice*)
*msaxena@saxenawhite.com*
Joseph E. White, III (*Pro hac vice*)
*jwhite@saxenawhite.com*
Lester R. Hooker (241590)
*lhooker@saxenawhite.com*
Adam D. Warden (*Pro hac vice*)
*awarden@saxenawhite.com*
Dianne M. Anderson (286199)
*danderson@saxenawhite.com*
SAXENA WHITE P.A.
150 East Palmetto Park Road, Suite 600
Boca Raton, FL  33432
Telephone:  (561) 394-3399
Facsimile:  (561) 394-3382

Steven B. Singer (*Pro hac vice*)
*ssinger@saxenawhite.com*
Kyla Grant (*Pro hac vice*)
*kgrant@saxenawhite.com*
Sara DiLeo (*Pro hac vice*)
*sdileo@saxenawhite.com*
SAXENA WHITE P.A.
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile:  (888) 631-3611

*Attorneys for Co-Lead Plaintiff The City of Birmingham*
*Retirement and Relief System and Co-Lead Counsel*


SULLIVAN & CROMWELL LLP


By:

Brendan P. Cullen (194057)
*cullenb@sullcrom.com*
Sverker K. Hogberg (244640)
*hogbergs@sullcrom.com*
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California 94303
Telephone: (650) 461-5600
Facsimile: (650) 461-5700

*Attorneys for Nominal Defendant Wells Fargo & Co.*

1   SAXENA WHITE P.A.

2
    By:
3
    Maya Saxena (*Pro hac vice*)
4   *msaxena@saxenawhite.com*
    Joseph E. White, III (*Pro hac vice*)
5   *jwhite@saxenawhite.com*
    Lester R. Hooker (241590)
6   *lhooker@saxenawhite.com*
    Adam D. Warden (*Pro hac vice*)
7   *awarden@saxenawhite.com*
    Dianne M. Anderson (286199)
8   *danderson@saxenawhite.com*
    SAXENA WHITE P.A.
9   150 East Palmetto Park Road, Suite 600
    Boca Raton, FL  33432
10  Telephone:  (561) 394-3399
    Facsimile:  (561) 394-3382
11
    Steven B. Singer (*Pro hac vice*)
12  *ssinger@saxenawhite.com*
    Kyla Grant (*Pro hac vice*)
13  *kgrant@saxenawhite.com*
    Sara DiLeo (*Pro hac vice*)
14  *sdileo@saxenawhite.com*
    SAXENA WHITE P.A.
15  10 Bank Street, 8th Floor
    White Plains, NY 10606
16  Telephone: (914) 437-8551
    Facsimile:  (888) 631-3611
17
    *Attorneys for Co-Lead Plaintiff The City of Birmingham*
18  *Retirement and Relief System and Co-Lead Counsel*

19
    SULLIVAN & CROMWELL LLP
20
    By:
21
22  Brendan P. Cullen (194057)
    cullenb@sullcrom.com
23  Sverker K. Hogberg (244640)
    hogbergs@sullcrom.com
24  SULLIVAN & CROMWELL LLP
    1870 Embarcadero Road
25  Palo Alto, California 94303
    Telephone: (650) 461-5600
26  Facsimile: (650) 461-5700

27  *Attorneys for Nominal Defendant Wells Fargo & Co.*

28

- 29 -

STIPULATION AND AGREEMENT OF COMPROMISE,
SETTLEMENT AND RELEASE
LEAD CASE NO: 3:16-CV-05541-JST

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOODWIN PROCTER LLP

By:

Richard M. Strassberg (*Pro hac vice*)
rstrassberg@goodwinlaw.com
Daniel P. Roeser (*Pro hac vice*)
droeser@goodwinlaw.com
GOODWIN PROCTER LLP
620 8th Avenue
New York, NY 10018
Telephone: (212) 813-8800
Facsimile: (212) 355-3333

Grant P. Fondo
*gfondo@goodwinlaw.com*
Lloyd Winawer
*lwinawer@goodwinlaw.com*
Nicholas A. Reider
*nreider@goodwinlaw.com*
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA 94063
Telephone: (650) 752-3100
Facsimile: (650) 853-1038

*Attorneys for Defendant John G. Stumpf*

CLARENCE DYER & COHEN LLP

By:

Nanci L. Clarence
*nclarence@clarencedyer.com*
Josh A. Cohen
*jcohen@clarencedyer.com*
Adam F. Shearer
*ashearer@clarencedyer.com*
CLARENCE DYER & COHEN LLP
899 Ellis Street
San Francisco, CA 94109
Telephone: (415) 749-1800
Facsimile: (415) 749-1694

*Attorneys for Defendant Timothy J. Sloan*

- 30 -

STIPULATION AND AGREEMENT OF COMPROMISE,
SETTLEMENT AND RELEASE
LEAD CASE NO: 3:16-CV-05541-JST

1
2

GOODWIN PROCTER LLP

3

By:

4

Richard M. Strassberg (*Pro hac vice*)
rstrassberg@goodwinlaw.com

5

Daniel P. Roeser (*Pro hac vice*)
droeser@goodwinlaw.com

6

GOODWIN PROCTER LLP
620 8th Avenue

7

New York, NY 10018
Telephone: (212) 813-8800

8

Facsimile: (212) 355-3333

9

Grant P. Fondo
*gfondo@goodwinlaw.com*

10

Lloyd Winawer
*lwinawer@goodwinlaw.com*

11

Nicholas A. Reider
*nreider@goodwinlaw.com*

12

GOODWIN PROCTER LLP
601 Marshall Street

13

Redwood City, CA 94063
Telephone: (650) 752-3100

14

Facsimile: (650) 853-1038

15

*Attorneys for Defendant John G. Stumpf*

16

CLARENCE DYER & COHEN LLP

17
18

By:

19

Nanci L. Clarence
*nclarence@clarencedyer.com*

20

Josh A. Cohen
*jcohen@clarencedyer.com*

21

Adam F. Shearer
*ashearer@clarencedyer.com*

22

CLARENCE DYER & COHEN LLP
899 Ellis Street

23

San Francisco, CA 94109
Telephone: (415) 749-1800

24

Facsimile: (415) 749-1694

25

*Attorneys for Defendant Timothy J. Sloan*

26
27
28

STIPULATION AND AGREEMENT OF COMPROMISE,
SETTLEMENT AND RELEASE
LEAD CASE NO: 3:16-CV-05541-JST

1

2

RAMSEY & EHRLICH LLP

3

By:

4

Miles Ehrlich

*miles@ramsey-ehrlich.com*

5

Ismail Ramsey

*izzy@ramsey-ehrlich.com*

6

RAMSEY & EHRLICH LLP

803 Hearst Avenue

7

Berkeley, CA 94710

Telephone: (510) 548-3600

Facsimile: (510) 291-3060

8

9

*Attorneys for Defendant John R. Shrewsberry*

10

11

SKAGGS FAUCETTE LLP

12

By:

13

Jeffrey E. Faucette

14

jeff@skaggsfaucette.com

SKAGGS FAUCETTE LLP

15

One Embarcadero Center

Suite 500

16

San Francisco, CA 94111

Telephone: (415) 315-1669

Facsimile: (415) 433-5994

17

18

Enu A. Mainigi (*Pro hac vice*)

*emainigi@wc.com*

19

Jennifer G. Wicht (*Pro hac vice*)

*jwicht@wc.com*

20

Brian Patrick Hagerty (*Pro hac vice*)

*bhagerty@wc.com*

WILLIAMS & CONNOLLY LLP

21

725 Twelfth Street, N.W.

Washington D.C. 20005

22

Telephone: (202) 434-5000

Facsimile: (202) 434-5029

23

*Attorneys for Defendant Carrie Tolstedt*

24

25

26

27

28

STIPULATION AND AGREEMENT OF COMPROMISE,
SETTLEMENT AND RELEASE
LEAD CASE NO: 3:16-CV-05541-JST

1

2           RAMSEY & EHRLICH LLP

3           By:

4           Miles Ehrlich
            *miles@ramsey-ehrlich.com*
5           Ismail Ramsey
            *izzy@ramsey-ehrlich.com*
6           RAMSEY & EHRLICH LLP
            803 Hearst Avenue
7           Berkeley, CA 94710
            Telephone: (510) 548-3600
8           Facsimile: (510) 291-3060

9           *Attorneys for Defendant John R. Shrewsberry*

10

11          SKAGGS FAUCETTE LLP

12          By:

13          Jeffrey E. Faucette
            jeff@skaggsfaucette.com
14          SKAGGS FAUCETTE LLP
            One Embarcadero Center
15          Suite 500
            San Francisco, CA 94111
16          Telephone: (415) 315-1669
            Facsimile: (415) 433-5994
17

18          Enu A. Mainigi (*Pro hac vice*)
            *emainigi@wc.com*
19          Jennifer G. Wicht (*Pro hac vice*)
            *jwicht@wc.com*
20          Brian Patrick Hagerty (*Pro hac vice*)
            *bhagerty@wc.com*
21          WILLIAMS & CONNOLLY LLP
            725 Twelfth Street, N.W.
22          Washington D.C. 20005
            Telephone: (202) 434-5000
23          Facsimile: (202) 434-5029

            *Attorneys for Defendant Carrie Tolstedt*
24

25

26

27

28

ARGUEDAS, CASSMAN & HEADLEY, LLP

By: _Ted W. Cassman_

Cristina C. Arguedas
*arguedas@achlaw.com*
Ted W. Cassman
*cassman@achlaw.com*
Laurel L. Headley
*headley@achlaw.com*
803 Hearst Avenue
Berkeley, CA 94710
(510) 845-3000 (Tel)
(510) 845-3003 (Fax)

*Attorneys for Defendant Michael Loughlin*

SHEARMAN & STERLING LLP

By:

John F. Cove, Jr.
*john.cove@shearman.com*
Emily V. Griffen
*egriffen@shearman.com*
Alethea M. Sargent
*alethea.sargent@shearman.com*
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (415) 616-1100
Facsimile: (415) 616-1199

Stuart Baskin
*sbaskin@shearman.com*
John Gueli
*jgueli@shearman.com*
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

*Attorneys for John D. Baker II, Elaine L. Chao, John S. Chen, Lloyd H. Dean, Elizabeth A. Duke, Susan E. Engel, Enrique Hernandez, Jr., Donald M. James, Richard D. McCormick, Mackey J. McDonald, Cynthia H. Milligan, Nicholas G. Moore, Federico F. Peña, James H. Quigley, Philip J. Quigley, Howard V. Richardson, Judith M. Runstad, Stephen W. Sanger, Susan G. Swenson, and Suzanne M. Vautrinot*

STIPULATION AND AGREEMENT OF COMPROMISE,
SETTLEMENT AND RELEASE
LEAD CASE NO: 3:16-CV-05541-JST

ARGUEDAS, CASSMAN & HEADLEY, LLP

By:

Cristina C. Arguedas
*arguedas@achlaw.com*
Ted W. Cassman
*cassman@achlaw.com*
Laurel L. Headley
*headley@achlaw.com*
803 Hearst Avenue
Berkeley, CA 94710
(510) 845-3000 (Tel)
(510) 845-3003 (Fax)

*Attorneys for Defendant Michael Loughlin*


SHEARMAN & STERLING LLP


By:

John F. Cove, Jr.
*john.cove@shearman.com*
Emily V. Griffen
*egriffen@shearman.com*
Alethea M. Sargent
*alethea.sargent@shearman.com*
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (415) 616-1100
Facsimile: (415) 616-1199

Stuart Baskin
*sbaskin@shearman.com*
John Gueli
*jgueli@shearman.com*
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

*Attorneys for John D. Baker II, Elaine L. Chao, John S.*
*Chen, Lloyd H. Dean, Elizabeth A. Duke, Susan E.*
*Engel, Enrique Hernandez, Jr., Donald M. James,*
*Richard D. McCormick, Mackey J. McDonald, Cynthia*
*H. Milligan, Nicholas G. Moore, Federico F. Peña,*
*James H. Quigley, Philip J. Quigley, Howard V.*
*Richardson, Judith M. Runstad, Stephen W. Sanger,*
*Susan G. Swenson, and Suzanne M. Vautrinot*

STIPULATION AND AGREEMENT OF COMPROMISE,
SETTLEMENT AND RELEASE
LEAD CASE NO: 3:16-CV-05541-JST

Richard M. Heimann (063607)
*rheimann@lchb.com*
Katherine C. Lubin (259826)
*kbenson@lchb.com*
Michael K. Sheen (288284)
*msheen@lchb.com*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile:  (415) 956-1008

*Attorneys for Co-Lead Plaintiff Fire & Police Pension*
*Association of Colorado and Co-Lead Counsel*

Maya Saxena (*Pro hac vice*)
*msaxena@saxenawhite.com*
Joseph E. White, III (*Pro hac vice*)
*jwhite@saxenawhite.com*
Lester R. Hooker (241590)
*lhooker@saxenawhite.com*
SAXENA WHITE P.A.
150 East Palmetto Park Road, Suite 600
Boca Raton, FL  33432
Telephone:  (561) 394-3399
Facsimile:  (561) 394-3382

[Additional Counsel on Signature Page]

*Attorneys for Co-Lead Plaintiff The City of Birmingham*
*Retirement and Relief System and Co-Lead Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION | Lead Case No. 3:16-cv-05541-JST |
| This Document Relates to: ALL ACTIONS. | **EXHIBIT A: CORPORATE GOVERNANCE REFORMS** <br><br> The Honorable Jon S. Tigar |

## I.   Co-Lead Plaintiffs' Requested Corporate Governance Reforms

WHEREAS, beginning on September 29, 2016, separate Wells Fargo shareholders filed a series of putative shareholder derivative lawsuits in the United States District Court for the Northern District of California (the "Court") on behalf of themselves and derivatively on behalf of Wells Fargo & Company ("Wells Fargo" or "the Company" or the "Bank"), and against certain current and former officers and directors of Wells Fargo (the "Individual Defendants"),[2] alleging, among other things, that employees in the Company's Community Bank opened accounts without customer knowledge or authorization, and that the Individual Defendants breached their fiduciary duties to Wells Fargo in connection with these and other alleged improprieties.

WHEREAS, on February 24, 2017, Co-Lead Plaintiffs Fire & Police Pension Association of Colorado and The City of Birmingham Retirement and Relief System ("Co-Lead Plaintiffs") filed their Consolidated Amended Verified Shareholder Derivative Complaint (the "Complaint") in the Derivative Action.  Dkt. No. 83.

WHEREAS, the Complaint alleged that "[t]he illicit account-creation scheme was not the product of a few rogue Wells Fargo employees.  To the contrary, it was the natural and foreseeable outgrowth of a system [that] pressure[d] employees to meet unrealistic sales targets and thereby obtain bonuses."  *Id.* at ¶ 20.

WHEREAS, the Complaint alleged that "Wells Fargo's proxy statements have consistently included—and, on the Board's recommendation, shareholders have invariably voted down—a stockholder proposal 'to adopt a policy to require an independent chairman.'"  *Id.* at ¶ 119.

WHEREAS, the Complaint alleged that "Defendants failed to implement the requisite risk controls to prevent or detect Wells Fargo employees from signing up customers for millions of unauthorized checking accounts, credit cards, and other accounts and services."  *Id.* at ¶ 321(f).

WHEREAS, the Complaint's Prayer for Relief sought a demand for judgment that included: "D. Directing Wells Fargo to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the

---

[2]  Capitalized terms not separately defined herein have the meaning ascribed to them in the Settlement Stipulation.

1    Company and its stockholders from a repeat of the damaging events described in this Complaint,

2    including putting forward for a stockholder vote resolutions for amendments to the Company's

3    by-laws or articles of incorporation, and taking such other actions as may be necessary to place

4    before stockholders for a vote the following corporate governance policies:

- 1. a proposal to strengthen Board oversight and supervision of Wells Fargo's Community Banking sales practices;

- 2. a proposal to strengthen the Company's disclosure controls to ensure material information is adequately and timely disclosed to the SEC and the public;

- 3. a proposal to ensure that all Board members take appropriate action to rid the Company of its lawless culture, particularly in the Community Banking segment;

- 4. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board; and

- 5. a proposal to permit the stockholders of Wells Fargo to nominate at least three candidates for election to the Board."

13          WHEREAS, during the pendency of the litigation and the negotiations that culminated in

14   the Settlement, Co-Lead Plaintiffs requested that the five directors who did not receive the

15   positive vote of a majority of the outstanding stock at the April 2017 annual shareholders meeting

16   should not be re-nominated in 2018.

17          WHEREAS, during the pendency of the litigation and the negotiations that culminated in

18   the Settlement, Co-Lead Plaintiffs requested that the Wells Fargo Board create a new "Retail

19   Customer Protection Committee" whose charter would charge the Committee with oversight

20   responsibility for retail sales practices and other elements of Wells Fargo's relationship with retail

21   customers.

22          WHEREAS, during the pendency of the litigation and the negotiations that culminated in

23   the Settlement, Co-Lead Plaintiffs requested that the relevant part of the Wells Fargo internal

24   audit process should be configured as "retail practices audit," and the senior manager leading this

25   audit group should report directly to the proposed Retail Customer Protection Committee.

26          WHEREAS, during the pendency of the litigation and the negotiations that culminated in

27   the Settlement, Co-Lead Plaintiffs requested that the Retail Customer Protection Committee shall

28   receive prompt reports from senior managers on "Matters Requiring Immediate Attention" and

"Matters Requiring Attention" notices from banking supervisors that pertain to retail customer matters.

WHEREAS, during the pendency of the litigation and the negotiations that culminated in the Settlement, Co-Lead Plaintiffs requested that "Risk-Facing Board Committees"[3] should be given a specific mandate to conduct internal investigations using outside advisers and personnel as the Committees deem necessary.

WHEREAS, during the pendency of the litigation and the negotiations that culminated in the Settlement, Co-Lead Plaintiffs requested that the Chairman or Vice Chairman of the Board should have independent authority to initiate an internal investigation as he/she deems appropriate.

WHEREAS, during the pendency of the litigation and the negotiations that culminated in the Settlement, Co-Lead Plaintiffs requested that the "Risk-Facing Committees" shall arrange to receive quarterly reports from senior managers in appropriate parts of the Wells Fargo internal auditing and monitoring offices, in executive session, and that members of these Committees shall be specifically empowered to formulate questions to be addressed in these quarterly meetings or in-between quarters as they shall deem necessary.

WHEREAS, during the pendency of the litigation and the negotiations that culminated in the Settlement, Co-Lead Plaintiffs requested that an internal Ombudsman Program, managed by or under the direction of the senior manager of the Office of Ethics, Oversight, and Integrity, shall be established, providing an alternative channel for employees to address work-related concerns, including conduct inconsistent with Wells Fargo's policies, practices, values and standards.

## II.    Wells Fargo's Corporate Governance Reforms

NOW THEREFORE, Co-Lead Plaintiffs and Wells Fargo have agreed and acknowledge that facts alleged in the Derivative Action were significant factors taken into account by Wells Fargo in implementing the following corporate governance reforms:

In October 2016, the Board separated the roles of Board Chair and CEO.  Weeks later, in November 2016, the Board acted to require that the Board Chair and Vice Chair, if any, be

---

[3]  These committees include Audit and Examination, Risk, Human Resources, and the proposed Retail Consumer Protection.

independent, non-employee directors—a requirement unique among Wells Fargo's large banking peers.

Since 2017, nine directors of the Wells Fargo Board have departed.  Seven new directors have joined the Board in that time.  As of the Company's 2018 annual shareholder meeting in April, a majority of Wells Fargo's independent directors were new to the Company's Board.

In 2017 and 2018, the Board appointed new directors to serve on (and new leaders to chair) its key committees, including the Risk Committee, Human Resources Committee ("HRC"), and the Governance and Nominating Committee.  The Board also revamped its governance and committee structure.  In particular, the Risk Committee's oversight responsibilities were enhanced to focus on a key area of enterprise risk, with a new subcommittee formed for oversight of compliance, and its membership was reconstituted to include a majority of members (four) with experience identifying, assessing, and managing risk exposures of large, financial firms.

The Board and senior executive team have rebuilt the top-level management of Wells Fargo.  Since 2016, the Company has appointed a new CEO and a new head of the Community Bank (the new head of the Community Bank now leads Consumer Banking, which includes the Community Bank, Home Lending, and Wells Fargo Auto), brought in a new General Counsel and a new Chief Risk Officer, and has made many other management changes, including establishing the new roles of Head of Stakeholder Relations and Head of Regulatory Relations.

In 2017, the Board approved a new policy limiting the number of public company boards on which its directors may serve.  No director serves on more than three public company boards and Wells Fargo's CEO does not serve on any other public company board.

In March 2018, the Board reduced the threshold for calling a special shareholder meeting.  Now, shareholders comprising 20% of the Company's outstanding common stock may call special meetings of shareholders (reduced from 25%), making it significantly easier for several of the Company's major investors to convene a special meeting.

The Board amended its corporate governance guidelines in 2018 to better reflect the role of the Board and work it is doing to enhance governance and oversight practices, including to reflect the Federal Reserve's proposed guidance on board effectiveness.

1    The Board took multiple actions to promote executive accountability by obtaining

2  forfeitures or reductions of compensation totaling $122.5 million.  In addition, upon his own

3  recommendation, the Board awarded CEO Sloan no incentive compensation award for 2017.

4    The Company has implemented numerous new controls and enhanced many existing

5  controls and customer feedback mechanisms (e.g., customer alerts and "mystery shopper"

6  programs) to help ensure that account activity is authorized.

7    The Company ended product sales goals for retail banking team members in branches and

8  call centers, and implemented new compensation and performance management programs in the

9  Community Bank focused on the customer experience.  The Company also raised the minimum

10  hourly wage for U.S.-based team members and enhanced benefits.

11    The Company and the Board enhanced oversight of risk, including conduct risk and

12  compliance risk, by, among other things, strengthening and enhancing the Company's Board-

13  approved risk management framework and emphasizing the role of risk management when setting

14  corporate strategy and by further rationalizing and integrating certain risk management

15  organizational, governance, and reporting practices.

16    Beginning with the 2017 evaluation and continuing through the present, the Board

17  engaged former Securities and Exchange Commission Chairwoman Mary Jo White, senior

18  partner with Debevoise & Plimpton LLP, to facilitate the Board's annual evaluation process.  Ms.

19  White has advised the Board and each committee concerning their self-evaluations, including to

20  assess reforms made by the Board since 2016.

21    The Company has and continues to formalize its training programs for directors, including

22  training and onboarding for new directors, and has documented those processes and training plans

23  in writing.

24    The Company has updated Board reporting structures, including committee charters, in

25  the wake of the Improper Sales Practices issues to include the type of reporting contemplated by

26  Co-Lead Plaintiffs' proposals, including reporting in executive sessions.  The Audit and

27  Examination Committee (A&E Committee) and Risk Committee are the principal recipients of

28  regularly scheduled reports of this sort and those reports are received or discussed when

1    appropriate, in sessions not attended by senior management.  (*See, e.g.*, Risk Comm. Charter, at 2;

2    A&E Comm. Charter, at 2-3.)  In addition, the full Board receives reporting on conduct and

3    culture matters at least twice per year.

4         The Board has taken numerous steps to promote more active monitoring of Company

5    culture, including those outlined in the Company's 2018 Proxy Statement.  These steps include

6    focusing on oversight of key employee ethics matters in the HRC and enhancing the HRC's

7    oversight to include human capital management and culture.  The Company has also put in place

8    new reporting programs so that the Board receives reporting on various actions taken by the

9    Company to assess, strengthen, and measure the Company's culture, including a Company-wide

10   "culture assessment survey" conducted in 2017.

11        The Board amended its committee charters in 2017 to transfer oversight of employee

12   ethics matters to the HRC, and enhanced the HRC's oversight to include human capital

13   management and culture.  In addition, the HRC and the full Board are receiving reporting on

14   culture and ethics matters.  The Board's Risk Committee formed a Compliance Subcommittee,

15   which meets monthly to oversee compliance risks, and the Risk Committee's charter was

16   amended to provide that it oversees the risk components of the Company's culture, as well as the

17   conduct risk oversight function.  Both the Risk Committee and its Compliance Subcommittee

18   receive extensive reporting on conduct and compliance risk, respectively.

19        Wells Fargo created a Conduct Management Office which includes the Offices of Sales

20   Practices Oversight, Ethics Oversight, and Complaints Oversight, Internal Investigations, and

21   Bribery and Corruption Governance.  The Conduct Management Office improves upon the prior

22   corporate structure in two key ways: (1) it is a centralized unit outside the control of any business

23   line that has a direct reporting line to the Risk Committee and the Board through the Chief Risk

24   Officer, who is to provide periodic reports on matters that include the Office's area of

25   responsibility; and (2) it focuses on conduct management and sales practices issues—the Office's

26   core mission is to educate, prevent and investigate sales and related conduct issues.

27        Wells Fargo's Internal Audit Group designated a senior audit manager for conduct and/or

28   sales practices-related matters.

1    Wells Fargo centralized staff groups throughout the Company, including Finance,

2  Marketing, Communications, Human Resources (including compensation and employee

3  relations) and Compliance, now report into their central control groups rather than into the lines

4  of business that they support.

5    Wells Fargo expanded the Risk Committee's oversight responsibilities to include

6  oversight of the new Conduct Management Office and enterprise-wide conduct risk and risk

7  culture in addition to overseeing the enterprise risk management framework, the Corporate Risk

8  function, and key risks identified by management.

9    Wells Fargo expanded the Human Resources Committee's oversight responsibilities to

10  include human capital management, culture, Code of Ethics and Business Conduct,

11  implementation and effectiveness of ethics, business conduct, and conflicts of interest program

12  (including training on ethical decision-making and processes for reporting and resolution of ethics

13  issues), and Wells Fargo's expanded incentive compensation risk management program.

14    Wells Fargo expanded the A&E Committee's oversight responsibilities for legal and

15  regulatory compliance to include the Company's compliance culture.  The A&E Committee will

16  continue to oversee the operational risk program and all operational risk types, including conduct

17  risk, as well as complaints and allegations related to accounting, internal accounting control, and

18  audit matters.

19    Prior to Wells Fargo's implementation of several of these corporate governance reforms,

20  the Parties engaged in mediation efforts during which Co-Lead Plaintiffs proposed a resolution of

21  this matter that included proposals of certain of these corporate governance reforms.  Co-Lead

22  Plaintiffs and Wells Fargo have agreed and acknowledge that these reforms have conferred

23  significant benefits to Wells Fargo and agree that these remedial corporate governance reforms

24  confer a benefit to Wells Fargo of $20 million.

25

26

27

28

1    Richard M. Heimann (063607)
     *rheimann@lchb.com*
2    Katherine C. Lubin (259826)
     *kbenson@lchb.com*
3    Michael K. Sheen (288284)
     *msheen@lchb.com*
4    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
     275 Battery Street, 29th Floor
5    San Francisco, CA 94111-3339
     Telephone: (415) 956-1000
6    Facsimile:  (415) 956-1008

7    *Attorneys for Co-Lead Plaintiff Fire & Police Pension*
     *Association of Colorado and Co-Lead Counsel*

8    Maya Saxena (*Pro hac vice*)
     *msaxena@saxenawhite.com*
9    Joseph E. White, III (*Pro hac vice*)
     *jwhite@saxenawhite.com*
10   Lester R. Hooker (241590)
     *lhooker@saxenawhite.com*
11   SAXENA WHITE P.A.
     150 East Palmetto Park Road, Suite 600
12   Boca Raton, FL  33432
     Telephone:  (561) 394-3399
13   Facsimile:  (561) 394-3382

14   [Additional Counsel on Signature Page]

15   *Attorneys for Co-Lead Plaintiff The City of Birmingham*
     *Retirement and Relief System and Co-Lead Counsel*

16

17                  UNITED STATES DISTRICT COURT

18                NORTHERN DISTRICT OF CALIFORNIA

19

| | |
|---|---|
| IN RE WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION | Lead Case No. 3:16-cv-05541-JST |
| This Document Relates to:<br>ALL ACTIONS. | **EXHIBIT B: FORFEITURE AND/OR RETURN OF EXECUTIVE COMPENSATION**<br><br>The Honorable Jon S. Tigar |

20

21

22

23

24

25

26

27

28

WHEREAS, beginning on September 29, 2016, separate Wells Fargo shareholders filed a series of putative shareholder derivative lawsuits in the United States District Court for the Northern District of California (the "Court") on behalf of themselves and derivatively on behalf of Wells Fargo & Company ("Wells Fargo" or "the Company" or the "Bank"), and against certain current and former officers and directors of Wells Fargo (the "Officer and Director Defendants"),[4] alleging, among other things, that employees in the Company's Community Bank opened accounts without customer knowledge or authorization, and that the Officer and Director Defendants breached their fiduciary duties to Wells Fargo in connection with these and other alleged improprieties.

WHEREAS, on February 24, 2017, Co-Lead Plaintiffs Fire & Police Pension Association of Colorado and The City of Birmingham Retirement and Relief System ("Co-Lead Plaintiffs") filed their Consolidated Amended Verified Shareholder Derivative Complaint (the "Complaint") in the Derivative Action.  Dkt. No. 83.

WHEREAS, the Complaint sought "rescission of the contracts between Defendants and Wells Fargo" due to the alleged breaches of duty and violations of law.  *Id.* at ¶¶ 576-77.

WHEREAS, the Complaint's Prayer for Relief sought a demand for judgment that included: "E. Extraordinary equitable or injunctive relief as permitted by law or equity, including attaching, impounding, imposing a constructive trust on, or otherwise restricting Defendants' assets so as to assure that Plaintiffs, on behalf of Wells Fargo, have an effective remedy."

WHEREAS, from September 25, 2016, through April 10, 2017, the special committee established by the Independent Directors of the Company (the "Oversight Committee") led an investigation, assisted by counsel, respecting sales practices and related matters, including determining appropriate remedial steps with respect to compensation actions; the Oversight Committee made its recommendations to the Board in the course of several meetings, and the independent directors published a final Sales Practices Investigation Report of the Independent Directors of the Board of Wells Fargo & Company on April 10, 2017.

---

[4]  Capitalized terms not separately defined herein have the meaning ascribed to them in the Settlement Stipulation.

NOW THEREFORE, Co-Lead Plaintiffs and Wells Fargo have agreed and acknowledge that facts alleged in the Derivative Action were significant factors taken into account by the Oversight Committee in conducting its investigation respecting Improper Sales Practices and in recommending appropriate remedial steps with respect to compensation reductions and forfeitures, including the following actions:

On February 21, 2017, the Board determined that several senior Community Bank executives terminated for cause, including Matthew Raphaelson (Head of Strategic Planning and Finance for the Community Bank), Claudia Russ Anderson (Group Risk Officer for the Community Bank), Shelley Freeman (Former Regional President for Los Angeles, and Lead Regional President for Florida), and Pamela Conboy (Lead Regional President for Arizona, Nevada, and Utah), would be required to return pay and stock grant compensation valued at approximately $15.5 million.

On February 28, 2017, the Board reduced compensation for eight then-current members of Wells Fargo's Operating Committee, including the heads of Corporate Risk, the Law Department, Human Resources and Audit, based on senior leadership's collective accountability for operational and reputational risk; annual 2016 bonuses for these individuals were eliminated and the 2014 Performance Share Award payout was reduced by up to 50%, for an aggregate reduction in compensation for these individuals of approximately $32 million.

On April 7, 2017, the Board determined that Defendant John G. Stumpf, the Company's former Chairman and Chief Executive Officer, would be required to return incentive compensation valued at approximately $28 million (the value at the time of distribution in March 2016 of shares issued to him following vesting of his Performance Share award granted on March 8, 2013).

On April 7, 2017, the Board determined that Defendant Carrie L. Tolstedt, the Company's former Senior Executive Vice President and head of Community Banking, would be required to forfeit her remaining outstanding stock option awards, valued at approximately $47 million (based on the closing price of the Company's common stock on April 7, 2017).

1    The personnel and compensation actions described above taken after the initiation of the

2  Derivative Action total $122.5 million.[5]  Co-Lead Plaintiffs and Wells Fargo have agreed and

3  acknowledge that facts alleged in the Derivative Action were a significant factor in the

4  determination to undertake the aforementioned personnel and compensation actions, and that

5  these remedial actions conferred a value to Wells Fargo of $60 million.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[5]  The Parties note that additional forfeitures, not listed above, from certain Officer Defendants occurred before the initiation of the Derivative Action.

1   Richard M. Heimann (063607)
    *rheimann@lchb.com*
2   Katherine C. Lubin (259826)
    *kbenson@lchb.com*
3   Michael K. Sheen (288284)
    *msheen@lchb.com*
4   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
5   San Francisco, CA 94111-3339
    Telephone: (415) 956-1000
6   Facsimile:  (415) 956-1008

7   *Attorneys for Co-Lead Plaintiff Fire & Police Pension*
    *Association of Colorado and Co-Lead Counsel*

8   Maya Saxena (*Pro hac vice*)
    *msaxena@saxenawhite.com*
9   Joseph E. White, III (*Pro hac vice*)
    *jwhite@saxenawhite.com*
10  Lester R. Hooker (241590)
    *lhooker@saxenawhite.com*
11  SAXENA WHITE P.A.
    150 East Palmetto Park Road, Suite 600
12  Boca Raton, FL  33432
    Telephone:  (561) 394-3399
13  Facsimile:  (561) 394-3382

14  *Attorneys for Co-Lead Plaintiff The City of Birmingham*
    *Retirement and Relief System and Co-Lead Counsel*

15

16                     UNITED STATES DISTRICT COURT

17                   NORTHERN DISTRICT OF CALIFORNIA

18

| | |
|---|---|
| 19  IN RE WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION | Lead Case No. 3:16-cv-05541-JST |
| 20 | |
| 21  This Document Relates to: ALL ACTIONS. | **EXHIBIT C: [PROPOSED] ORDER PRELIMINARILY APPROVING DERIVATIVE SETTLEMENT AND PROVIDING FOR NOTICE** |
| 22 | |
| 23 | The Honorable Jon S. Tigar |

24          WHEREAS, the Parties to the consolidated shareholder derivative action, styled *In re*

25  *Wells Fargo & Company Shareholder Derivative Litigation*, 3:16-cv-05541-JST (N.D. Cal.) (the

26  "Derivative Action"), currently pending before the United States District Court for the Northern

27  District of California (the "Court"), having applied pursuant to Federal Rule of Civil Procedure

28  23.1 for an order preliminarily approving ("Preliminary Approval Order") the proposed

EXHIBIT C
LEAD CASE NO: 3:16-CV-05541-JST

1   settlement of the Derivative Action in accordance with the Stipulation and Agreement of

2   Compromise, Settlement and Release entered into by the Parties on February 26, 2019 (the

3   "Stipulation" or the "Settlement"), upon the terms and conditions set forth therein;

4          WHEREAS, all capitalized terms contained herein shall have the same meanings and

5   definitions as set forth in the Stipulation and the Exhibits annexed thereto (in addition to those

6   capitalized terms defined herein); and

7          WHEREAS, the Court having read and considered the Stipulation and accompanying

8   documents; and all Parties having consented to the entry of this Preliminary Approval Order,

9          **NOW, THEREFORE,** this   day of  , 2019, upon application of the Parties, **IT IS**

10  **HEREBY ORDERED**:

11         1.      The Court does hereby preliminarily approve, subject to further consideration at

12  the Settlement Hearing described below, the Settlement, as embodied in the Stipulation and the

13  Exhibits attached thereto, including the terms and conditions for settlement of the Derivative

14  Action.

15         2.      For the purposes of the proposed Settlement only, the Court preliminarily finds

16  that the Derivative Action was properly brought as a derivative action for and on behalf of Wells

17  Fargo & Company ("Wells Fargo"), and that Co-Lead Plaintiffs fairly and adequately represent

18  the interests of Wells Fargo shareholders similarly situated in enforcing the rights of Wells Fargo.

19         3.      Co-Lead Counsel is authorized to act on behalf of Wells Fargo shareholders with

20  respect to all acts required by the Stipulation or such other acts which are reasonably necessary to

21  consummate the Settlement set forth in the Stipulation.

22         4.      A hearing (the "Settlement Hearing") shall be held before this Court on , 2019 at

23  _.m.,  Pacific Standard Time, at the United States District Court for the Northern District of

24  California, 450 Golden Gate Avenue, San Francisco, California 94102, to:

25         a.      determine whether the Settlement on the terms and conditions provided for in the
               Stipulation is fair, reasonable and adequate to Wells Fargo shareholders and to
26             Wells Fargo and should be approved by the Court;

27         b.      determine whether a Final Judgment and Order of Dismissal should be entered
               dismissing the Derivative Action with prejudice;
28

- 2 -

EXHIBIT C
LEAD CASE NO: 3:16-CV-05541-JST

c.     determine whether Co-Lead Counsel's application for an award of attorneys' fees (the "Fee Application"), and Co-Lead Plaintiffs' application for reimbursement of their time and costs relating to their prosecution of the Derivative Action (the "Reimbursement Awards") should be granted;

d.     hear and address any objections to the Settlement; and

e.     rule on such other matters as the Court may deem appropriate.

5.     The Court reserves the right to (i) approve the Settlement at or after the Settlement Hearing with such modification(s) as may be consented to by the Parties to the Stipulation and without further notice to Wells Fargo shareholders; and (ii) adjourn the Settlement Hearing or any adjournment thereof, without further notice of any kind to Wells Fargo shareholders.

6.     The Court approves, in form and substance, the Notice of Settlement of Shareholder Derivative Litigation and Hearing ("Notice") annexed as Exhibit A-1 hereto and the Summary Notice of Settlement of Shareholder Derivative Litigation ("Summary Notice"), annexed as Exhibit A-2 hereto, and finds that the form and method of notice specified herein constitutes the best notice practicable under the circumstances, constitutes due and sufficient notice of the Settlement Hearing to all persons entitled to receive such notice and fully satisfies the requirements of due process, Federal Rule of Civil Procedure 23.1 and applicable law.

7.     The Parties shall administer the notice procedure as more fully set forth below:

a.     (i) Not later than seven (7) calendar days following entry of this Preliminary Approval Order, Wells Fargo shall publish the Notice as a Current Report on Form 8-K filed with the Securities and Exchange Commission and shall publish the Stipulation and Notice on an Internet page created by Wells Fargo that will be accessible via a link on the "Investor Relations" page of http://www.wellsfargo.com, the address of which shall be contained in the Notice and Summary Notice and (ii) Wells Fargo shall send the Notice by U.S. Mail to any person who requests such Notice by calling a hotline number identified in the Summary Notice.

b.     Not later than seven (7) calendar days following entry of the Preliminary Approval Order, Wells Fargo shall publish the Summary Notice, or a substantially similar notice,

EXHIBIT C
LEAD CASE NO: 3:16-CV-05541-JST

1    once as a quarter-page advertisement in the national and local editions of the *Wall Street*

2    *Journal*, *New York Times*, *Los Angeles Times*, and *Investor Business Daily*.

3         c.     Not later than seven (7) calendar days following entry of the Preliminary Approval

4    Order, Co-Lead Counsel shall publish the Summary Notice, or a substantially similar

5    notice, via a national wire service.

6         d.     Not later than seven (7) calendar days following entry of the Preliminary Approval

7    Order, Co-Lead Counsel shall cause the Stipulation and Notice to be made electronically

8    available at a website created specifically for the purpose of disseminating notice (the

9    "Settlement Website"), the address of which shall be contained in the Notice and

10   Summary Notice.

11       8.      The Notice Costs described in paragraph 7 shall be borne in accordance with the

12   terms of the Stipulation.

13       9.      All Wells Fargo shareholders shall be bound by all orders, determinations and

14   judgments in the Derivative Action concerning the Settlement, whether favorable or unfavorable

15   to Wells Fargo shareholders.

16       10.     All proceedings and pending deadlines in the Derivative Action, other than such

17   proceedings as may be necessary to effectuate the terms and conditions of the Settlement are

18   hereby stayed and suspended until further order of this Court.

19       11.     All papers in support of the Settlement, the Fee Application and the

20   Reimbursement Awards shall be filed with the Court and served at least thirty-five (35) days

21   before the Settlement Hearing.

22       12.     All objections to the Settlement, the Fee Application and the Reimbursement

23   Awards shall be submitted to the Court either by mailing them to the Clerk of the Court, or by

24   filing them in person at any location of the United States District Court for the Northern District

25   of California on or before twenty-one (21) days before the Settlement Hearing.  All objections to

26   the Settlement, the Fee Application and the Reimbursement Awards are subject to paragraph 14

27   below and will potentially be waived and forever foreclosed, as outlined in paragraph 15 below.

28

EXHIBIT C
LEAD CASE NO: 3:16-CV-05541-JST

1    13.    All papers in response to any objection to the Settlement, the Fee Application and

2  the Reimbursement Awards shall be filed with the Court and served on or before seven (7) days

3  before the Settlement Hearing.

4    14.    Any Wells Fargo shareholder who objects to any aspect of the Settlement, the Fee

5  Application, the Reimbursement Awards or the Final Judgment and Order of Dismissal to be

6  entered in the Derivative Action, must provide in writing his or her full name, appropriate proof

7  of Wells Fargo stock ownership as of February 26, 2019 (the "Record Date"), the basis for that

8  objection, and his or her signature.  He or she may not ask the Court to order a larger settlement;

9  the Court can only approve or deny the Settlement.  He or she may also appear at the Settlement

10 Hearing, either in person or through his or her own attorney.  If he or she appears through his or

11 her own attorney, he or she is responsible for paying that attorney.  All written objections and

12 supporting papers must: (a) clearly identify the case name and number (*In re Wells Fargo &*

13 *Company Shareholder Derivative Litigation*, 3:16-cv-05541-JST (N.D. Cal.)); (b) be submitted to

14 the Court either by mailing them to the Clerk of the Court for the United States District Court for

15 the Northern District of California, 450 Golden Gate Avenue, Box 36060, San Francisco, CA

16 94102, or by filing them in person at any location of the United States District Court for the

17 Northern District of California; and (c) be filed or postmarked on or before twenty-one (21)

18 calendar days prior to the Settlement Hearing.

19   15.    Any Wells Fargo shareholder who fails to object in the manner described above

20 shall be deemed to have waived the right to object (including any right of appeal) and shall

21 forever be foreclosed from raising such objection to the fairness, reasonableness or adequacy of

22 the Settlement as incorporated in the Stipulation and to any Reimbursement Award or the award

23 of attorneys' fees and expenses to Co-Lead Counsel, unless otherwise ordered by the Court, but

24 shall otherwise be bound by the Preliminary Approval Order and the Final Judgment and Order of

25 Dismissal to be entered and the releases to be given.

26   16.    If the Settlement is approved by the Court following the Settlement Hearing, the

27 Final Judgment and Order of Dismissal will be entered as described in the Stipulation.  If the

28 Settlement, including any amendment made in accordance with the Stipulation, is not approved

by the Court or shall not become effective for any reason whatsoever, the Settlement (including any modification thereof made with the consent of the Parties as provided for in the Stipulation), any certifications herein and any actions taken or to be taken in connection therewith (including this Preliminary Approval Order and any judgment entered herein) shall be terminated and shall become null and void and of no further force and effect, except for Wells Fargo's and Co-Lead Counsel's obligations to pay, in accordance with the terms of the Stipulation, expenses incurred in connection with the provision of the notice prescribed by this Order.  In that event, neither the Stipulation, nor any provision contained in the Stipulation, nor any action undertaken pursuant thereto, nor the negotiation thereof by any party, shall be deemed an admission, concession or received as evidence in this or any other action or proceeding.

17.      The existence of the Stipulation, its contents and any negotiations, statements or proceedings in connection therewith will not be argued to be, and will not be construed or deemed to be, a presumption, concession or admission by any of the Released Parties or any other Person of any fault, liability or wrongdoing as to any facts or claims alleged or asserted in the Derivative Action or any of the actions listed in Section II.C of the Stipulation, or that Wells Fargo, Co-Lead Plaintiffs or Co-Lead Counsel, any present or former shareholders of Wells Fargo or any other Person, have suffered any damage attributable in any manner to any of the Released Parties.  Nor shall the existence of the Stipulation and its contents or any negotiations, statements or proceedings in connection therewith be construed as a presumption, concession or admission by Co-Lead Plaintiffs or Co-Lead Counsel of any lack of merit of the Released Claims, or that Wells Fargo has not suffered cognizable damages caused by Defendants.  The existence of the Stipulation, its contents or any negotiations, statements or proceedings in connection therewith, shall not be offered or admitted in evidence or referred to, interpreted, construed, invoked or otherwise used by any Person for any purpose in the Derivative Action or otherwise, except as may be necessary to effectuate the Settlement.  This provision shall remain in force in the event that the Settlement is terminated for any reason whatsoever.  Notwithstanding the foregoing, any of the Released Parties may file the Stipulation or any judgment or order of the Court related hereto in any other action that has been or may in the future be brought against them, in order to

1   support any and all defenses or counterclaims based on *res judicata*, collateral estoppel, release,

2   good-faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue

3   preclusion or similar defense or counterclaim, or as necessary for any of the Released Parties to

4   pursue their rights under any insurance policy.

5        18.     The Court retains jurisdiction to consider all further applications arising out of,

6   based upon or related to the Settlement.

7        **IT IS SO ORDERED.**

8

9   DATED: _____

10                                                    _____
                                                      THE HONORABLE JON S. TIGAR
10                                                    UNITED STATES DISTRICT
                                                      JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 7 -

EXHIBIT C
LEAD CASE NO: 3:16-CV-05541-JST

1 Richard M. Heimann (063607)
   *rheimann@lchb.com*
2 Katherine C. Lubin (259826)
   *kbenson@lchb.com*
3 Michael K. Sheen (288284)
   *msheen@lchb.com*
4 LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
5 San Francisco, CA 94111-3339
   Telephone: (415) 956-1000
6 Facsimile: (415) 956-1008

7 *Attorneys for Co-Lead Plaintiff Fire & Police Pension*
   *Association of Colorado and Co-Lead Counsel*

8 Maya Saxena (*Pro hac vice*)
   *msaxena@saxenawhite.com*
9 Joseph E. White, III (*Pro hac vice*)
   *jwhite@saxenawhite.com*
10 Lester R. Hooker (241590)
    *lhooker@saxenawhite.com*
11 SAXENA WHITE P.A.
    150 East Palmetto Park Road, Suite 600
12 Boca Raton, FL  33432
    Telephone:  (561) 394-3399
13 Facsimile:  (561) 394-3382

14 *Attorneys for Co-Lead Plaintiff The City of Birmingham*
   *Retirement and Relief System and Co-Lead Counsel*

15

16                   UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18

19 | IN RE WELLS FARGO & COMPANY | Lead Case No. 3:16-cv-05541-JST |
   | SHAREHOLDER DERIVATIVE | |
20 | LITIGATION | |
   | | **EXHIBIT D: NOTICE OF** |
21 | This Document Relates to: | **SETTLEMENT OF SHAREHOLDER** |
   | ALL ACTIONS. | **DERIVATIVE LITIGATION AND** |
22 | | **HEARING** |
23 | | **EXHIBIT A-1** |
24 | | The Honorable Jon S. Tigar |

25

26

27

28

**TO:    ALL RECORD AND BENEFICIAL OWNERS OF WELLS FARGO & COMPANY COMMON STOCK AS OF FEBRUARY 26, 2019 (THE "RECORD DATE"), WHO CONTINUE TO OWN SUCH SHARES ("WELLS FARGO SHAREHOLDERS")**

**PLEASE READ THIS NOTICE CAREFULLY**

**THIS NOTICE RELATES TO THE PENDENCY AND PROPOSED SETTLEMENT OF THIS SHAREHOLDER DERIVATIVE LITIGATION AND CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS CONCERNING THE LAWSUIT. THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF ANY CLAIMS OR DEFENSES IN THE LAWSUIT. THE STATEMENTS IN THIS NOTICE ARE NOT FINDINGS OF THE COURT.**

**YOU ARE HEREBY NOTIFIED,** pursuant to Federal Rule of Civil Procedure 23.1 and an Order of the United States District Court for the Northern District of California (the "Court"), that a proposed settlement (the "Settlement") has been reached among (i) Co-Lead Plaintiffs Fire & Police Pension Association of Colorado and The City of Birmingham Retirement and Relief System ("Co-Lead Plaintiffs") (on behalf of themselves and derivatively on behalf of Wells Fargo & Company) ("Wells Fargo" or "the Company" or the "Bank"); (ii) John G. Stumpf, Timothy J. Sloan, Carrie L. Tolstedt, John R. Shrewsberry, and Michael J. Loughlin (the "Officer Defendants"); (iii) John D. Baker II, Elaine L. Chao, John S. Chen, Lloyd H. Dean, Elizabeth A. Duke, Susan E. Engel, Enrique Hernandez, Jr., Donald M. James, Cynthia H. Milligan, Federico F. Peña, James H. Quigley, Judith M. Runstad, Stephen W. Sanger, Susan G. Swenson, and Suzanne M. Vautrinot (the "Director Defendants"); and (iv) Nominal Defendant Wells Fargo (together, with the Individual Defendants (defined *infra*), the "Defendants" and together with Co-Lead Plaintiffs, the "Parties") in the above-captioned derivative litigation (the "Derivative Action"). The Derivative Action has been brought derivatively on behalf of Wells Fargo to remedy the harm allegedly caused to the Company by the Defendants' alleged violations of federal law and breaches of fiduciary duties.

This Notice also informs you of the Court's preliminary approval of the Settlement and of your right to participate in a hearing to be held on     , 2019, before the Honorable Jon S. Tigar at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102 (the "Settlement Hearing"), to determine whether (i) the Settlement of the Derivative Action on the terms and conditions provided for in the Stipulation is

fair, reasonable and adequate to Wells Fargo shareholders and to Wells Fargo and should be approved by the Court; (ii) Co-Lead Counsel's Fee Application and Co-Lead Plaintiffs' Reimbursement Awards should be granted; and (iii) a Final Judgment and Order of Dismissal should be entered herein. ***Because this is a shareholder derivative action brought for the benefit of Wells Fargo, no individual Wells Fargo shareholder has the right to receive any individual compensation as a result of the settlement of this action.***

The Defendants have denied and continue to deny each and every one of the claims and contentions alleged by the Co-Lead Plaintiffs in the Derivative Action and in all of the actions referenced in Section II.C of the Settlement.  The Defendants expressly have denied and continue to deny all allegations of wrongdoing or liability against them or any of them arising out of, based upon or related to any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Derivative Action, and contend that many of the factual allegations in the Derivative Action are untrue and materially inaccurate.  The Defendants have further asserted and continue to assert that, at all relevant times, they acted in good faith and in a manner they reasonably believed to be in the best interests of Wells Fargo and its shareholders.

Nonetheless, the Defendants also have taken into account the expense, uncertainty and risks inherent in any litigation, especially in complex cases like the Derivative Action.  Therefore, the Defendants have determined that it is desirable and beneficial that the Derivative Action, and all of the Parties' disputes related thereto, be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.

**THE FOLLOWING RECITATION DOES NOT CONSTITUTE FINDINGS OF THE COURT.  IT IS BASED ON THE STATEMENTS OF THE PARTIES AND SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION OF THE COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES RAISED BY ANY OF THE PARTIES OR THE FAIRNESS OR ADEQUACY OF THE PROPOSED SETTLEMENT.**

## I.   THE DERIVATIVE ACTION

Beginning on September 29, 2016, separate Wells Fargo shareholders filed a series of putative shareholder derivative lawsuits in the United States District Court for the Northern

1   District of California (the "Court"), alleging, among other things, that employees in the

2   Company's Community Bank opened accounts without customer knowledge or authorization, and

3   that the Officer and Director Defendants breached their fiduciary duties to Wells Fargo in

4   connection with these and other alleged improprieties (as further defined in the Settlement, the

5   "Improper Sales Practices").

6        On January 12, 2017, following a hearing on the appointment of co-lead plaintiffs and co-

7   lead counsel, the Court issued an Order: (a) consolidating *Public School Teachers' Pension and*

8   *Ret. Fund of Chicago v. Stumpf*, Case No. 16-cv-7089-JST, into the Derivative Action;

9   (b) appointing the Fire & Police Pension Association of Colorado and the City of Birmingham

10  Retirement and Relief System as Co-Lead Plaintiffs; and (c) appointing Lieff Cabraser Heimann

11  & Bernstein, LLP and Saxena White P.A. as Co-Lead Counsel.

12       On February 24, 2017, Co-Lead Plaintiffs filed a consolidated amended verified

13  shareholder derivative complaint (the "Complaint") in the Derivative Action alleging generally,

14  on behalf of Wells Fargo, claims for breaches of fiduciary duty, unjust enrichment, breach of

15  fiduciary duty for insider selling and misappropriation of information, violations of Section 14(a)

16  of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 14a-9, Section 10(b)

17  of the Exchange Act and SEC Rule 10b-5 (the "Section 10(b) Claim"), Section 20A of the

18  Exchange Act, Section 29(b) of the Exchange Act, Section 25402 of the California Corporations

19  Code, Section 25403 of the California Corporations Code, corporate waste, and contribution and

20  indemnification.  As specified in the Complaint, some claims were asserted against all the Officer

21  and Director Defendants and some were asserted against a subset.

22       On March 17, 2017, Wells Fargo moved to dismiss the Complaint for failure to plead

23  demand futility pursuant to Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure.  On

24  May 4, 2017, following a hearing on Wells Fargo's motion to dismiss, the Court granted in part

25  and denied in part Wells Fargo's motion, holding that pre-litigation demand on the Wells Fargo

26  Board of Directors was excused and permitting Co-Lead Plaintiffs to pursue the surviving claims

27  asserted in the Derivative Action on the Bank's behalf.

28       On June 5, 2017, the Officer and Director Defendants filed a number of motions to

1  dismiss the Complaint for failure to state a claim.  On July 5, 2017, Co-Lead Plaintiffs filed an

2  omnibus opposition to the motions to dismiss.  On October 4, 2017, the Court denied in large part

3  Defendants' motions to dismiss.  The Court dismissed, without prejudice, the Section 10(b) Claim

4  against Defendant Loughlin and the claims against Defendants Sloan, Tolstedt, and Shrewsberry

5  for indemnification and contribution.  The Court dismissed, with prejudice, Co-Lead Plaintiffs'

6  Section 25402 California Corporations Code claim against Sloan, Tolstedt, Loughlin, and

7  Stumpf.  The Court sustained all other claims.

8      In addition to the Derivative Action, additional putative shareholder derivative litigations

9  purportedly on behalf of Wells Fargo and against some or all of the Individual Defendants,[6]

10  alleging the same or a similar course of conduct related to Improper Sales Practices, were filed.

11  These cases have been consolidated into the Derivative Action, stayed pending resolution of the

12  Derivative Action, or were voluntarily dismissed.

13      In the Derivative Action, Co-Lead Plaintiffs have sought and obtained extensive

14  document discovery from the Officer and Director Defendants, Wells Fargo and third parties.  As

15  of December 12, 2018, Co-Lead Counsel reviewed over 1.1 million pages of documents produced

16  in the Derivative Action, as well as tens of thousands of pages of documents from other civil and

17  regulatory proceedings, public reports, press coverage, and Congressional testimony related to

18  Improper Sales Practices.

19      In a total of seven in-person mediation sessions that commenced in August 2017 and took

20  place in San Francisco and New York City, the Parties and the Insurers (defined *infra*) engaged in

21  arm's-length discussions and negotiations regarding a potential resolution of the Derivative

22  Action.  At the end of the last full-day mediation session on December 4, 2018, these mediation

23  efforts culminated in a Mediators' proposal from Judge Daniel Weinstein (Ret.) and Mr. Jed

24  Melnick, Esq. (collectively, "the Mediators") which the Parties and the Insurers accepted, that

25  would resolve the Derivative Action, each of the actions referenced in Section II.C of the

26

27  [6] "Individual Defendants" means, collectively, the Officer Defendants, the Director Defendants, and Richard D. McCormick, Mackey J. McDonald, Nicholas G. Moore, Philip J. Quigley and

28  Howard V. Richardson.

1    Settlement, and the CPI Derivative Actions.[7]

2         On December 12, 2018, the Parties accepted the Mediators' proposal consisting of (i) a

3    monetary payment of $240 million to be paid by the Insurers to Wells Fargo;

4    (ii) acknowledgement from Wells Fargo that facts alleged in the Derivative Action were a

5    significant factor in causing certain corporate governance changes undertaken by Wells Fargo

6    during the pendency of the Derivative Action (the "Corporate Governance Reforms") (*see*

7    Stipulation Ex. A), which include improvement to Wells Fargo's internal controls, internal

8    reporting, and expanded and enhanced oversight of risk management by the Board of Directors;

9    and (iii) acknowledgement from Wells Fargo that facts alleged in the Derivative Action were a

10   significant factor in causing certain remedial steps with respect to compensation reductions and

11   forfeitures undertaken by Wells Fargo during the pendency of the Derivative Action (the

12   "Clawbacks") (*see* Stipulation Ex. B).  The Parties agreed as part of the Mediators' proposal that

13   the Corporate Governance Reforms and the Clawbacks have a combined value to Wells Fargo of

14   $80 million, for a total settlement value to Wells Fargo of $320 million, not including the Co-

15   Lead Plaintiffs' counsel's fee award.

16        On February 26, 2019, the Parties executed the Stipulation which sets forth the complete

17   terms of the Settlement.

18        On _____, 2019, the Court entered an order (the "Preliminary Approval

19   Order") preliminarily approving the Settlement, setting a schedule for the Court's final review of

20   the Settlement, and establishing customary notice and objection procedures for Wells Fargo

21   shareholders.

22   **VI.    BENEFITS TO WELLS FARGO FROM THE SETTLEMENT**

23        Co-Lead Counsel engaged in arm's-length negotiations with counsel for Wells Fargo and

24   ───────────────

[7] "CPI Derivative Actions" means *In re Wells Fargo & Co Auto Ins. Derivative Litig.*, No. CGC
25   17-561118 (S.F. Super.), *Feuer v. Baker*, No. 3:18-cv-02866-JST (N.D. Cal.), *Himstreet v. Sloan*,
     No. 3:18-cv-02922-JST (N.D. Cal.), and the CPI Allegations in the *Connecticut Laborers* Action.
26   CPI Allegations means the allegations that certain Individual Defendants violated their duties to
     the Company concerning the provision of collateral protection insurance, overcharging auto loan
27   customers for Guaranteed Asset Protection insurance, charging customers related to mortgage
     interest rates and so-called "rate-locks," violations of the Servicemembers Civil Relief Act, 50
28   U.S.C. App. § 3901 *et seq.*, and the fees charged to customers by the Company's foreign
     exchange unit.

1   the Defendants with a view to achieving the benefits of this Settlement.  Co-Lead Counsel

2   believes that the Settlement provides an excellent outcome for Wells Fargo based upon the claims

3   asserted against the Defendants, the evidence developed, and the recoverable damages that might

4   be proven at trial.  Co-Lead Counsel have concluded that the terms and conditions of the

5   Settlement are fair, reasonable and adequate to the Company and its shareholders, and in their

6   best interests, and have agreed to settle the claims asserted in the Derivative Action pursuant to

7   the terms and provisions of the Stipulation, after considering: (i) the substantial benefits that the

8   Company and its shareholders will receive from the settlement of the Derivative Action; (ii) the

9   attendant risks of continued litigation against the Defendants, especially in complex actions such

10  as this Derivative Action, as well as the difficulties and delays inherent in such litigation; and (iii)

11  the desirability of permitting the Settlement to be consummated, as provided by the terms of the

12  Stipulation.  Wells Fargo has acknowledged the substantial benefits conferred on it by the

13  Settlement.

14  **VII.    DEFENDANTS' DENIALS OF WRONGDOING**

15         The Defendants have denied and continue to deny each and every one of the claims and

16  contentions alleged by the Co-Lead Plaintiffs in the Derivative Action and in all of the actions

17  referenced in Section II.C of the Settlement.

18         The Defendants expressly have denied and continue to deny all allegations of wrongdoing

19  or liability against them or any of them arising out of, based upon or related to any of the conduct,

20  statements, acts or omissions alleged, or that could have been alleged, in the Derivative Action or

21  in any of the actions referenced in Section II.C of the Settlement, and contend that many of the

22  factual allegations in the Derivative Action and the actions referenced in Section II.C of the

23  Settlement are untrue and materially inaccurate.  The Defendants have further asserted and

24  continue to assert that, at all relevant times, they acted in good faith and in a manner they

25  reasonably believed to be in the best interests of Wells Fargo and its shareholders.

26         Nonetheless, the Defendants also have taken into account the expense, uncertainty and

27  risks inherent in any litigation, especially in complex cases like the Derivative Action.  Therefore,

28  the Defendants have determined that it is desirable and beneficial that the Derivative Action, and

1   all of the Parties' disputes related thereto, be fully and finally settled in the manner and upon the

2   terms and conditions set forth in the Stipulation.  Pursuant to the terms set forth below, the

3   Stipulation (including all of the Exhibits hereto) shall in no event be construed as or deemed to be

4   evidence of an admission or concession by the Defendants with respect to any claim of fault,

5   liability, wrongdoing, or damage whatsoever.

6   **VIII.   TERMS OF THE PROPOSED SETTLEMENT**

7           The full terms and conditions of the Settlement are embodied in the Stipulation and

8   Agreement of Settlement, which is on file with the Court.  The following is only a summary of

9   the Stipulation.

10          In consideration of the full settlement, satisfaction, compromise and release of the

11  Released Claims, the Monetary Consideration of $240 million shall be paid by the Insurers on

12  behalf of the Individual Defendants to Wells Fargo.  The Insurers shall cause the Monetary

13  Consideration to be paid to Wells Fargo within thirty (30) calendar days of the Effective Date.

14          Wells Fargo agrees and acknowledges that facts alleged in the Derivative Action were a

15  significant factor in Wells Fargo's decision to adopt and implement the Corporate Governance

16  Reforms (*see* Stipulation Ex. A) and the Clawbacks (*see* Stipulation Ex. B) during the pendency

17  of the Derivative Action.  The Parties agreed as part of the Mediator's proposal that the Corporate

18  Governance Reforms and the Clawbacks set forth in Exhibits A and B to the Stipulation have a

19  value to Wells Fargo of $80 million, for a total Settlement value to Wells Fargo of $320 million,

20  not including Co-Lead Plaintiffs' counsel's fee award.

21  **IX.   DISMISSALS AND RELEASES**

22          The Stipulation provides that, subject to approval by the Court pursuant to Federal Rule of

23  Civil Procedure 23.1, for good and valuable consideration, the Derivative Action shall be

24  dismissed on the merits with prejudice as to all Defendants and against Co-Lead Plaintiffs and all

25  Wells Fargo shareholders, and all Released Claims (defined below) shall be completely, fully,

26  finally and forever released, relinquished, settled, discharged and dismissed with prejudice and

27

28

1    without costs, as to all Released Parties.[8]

2        19.    "Released Claims" means any and all manner of claims, demands, rights,

3    liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties,

4    sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements,

5    judgments, decrees, matters, issues and controversies of any kind, nature or description

6    whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued,

7    apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or

8    unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims,

9    whether based on state, local, foreign, federal, statutory, regulatory, common or other law or rule,

10    brought or that could be brought derivatively or otherwise by or on behalf of Wells Fargo against

11    any of the Released Parties, which now or hereafter are based upon, arise out of, relate in any way

12    to, or involve, directly or indirectly, any of the actions, transactions, occurrences, statements,

13    representations, misrepresentations, omissions, allegations, facts, practices, events, claims or any

14    other matters, things or causes whatsoever, or any series thereof, that are, were, could have been,

15    or in the future can or might be alleged, asserted, set forth, claimed, embraced, involved or

16    referred to in the Derivative Action and relate to, directly or indirectly, the subject matter of the

17    _____
[8] "Released Parties" means (i) the Individual Defendants; (ii) Wells Fargo, as the Nominal
18    Defendant; (iii) American Express; and (iv) the Related Parties. "Related Parties" means (i) as to
Wells Fargo, Wells Fargo's past or present directors and officers, employees, agents, attorneys,
personal or legal representatives, consultants, experts, predecessors, successors, parents,
19    subsidiaries, affiliates, divisions, joint ventures, assigns, general or limited partners or
partnerships, limited liability companies, any entity in which Wells Fargo has a controlling
20    interest, and all past or present officers, directors and employees of Wells Fargo's current and
former subsidiaries and affiliates, the foregoing to include any person insured under the D&O
21    Policies, and (ii) as to the Individual Defendants (1) each spouse, immediate family member, heir,
executor, estate, administrator, agent, attorney, accountant, auditor, bank, insurer (including the
22    Insurers), co-insurer, re-insurer, advisor, consultant, expert, or affiliate of any of them, (2) any
trust in respect of which any Individual Defendant, or any spouse or family member thereof
23    serves as a settlor, beneficiary or trustee, and (3) any entity in which an Individual Defendant, or
any spouse or immediate family member thereof, holds a controlling interest or for which an
24    Individual Defendant has served as an employee, director, officer, managing director, advisor,
general partner, limited partner, or member and any collective investment vehicle which is
25    advised or managed by any of them; provided, however, that the releases shall in no event release
any claims in connection with certain directors and officers liability insurance policies (the "D&O
26    Policies") or reinsurance of D&O coverage that the Individual Defendants or Wells Fargo may
have against any of the insurance companies who issued the D&O Policies (the "Insurers"),
27    except as set forth in the agreement by and among Wells Fargo, certain current and former
officers and directors of Wells Fargo, and the Insurers, confirming the Insurers' agreement to pay
28    the Monetary Consideration and those officers' and directors' releases of certain insurance claims
(the "Insurance Agreement").

1   Derivative Action in any court, tribunal, forum or proceeding, including, without limitation, any

2   and all claims by or on behalf of Wells Fargo which are based upon, arise out of, relate in any

3   way to, or involve, directly or indirectly: (i) Improper Sales Practices; or (ii) any of the

4   allegations in any complaint or amendment(s) thereto filed in (x) the Derivative Action or (y) any

5   action described in Section II.C of the Settlement, with the exception, as described therein, of the

6   CPI Allegations in the *Connecticut Laborers* Action.  "Released Claims" does not include (1)

7   claims to enforce the Settlement; (2) any direct claims on behalf of present or former Wells Fargo

8   shareholders (*i.e.*, not derivative claims) that are or were being prosecuted in *Hefler v. Wells*

9   *Fargo & Co.*, No. 3:16-cv-05479-JST (N.D. Cal.); and (3) any claims in connection with the

10  D&O Policies or reinsurance of D&O coverage that the Individual Defendants or Wells Fargo

11  may have against any of the Insurers, except as set forth in the Insurance Agreement.

12          "Unknown Claims" means any Released Claims which Co-Lead Plaintiffs, Wells Fargo,

13  or any of the current Wells Fargo shareholders do not know or suspect exist in his, her or its favor

14  at the time of the release of the Released Claims as against the Released Parties, including

15  without limitation those which, if known, might have affected the decision to enter into or object

16  to the Settlement.  With respect to any and all Released Claims, and although the Settlement

17  provides for a specific release of the Released Parties, the Parties stipulate and agree that, upon

18  the Effective Date Co-Lead Plaintiffs, Wells Fargo, and each of the current Wells Fargo

19  shareholders shall be deemed to have, and by operation of the Final Judgment and Order of

20  Dismissal shall have, waived the provisions, rights and benefits of California Civil Code § 1542,

21  which provides:

22          **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
        THAT THE CREDITOR OR RELEASING PARTY DOES
23      NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
        FAVOR AT THE TIME OF EXECUTING THE RELEASE
24      AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE
        MATERIALLY AFFECTED HIS OR HER SETTLEMENT
25      WITH THE DEBTOR OR RELEASED PARTY.**

26  Co-Lead Plaintiffs, Wells Fargo, and each of the current Wells Fargo shareholders shall be

27  deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have,

28  waived any and all provisions, rights and benefits conferred by any law of any jurisdiction, state

- 10 -

or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542.  Any of Co-Lead Plaintiffs, Wells Fargo, or the current Wells Fargo shareholders may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the Released Claims but, upon the Court's entry of the Final Judgment and Order of Dismissal, Co-Lead Plaintiffs, Wells Fargo, and each of the current Wells Fargo shareholders shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever settled and released any and all Released Claims known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Parties shall be deemed by operation of the Final Judgment and Order of Dismissal to have acknowledged that the foregoing waivers were separately bargained for and are key elements of the Settlement of which this release is a part.

## X.   ATTORNEYS' FEES AND CO-LEAD PLAINTIFFS' REIMBURSEMENT AWARDS

To date, Co-Lead Counsel have not received any payment for their services in prosecuting the Derivative Action.  The fee requested by Co-Lead Counsel would compensate counsel for their efforts in achieving the benefits for the Company described in detail in the Stipulation and for their risk in undertaking this representation on a contingency basis.

As part of their papers in support of Settlement filed at least thirty-five (35) days in advance of the Settlement Hearing, Co-Lead Counsel intend to apply to the Court for an award of fees in connection with the Derivative Action (the "Fee Application").  Defendants and Wells Fargo agree that Co-Lead Counsel are entitled to an award of reasonable attorneys' fees in an amount not to exceed $68 million.  As part of the Fee Application, Co-Lead Counsel will ask the Court to award attorneys' fees in an amount not to exceed $68 million.  As part of the Fee

1   Application, Co-Lead Counsel shall seek reimbursement awards for Co-Lead Plaintiffs not to

2   exceed more than $25,000 for each Co-Lead Plaintiff reimbursing them for their time and costs

3   relating to the prosecution of the Derivative Action (the "Reimbursement Awards"), which

4   awards will be paid from Co-Lead Counsel's attorneys' fees.  As part of the Settlement Hearing,

5   the Court will consider the Fee Application and any objections thereto.  The Settlement, however,

6   is not conditioned on the Court granting the Fee Application or awarding any particular amount of

7   attorneys' fees or Reimbursement Awards.

8           The Fee Application and information regarding the hearing to consider the Fee

9   Application will be made available at www._____.com or by calling (xxx) xxx-xxxx.

10  **XI.    SETTLEMENT HEARING**

11          The Court has scheduled the Settlement Hearing for _____, 2019 at _____ _.m.,

12  Pacific Standard Time, at the United States District Court for the Northern District of California,

13  450 Golden Gate Avenue, San Francisco, California 94102, to: (i) determine whether the

14  Settlement of the Derivative Action on the terms and conditions provided for in the Stipulation is

15  fair, reasonable and adequate to the Wells Fargo shareholders and to Wells Fargo and should be

16  approved by the Court; (ii) determine whether the Final Judgment and Order of Dismissal should

17  be entered in the Derivative Action pursuant to the Stipulation; (iii) determine whether Co-Lead

18  Counsel's Fee Application and Co-Lead Plaintiffs' Reimbursement Awards should be approved;

19  (iv) hear and address any objections to the Settlement; and (v) rule on such other matters as the

20  Court may deem appropriate.

21          The Court has reserved the right to adjourn the Settlement Hearing or any adjournment

22  thereof, without further notice of any kind to Wells Fargo shareholders.  The Court has also

23  reserved the right to approve the Settlement at or after the Settlement Hearing with such

24  modification(s) as may be consented to by the parties to the Stipulation and without further notice

25  to Wells Fargo shareholders.

26  **XII.   RIGHT TO APPEAR AND OBJECT**

27          If you wish to object to any aspect of the Settlement, the Fee Application, the

28  Reimbursement Awards, or the Final Judgment and Order of Dismissal, you must provide in

writing your full name, appropriate proof of your Wells Fargo stock ownership as of the Record Date, the basis for your objection, and your signature.  You may not ask the Court to order a larger settlement; the Court can only approve or deny the Settlement.  You may also appear at the Settlement Hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for paying that attorney.  All written objections and supporting papers must: (a) clearly identify the case name and number (*In re Wells Fargo & Company Shareholder Derivative Litigation*, 3:16-cv-05541-JST (N.D. Cal.)); (b) be submitted to the Court either by mailing them to the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102, or by filing them in person at any location of the United States District Court for the Northern District of California; and (c) be filed or postmarked on or before twenty-one (21) calendar days prior to the Settlement Hearing.

Any Wells Fargo shareholder who fails to object in the manner described above shall be deemed to have waived the right to object (including any right of appeal) and shall forever be foreclosed from raising such objection to the fairness, reasonableness or adequacy of the Settlement as incorporated in the Stipulation, to the award of attorneys' fees to Co-Lead Counsel, and to Co-Lead Plaintiffs' Reimbursement Awards, unless otherwise ordered by the Court, but shall otherwise be bound by the Preliminary Approval Order and the Final Judgment and Order of Dismissal to be entered and the releases to be given.

## XIII.   ORDER AND FINAL JUDGMENT OF THE COURT

If the Court determines that the Settlement is fair, reasonable and adequate, the Parties will ask the Court to enter a Final Judgment and Order of Dismissal, which will, among other things:

1.      Approve the Settlement as fair, reasonable and adequate to Wells Fargo and its shareholders;

2.      Grant Co-Lead Counsel's Fee Application and Co-Lead Plaintiffs' Reimbursement Awards;

3.      As of the Final Date, release and discharge the Released Parties from any and all liability with respect to the Released Claims; and

4.      As of the Final Date, permanently bar and enjoin the institution or prosecution against the Released Parties of any action asserting or relating in any way to the Released Claims.

## XIV.   SCOPE OF THE NOTICE

This Notice contains only a summary of the Derivative Action and the terms of the proposed Settlement.  For a more detailed statement of the matters involved in the Derivative Action, reference is made to the pleadings, to the Stipulation and to all other papers publicly filed in the Derivative Action, which may be inspected by you or your attorney at the Office of the Clerk of Court for the United States District Court for the Northern District of California, United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, during regular business hours of each business day.

Please visit www._____.com or call (xxx) xxx-xxxx if you wish to obtain a copy of the Stipulation.  Should you have any other questions regarding the proposed Settlement or the Derivative Action, please contact Co-Lead Counsel for Co-Lead Plaintiffs:

| | |
|---|---|
| LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP<br>Richard M. Heimann<br>Katherine C. Lubin<br>Michael K. Sheen<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339 | SAXENA WHITE P.A.<br>Maya Saxena<br>Joseph E. White, III<br>Lester R. Hooker<br>150 East Palmetto Park Road, Suite 600<br>Boca Raton, FL  33432 |

**PLEASE DO NOT CALL OR WRITE THE COURT REGARDING THIS NOTICE.**

DATED: _____, 2019       BY ORDER OF THE UNITED STATES DISTRICT
                                    COURT FOR THE NORTHERN DISTRICT OF
                                    CALIFORNIA

EXHIBIT D
LEAD CASE NO: 3:16-CV-05541-JST

1    Richard M. Heimann (063607)
     *rheimann@lchb.com*
2    Katherine C. Lubin (259826)
     *kbenson@lchb.com*
3    Michael K. Sheen (288284)
     *msheen@lchb.com*
4    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
     275 Battery Street, 29th Floor
5    San Francisco, CA 94111-3339
     Telephone: (415) 956-1000
6    Facsimile: (415) 956-1008

7    *Attorneys for Co-Lead Plaintiff Fire & Police Pension*
     *Association of Colorado and Co-Lead Counsel*

8
     Maya Saxena (*Pro hac vice*)
9    *msaxena@saxenawhite.com*
     Joseph E. White, III (*Pro hac vice*)
10   *jwhite@saxenawhite.com*
     Lester R. Hooker (241590)
11   *lhooker@saxenawhite.com*
     SAXENA WHITE P.A.
12   150 East Palmetto Park Road, Suite 600
     Boca Raton, FL  33432
13   Telephone:  (561) 394-3399
     Facsimile:  (561) 394-3382

14   *Attorneys for Co-Lead Plaintiff The City of Birmingham*
     *Retirement and Relief System and Co-Lead Counsel*

15

16                 UNITED STATES DISTRICT COURT

17               NORTHERN DISTRICT OF CALIFORNIA

18

| 19 | IN RE WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION | Lead Case No. 3:16-cv-05541-JST |
|---|---|---|
| 20 | | |
| 21 | This Document Relates to: ALL ACTIONS. | **EXHIBIT E: SUMMARY NOTICE OF SETTLEMENT OF SHAREHOLDER DERIVATIVE LITIGATION** |
| 22 | | |
| 23 | | **EXHIBIT A-2** |
| 24 | | The Honorable Jon S. Tigar |

25

26

27

28

EXHIBIT E
LEAD CASE NO: 3:16-CV-05541-JST

**TO:   ALL RECORD AND BENEFICIAL OWNERS OF WELLS FARGO & COMPANY COMMON STOCK AS OF FEBRUARY 26, 2019 (THE "RECORD DATE"), WHO CONTINUE TO OWN SUCH SHARES ("WELLS FARGO SHAREHOLDERS")**

**YOU ARE HEREBY NOTIFIED**, that pursuant to an Order of the United States District Court for the Northern District of California, a hearing will be held on        , 2019, at      _.m., before the Honorable Jon S. Tigar, United States District Judge, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, for the purpose of determining whether the proposed settlement of the above captioned derivative action (the "Derivative Action"), with a total settlement value of $320 million (as described below), should be approved as fair, reasonable and adequate, and whether a judgment dismissing the Defendants from the Derivative Action with prejudice should be entered.  As part of the hearing, the Court will consider an application by Co-Lead Counsel in the Derivative Action for an award of attorneys' fees not to exceed $68 million and reimbursement awards for Co-Lead Plaintiffs to be paid from Co-Lead Counsel's attorneys' fees not to exceed $25,000. ***Because this is a shareholder derivative action brought for the benefit of Wells Fargo, no individual Wells Fargo shareholder has the right to receive any individual compensation as a result of the settlement of this action.***

The benefits to the Company of the proposed Settlement, which is subject to Court approval, include Monetary Consideration of $240 million in value.  Wells Fargo also agrees and acknowledges that facts alleged in the Derivative Action were a significant factor in causing (i) certain corporate governance changes undertaken by Wells Fargo during the pendency of the Derivative Action (the "Corporate Governance Reforms") (*see* Stipulation Ex. A), which include improvement to Wells Fargo's internal controls, internal reporting, and expanded and enhanced oversight of risk management by the Board of Directors; and (ii) certain remedial steps with respect to compensation reductions and forfeitures undertaken by Wells Fargo during the pendency of the Derivative Action (the "Clawbacks") (*see* Stipulation Ex. B).  The Parties agreed that the Corporate Governance Reforms and the Clawbacks set forth in Exhibits A and B to the Stipulation have a value to Wells Fargo of $80 million, for a total Settlement value to Wells Fargo of $320 million, not including the Co-Lead Plaintiffs' counsel's fee award.

**IF YOU ARE AN OWNER OF WELLS FARGO COMMON STOCK, YOUR RIGHTS MAY BE AFFECTED BY THE SETTLEMENT.**  A more detailed form of notice describing the Settlement has been published as a Current Report on Form 8-K filed with the Securities and Exchange Commission, has been published on Wells Fargo's company website at www.____.com, and is also available at www._____.com.

Inquiries, other than requests for the detailed form of notice, may be made to a representative of Co-Lead Counsel.  Should you have any other questions regarding the proposed Settlement or the Derivative Action, please contact Co-Lead Counsel for Plaintiffs:

| **LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP** | **SAXENA WHITE P.A.** |
|---|---|
| Richard M. Heimann | Maya Saxena |
| Katherine C. Lubin | Joseph E. White, III |
| Michael K. Sheen | Lester R. Hooker |
| 275 Battery Street, 29th Floor | 150 East Palmetto Park Road, Suite 600 |
| San Francisco, CA 94111-3339 | Boca Raton, FL 33432 |

Wells Fargo shareholders who have no objection to the Settlement do not need to appear at the final approval hearing or take any action.

If you wish to object to any aspect of the Settlement, the Fee Application, the Reimbursement Awards, or the Final Judgment and Order of Dismissal, you must provide in writing your full name, appropriate proof of your Wells Fargo stock ownership as of the Record Date, the basis for your objection, and your signature.  You may not ask the Court to order a larger settlement; the Court can only approve or deny the Settlement.  You may also appear at the Settlement Hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for paying that attorney.  All written objections and supporting papers must: (a) clearly identify the case name and number (*In re Wells Fargo & Company Shareholder Derivative Litigation*, 3:16-cv-05541-JST (N.D. Cal.)); (b) be submitted to the Court either by mailing them to the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102, or by filing them in person at any location of the United States District Court for the Northern

1   District of California; and (c) be filed or postmarked on or before twenty-one (21) calendar days

2   prior to the Settlement Hearing.

3   **PLEASE DO NOT CALL OR WRITE THE COURT OR THE CLERK OF THE**

4   **COURT REGARDING THIS NOTICE.**

5   DATED: _____, 2019       BY ORDER OF THE UNITED STATES DISTRICT
                                        COURT FOR THE NORTHERN DISTRICT OF
6                                       CALIFORNIA

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Richard M. Heimann (063607)
    *rheimann@lchb.com*
2   Katherine C. Lubin (259826)
    *kbenson@lchb.com*
3   Michael K. Sheen (288284)
    *msheen@lchb.com*
4   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
5   San Francisco, CA 94111-3339
    Telephone: (415) 956-1000
6   Facsimile: (415) 956-1008

7   *Attorneys for Co-Lead Plaintiff Fire & Police Pension*
    *Association of Colorado and Co-Lead Counsel*

8
    Maya Saxena (*Pro hac vice*)
9   *msaxena@saxenawhite.com*
    Joseph E. White, III (*Pro hac vice*)
10  *jwhite@saxenawhite.com*
    Lester R. Hooker (241590)
11  *lhooker@saxenawhite.com*
    SAXENA WHITE P.A.
12  150 East Palmetto Park Road, Suite 600
    Boca Raton, FL  33432
13  Telephone:  (561) 394-3399
    Facsimile:  (561) 394-3382

14  *Attorneys for Co-Lead Plaintiff The City of Birmingham*
    *Retirement and Relief System and Co-Lead Counsel*

15

16                  UNITED STATES DISTRICT COURT

17                 NORTHERN DISTRICT OF CALIFORNIA

18

| 19  IN RE WELLS FARGO & COMPANY | Lead Case No. 3:16-cv-05541-JST |
| SHAREHOLDER DERIVATIVE | |
| 20  LITIGATION | |
| | **EXHIBIT F: [PROPOSED] FINAL** |
| 21  This Document Relates to: | **JUDGMENT AND ORDER OF** |
| ALL ACTIONS. | **DISMISSAL** |
| 22 | |
| 23 | The Honorable Jon S. Tigar |

24

25

26

27

28

A hearing having been held before this Court on _____, 2019, pursuant to the Court's Order of _____, 2019 (the "Preliminary Approval Order"), on the application of the Parties for approval of the settlement set forth in the Stipulation and Agreement of Compromise, Settlement and Release, executed on February 26, 2019 (the "Stipulation" or "Settlement"); due and adequate notice of the Settlement having been given as required in said Preliminary Approval Order; and the Court having considered all papers filed and proceedings held herein, and otherwise being fully informed, and good cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED,** this _____ day of _____, 2019, that:

1.      This Final Judgment and Order of Dismissal incorporates by reference the definitions in the Stipulation, and all capitalized terms used herein shall have the meanings as set forth in the Stipulation.

2.      Notice has been given to shareholders of Wells Fargo & Company ("Wells Fargo" or the "Company") pursuant to and in the manner directed by the Preliminary Approval Order; proof of publication of the required notice was filed with the Court; and a full opportunity to be heard has been afforded to all parties, Wells Fargo shareholders and other interested persons.  The form and manner of the notice provided is hereby confirmed to have been the best notice practicable under the circumstances and to have been given in full compliance with each of the requirements of Federal Rule of Civil Procedure 23.1, due process and applicable law, and it is further determined that all Wells Fargo shareholders are bound by the Final Judgment and Order of Dismissal herein.

3.      The Court reconfirms that, for settlement purposes only, the Derivative Action is properly maintained as a shareholder derivative action on behalf of Wells Fargo, and that Co-Lead Plaintiffs fairly and adequately represented the interests of Wells Fargo and its shareholders. Co-Lead Counsel is authorized to act on behalf of Wells Fargo shareholders with respect to all acts required by the Stipulation or such other acts which are reasonably necessary to consummate the Settlement set forth in the Stipulation.

4.      The Settlement is found to be fair, reasonable and adequate, and is hereby approved in all respects pursuant to Federal Rule of Civil Procedure 23.1.  The Parties are hereby authorized and directed to comply with and to consummate the Settlement in accordance with its terms and provisions, and the Clerk is directed to enter and docket this Final Judgment and Order of Dismissal in the Derivative Action.  The Court finds that this Final Judgment and Order of Dismissal is a final judgment and should be entered in accordance with Federal Rule of Civil Procedure 58.

5.      This Court has jurisdiction over the subject matter of the Derivative Action, including all matters necessary to effectuate the Settlement and this Final Judgment and over all parties to the Derivative Action.

6.      The Derivative Action and the Released Claims are hereby dismissed on the merits with prejudice as to all Defendants in the Derivative Action and against all Released Parties on the merits and, except as may be awarded by the Court as contemplated below in Paragraph 14, without fees or costs.

7.      "Released Claims" means any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims, whether based on state, local, foreign, federal, statutory, regulatory, common or other law or rule, brought or that could be brought derivatively or otherwise by or on behalf of Wells Fargo against any of the Released Parties, which now or hereafter are based upon, arise out of, relate in any way to, or involve, directly or indirectly, any of the actions, transactions, occurrences, statements, representations, misrepresentations, omissions, allegations, facts, practices, events, claims or any other matters, things or causes whatsoever, or any series thereof, that are, were, could have been, or in the future can or might be alleged, asserted, set forth, claimed, embraced, involved or

referred to in the Derivative Action and relate to, directly or indirectly, the subject matter of the Derivative Action in any court, tribunal, forum or proceeding, including, without limitation, any and all claims by or on behalf of Wells Fargo which are based upon, arise out of, relate in any way to, or involve, directly or indirectly: (i) Improper Sales Practices; or (ii) any of the allegations in any complaint or amendment(s) thereto filed in (x) the Derivative Action or (y) any action described in Section II.C of the Stipulation, with the exception, as described therein, of the CPI Allegations in the *Connecticut Laborers* Action.  "Released Claims" does not include (1) claims to enforce the Settlement; (2) any direct claims on behalf of present or former Wells Fargo shareholders (*i.e.*, not derivative claims) that are or were being prosecuted in *Hefler v. Wells Fargo & Co.*, No. 3:16-cv-05479-JST (N.D. Cal.); and (3) any claims in connection with the D&O Policies or reinsurance of D&O coverage that the Individual Defendants or Wells Fargo may have against any of the Insurers, except as set forth in the Insurance Agreement.

8.     "Released Parties" means (i) the Individual Defendants; (ii) Wells Fargo, as the Nominal Defendant; (iii) American Express; and (iv) the Related Parties.  "Related Parties" means (i) as to Wells Fargo, Wells Fargo's past or present directors and officers, employees, agents, attorneys, personal or legal representatives, consultants, experts, predecessors, successors, parents, subsidiaries, affiliates, divisions, joint ventures, assigns, general or limited partners or partnerships, limited liability companies, any entity in which Wells Fargo has a controlling interest, and all past or present officers, directors and employees of Wells Fargo's current and former subsidiaries and affiliates, the foregoing to include any Person insured under the D&O Policies, and (ii) as to the Individual Defendants (1) each spouse, immediate family member, heir, executor, estate, administrator, agent, attorney, accountant, auditor, bank, insurer (including the Insurers), co-insurer, re-insurer, advisor, consultant, expert, or affiliate of any of them, (2) any trust in respect of which any Individual Defendant, or any spouse or family member thereof serves as a settlor, beneficiary or trustee, and (3) any entity in which an Individual Defendant, or any spouse or immediate family member thereof, holds a controlling interest or for which an Individual Defendant has served as an employee, director, officer, managing director, advisor, general partner, limited partner, or member and any collective investment vehicle which is

1   advised or managed by any of them; provided, however, that the releases set forth in this Final

2   Judgment and Order of Dismissal shall in no event release any claims in connection with the

3   D&O Policies or reinsurance of D&O coverage that the Individual Defendants or Wells Fargo

4   may have against any of the Insurers, except as set forth in the Insurance Agreement.

5       9.      As of the Final Date, Co-Lead Plaintiffs and Wells Fargo (on behalf of itself and

6   each of its Related Parties) and, by operation of law, Wells Fargo's shareholders, shall be deemed

7   to have, and by operation of this Judgment shall have, finally, fully, and forever released,

8   relinquished, settled and discharged each and all of the Released Parties from and with respect to

9   any and all of the Released Claims, and will be forever barred and enjoined from commencing,

10  instituting or prosecuting any action or proceeding, in any forum, asserting any of the Released

11  Claims against any of the Released Parties.

12      10.     As of the Final Date, the Director and Officer Defendants, individually and

13  collectively, shall and hereby do completely, fully, finally and forever release, relinquish, settle,

14  and discharge each and all of the Co-Lead Plaintiffs, Co-Lead Counsel and all other plaintiffs'

15  counsel from and with respect to any and all claims arising out of or relating to the initiation,

16  prosecution, and resolution of the Derivative Action, excepting any claim to enforce the

17  Stipulation or Settlement.  Co-Lead Plaintiffs have expressly reserved, retained and do not release

18  any and all direct claims on behalf of present or former Wells Fargo shareholders including (1)

19  claims to enforce this Settlement, and (2) any direct claims on behalf of present or former Wells

20  Fargo shareholders (*i.e.*, not derivative claims) that are or were being prosecuted in *Hefler v.*

21  *Wells Fargo & Co.*, No. 3:16-cv-05479-JST (N.D. Cal.).

22      11.     The Released Claims include any claims of Co-Lead Plaintiffs or Wells Fargo or

23  any Wells Fargo shareholder that he, she or it does not know or suspect exist in his, her or its

24  favor at the time of the release of the Released Claims as against the Released Parties, including

25  without limitation those which, if known, might have affected the decision to enter into or to

26  object to the Settlement ("Unknown Claims").  With respect to any and all Released Claims, the Parties

27  although the Settlement provides for a specific release of the Released Parties, the Parties

28  stipulate and agree that, upon the Effective Date, Co-Lead Plaintiffs, Wells Fargo, and each of the

current Wells Fargo shareholders shall be deemed to have, and by operation of this Final

Judgment and Order of Dismissal shall have, waived the provisions, rights and benefits of

California Civil Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Co-Lead Plaintiffs, Wells Fargo, and each of the current Wells Fargo shareholders shall be

deemed to have, and by operation of this Final Judgment and Order of Dismissal shall have,

waived any and all provisions, rights and benefits conferred by any law of any jurisdiction, state

or territory of the United States, or principle of common law, which is similar, comparable or

equivalent to California Civil Code § 1542.  Any of Co-Lead Plaintiffs, Wells Fargo, or the

current Wells Fargo shareholders may hereafter discover facts in addition to or different from

those which he, she or it now knows or believes to be true with respect to the Released Claims

but, upon the Court's entry of this Final Judgment and Order of Dismissal, Co-Lead Plaintiffs,

Wells Fargo, and each of the current Wells Fargo shareholders shall be deemed to have, and by

operation of this Final Judgment and Order of Dismissal shall have, fully, finally, and forever

settled and released any and all Released Claims known or unknown, suspected or unsuspected,

contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which

now exist, or heretofore have existed upon any theory of law or equity now existing or coming

into existence in the future, including, but not limited to, conduct which is negligent, intentional,

with or without malice, or a breach of any duty, law or rule, without regard to the subsequent

discovery or existence of such different or additional facts.  The Parties shall be deemed by

operation of this Final Judgment and Order of Dismissal to have acknowledged that the foregoing

waivers were separately bargained for and are key elements of the Settlement of which this

release is a part.

12.     Co-Lead Plaintiffs, Wells Fargo and each and every Wells Fargo shareholder are

hereby permanently barred and enjoined from asserting, commencing, prosecuting, assisting,

instigating, continuing or in any way participating in the commencement or prosecution of any action, whether directly, representatively, derivatively or in any other capacity, asserting any of the Released Claims that are released pursuant to this Final Judgment and Order of Dismissal or under the Stipulation.

13.     The existence of the Stipulation, its contents and any negotiations, statements or proceedings in connection therewith will not be argued to be, and will not be construed or deemed to be, a presumption, concession or admission by any of the Released Parties or any other Person of any fault, liability or wrongdoing as to any facts or claims alleged or asserted in the Derivative Action or any of the actions listed in Section II.C of the Stipulation; or that Wells Fargo, Co-Lead Plaintiffs or Co-Lead Counsel, any present or former shareholders of Wells Fargo or any other Person, have suffered any damage attributable in any manner to any of the Released Parties.  Nor shall the existence of this Stipulation and its contents or any negotiations, statements or proceedings in connection therewith be construed as a presumption, concession or admission by Co-Lead Plaintiffs or Co-Lead Counsel of any lack of merit of the Released Claims, or that Wells Fargo has not suffered cognizable damages caused by Defendants.  The existence of the Stipulation, its contents or any negotiations, statements or proceedings in connection therewith, shall not be offered or admitted in evidence or referred to, interpreted, construed, invoked or otherwise used by any Person for any purpose in the Derivative Action or otherwise, except as may be necessary to effectuate the Settlement.  This provision shall remain in force in the event that the Settlement is terminated for any reason whatsoever.  Notwithstanding the foregoing, any of the Released Parties may file the Stipulation or any judgment or order of the Court related hereto in any other action that has or may in the future be brought against them, in order to support any and all defenses or counterclaims based on *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, or as necessary for any of the Released Parties to pursue their rights under any insurance policy.

14.     Co-Lead Counsel's Fee Application is granted.  Co-Lead Counsel are hereby awarded attorneys' fees in the amount of $68 million, which shall be paid to Co-Lead Counsel pursuant to the terms and conditions of the Stipulation.

15.     Co-Lead Plaintiffs' application for Reimbursement Awards is granted.  Co-Lead Plaintiffs' Reimbursement Awards in the amount of $25,000 to each Co-Lead Plaintiff are granted and payable out of Co-Lead Counsel's attorneys' fees.

16.     The effectiveness of this Final Judgment and Order of Dismissal and the obligations of Co-Lead Plaintiffs, Co-Lead Counsel, Wells Fargo, Wells Fargo shareholders and Defendants under the Settlement shall not be conditioned upon or subject to the resolution of any appeal or other matter that relates solely to the issue of Reimbursement Awards or attorneys' fees or expenses.

17.     The Court further orders, adjudges and decrees that all other relief be, and is hereby, denied, and that this Final Judgment and Order of Dismissal disposes of all the claims and all the parties in the above-styled and numbered shareholder derivative action.

18.     Without affecting the finality of this Final Judgment and Order of Dismissal in any way, this Court retains jurisdiction over all matters relating to the administration and consummation of the Settlement and all Parties hereto for the purpose of construing, enforcing and administering the Settlement.  Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

19.     The Court finds that the Derivative Action was filed, prosecuted, defended, and settled in good faith, and that during the course of the Derivative Action, the Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

20.     In the event that the Settlement does not become effective in accordance with the terms of the Stipulation or the Effective Date does not occur, then this Final Judgment and Order of Dismissal shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated, and, in such event, all orders entered and releases delivered in

1   connection herewith shall be null and void to the extent provided for and in accordance with the

2   Stipulation.

3       **IT IS SO ORDERED.**

4

5   Dated: _____                      _____

6                                                   THE HONORABLE JON S. TIGAR
                                                    UNITED STATES DISTRICT JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28