**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

_____
                                                              )
IN RE WELLS FARGO & CO.                    ) Lead Case No. 3:16-cv-05541-JST
SHAREHOLDER DERIVATIVE LITIG.    )
                                                              )
_____)_____

Shareholder Edward W. Cochran, as trustee of the EWC Defined Benefit Plan, hereby objects to Class Counsel's request for a $68 million attorney's fee in this megafund settlement. Proof of EWC Defined Benefit Plan's share ownership is attached hereto as *Exhibit A*.

## I.    A $68 Million Fee Is Excessive in This Megafund Settlement.

"[W]here awarding 25% of a 'mega-fund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the bench-mark percentage or employ the lodestar method instead." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

Here, while Class Counsel claim to have incurred a lodestar of $22 million, $9 million of that figure was generated by staff attorneys, contract attorneys and discovery attorneys performing rote document review, mostly during the second half of 2018. Clearly, there was an attempt by Lead Counsel to run up their lodestar as the case moved closer to settlement, in order to justify their desired 28 % fee. These contract, staff and discovery attorneys were billed to the shareholders at rates of between $295/hr. and $415/hr., when prior cases in this district have capped staff attorney time at $240. *See In re Anthem Inc. Data Breach Litig.*, 2018 U.S. Dist. LEXIS 140137 (ND Cal. 2018).

The amount of Lead Counsel's fee request is also suspect because Lead Counsel claim that it was directly negotiated with Wells Fargo, which has proved to be a poor steward of its shareholders' money. Wells Fargo apparently agreed to give away $68 million of Mr. Cochran's and the other shareholders' money, when they already stand accused of wasting $1.1 billion in the shareholders' money dealing with the fallout of the Improper Sales Practices. Wells Fargo has no legitimate interest in the size of Lead Counsel's fees, and, to the extent they were purporting to act on behalf of shareholders, should have been seeking to minimize those fees. Why, for example, did Wells Fargo not raise the issue of the excessive use of staff, contract and discovery attorneys and their supra-competitive rates, especially in light of the *Anthem* case?

The fee in this case should be governed by *In re: Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291 (9th Cir. 1994), another megafund case in which the Ninth Circuit upheld the district court's refusal to approve a 13.6% fee that would have represented an excessive multiplier.

> We agree with the district court that there is no necessary correlation between any particular percentage and a reasonable fee. With a fund this large, picking a percentage without reference to all the circumstances of the case, including the size of the fund, would be like picking a number out of the air…[W]e agree with the district court that the 25 percent "benchmark" is of little assistance in a case such as this… It is not difficult to demonstrate why courts cannot rationally apply any particular percentage – whether 13.6 percent, 25 percent or any other number – in the abstract, without reference to all the circumstances of the case.

*Id*. at 1297-1298.

Unlike class counsel in Wash Pub. Power, supra, Lead Counsel here are requesting a percentage fee higher than the 25% benchmark, based upon the $240 million cash recovery. Lead Counsel should not receive credit for the clawbacks and other

2

injunctive relief that merely coincided with this litigation, since there is no evidence that this litigation was the proximate cause of those changes and recoveries.  Lead Counsel claims that even a 28.33% fee based entirely on the $240 million cash component is reasonable.  This is clearly refuted by *Wash. Pub. Power*, where a 13.6% fee request was rejected because it resulted in an excessive lodestar multiplier of 3.1.  *Id*. at 1295.  The Ninth Circuit in *Wash. Pub. Power* found that the election of *any* percentage amount is necessarily arbitrary in the context of a megafund settlement measured in the hundreds of millions.  *Id*. at 1297 ("Class counsels' data, intended to demonstrate that the percentage they request is far less than the norm, aptly demonstrate the virtually impossible task of setting any particular percentage as a proper one… Class Counsel could just as easily have requested 3.6 percent or 36.1 percent").

If the contract, staff and discovery attorneys here, who performed largely clerical work in running up a claimed lodestar of over $9 million, were billed out at the reasonable rate of $40/hour, Lead Counsel's lodestar would fall to approximately $14 million.  Applying the requested multiplier of 3 to this figure yields a fee of $42 million, or 17.5%, which is almost exactly the market rate for a settlement of this size, according to Brian Fitzpatrick.  *See An Empirical Study of Class Action Settlements and Their Fee Awards*, at p. 839 (mean and median fees for settlements between $100 million and $250 million are 17.9 and 16.9).[1]

---

[1] Even if the $9 million in contract attorney time is simply compensated with no multiplier, and the remaining $13 million in lodestar is increased by 3 to account for risk, the fee falls to $48 million.

## II.     Courts have recognized that contract and staff attorneys Cost far less than their billed rates.

In *In re Anthem Inc. Data Breach Litig.*, 2018 U.S. Dist. LEXIS 140137 (ND Cal. 2018), the district court confronted the massive use of contract and staff attorneys, noting that while the staff attorneys were billed to the class at rates of between $185 and $495, they were paid only an average of $40/hour. *Id*. at *125. This represents an average markup of 729%. *Id*. at *130.

> The Court begins by emphasizing how striking the markup is in this case. All told, the profit margin based purely on a markup for non-salaried contact and staff attorney hourly work is $5,306,526. This figure constitutes almost 14% of the Plaintiffs' total lodestar figure…

*Id*. The margins here are even more striking. The staff attorneys' $9 million lodestar represents an out of pocket cost of just $1 million, or a markup of 900%, which constitutes 36% of Class Counsel's total lodestar of $22 million.

The court in *Anthem* recommended the practice of treating contract attorney work as a cost. *Id*. at *128. However, the court did not impose that best practice on class counsel in *Anthem*, and instead imposed a maximum hourly rate of $240 for staff attorneys, which "adequately accounts for the qualifications and experience of the contract and staff attorneys as well as the largely document-review work they performed." *Id*. at *133. *See also In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 369, 399 (SDNY 2013) (capping contract attorneys at $200/hour).

The astonishing amount of staff, contract and discovery attorney lodestar generated in the final six months of this case requires this Court to scrutinize Class Counsel's lodestar closely, reduce the claimed rates for those attorneys, and to award a

4

fee less than 25%. As shown above, a fee of $42 million, or 17.5%, is exactly equal to the market rate in cases of this size, adequately compensates Lead Counsel for all of their risk-exposed, non-document review time, while also providing Lead Counsel with a more than adequate 300% profit (and a $2 million premium) on the amount they expended on what should be the expense of temporary discovery attorneys. Under no circumstances should the shareholders be billed at rates of up to $1200/hour for staff, contract and discovery attorneys performing document review, which would be the result of awarding Lead Counsel a multiplier of 3 on all of their time.

## CONCLUSION

For the foregoing reasons, this Court should award Lead Counsel a fee of no more than $42 million.

Signed by:                              Date:

*Edward W. Cochran*                     7/5/19

Edward W. Cochran
As Trustee of the EWC
Defined Benefit Plan

                                                Respectfully submitted,
                                                EWC Defined Benefit Plan,
                                                By its attorney,

                                                */s/ Steve A. Miller*
                                                Steve A. Miller (CA Bar # 171815)
                                                Steve A. Miller, PC
                                                1625 Larimer St., No. 2905
                                                Denver, CO  80202
                                                Phone: (303) 892-9933
                                                Sampc01@gmail.com

                                                John J. Pentz, Esq., *pro hac vice pending*
                                                19 Widow Rites Lane
                                                Sudbury, MA 01776
                                                Phone: (978) 261-5725
                                                jjpentz3@gmail.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the foregoing was filed with the Clerk of Court using CM/ECF on July 8, 2019, and as a result has been served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Steve A. Miller*  
Steve A. Miller

Schwab One® Account of
**EDWARD W COCHRAN TTEE**
**EWC DEFINED BENEFIT PLAN**
**FBO EDWARD W COCHRAN**

Account Number
**4415-0829**

Statement Period
**June 1-30, 2019**

## Investment Detail - Bank Sweep

| Bank Sweep | Starting Balance | Ending Balance | % of Account Assets |
|---|---|---|---|
| Bank Sweep for Benefit Plans A,B | 30,308.21 | 30,925.91 | 5% |
| **Total Bank Sweep** | **30,308.21** | **30,925.91** | **5%** |
| Total Bank Sweep | | 30,925.91 | 5% |

## Investment Detail - Equities

| Equities | Quantity | Market Price | Market Value / Cost Basis | % of Account Assets | Unrealized Gain or (Loss) | Estimated Yield | Estimated Annual Income |
|---|---|---|---|---|---|---|---|
| A T & T INC SYMBOL: T | 16,726.0000 | 33.51000 | 560,488.26 / 561,657.41 | 88% | (1,169.15) | 6.08% | 34,121.04 |
| WELLS FARGO & C 7.5% PFD CONV SER L SYMBOL: WFC+L | 32.0000 | 1,364.20000 | 43,654.40 / 39,573.67 t | 7% | 4,080.73 | 5.49% | 2,400.00 |
| **Total Equities** | **16,758.0000** | Total Cost Basis: | **604,142.66 / 601,231.08** | **95%** | **2,911.58** | | **36,521.04** |

Estimated Annual Income ("EAI") and Estimated Yield ("EY") calculations are for informational purposes only. The actual income and yield might be lower or higher than the estimated amounts. EY is based upon EAI and the current price of the security and will fluctuate. For certain types of securities, the calculations could include a return of principal or capital gains in which case EAI and EY would be overstated. EY and EAI are not promptly updated to reflect when an issuer has missed a regular payment or announced changes to future payments, in which case EAI and EY will continue to display at a prior rate.

Schwab has provided accurate gain and loss information wherever possible for most investments. Cost basis data may be incomplete or unavailable for some of your holdings. Please see "Endnotes for Your Account" section for an explanation of the endnote codes and symbols on this statement.



**charles SCHWAB**

Schwab One® Account of
**EDWARD W COCHRAN TTEE**
**EWC DEFINED BENEFIT PLAN**
**FBO EDWARD W COCHRAN**

| | Account Number | Statement Period |
|---|---|---|
| | 4415-0829 | September 1-30, 2016 |

## Income Summary

| | This Period | | | Year to Date | |
|---|---|---|---|---|---|
| | Federally Tax-Exempt | Federally Taxable | | Federally Tax-Exempt | Federally Taxable |
| Deposit Accounts Interest | 0.00 | 0.51 | | 0.00 | 0.51 |
| Cash Dividends | 0.00 | 2,721.67 | | 0.00 | 2,721.67 |
| **Total Income** | **0.00** | **2,722.18** | | **0.00** | **2,722.18** |

## Investment Detail - Deposit Accounts

### Deposit Accounts

| | Market Value | % of Account Assets |
|---|---|---|
| Schwab Bank Sweep for Benefit Plans A,B | 3,311.86 | <1% |
| **Total Deposit Accounts** | **3,311.86** | **<1%** |

## Investment Detail - Equities

### Equities

| | Quantity | Market Price | Market Value Cost Basis | % of Account Assets | Unrealized Gain or (Loss) | Estimated Yield | Estimated Annual Income |
|---|---|---|---|---|---|---|---|
| HSBC HLDGS PLC  F<br>ADR<br>1 ADR REPS  5  ORD SHS<br>SYMBOL: HSBC | 2,571.0000 | 37.6100 | 96,695.31<br>98,953.95 † | 7% | (2,258.64) | 5.31% | 5,142.00 |
| WELLS FARGO BK 7.5% PFD<br>PFD CONV  SER L L SER L<br>SYMBOL: WFC+L | 32.0000 | 1,309.2700 | 41,896.64<br>39,573.67 † | 3% | 2,322.97 | 5.72% | 2,400.00 |
| **Total Equities** | **2,603.0000** | **Total Cost Basis:** | **138,591.95**<br>**138,527.62** | **9%** | **64.33** | | **7,542.00** |

Schwab has provided accurate gain and loss information wherever possible for most investments. Cost basis data may be incomplete or unavailable for some of your holdings. Please see "Endnotes for Your Account" section for an explanation of the endnote codes and symbols on this statement.

Page 4 of 10