Barry Himmelstein (SBN 157736)
barry@himmellaw.com
HIMMELSTEIN LAW NETWORK
2000 Powell St., Ste. 1605
Emeryville, CA 94608
Telephone: (510) 450-0782
Facsimile: (510) 924-0403

Alexander Stern (SBN 308961)
alex@sternlegalservices.com
STERN LEGAL SERVICES
13428 Maxella Avenue # 446
Marina Del Rey, CA 90292
Telephone: (310) 403-1875
Facsimile: (310) 457-6304

*Attorneys for Plaintiff Cathy LeBendig*

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Lead Case No. 3:16-cv-05541-JST<br><br>**PLAINTIFF CATHY LEBENDIG'S OPPOSITION TO CO-LEAD COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT AWARDS TO CO-LEAD PLAINTIFFS**<br><br>Date: August 1, 2019<br>Time: 2:00 p.m.<br>Courtroom 9, 19th Floor<br>Judge: Hon. Jon S. Tigar |

Plaintiff Cathy LeBendig, the plaintiff in consolidated action *LeBendig v. Wells Fargo & Company, et al.*, Case No. 4:16-cv-06262-JST ("*LeBendig*") respectfully submits this Opposition to Co-Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement Awards to Co-Lead Plaintiffs (ECF No. 277).

## I.     INTRODUCTION

Res ipsa loquitur.

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

### A. Plaintiff Cathy LeBendig, A Wells Fargo Branch Auditor, Discovered and Reported the Misconduct Alleged

Plaintiff Cathy LeBendig ("LeBendig") worked for Wells Fargo & Company ("Wells Fargo") for 42 years, until January 7, 2017. Declaration of Cathy LeBendig in Support of Opposition to Co-Lead Counsel's Motion for Award of Attorneys' Fees ("LeBendig Decl.") ¶ 2. Wells Fargo is the only employer LeBendig has ever worked for. *Id.*

From 1999 until her disability in 2015, LeBendig was a Quality Assurance Analyst, which is essentially a branch examiner, primarily examining branches located from Daly City to Santa Cruz, although she also examined branches located in Texas, Florida, Pennsylvania, Oregon, and Alaska. *Id.* ¶ 3. Per Wells Fargo procedure, she would typically visit each branch a minimum of once a year, randomly pull the account-opening records for seven accounts opened within a 30-day period preceding her visit, and examine them for missing signatures, account holder identification (such as a driver's license), or other deficiencies. *Id.* Each December, she would participate in regional meetings to determine the review procedure for the following year. *Id.*

As early as 2007, LeBendig began finding large numbers of new accounts without signature cards or signed applications on file. *Id.* ¶ 4. The results of her examinations, including the nature and number of missing items, would be aggregated in a Technical Exceptions Report, which would go to the Branch Manager, District Manager, and Regions. *Id.* She repeatedly brought the problem to the attention of her supervisors, and participated in quarterly telephone or in-person meetings with the Regions President, Market Area Managers, District Managers, and Market Area Support Supervisors – including meetings at Wells Fargo headquarters in San Francisco – at which the matter was discussed extensively, and it was generally acknowledged that

branch employees were engaging in these behaviors due to the constant pressure they were under to meet Wells Fargo's sales targets. *Id*.

Wells Fargo required LeBendig and other Quality Assurance Analysts to give branches 24 hours advance notice of their visits, during which time branch employees often worked frantically until late at night to "cover their tracks" as to the missing items – often with the help of the Market Support Analyst from Regions. *Id*. ¶ 5.  Instead of reducing its sales targets, or directing its employees to stop engaging in these behaviors, Wells Fargo took dramatic a step to conceal their misconduct: ***in 2014, Wells Fargo doubled the number of new accounts that it would allow to be missing a signature (i.e., without declaring an "exception") from 1 out of 7 to 2 out of 7***. *Id*. ¶ 6.

LeBendig's persistent complaints to upper management about the problem were completely ignored. *Id*. ¶ 7.  Accordingly, LeBendig sought out qualified counsel, and filed this case, in the hope of remedying as a shareholder what she had been unable to remedy as an employee. *Id*.

Due to her status as a lifetime employee of Wells Fargo, its stock comprises an outsize portion of her holdings. *Id*. ¶ 8.  As of the record date of February 26, 2019, LeBendig holds 6,273 shares of Wells Fargo, comprising over 30% of her 401(k). *Id*.

B. **Co-Lead Counsel Were Appointed Because of Their Stated Willingness to Coordinate and Work With Plaintiffs' Counsel in the Related Actions**

Of the actions consolidated as *In re Wells Fargo & Company Shareholder Derivative Litigation*, *LeBendig* was the sixth to be filed, on October 28, 2016.  See *LeBendig* ECF No. 1. LeBendig stipulated to consolidation on November 23, 2016 (ECF No. 35), and the first eight actions were ordered consolidated on December 12, 2016 (ECF No. 39).

On December 13, 2016, LeBendig, along with the plaintiffs in two of the other consolidated cases (Victoria Shaev and Robert Elson, IRA) filed their Response to Motions for the Appointment of Lead Plaintiffs and Lead Counsel (ECF No. 43), stating that they:

> having reviewed the competing motions (ECF Nos. 27, 30, 34, and 36) hereby withdraw their lead plaintiff motion (ECF No. 29). Plaintiffs Shaev, Elson, and LeBendig support the joint motion by the Colorado Fire and Police and City of Birmingham (ECF No. 34) based on their retention of capable and experienced counsel (to wit, Lieff Cabraser Heimann & Bernstein LLP and Saxena White P.A.),

and their stated willingness to coordinate and work with plaintiffs' counsel in the related actions.

In their December 15, 2016 memorandum of law in further support of their motion to appoint Lieff Cabraser and Saxena White as co-lead counsel (ECF No. 45), those firms represented to the Court that:

> they have the support of the remaining plaintiffs who filed complaints in this action, each of whom has endorsed the leadership structure proffered by Colorado Fire and Police and Birmingham and noted the superior efficiencies and advantages offered by such structure.
>
> Lieff Cabraser, based in San Francisco, has consistently demonstrated strong leadership while working cooperatively and efficiently with non-lead plaintiffs' lawyers to achieve excellent and expeditious results, both in litigation in this District and others. Furthermore, Lieff Cabraser brings successful trial experience to this case as well as familiarity with Wells Fargo's banking operations, having recently secured a $203 million judgment at trial in this District against Wells Fargo Bank in a case involving checking account overdraft fees. *Gutierrez v. Wells Fargo Bank*, No. C 07-05923 WHA (N.D. Cal. May 21, 2015).
>
> As discussed below, Colorado Fire and Police and Birmingham have "made the better showing, having received widespread, vocal recognition of their inclusive approach to working with other plaintiffs and co-counsel in this case," *id*, and exemplify the requisite fiduciary character to lead this shareholder derivative suit.
>
> Four of the plaintiffs who filed cases in this Consolidated Action, Victoria Shaev, Robert Elson, IRA, Cathy LeBendig, and Alison Sherman, have recognized Colorado Fire and Police's and Birmingham's superior position and strong leadership, and fully support its appointment. These plaintiffs have filed memoranda stating that they believe that Colorado Fire and Police and Birmingham are best suited to serve as Co-Lead Plaintiffs. Colorado Fire and Police's and Birmingham's efforts here have created efficiencies by alleviating the burden on this Court of having to consider additional lead counsel motions. *See Hewlett Packard Co*., 2013 WL 792642, at *8 (selecting lead plaintiff and its counsel that had "made the better showing, having received widespread, vocal recognition of their inclusive approach to working with other plaintiffs…" ); *see also* ECF No. 43 (plaintiffs Shaev, Elson and LeBendig supporting Colorado Fire and Police's and Birmingham's joint lead plaintiff application "based on their retention of capable and experienced counsel (to wit, Lieff Cabraser Heimann & Bernstein LLP and Saxena White P.A.), and their stated willingness to coordinate and work with plaintiffs' counsel in the related actions.")[.]
>
> As detailed in Colorado Fire and Police's and Birmingham's Motion, Lieff Cabraser brings successful trial experience to this case as well as familiarity with Wells Fargo's banking operations, having

>recently secured a $203 million judgment at trial in this District against Wells Fargo Bank in a case involving checking account overdraft fees. *Gutierrez v. Wells Fargo Bank*, No. 07-cv-05923 WHA (N.D. Cal. May 21, 2015). Plaintiffs' Counsel are thus intimately familiar with Wells Fargo's business and history, and are well-positioned to take advantage of the experience garnered from the firm's other litigation involving Wells Fargo, which will help ensure that this Action is prosecuted in an effective and efficient manner. Lieff Cabraser's Wells Fargo-specific experience weighs in favor of appointing Lieff Cabraser and Saxena White as Co-Lead Counsel.

*Id*. at 2, 4, 6, 10, 13 (citations omitted). *See also* Reply in Support of Joint Motion (ECF No. 58), at 5 ("In their supporting statements, the four plaintiffs assert they support Colorado Fire and Police and Birmingham not only because they will serve plaintiffs' interests well in the litigation, but also because they have demonstrated a willingness and ability to effectively coordinate with other plaintiffs and counsel and honor agreements among counsel. *See* ECF Nos. 43; 44."), 10 ("Both firms . . . have already demonstrated the requisite cooperation and coordination incumbent on lead counsel."), 11-12 ("Lieff Cabraser's experience litigating against Wells Fargo is further reason to appoint Lieff Cabraser Co-Lead Counsel with Saxena White. Between 2007 and 2015, Lieff Cabraser litigated and ultimately achieved a $203 million judgment at trial in this District against Wells Fargo Bank in a case involving checking account overdraft fees. *See Gutierrez v. Wells Fargo Bank*, No. C 07-05923 WHA (N.D. Cal.). No other firm seeking appointment as lead counsel can claim this degree of success against Wells Fargo."), 13 ("Further, Lieff Cabraser has the distinction of having faced and defeated Wells Fargo at trial in this District.").

For the record, LeBendig's counsel, Barry Himmelstein, tried the *Gutierrez v. Wells Fargo* case with Mr. Heimann, presented the entire damages case, and from LCHB's first involvement in the case single-handedly conducted all of the remaining discovery and virtually all of the remaining pre-trial briefing.[1]

---

[1] From the time LCHB associated into the case until commencement of trial, Himmelstein single-handedly conducted all of the remaining discovery, and single-handedly briefed and argued all of the remaining pre-trial motions except for Wells Fargo's motion for reconsideration of the court's order rejecting its defense of federal preemption, including plaintiffs' motion to exclude the testimony of Wells Fargo's experts, and the opposition to Wells Fargo's motion for summary judgment or to decertify the class. At trial, Himmelstein presented the testimony of plaintiffs' damages expert, and cross-examined Wells Fargo's damages expert. Richard Heimann, who had virtually no involvement with any of the pre-trial briefing, was the only other LCHB attorney to question witnesses at trial. *See* Declaration of Barry Himmelstein in Support of Opposition to Co-Lead Counsel's Motion for Award of Attorneys' Fees ("Himmelstein Decl.") ¶¶ 2-6.

On January 12, 2017, the Court granted co-lead counsel's motion, finding that

> four other Plaintiffs in this action support Colorado/Birmingham's proposed leadership structure because of "their stated willingness to coordinate and work with plaintiffs' counsel in the related actions" and their "demonstrated dedication to vigorously pursuing the interest of those represented." ECF Nos. 43, 44. This "widespread, vocal recognition of their inclusive approach to working with other plaintiffs and co-counsel in this case" weighs strongly in favor of their appointment. The Court concludes that this factor will be critical given the size and complexity of this consolidated action.

Order Regarding Motions to Consolidate and Appoint Lead Plaintiff and Counsel (ECF No. 70) at 5 (citing *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *8 (N.D. Cal. 2013)).

### C. **LCHB Refused to Avail Itself of Ms. LeBendig's Unique Expertise, Despite Her Repeated Offers of Assistance**

On January 13, 2017 – the day after LCHB was appointed Co-Lead Counsel, with LeBendig's support – counsel for LeBendig emailed Mr. Heimann, Ms. Dermody and Mr. Diamand, stating:

> Congratulations on your appointment as co-lead counsel. It was a pleasure seeing all of you yesterday.
>
> My client, plaintiff Cathy LeBendig, worked for Wells Fargo for 42 years. It is the only company she has ever worked for. She spent the last 16 years as a Quality Assurance Analyst, which is basically a branch auditor, primarily in Northern California. She ceased to be an employee less than a week ago, on January 7, 2017.
>
> While many Wells Fargo employees have stepped forward to provide valuable anecdotal information, by virtue of her position as a branch auditor, Ms. LeBendig has detailed, systematic knowledge of the issues at the heart of the litigation, including the systems Wells Fargo had in place to detect such misconduct, and how it was regularly and systematically reported up the food chain. I believe this information will be very useful in formulating a discovery plan.

Himmelstein Decl., Exh. A.

After receiving no substantive response to this email for over two months, on March 20, 2017 – three days after Wells Fargo filed its first motion to dismiss – counsel for Ms. LeBendig once again emailed Mr. Diamand, copying Mr. Heimann and Ms. Dermody, stating that "I see in their motion to dismiss, they are going after the absence of systematically-reported misconduct. If we can work through the issues I described in my prior [January 13, 2017] email, I believe Ms. LeBendig could provide substantial assistance in identifying relevant information."

On March 22, 2017, Ms. LeBendig and her counsel held a thirty-minute conference call with Mr. Diamand, at which she introduced herself, described her early discovery and reporting of the misconduct at issue, and offered her assistance in developing the case. Himmelstein Decl. ¶ 8. Later that day, LeBendig's counsel followed up with an email to Mr. Diamand stating that:

> we have an answer to the question you posed in our conversation today: Yes, Cathy did call the ethics line several times. I spoke to her just now and she let me know that she called the line about 6 different times. Sometimes she gave her name and sometimes she called anonymously. In the course of her audits she would notice that quite a few accounts were missing signatures, and she would call to report that she suspected a team member was doing "something funny" because of the missing signatures. She told me that sometimes she didn't bother to call the ethics line, however, because she realized that nothing was being done about the problem no matter how many times she was reporting it.

Himmelstein Decl. Exh. A.

On April 5, 2017, Mr. Diamand replied that "[i]f and when we get deeper into the case, we'd be happy to reconnect again." *Id*. Prior to settlement, neither Ms. LeBendig or her counsel ever heard from Co-Lead Counsel again, while they racked up enough hours to justify their exorbitant $58 million fee application.

### D. LCHB Always Intended to Deny Ms. LeBendig's Counsel Any Fees, and Deliberately Concealed That Intention

On February 28, 2019, Co-Lead Counsel filed their motion for preliminary approval of the proposed settlement (ECF No. 270), which was fully briefed on April 2, 2019 (ECF No. 272). On April 4, 2019, with the case essentially over, and Ms. LeBendig's still-outstanding offer of assistance having become moot, Ms. LeBendig's counsel emailed Mr. Diamand, saying "[s]orry to bother you, but at some point, are you going to be requesting people's lodestar for the shareholder derivative case? I don't have much, but it's all in my timekeeping software, so I can get it to you anytime." Himmelstein Decl., Exh. A.

On May 14, 2019, the Court granted the motion for preliminary approval (ECF No. 274). Having received no response to his April 4 email, on May 22, 2019, counsel for Ms. LeBendig emailed Mr. Diamand yet again, this time copying Mr. Heimann, inquiring "Are you going to respond, or are your going to force me to file something?" Himmelstein Decl., Exh. A. Mr. Diamand responded that "[w]e were waiting for Judge Tigar to issue his preliminary approval

order before responding.  We are not planning on asking for your lodestar or compensating your firm." *Id*.

### III.   LCHB, AND MS. LEBENDIG'S COUNSEL, SHOULD BE AWARDED THEIR LODESTAR AND COSTS

The foregoing facts speak for themselves.  Presented with a clear opportunity to short-circuit discovery, LCHB adopted a policy of deliberate avoidance.  One can only speculate as to their motivations, whether the desire to increase their lodestar in support of this fee application, or lingering personal animosity, their conduct was clearly antithetical to the interests of Wells Fargo shareholders, including Ms. LeBendig, a lifetime Wells Fargo employee, whose stock comprises over 30% of her 401(k).  *See* LeBendig Decl. ¶ 8.

To add insult to injury, while seeking the astronomical sum of $58 million for their collective efforts – graciously waiving recoupment of costs – they refuse to compensate Ms. LeBendig's counsel for the paltry sums necessary to prepare her complaint and offer her assistance.  Having obtained their leadership position "because of 'their stated willingness to coordinate and work with plaintiffs' counsel in the related actions' and their 'demonstrated dedication to vigorously pursuing the interest of those represented'" (ECF No. 70, *quoting* ECF Nos. 43, 44), and having avoided, rather than embraced, Ms. LeBendig's unique expertise and assistance in identifying, navigating, and interpreting the available evidence, LCHB deserves no more than its likely-inflated lodestar[2] and reimbursement of its costs.

LeBendig's counsel's lodestar and costs are exceedingly modest:  Mr. Himmelstein has only 17 hours at his current hourly rate of $770, for a total of $13,090; Mr. Stern has only 45.5 hours at an hourly rate of $450, for a total of $20,475; and Himmelstein seeks reimbursement of only the $400 filing fee in costs, for a total of $33,965.  *See* Himmelstein Decl. ¶¶ 10-12; Declaration of Alexander Stern in Support of Opposition to Co-Lead Counsel's Motion for Award

---

[2] In *Arkansas Teacher Retirement System v. State Street Corp.*, No. 1:11-cv-10230 (D. Mass.), LCHB is fighting a highly-publicized and still-unresolved battle to justify its 25% fee request, including against accusations of overbilling.  *See* A. Leibowitz, *$75M Fee Award in State Street Row Faces Judge's Scrutiny*, Law360 (June 24, 2019) (Himmelstein Decl., Exh. B).

of Attorneys' Fees ¶¶ 3-4.  LeBendig's counsel should be awarded these exceedingly modest sums out of Co-Lead Counsel's bloated fee request.

Dated:  July 11, 2019                                    Respectfully Submitted,


                                                          By:   */s/ Barry Himmelstein*
                                                                    Barry Himmelstein

Barry Himmelstein (SBN 157736)
barry@himmellaw.com
HIMMELSTEIN LAW NETWORK
2000 Powell St., Ste. 1605
Emeryville, CA  94608
Telephone:  (510) 450-0782
Facsimile:  (510) 924-0403

Alexander Stern (SBN 308961)
alex@sternlegalservices.com
STERN LEGAL SERVICES
13428 Maxella Avenue # 446
Marina Del Rey, CA 90292
Telephone:  (310) 403-1875
Facsimile:  (310) 457-6304

*Attorneys for Plaintiff Cathy LeBendig*