UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WELLS FARGO & CO. SHAREHOLDER DERIVATIVE LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS | Case No. 16-cv-05541-JST<br><br>**ORDER TO SHOW CAUSE RE: APPOINTMENT OF EXPERT WITNESS PURSUANT TO RULE OF EVIDENCE 706** |

Now before the Court are Plaintiffs' motions for final approval of a derivative action settlement, ECF No. 276, and for attorney's fees and expenses, ECF No. 277. The attorney's fees submitted for approval include fees for "'contract'/'discovery' attorneys (i.e., attorneys who are not full-time firm employees but rather were hired through an outside agency) . . . ." ECF No. 277 at 27-28. One of the questions the Court must answer in ruling on these motions is the appropriate hourly rate the Court should assign to contract attorney services when calculating the Plaintiffs' counsel's lodestar.

In class action litigation, a district court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "If there is no contractual or statutory basis to award attorneys' fees in a class action case, a court may rely on the 'common fund doctrine,' a traditional equitable doctrine 'rooted in concepts of quasi-contract and restitution.'" *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012) (quoting *Vincent v. Hughes Air W., Inc.,* 557 F.2d 759, 770 (9th Cir. 1977)). The common fund doctrine derives from the "historic equity jurisdiction" of the federal courts, "and allows a court to award attorney's fees to a party whose litigation efforts directly benefit others." *Chambers v. NASCO*,

*Inc.*, 501 U.S. 32, 45 (1991). "Under the common fund doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *Rodriguez*, 688 F.3d at 653 (quoting *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)). "The guiding principle is that attorneys' fees 'be reasonable under the circumstances.'" *Id.* (quoting *Florida v. Dunne,* 915 F.2d 542, 545 (9th Cir. 1990)). "[T]he assumption in scrutinizing a class action settlement agreement must be, and has always been, that the members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003).

"Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorney's fees. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.* The Ninth Circuit has maintained a well-established "benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund." *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Courts in the Ninth Circuit generally start with the 25 percent benchmark and adjust upward or downward depending on:

> the extent to which class counsel "achieved exceptional results for the class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash . . . fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002)). This Court also considers the effect of settlement size on the appropriate percentage of fees to award. *See Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2018 WL 4030558, at *4-5 (N.D. Cal. Aug. 23, 2018).

In addition, courts often cross-check the amount of fees against the lodestar. "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. "In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987)). The burden of demonstrating that the requested rates are in line with those prevailing in the relevant community is on the plaintiffs. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Regardless whether the court uses the lodestar or percentage approach, the main inquiry is whether the fee award is "reasonable in relation to what the plaintiffs recovered." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

Here, Co-Lead Counsel claim 48,367.65 hours, at hourly rates ranging from $560 to $1,075 for partners or "of counsel" attorneys, $250 to $660 for associates, $365 to $420 for staff or project attorneys, and from $295 to $415 for "contract"/"discovery" attorneys hired through an outside agency. *Id.* at 26-28. Based on these figures, they calculate a lodestar of $22,426,479.50, which would make the multiplier for their requested award 3.03.[1] *Id.* at 25-26. The work of contract attorneys (i.e., attorneys who are not full-time firm employees but rather were hired through an outside agency) accounts for $9,868,641 of this amount, or 44.6 percent of Plaintiffs' claimed lodestar. ECF No. 281 at 22-23. In its motion, Plaintiffs' counsel does not provide the actual hourly rate paid for the time of any particular contract attorney, but states generally that they were compensated at a rate somewhere between $35 and $50 per hour. *Compare* ECF No.

---

[1] Plaintiffs' counsel also suggest, through the testimony of an expert witness, that the Court simply award a percentage of recovery as attorney's fees and not use a lodestar cross-check at all. *See* ECF No. 278-1 (Decl. of Brian Fitzpatrick) at 18. The Court declines the suggestion.

3

277 at 28 n.13 (using a figure of $40-$50 per hour); ECF No. 287 at 17 n.9 (using a figure of $35 per hour). This mark-up is, to say the least, "striking." *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *19 (N.D. Cal. Aug. 17, 2018) (contract attorneys paid between $25.00 and $65.00 per hour billed at rates ranging from $185.00 to $495.00 per hour, with most over $350.00).

It follows from the foregoing that the Court cannot determine what value to place on the services of contract attorneys for purposes of calculating the lodestar unless the Court determines what the "market rate" for those services is. Surprisingly, however, there is very little authority on that question. As the Court observed in a different case:

> The courts have not spoken with one voice concerning the proper treatment of contract attorney costs in the calculation of a lodestar. Many courts hold that contract attorneys' hours should be billed at market rates and included in the lodestar without regard to the wage actually paid to the contract attorney. *See, e.g., Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1124 (C.D. Cal. 2012); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F.Supp.2d 249, 272 (D.N.H. 2007). In the view of these courts, "[t]he lodestar calculation is intended not to reflect the costs incurred by the firm, but to approximate how much the firm would bill a paying client." *Tyco Int'l*, 535 F. Supp. 2d at 272. Accordingly, "it is not objectionable *per se* . . . to apply a multiplier to a lodestar that includes work performed by contract attorneys, even though the profit margin for the firms employing them was greater than the profit margin the firms would have had for work done by full-time employees." *Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400, 410 (D. Conn. 2009), *aff'd*, 355 Fed.Appx. 523 (2d Cir. 2009). Not surprisingly, this is the position taken by Class Counsel. *See* IPP Resp. at 35 ("[I]f the contract lawyer is billed as just another lawyer whose work makes up the fee for the matter, the firm may bill the client any reasonable rate for the services just as it does for one of its associates.") (quoting Legal Ethics, Law. Deskbk. Prof. Resp. § 1.5-4(e) (2015-2016 ed.)).
>
> Some courts, by contrast, are unwilling to calculate a lodestar at higher associate market rates when contract attorneys themselves billed at much lower rates. *See, e.g., City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276, 280 (S.D.N.Y. 2013). The reasoning of these courts is that some tasks in document-intensive litigation can and should be performed by "low-cost, low-overhead" contract attorneys, "and there is absolutely no excuse for paying those temporary, low-overhead employees $40 or $50 an hour and then marking up their pay ten times for billing purposes." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 395-96 (S.D.N.Y. 2013). Also, "a sophisticated client, knowing these contract attorneys cost plaintiff's counsel considerably less than what the firm's associate attorneys

4

United States District Court
Northern District of California

> cost (in terms of both salaries and benefits) would have negotiated a substantial discount in the hourly rates charged the client for these services." *City of Pontiac*, 954 F. Supp. 2d 276.

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 4126533, at *8 (N.D. Cal. Aug. 3, 2016), *dismissed sub nom. In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 16-16368, 2017 WL 3468376 (9th Cir. Mar. 2, 2017). While this Court found it unnecessary to reach the question in *CRT*, *see id.*, it believes the question is more squarely presented here, particularly given the enormity of the claimed contract attorney fees both as an absolute number and as a percentage of the overall claimed lodestar fees.

There are several potential approaches to answering this question. One approach, and the one suggested by Plaintiffs' counsel, is to calculate all contract attorney fees at a notional "market rate" determined by Plaintiffs' counsel based on each attorney's background and experience and the type of work performed on the case. *See, e.g., In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 272 (D.N.H. 2007) ("It is therefore appropriate to bill a contract attorney's time at market rates and count these time charges toward the lodestar."). This is the approach taken by many district courts, although the "market rate" is artificial in the sense that the rate has never been paid – or at least, there is no evidence that it has ever been paid – by a willing buyer. Another approach is to allow the actual cost of the contract attorneys to Plaintiffs' counsel only as a cost item and not to include it in Plaintiffs' counsel's lodestar. This approach has been taken by some district courts, *see, e.g., Dial Corp. v. News Corp.*, 317 F.R.D. 426, 438 (S.D.N.Y. 2016), but only at the suggestion of counsel. The practice of billing contract attorney's fees as a cost has much to recommend it – it "reap[s] cost savings for the clients[]" and "promotes judicial efficiency by avoiding a judicial determination of fees," *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *18 – but no court has required it. A third approach is to include in the lodestar the hourly rate actually paid to contract attorneys, increasing that rate by a certain amount to account for overhead. *See, e.g., In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 875-76 (S.D.N.Y. 2018), *appeal dismissed sub nom.* No. 18-2120, 2018 WL 7108171 (2d Cir. Sept. 13, 2018), and *aff'd,* No. 18-2120, 2019 WL 4127327 (2d Cir. Aug. 30, 2019). A fourth approach is to start with the nominal "market" rates suggested by plaintiffs' counsel and reduce that rate to a

different nominal rate to account for the lawyers' status as contract attorneys. *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *20. This kind of adjustment, while reducing the size of the mark-up by plaintiffs' counsel, still does not attempt to identify an actual market rate for the services provided by contract attorneys.

All these options remain open to the Court. The Court believes, however, that an additional approach warrants consideration: determining what actual clients typically pay for contract attorney services when a law firm utilizes those contract attorneys' services on behalf of that paying client. That rate, rather than a notional rate determined by Plaintiffs' counsel, is more likely to be the "market rate" for those services, because "[a]n actual price, agreed to by a willing buyer and a willing seller, is the most accurate gauge of the value the market places on a good." *Keener v. Exxon Co., USA*, 32 F.3d 127, 132 (4th Cir. 1994). "Market prices of commodities and most services are determined by supply and demand," and "the rates charged in private representations may afford relevant comparisons." *Blum*, 465 U.S. at 895 n.11. For example, do law firms typically pass along the expense of contract attorneys' services as a cost, as they would expert witnesses' fees? Do they add a mark-up, and if so, how much? In the alternative, do they bill the time of contract attorneys at the same rates, relative to the attorneys' backgrounds and experience, as they do their own associate, counsel, or partner attorneys?

None of the answers to these questions is contained in the record currently before the Court. To obtain the answers, the Court believes that appointment of a court expert is required. Rule 706(a) of the Federal Rules of Evidence provides that the Court may, on its own motion or the motion of any party, "order the parties to show cause why expert witnesses should not be appointed . . . ." Fed. R. Evid. 706(a). The Court "may ask the parties to submit nominations," appoint "any expert that the parties agree on," or appoint "any of its own choosing." *Id.* A Rule 706 expert does not serve as an advocate for any party and each party retains the ability to call its own experts. Fed. R. Evid. 706(e). "The policy goal of Rule 706 is to promote accurate fact-finding." 29 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Evid. § 6304 (2d ed. 2019). A court-appointed expert is entitled to reasonable compensation, which in civil cases is paid by the parties in proportion and at such time as the court directs. Fed. R. Evid. 706(c).

1  Accordingly, the Court now ORDERS THE PARTIES TO SHOW CAUSE why an expert witness should not be appointed pursuant to Federal Rule of Evidence 706 to provide an opinion regarding the market rate for contract attorney services, and specifically to answer the following question: When law firms utilize contract attorneys to assist in complex litigation on behalf of clients who pay those firms' fees on a current basis, i.e., not on contingency: (1) do those firms commonly charge a premium or multiplier in addition to the contract attorneys' fees when billing those fees to the client; and (2) if so, what is the percentage premium or multiplier, if any, most commonly charged by those firms?

If appointed, the expert would be tasked with writing a report on the issues identified by the Court. The expert would also be subjected to being called to give a deposition and to being called by the Court or any party to testify as a witness. If the expert testifies at a hearing or trial, the expert would be subjected to cross-examination by each party, including a party calling the expert. If appointed, the expert would be entitled to reasonable compensation for the time spent in preparing a report, conferring with the Court, and testifying at a deposition, hearing, or trial in the case. The Court would order the parties to pay the costs and expenses of the expert in advance, divided equally between the two sides. If appropriate, the Court may also appoint counsel for the expert, also to be compensated by the parties. If such an expert were appointed, the parties would not be precluded from calling their own expert witnesses to testify on these subjects.

A response to this order to show cause is due November 8, 2019. The Court is considering the appointment of Dr. Daniel J. Acland of the University of California, Berkeley. A copy of Dr. Acland's curriculum vitae is attached. Dr. Acland would be compensated at the rate of $300 per hour. The parties may, if they wish, propose another expert or experts for the Court's consideration.

/ / /
/ / /
/ / /
/ / /
/ / /

7

Following the submission of the parties' responses to this order to show cause, the Court will take the matter under submission unless the Court orders the setting of a hearing.

**IT IS SO ORDERED.**

Dated: October 24, 2019



JON S. TIGAR
United States District Judge