Patrick Ridley (pro hac vice)
Kristen M. Frost (pro hac vice)
Ridley, McGreevy & Winocur, P.C.
303 16th St. Mall #200
Denver, CO 80202
303-629-9700
 ridley@ridleylaw.com
frost@ridleylaw.com

*Counsel for Shareholder/Objector Kevin Fisher*

Theodore H. Frank (SBN 196332)
Hamilton Lincoln Law Institute
Center  For Class  Action Fairness
1629 K Street NW, Suite 300
Washington, DC 20006
703-203-3848
 ted.frank@hlli.org

*Counsel for Objector John Cashman*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION | Lead Case No. 16-cv-5541 JST<br><br>**Objectors Kevin Fisher And John Cashman's Joint Motion For Attorney Fees**<br><br>Judge:        Hon. Jon S. Tigar<br>Courtroom:  6, 2nd Floor (Oakland)<br>Date:          Filed without hearing<br>                 date per shelter-in-place order |

16-cv-5541 JST
IN RE WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that upon a submission of a reply brief (pursuant to the court's shelter-in-place order) or as soon thereafter as the matter may be heard by the Honorable Judge John S. Tigar of the United States District Court of the Northern District of California, Oakland Division, located at the Ronald V. Dellums Federal Building and United States Courthouse, Courtroom 6, 2nd Floor, 1301 Clay Street, Oakland, CA 94612, Objectors Kevin Fisher and John Cashman will and hereby jointly move the Court pursuant to Local Rule of Civil Procedure 54-5 for an order awarding Objectors Fisher and Cashman attorney fees in the amount of $500,000 to be paid by Wells Fargo & Company.

This motion is based on this Notice of Motion and Motion for Attorneys' Fees, and the following memorandum of points and authorities, and such other matters as the Court may consider.

PLEASE TAKE FURTHER NOTICE that, in accordance with the Local Rule 7-2, a proposed form of Order is attached.

PLEASE TAKE FURTHER NOTICE that the undersigned consents to disposition of this motion on the papers in accordance with Local Rule 7-1(b).

## INTRODUCTION

Objectors Kevin Fisher and John Cashman (collectively "Objectors") jointly move this Court for an order awarding their counsel $500,000 in attorney fees based on their objections to attorney fees and costs related to the settlement of this derivative action which resulted in substantial benefits to Wells Fargo & Company ("Wells Fargo" or the "Company"). ECF Nos. 281, 284.

Counsel for Fisher, on behalf of both objectors, met and conferred with the opposing counsel as the local rules require before filing this motion, but was unable to narrow the issues before the Court. Wells Fargo objects to this motion. Co-lead Plaintiffs' Counsel has advised counsel for Fisher that he requires additional information—settlement agreements in the related state court case—before he can assess the motion. As of this filing, no such settlements exist.

Objectors make this motion jointly, despite not having any previous association with each other, or with each Objector's respective counsel. Neither Mr. Fisher (or his counsel at Ridley, McGreevy & Winocur, P.C.) had a preexisting relationship with either Mr. Cashman (or his counsel at the Center for Class Action Fairness). In other words, both Objectors independently developed and submitted similar arguments to this Court in their respective Objections. As further discussed below, this Court Order Granting Motion For Final Approval And Motion For Attorney's Fees ("Fee Order") adopted the Objectors' theories and arguments which resulted in a reduction of $15.2 million in fees and costs awarded. By bringing the motion jointly, this Court will not be required to analyze the individual arguments of both Objectors. This approach is most efficient and saves judicial resourses.

Objectors who provide a substantial benefit to the class through their objections are entitled to fees as a matter of law. *See Rodriguez v. Disner*, 688 F.3d 645, 659 (9th Cir. 2012) (objectors are entitled to attorney fees when they confer a substantial benefit on the class). This Court's Fee Order adopted many of the Objectors' arguments and objections relating to the valuation of injunctive relief and corporate reforms, the true cause of the executive compensation Clawbacks, the appropriate application of the percentage-of-recovery method and the appropriate multiplier on lodestar. *Compare* Fee Order ECF No. 312 *with* Cashman Objection ECF No. 281 at 5-9; Fisher Objection ECF No. 284 at 5-12 (detailing the Independent Directors responsibility for the Clawbacks), 12-18 (detailing Wells Fargo's independent actions with respect to many of the Corporate Reforms). Specifically, for example, the Fee Order adopts Objectors' argument regarding the proximate cause and value of the $60 million in Clawbacks and incorporated the Objectors' argument in determining the amount of the common fund. ECF. No. 312, at 9-15.

In this case, the Objections provided a substantial benefit to Wells Fargo for several reasons. The Objections were based on voluminous evidence from Wells Fargo's own statements, publications and admissions. This evidence and the Objectors' arguments ultimately led this Court to remove Plaintiffs' Counsel's $60 million valuation of Clawbacks and their $20 million valuation of the Reforms from the common fund. *Compare* Fisher Objection ECF No. 284 at 5-18 and

16-cv-5541 JST                                                                                                           2
IN RE WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION

Cashman Objection ECF No. 281 at 5-9 *with* ECF No. 312 at 9-12. Moreover, Cashman documented the degree to which the lodestar was exaggerated. *Compare* ECF No. 281 at 14-18 *with* ECF No. 312 at 21-25. The Court cited the Cashman Objection for other propositions. *E.g.,* ECF No. 312 at 19. Fisher's Objection was methodically researched, tallied 34 pages and included 524 pages of exhibits. Cashman's Objection was similarly methodolically researched, tallied 25 pages and included 17 pages of declarations and 85 pages of exhibits. As a result, the removal of $80 million from the common fund, combined with the Court agreeing with Objectors that a reduction from the 25% benchmark was appropriate, substantially decreased Plaintiffs' Counsels' attorney fees award. Instead of Plaintiffs' Counsel receiving $68 million in fees and costs, they will receive $52.8 million in fees and costs—a benefit to Wells Fargo of $15.2 million. ECF No. 312 at 4, 20.  Further, because the $240 million cash component was funded by the Wells Fargo's insurers, the additional savings of $15.2 million will go directly to Wells Fargo.  This is the classic textbook definition of providing a substantial benefit to a corporation in this context.

"[I]t is well settled that objectors have a valuable and important role to perform in preventing collusive or otherwise unfavorable settlements." *White v. Auerbach,* 500 F.2d 822, 828 (2d Cir. 1974).  Accordingly, pursuant to Local Rule 54-5, Objectors Fisher and Cashman file this memorandum in support of their accompanying motion for attorney fees.  It is now undisputed that the total benefit Wells Fargo has received is $15.2 million.  As this Court held in its Fee Order, "for more than two decades, the Ninth Circuit has set the 'benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund." ECF No. 312 at 8 (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)). Under the Ninth Circuit's 25% benchmark for common fund recoveries, counsel for the Objectors would be entitled to at least $3.8 million.  However, the Objectors are not seeking $3.8 million, but instead are seeking just $500,000, which is only 3.15% of the $15.2 million in decreased attorney fees and costs that have been ordered by this Court. A lodestar crosscheck demonstrates a multiplier below the 2.7 awarded class counsel that the Court has already determined reasonable.

This joint request of both Objectors is reasonable when weighed against the substantial benefits received by Wells Fargo and is not out of the norm for such a large benefit conferred. *See, e.g., Lan v. Ludrof,* 2008 WL 763763, at *28 (W.D. Pa. Mar, 21, 2008) (awarding objector 25% of the increase in the benefit to the class); *Dewey v. Volkswagen of Am.*, No. 07-2249, 2012 U.S. Dist. LEXIS 177844, at *64 (D.N.J. Dec. 14, 2012) (awarding objectors "10.5% of the benefit conferred, well within the range of acceptable percentages-of-recovery"); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 468 (D.P.R. 2011) (finding that "10% [of $3 million benefit conferred] is reasonable and appropriate to reflect Objectors' time, effort, ingenuity and success in increasing the kitty for the benefit of the Class."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 273 F. Supp. 2d 563, 572 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 695 (3d Cir. 2004) (awarding objector $1,260,000, which was 1.4% of class counsel's fee award, because objection was responsible for 1.4% of class recovery).

I. **The Objectors Are Entitled To Fees Based On The Substantial Benefits Received By Wells Fargo That Are Attributable to The Objections**

Ninth Circuit law instructs that objectors are entitled to attorney fees when they confer a substantial benefit to the class. *See Rodriguez v. Disner*, 688 F.3d 645, 659 (9th Cir. 2012); *Rodriguez v. West Publishing Corp*, 563 F.3d 948, 963 (9th Cir. 2009) (reversing denial of fees because objectors are entitled to fees when their efforts increase the fund or substantially benefit the class) (*citing Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002)); *see also Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994) (error to deny fees to objector that benefited class by successfully arguing for reduction in class counsel's fees). The Objectors are entitled to a share of the total attorney fees awarded in this case because their objections successfully realized a significant pecuniary benefit for Wells Fargo.

"[I]t is well settled that objectors have a valuable and important role to perform in preventing collusive or otherwise unfavorable settlements." *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974); *accord Amchem Prods. v. Windsor*, 521 U.S.591, 621 (1997) (noting the "benefit of adversarial investigation" in vetting class action settlements); *Eubank v. Pella Corp.*, -- F.3d -- , 2014 U.S. App. LEXIS 10332, at *9 (7th Cir. Jun. 2, 2014); *Vollmer v. Selden*, 350 F.3d 656, 660

(7th Cir. 2003); *In re Prudential Ins. Co. Am. Sales*, 278 F.3d 175, 202 (3d Cir. 2002) (observing that "a lawyer with objector status plays a highly important role for the class and the court because he or she raises challenges free from the burden of conflicting baggage that Class Counsel carries"); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (crediting objectors' ability to "[a]ssur[e] fair and adequate fee awards"). Objectors "reintroduc[e] an adversarial relationship into the settlement process and thereby improve[e] the chances that a claim will be settled for its fair value." *Vollmer*, 350 F.3d at 660. Thus, awarding fees to objectors when they are successful reflects the important role objectors assume.

Given the important role objectors play in litigation, sound public policy requires that good-faith objectors who bring substantive meritorious objections should be compensated in an amount to incentivize counsel to represent shareholders and class members who perceive settlements or applications for attorney fees to be unfair or nonsensical. In this case, both Objectors set forth numerous arguments that substantially benefitted Wells Fargo in saving the company $15.2 million and thus both Objectors are entitled to attorney fees.

A.  **The Value Of The Reforms**

Both Objectors challenged Plaintiffs' Counsel's valuation of the Corporate Reforms and Clawbacks and argued that their $320 million valuation was grossly over-estimated based on the chronology of events leading up to the reforms, and the relationship of that chronology to the timeline of filings in this case. Fisher's Objection, for example, explicitly stated that "the aggregate value of the settlement is $240 million, not $320 million." ECF No. 284 at 5; *accord* Cashman Objection, ECF No. 281 at 5-8. Fisher argued that Plaintiffs' Counsel is "incorrectly valuing the Reforms at $20 million" and cited evidence that the "Reforms were either created before the Derivative Action was filed or were a direct result of the various governmental consent decrees." ECF No. 284 at 12, 13; *accord* Cashman Objection, ECF No. 281 at 8. Fisher also stated that the Reforms were "so vague as it is virtually impossible to discern what specific actions were taken by Plaintiffs' Counsel that could have caused exactly which specific reforms." *Id.* The Objectors cited to *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003), for two propositions

that are critically important. First, both Objections raise the following rule from *Staton* which states that: "Precisely because the value of the injunctive relief is difficult to quantify, its value is also easily manipulated by overreaching lawyers seeking to increase the value assigned to a common fund." ECF No. 281 at 5; ECF No. 284 at 17 (both citing to *Staton*, 327 F 3d. at 974). Both Objectors noted that the concern in *Staton* was directly applicable to the facts in this case because Plaintiffs' Counsel was overreaching and attempting to increase the value of the common fund to an unreasonable amount. In making its determination on this issue, the Fee Order cites to the exact language from *Staton* which was raised by the Objectors. ECF No. 312, at 9.

Second, Fisher argued that the $20 million figure proposed by Plaintiffs' Counsel had "no basis in science or math" and that Plaintiffs' Counsel's two "experts" had provided no evidence to support this $20 million valuation for the reforms. ECF No. 284 at 17. Following Fisher's analysis of the two governance expert opinions, Fisher cited the *Staton* opinion for the proposition that the Ninth Circuit requires that "only in the unusual instance where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained may courts include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees." ECF No. 284 at 17 (citing *Staton*, 327 F 3d. at. 974); *accord* Cashman Objection, ECF No. 281 at 5.

The Court again cites to this exact quote from *Staton,* which was identified by the Objectors, in its Fee Order and concludes that "neither expert provides a reliable means of assigning a fixed value to the reforms themselves." ECF No. 312 at 10-11. The Court held that Plaintiffs' Counsels' showing regarding the $20 million valuation of the Reforms was "not the degree of accuracy *Staton* requires" and accordingly deducted the $20 million from the common fund. *Id.* at 11. In so holding, Fee Order explicitly relied upon and adopted the *Staton* analysis and approach that the Objectors put before the Court. Therefore, the Objectors' arguments directly impacted the Court's ultimate decision to reduce the common fund by such a significant amount and as a result Wells Fargo has received the benefit of saving millions and millions of dollars. As such, this Court should grant the Objectors' request for attorney fees.

### B. The Value Of The Clawbacks

Similar to their arguments regarding the Corporate Reforms, the Objectors also argued that the $60 million Clawbacks claimed by Plaintiffs' Counsel were negotiated and obtained by the Company's Independent Directors, and not by Plaintiffs' Counsel. ECF. No. 284 at 9-11; ECF No. 281 at 6-7; ECF No. 281-3 at ¶¶ 7-14.

These Objections were based on the review and analysis of voluminous evidence, including court filings, public filings from other government agencies, cease and desist orders, consent decrees, investigative reporting from the LA Times, as well as Wells Fargo's own statements, admissions and public filings. This evidence reflected that the Clawbacks were negotiated and agreed to by a special committee of Wells Fargo's Independent Directors. ECF No. 284 at. 9; ECF No. 281 at 7; ECF No. 281-3 at ¶¶ 7-14. For instance, in his objections, Fisher argued that the language in the Stipulation of Settlement which stated that the "facts alleged in the Derivative Action were a significant factor in causing" the Clawbacks meant that Plaintiffs' Counsel was claiming credit for Wells Fargo's actions merely because they had a complaint on file when those actions were taken. ECF No. 284 at. 8; *accord* Cashman Objection, ECF No. 281 at 6-7. Fisher and Cashman argued that this was insufficient to determine that Plaintiffs' Counsel were a "causal factor" in obtaining the Clawbacks.

These arguments were persuasive as the Court integrated the Objectors' arguments into its analysis and held that "Co-Lead Counsel's attempt to quantify the relevant portion of the Board's Clawbacks is no more persuasive" than its attempt to quantify the Reforms. ECF No. 312 at 12, 13. Further, in weaving the arguments and theories of the Objectors into its analysis, the Court took note of the following points which were raised by the Objectors: (1) that there are legitimate concerns exist about whether the institution and settlement of this case was the proximately cause of the $60 million in Clawbacks, (2) that three government entities had already reached settlements requiring Wells Fargo to establish an oversight committee, which clawed back the compensation early on, when the first of these actions were filed, and (3) that the parties' stipulation was lacking in factual support as to why or how Co-Lead Counsel's prosecution of this case could have been the proximate cause of the Clawbacks. *Id.* at 14-15. In the end, the Court found that Co-Lead

Counsel's "conclusory response" was not convincing, that the claimed benefits raised some causation concerns and gave those claimed benefits little weight. *Id.* at 15. In arriving at this conclusion, the Court integrated and specifically discussed the relevant arguments of the Objectors in this context.

As such, and similar to the benefit conferred on Wells Fargo based on the Objections to the amount of the common fund, the Objectors' argument directly impacted the Court's ultimate approach in declining to credit Co-Lead Counsel's attempt to justify its significant attorney fee request by claiming credit for the Clawbacks. That approach impacted the ultimate figure that the Court determined to be reasonable attorney fees and for that reason this Court should grant the Objectors' requests for attorney fees.

### C. The Objectors Should Be Credited For Reducing Plaintiff's Counsel's Attorney Fees By Excluding $80 Million From The Common Fund

Plaintiffs' Counsel requested attorney fees as a percentage of the common fund. The Objectors should be credited with excluding $80 million - $60 million from the Clawbacks and $20 million from the Reforms - from the common fund and thereby reducing Plaintiffs' Counsels' attorney fees by the Court-ordered percentage of 22.5%. *See Rodriguez*, 688 F.3d at 659 (holding that objectors are entitled to attorney fees when they confer a substantial benefit on the class); *Gottlieb*, 43 F.3d at 491 (finding error in denying fees to objector that benefitted class). The Ninth Circuit's decision in *Rodriguez v. W. Pub. Corp.* supports that the Objectors should be credited because the Court held that it was "clearly erroneous" to deny an objector attorney fees where the objector had raised issues that the court had not previously considered. 563 F.3d 948 (9th Cir. 2009).[1] Judge Posner similarly held in *Reynolds v. Beneficial Nat'l Bank* that objectors' "lawyers who contribute materially to the proceeding" are entitled to a fee, even if the judge would have *sua sponte* made same finding without the objection. 288 F.3d 277, 288 (7th

---

[1] The Objectors should be awarded for presenting these theories even if the Court would have applied such theory *sua sponte* without the Objections. The Ninth Circuit does not require clairvoyance from objectors regarding what arguments the Court will spontaneously advance. In *Rodriguez v. Disner*, the Court held that it was legal error for a district court to deny attorneys' fees to an objector "on the ground that the court relied on 'its own analysis of the case law.'" 688 F.3d 645, 660 (9th Cir. 2012).

Cir. 2002). The rationale in *Rodriquez* and *Reynolds* likewise applies here because the collective work that has been done by the Objectors in this case has resulted in a material and substantial benefit to Wells Fargo.

Objectors who create a benefit for the class should be rewarded with a percentage of recovery. In calculating attorney fees, the percentage-of-recovery approach "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 121 (2d Cir. 2005).

The benchmark for a reasonable award in the Ninth Circuit in a case alleging economic injury is 25% of the class benefit. *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011). Splitting that 25% with class counsel would entitle an objector to 12.5%, and many courts agree that objectors' counsel are entitled to a similar recovery for their efforts as class counsel is. *See, e.g., Dewey v. Volkswagen of Am*., No. 07-2249, 2012 U.S. Dist. LEXIS 177844, at *64 (D.N.J. Dec. 14, 2012) (awarding the Center for Class Action Fairness "10.5% of the benefit conferred, well within the range of acceptable percentages-of-recovery"); *In re Puerto Rican Cabotage Antitrust Litig*., 815 F. Supp. 2d 448, 468 (D.P.R. 2011) (finding that "10% [of $3 million benefit conferred] is reasonable and appropriate to reflect Objectors' time, effort, ingenuity and success in increasing the kitty for the benefit of the Class."); *Lan v. Ludrof,* 2008 WL 763763, at *28 (W.D. Pa. Mar, 21, 2008) (awarding objector 25% of the increase in the benefit to the class); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 273 F. Supp. 2d 563, 572 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 695 (3d Cir. 2004) (awarding objector $1,260,000 which was 1.4% of class counsel's fee award because objection was responsible for 1.4% of class recovery); *see also In re Classmates.com*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480, at *34 (W.D. Wash. Jun. 15, 2012) (award of $100,000 "if anything" "would have undercompensated CCAF"). In addition to *Rodriquez* and *Reynolds,* all of this jurisprudence further supports why the Objectors in this case are entitled to attorney fees in the amount of $500,000.

16-cv-5541 JST                                                                                                          9
IN RE WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION

### D. The Objectors Persuasively Argued For A Reduction From The 25% Common Fund Benchmark

The Objectors successfully argued that the Court should award a fee below the 25 percent benchmark based on a comparative analysis of other, similar megafund settlements. ECF No. 281 at 12-13; ECF No. 284 at 33. Fisher argued that the fees should not exceed 20% of the $240 million recovery, and Cashman argued that the fees should not exceed 17.9% of the $240 million recovery. *Id.* In embracing the relevant Objections in this context and in relying on case law raised by the Objectors, the Court held that the "megafund" nature of this case weighs in favor of a downward adjustment from the 25 percent benchmark and set the fee at 22 percent in the amount of $52,800,000. ECF No. 312 at 20. In particular, the Court noted Cashman's distinction of the *Rodman* case. *Id.* at 19.

The Court also found other arguments made by Cashman helpful. *E.g.*, ECF No. 312 at 24-26 (citing ECF No. 305 and agreeing with Cashman that class counsel had not met burden of proving contract attorneys' lodestar rates and reducing class counsel lodestar by $2.8M).

Because the Court reduced the amount of fees it ultimately awarded to Plaintiffs' Counsel, and relied upon the relevant Objections in doing so, Wells Fargo received a substantial benefit and this Court should award attorney fees to counsel for the Objectors.

## II. Lodestar Cross Check

Finally, this Court should award the requested attorney fees based on the lodestar provided below because this amount is fair and reasonable based on the substantial benefits Wells Fargo has received due to the efforts put forth by the Objectors. "[A] lawyer with objector status plays a highly important role for the class and the court because he or she raises challenges free from the burden of conflicting baggage that Class Counsel carries." *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 278 F.3d 175, 202 (3d Cir. 2002). Yet objection entails risks. There is no guarantee a court will honor objections (*see e.g., In re TFT-LCD (FLAT PANEL) Antitrust Litigation*, MDL 3:07-md-1827, 2011 U.S. Dist. LEXIS 154288 (N.D. Cal. Dec. 27, 2011) (overruling objections)); a successful objection may merely scuttle a settlement without class benefit creating an entitlement to attorneys' fees (though this objection was solely for fees and

had no such risk); and class counsel will often spitefully engage in scorched-earth litigation to challenge a fee request in an attempt to discourage future objectors. *E.g., In re Southwest Airlines Voucher Litig.*, 898 F.3d 740 (7th Cir. 2018). *See generally* attached Frank Declaration.

A district court must utilize a lodestar cross-check because "the lodestar method can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate.'" *Bluetooth*, 654 F.3d at 945. Here, counsel for the Objectors reviewed the settlement proposals in this action, the related California derivative action (Case No. CJC-18-004966), communicated with shareholders who expressed interest in objecting, reviewed and analyzed investigations that had been conducted by various state and federal agencies including resulting consent decrees, cease and desist orders and administrative orders, created chronologies relating to Clawbacks and corporate reforms and compared them to filings in this case, researched and prepared substantive briefs, and prepared for and attended a fairness hearing.

The total lodestar for counsel for Fisher and counsel for Cashman is $202,733.

Fisher's counsel's breakdown of attorney fees is:

| Attorney name | Hours | Rate | Lodestar |
|---|---|---|---|
| Patrick L. Ridley | 87.4 | $700.00 | $61,180 |
| Kristen M. Frost | 67.3 | $600.00 | $43,080 |
| **TOTAL** | **154.70** |  | **$104,260** |

Cashman's counsel's breakdown of attorney fees is:

| Attorney name | Hours | Rate | Lodestar |
|---|---|---|---|
| Theodore H. Frank | 25.10 | $899.00 | $22,564.90 |
| Anna St. John | 2.60 | $747.00 | $1,942.20 |
| Frank Bednarz | 56.40 | $661.00 | $37,280.40 |
| Adam Schulman | 55.50 | $661.00 | $36,685.50 |
| **TOTAL** | **114.5** |  | **$98,473.00** |

16-cv-5541 JST                                                                                                        11
IN RE WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION

These hours and rates are reasonable. See the attached declarations of Patrick L. Ridley and Theodore H. Frank.

The total amount of lodestar is $202,733. Thus, on an award of $500,000 in attorney fees, the lodestar multiplier is 2.46.

The reduction of Plaintiff's Counsel's fees amounted to $15,200,000. Given that significant reduction, a joint award of $500,000 in attorney fees amounts to 3.15% of the benefit obtained by Wells Fargo, and results in a multiplier of 2.46 which is well within the range of reasonableness. The 3.15% is a small fraction of the 25% benchmark and the 22% awarded class counsel; the 2.46 multiplier is below the 2.7 multiplier awarded to class counsel. *See* ECF No. 312 at 28 (citing cases). Therefore, the requested lodestar and attorney fees are fair and reasonable and the Objectors respectfully move this Court to grant the attorney fees for the reasons provided above.

### III.  Cashman is entitled to an incentive award.

Cashman requests a $1,000 incentive award, to come out of the fees paid to his counsel, which is significantly less than the $25,000 awarded to class representatives. ECF No. 312 at 30. It is appropriate to award objectors incentive awards just as class representatives receive incentive awards. *E.g., Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816-17 (N.D. Ohio 2010); *In re Apple Inc. Sec. Litig.*, No. 5:06-CV-05208-JF, 2011 U.S. Dist. LEXIS 52685, at *16 (N.D. Cal. May 17, 2011). Objector incentive awards are justified for the same reason as class representative awards: "to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001). An objector such as Cashman, while not a named representative, is acting on behalf of the class at cost to himself.

By objecting, Cashman exposed himself to the risk of private investigation and harassing discovery. Cashman also forsook personal gain to benefit the entire class. Objectors, if they are willing to selfishly sell-out the class, are able to settle their objections for substantial sums much larger than the $1,000 incentive payment Cashman seeks here. *See, e.g.*, Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403,

428-32. Even when pro bono counsel is available, class members have little incentive to object and jump through hoops and hurdles erected by the settling parties. Thus, it is no surprise that the predominating response will always be apathy. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, a 1996 FJC survey that found between 42% and 64% of settlements engendered no filings by objectors).

  Just as class representatives receive incentive payments, so should objectors whose objections meaningfully contribute to class recovery. Because Cashman and Fisher came forward, an additional $15 million has been created for shareholders.

## CONCLUSION

  For all the foregoing reasons, the Court should award $500,000, to be split evenly by counsel for Fisher and Cashman, with $1,000 of Cashman's fee award earmarked as an incentive award for Cashman.

Dated: May 5, 2020

Respectfully submitted,

RIDLEY, MCGREEVY & WINOCUR, P.C.

/s/ Patrick L. Ridley
Patrick Ridley (pro hac vice)
303 16th Street Mall #200
Denver, CO 80202
Telephone: (303) 629-9700
Facsimile: (303) 629-9702
Email: ridley@ridleylaw.com

*Counsel for Objector Kevin Fisher*

/s/ Theodore H. Frank
Theodore H. Frank (SBN 196332)
Hamilton Lincoln Law Institute
1629 K Street NW, Suite 300
Washington, DC 20006
703-203-384
ted.frank@hlli.org

*Counsel for Objector John Cashman*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the signatories.

Dated: May 5, 2020                                                    */s/ Theodore H. Frank*
                                                                                     Theodore H. Frank

**PROOF OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing Objection using the CM/ECF filing system thus effectuating service of such filing on all ECF registered attorneys in this case.

DATED this 4th day of May, 2020.

                                                                                     */s/ Theodore H. Frank*
                                                                                     Theodore H. Frank