Richard M. Heimann (063607)
*rheimann@lchb.com*
Katherine C. Lubin (259826)
*kbenson@lchb.com*
Michael K. Sheen (288284)
*msheen@lchb.com*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile:  (415) 956-1008

*Attorneys for Co-Lead Plaintiff Fire & Police Pension*
*Association of Colorado and Co-Lead Counsel*

Maya Saxena *(Pro hac vice)*
*msaxena@saxenawhite.com*
Joseph E. White, III *(Pro hac vice)*
*jwhite@saxenawhite.com*
Lester R. Hooker (241590)
*lhooker@saxenawhite.com*
SAXENA WHITE P.A.
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382

*Attorneys for Co-Lead Plaintiff The City of Birmingham*
*Retirement and Relief System and Co-Lead Counsel*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS. | Lead Case No. 4:16-cv-05541-JST<br><br>**CO-LEAD PLAINTIFFS' MOTION FOR SANCTIONS AGAINST OBJECTOR KEVIN FISHER AND HIS COUNSEL** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION FOR SANCTIONS AGAINST OBJECTOR KEVIN FISHER AND HIS COUNSEL ........................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

    PRELIMINARY STATEMENT .................................................................................... 2

    ARGUMENT ................................................................................................................. 4

        I.      THE COURT SHOULD ORDER FISHER AND HIS COUNSEL TO RETURN THEIR $1.75 MILLION PAYMENT FROM WELLS FARGO ......... 4

            A.      Fisher and Ridley Extorted Wells Fargo, in Violation of Their Duty to Serve the Bank's Interests............................................................ 4

                    1.      Fisher and Ridley had a duty to serve Wells Fargo's interests, which they violated by appealing the final approval of the state settlement.......................................... 5

                    2.      Fisher's appeal was frivolous as a matter of law, further demonstrating he acted in bad faith. ................................ 8

                    3.      Fisher and Ridley's attempt to recast the $1.75 million payoff as compensation for "saving" Wells Fargo attorneys' fees in the state settlement is belied by the record. ......................... 9

                    4.      Self-serving statements in the Fisher "settlement" agreement and Ridley's declaration are belied by the record, and in any event do not obviate this Court's independent scrutiny............... 10

            B.      This Court Can, and Should, Sanction Fisher and His Counsel by Ordering Them to Disgorge Their Ill-Gotten Payoff from Wells Fargo. ........................................................................................ 12

        II.      IF THE COURT BELIEVES FURTHER INQUIRY IS NECESSARY, IT SHOULD PERMIT DISCOVERY AND HOLD AN EVIDENTIARY HEARING.................................................................................................. 13

    CONCLUSION .............................................................................................................. 15

1

## TABLE OF AUTHORITIES

2

Page(s)

3

4

**Cases**

*Aparicio v. Comcast, Inc.*,
 274 F. Supp. 3d 1014 (N.D. Cal. 2017) ................................................................. 10

*Barnes v. FleetBoston Fin. Corp.*,
 2006 WL 6916834 (D. Mass. Aug. 22, 2006) ........................................................... 5

*Bell v. City of Kellogg*,
 922 F.2d 1418 (9th Cir. 1991) ................................................................................ 8

*Chambers v. NASCO, Inc.*,
 501 U.S. 32 (1991) ................................................................................................ 12

*Chen v. County of Orange*,
 96 Cal. App. 4th 926 (2002) .................................................................................. 10

*County of Alameda v. Carleson*,
 5 Cal. 3d 730 (1971) ............................................................................................... 8

*Dunk v. Ford Motor Co.*,
 48 Cal. App. 4th 1794 (1996) ................................................................................. 9

*Emp'rs. Ins. of Wausau v. Granite State Ins. Co.*,
 330 F.3d 1214 (9th Cir. 2003) ............................................................................... 11

*Fink v. Gomez*,
 239 F.3d 989 (9th Cir. 2001) ................................................................................. 13

*Fireman's Fund Ins. Co. v. Black*,
 2014 WL 5783562 (Cal. Ct. App. Nov. 6, 2014) ................................................... 11

*Gonzales v. R. J. Novick Constr. Co.*,
 20 Cal. 3d 798 (1978) ............................................................................................. 7

*Hernandez v. Restoration Hardware, Inc.*,
 4 Cal. 5th 260 (2018) .......................................................................................... 8, 9

*In re Petrobras Sec. Litig.*,
 2018 WL 4521211 (S.D.N.Y. Sept. 21, 2018) ....................................................... 13

*Mark v. Spencer*,
 166 Cal. App. 4th 219 (2008) ................................................................................ 10

*Pearson v. NBTY, Inc.*,
 2019 WL 4597367 (N.D. Ill. Sept. 23, 2019) ........................................................ 14

*Pearson v. Target Corp.*,
 893 F.3d 980 (7th Cir. 2018) ................................................................................. 14

*Porter v. Warner Holding Co.*,
 328 U.S. 395 (1946) .............................................................................................. 12

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
 115 F.3d 644 (9th Cir. 1997) ................................................................................. 13

*United States v. Hudson*,
 7 Cranch 32 (1812) ............................................................................................... 12

*Woodland Hills Residents Ass'n, Inc. v. City Council of L.A.*,
 23 Cal. 3d 917 (1979) ............................................................................................. 9

*Young v. Higbee Co.*,
 324 U.S. 204 (1945) ........................................................................................... 5, 8

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

Cal. Code Civ. Proc. § 902......................................................................................................... 8, 9

**Rules**

Cal. Rules of Court, rule 8.115 .................................................................................................... 11

Fed. R. Civ. P. 23(e)(5)................................................................................................................. 4

Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes............................................................... 4

**Other Authorities**

Brian T. Fitzpatrick, *The End of Objector Blackmail?*,
    62 VAND. L. REV. 1623 (2009) ............................................................................................... 4

## NOTICE OF MOTION FOR SANCTIONS AGAINST OBJECTOR KEVIN FISHER AND HIS COUNSEL

PLEASE TAKE NOTICE that upon submission of all papers pursuant to Local Rule 7-3 or as soon thereafter as the matter may be heard by the Honorable Jon S. Tigar in accordance with General Order No. 72-3, Co-Lead Plaintiffs Fire & Police Pension Association of Colorado ("FPPA") and The City of Birmingham Retirement and Relief System will move the Court for sanctions against Objector Kevin Fisher and his counsel Patrick Ridley and Kristen Frost of Ridley, McGreevey & Winocur, P.C.  This motion is supported by (1) the following memorandum of points and authorities; (2) the Declaration of Richard M. Heimann ("Heimann Sanctions Decl.") and accompanying exhibits; and (3) all other prior pleadings and papers in this action, arguments of counsel, and such additional information or argument as may be required or considered by the Court.  Pursuant to Local Rule 7-2(c), a proposed order is submitted herewith.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the Court, in the exercise of its inherent authority, should impose sanctions against Objector Kevin Fisher and his counsel, directing that they disgorge their ill-gotten $1.75 million "settlement" payment from Wells Fargo.

2.     Whether, in the alternative, the Court should allow Co-Lead Plaintiffs to conduct limited discovery relating to the "settlement" between Fisher and Wells Fargo, followed by supplemental briefing and a hearing to determine whether disgorgement is appropriate.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### PRELIMINARY STATEMENT[1]

3        Sanctions are a serious remedy, which neither litigants nor courts should treat lightly.

4  They are reserved for situations where parties or their counsel violate the law or otherwise abuse

5  their position to such an extent that a court must act to preserve the integrity of the judicial

6  process.  Co-Lead Plaintiffs submit this is such an extraordinary case.

7        Violating their duty to pursue Wells Fargo's interests, Objector Kevin Fisher and his

8  counsel Patrick Ridley and Kristen Frost of Ridley, McGreevey & Winocur, P.C. (together,

9  "Fisher and Ridley") have extorted the Bank for a $1.75 million payoff to dismiss Fisher's appeal

10  of the order and final judgment approving the settlement and attorneys' fees in the related

11  California state derivative proceedings (*Wells Fargo Derivative Cases*, No. CJC-18-004966

12  ("California State Derivative Action")).  The record supports a finding that Fisher and his counsel

13  acted in bad faith, warranting disgorgement of their ill-gotten gains.

14        Despite making clear that his objection to the state settlement focused on the impropriety

15  of awarding attorneys' fees given the settlement's "illusory" benefits to the Bank,[2] Fisher

16  appealed *both* the attorneys' fee award and final approval of the settlement itself.  Appealing final

17  approval afforded no benefit to Wells Fargo, and indeed *undermined* its interests by precluding

18  the state settlement, and more importantly this Settlement, from becoming final, which in turn

19  prevented the Bank from receiving its $240 million payment from this case until the appeal was

20  resolved.  Had Fisher actually been driven by Wells Fargo's interests, he would not have appealed

21  the settlement itself, whose finality could only help the Bank, but would instead have solely

22  challenged the state court's fee decision.  Because appealing the fee award would not have

23  delayed the finality of the state settlement or this one, Wells Fargo would have doubly benefited,

24  receiving its payment from this Settlement while potentially recouping all or part of the $4.7

25  million it paid in attorneys' fees and expenses to plaintiffs' counsel in the state case.  Instead, an

26  ───────────────

[1] Unless otherwise indicated, all emphasis in this brief has been added, all internal citations and

27  quotation marks have been omitted, and all capitalized terms retain their meanings from Co-Lead Counsel's opening and reply briefs in support of final settlement approval and attorneys' fees.

28  [2] Heimann Sanctions Decl. Ex. A (Fisher Obj. in Cal. State Derivative Action) at 6-7.

1  appeal whose purported intent was to recoup money for the Bank has left it paying *even more*.

2  But preventing the finality of the state settlement was precisely Fisher's objective: he and

3  Ridley sought to leverage the appeal, with the indefinite delay it posed to Wells Fargo, to extract

4  a personal payoff from the Bank.  The resulting $1.75 million "settlement" payment did not

5  accrue to the benefit of all Wells Fargo shareholders, whose interests Fisher purported to

6  represent, but solely to him and his counsel.  Fisher and Ridley's actions show they were acting in

7  bad faith, warranting sanctions under the Court's inherent authority.

8  And while not necessary for a finding of bad faith, it is relevant that Fisher's appeal was

9  frivolous as a matter of law.  California Supreme Court precedent unequivocally holds that only

10 *parties* to a case have standing to appeal.  Because Fisher's motion to intervene in the California

11 State Derivative Action was (twice) denied and he did not move to vacate the final judgment, he

12 was never a party in that case and thus lacked standing to appeal.  That only further illustrates

13 Fisher and Ridley had no legitimate basis for bringing their appeal; it was merely a vehicle for

14 their extortion.

15 Fisher attempts to legitimize his conduct by claiming the "settlement" payment

16 compensates him for "saving" Wells Fargo approximately $3.5 million in attorneys' fees that

17 state plaintiffs' counsel sought.  But the proper procedure for obtaining any such compensation

18 would have been to move the state court for fees to Fisher's counsel and an incentive award to

19 Fisher.  Fisher and Ridley did not pursue that route because they knew any amount the state court

20 would grant would be a small fraction of what they could obtain by hijacking this Settlement and

21 securing an outsize payoff from the Bank.

22 Finally, that Wells Fargo exercised its "business judgement" to accede to Fisher and

23 Ridley's (ECF No. 327 at 12) does not legitimize their conduct.  After all, that's why

24 extortion works: one actor employs his leverage over a vulnerable actor to squeeze the latter for

25 financial gain.  It makes no difference that the vulnerable party is a large company; that Wells

26 Fargo has money to pay only makes it more susceptible to what courts and commentators, as well

27 as counsel for Fisher's co-objector in this case, have decried as "objector blackmail."  Nor does

28 the stipulated language in Fisher's agreement with the Bank (signed after Co-Lead Plaintiffs

1    raised this issue in opposing Fisher's motion for attorneys' fees in this case) that the parties and

2    their counsel acted in "good faith" and in accordance with their ethical obligations (ECF No. 327-

3    7 ¶ 2(e), (g)) undermine the facts regarding Fisher and Ridley's misconduct or the need for this

4    Court to address it.

5            The Court should thus independently scrutinize the facts, which Co-Lead Plaintiffs submit

6    warrant ordering Fisher and Ridley to disgorge the $1.75 million they stand to receive under their

7    agreement with Wells Fargo.  Alternatively, if the Court determines further inquiry is necessary,

8    it should allow Co-Lead Plaintiffs to take discovery relating to that agreement, followed by

9    supplemental briefing and a hearing.

10                                        **ARGUMENT**

11   **I.      THE COURT SHOULD ORDER FISHER AND HIS COUNSEL TO RETURN
             THEIR $1.75 MILLION PAYMENT FROM WELLS FARGO**

12

13           **A.      Fisher and Ridley Extorted Wells Fargo, in Violation of Their Duty to Serve
                      the Bank's Interests.**

14           "Courts and commentators believe that objector blackmail is a serious problem."  Brian T.

15   Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623, 1625 (2009); *see also* Fed.

16   R. Civ. P. 23(e)(5); Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes (highlighting problem

17   of objectors who "may be . . . using objections to obtain benefits for themselves rather than

18   assisting in the settlement-review process," which led to 2018 amendment of Rule 23(e) to

19   require court approval of payment for forgoing, dismissing, or abandoning objector appeal).

20   Indeed, Fisher's fellow objector John Cashman—who has now distanced himself from Fisher and

21   his counsel[3]—states the Center for Class Action Fairness (led by Cashman's counsel Ted Frank)

22   "has consistently opposed the tactic of 'objector blackmail' and does so again here," noting that

23   "[i]f Fisher engaged in objector blackmail in the California state court action, the court may

24   consider the resulting equities."  ECF No. 325 at 1 n.1.

25           The risk of extortionate objectors is particularly acute in connection with high-dollar

26   settlements such as this one.  As Judge Gertner explained in *Barnes v. FleetBoston Financial*

27   _____
     [3] *See, e.g.*, ECF No. 325 (Cashman's reply "in *Partial* Support" of Objectors' joint motion for
28   attorneys' fees) at 1 n.1.

*Corp.*:

> The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal).  Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors.  Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006).

That is precisely the situation here: Appreciating the implications of delay in the finality of the state settlement to Wells Fargo's ability to collect its $240 million from this Settlement, Fisher and Ridley appealed from the state court's final approval order to gain leverage against the Bank.  They then used that leverage to extract a $1.75 million "settlement" payment in exchange for dismissing the appeal.  That was extortion, plain and simple.

**1. Fisher and Ridley had a duty to serve Wells Fargo's interests, which they violated by appealing the final approval of the state settlement.**

The U.S. Supreme Court has instructed that where, as here, a litigant "appeal[s] from a judgment which affected a whole class of stockholders," his rights are "inseparable" from those of his fellow shareholders, and thus "owe[s] an obligation to them."  *Young v. Higbee Co.*, 324 U.S. 204, 209-10 (1945).  Further, "class" as used in this context is not limited to formal class proceedings; rather, "[t]he liability of one who assumes a determining position over the rights of others must turn on something more substantial than mere formal allegations in a complaint," as "[e]quity looks to the substance and not merely to the form."  *Id.* at 209.  This duty is essentially fiduciary in nature, but "at the very least" requires the objector "to act in good faith."  *Id.* at 210.  Accordingly, in challenging the state court settlement, Fisher and Ridley could not simply "shake off their self-assumed responsibilities to others by a simple announcement that henceforth they w[ould] trade in the rights of others for their own aggrandizement."  *Id.* at 213.  But they did exactly that.

By appealing final approval of the state settlement, as opposed to just the fee award, Fisher undermined the interests of Wells Fargo and its shareholders.  Whereas overturning the fee

1    ruling would have allowed Wells Fargo to recoup some or all of the $4.7 million in fees and

2    expenses it paid in connection with the state settlement, reversal of final approval of the

3    settlement itself could only hurt the Bank, as it prevented the Bank from receiving its $240

4    million payment from this Settlement.

5         Indeed, by appealing final approval of the state settlement, Fisher deprived Wells Fargo of

6    the "meaningful benefit" of "ending th[at] litigation," which was the primary basis for the state

7    court's approval of the settlement.  *See* Heimann Sanctions Decl. Ex. C (Cal. State Derivative

8    Action Tentative Ruling Re Final Approval) at 3.  The court explained: "If securing global peace

9    was, as Fisher contends, the only reason the federal settlement could be approved by Wells

10   Fargo's insurers, then this [state] settlement was not empty surplusage but a necessary component

11   of that settlement." *Id.* at 3-4.  But contrary to the interests Fisher was obligated to protect, his

12   unnecessary appeal of final approval of the state settlement disturbed the global peace the Bank

13   had bargained for.

14        Additionally, the end result of Fisher's appeal of final approval of the state settlement

15   would have been the same as if he had not appealed it at all: dismissal of the state case.  Were the

16   Court of Appeal to overturn the final approval, the parties would, in accordance with this

17   Settlement, "jointly and promptly request dismissal, with prejudice," of the state case.  ECF No.

18   270-1 (Settlement) ¶ 40.  As the releases provided in this Settlement fully encompass the state

19   plaintiffs' claims, those claims would then be barred by *res judicata*.  *See* ECF No. 314 (Final

20   Judgment) ¶ 7 (released claims include "any and all claims by or on behalf of Wells Fargo which

21   are based upon, arise out of, relate in any way to, or involve, directly or indirectly," *inter alia*,

22   "any action described in Section II.C of the [Settlement] Stipulation [including the California

23   State Derivative Action], with the exception . . . of the CPI Allegations in the *Connecticut*

24   *Laborers* Action").  Fisher's appeal of final approval of the state settlement thus offered no

25   benefit to Wells Fargo, while burdening it with the indefinite delay of its large payment from this

26   Settlement.

27        Fisher attempts to elide this issue, claiming that if "the California Court of Appeals [sic]

28   reversed the judgment and the attorney fee award," Wells Fargo would "receive an additional

- 6 -

$4.7 million."  ECF No. 327 at 11.  But achieving that outcome *did not require* challenging the final approval order; appealing the fee award was sufficient.  *See* Heimann Sanctions Decl. Ex. D (Cal. State Derivative Action Final Approval Order) ¶ 15 ("The effectiveness of this Final Approval Order and the Judgment to be entered and the obligations of Plaintiffs, Lead Plaintiffs' Counsel, Wells Fargo, Wells Fargo shareholders and Defendants under the Settlement shall not be conditioned upon or subject to the resolution of any appeal or other matter that relates solely to the issue of attorneys' fees or expenses or Incentive Awards."); *Gonzales v. R. J. Novick Constr. Co.*, 20 Cal. 3d 798, 805 (1978) (reiterating "the general principle that an appeal from a distinct and independent part of a judgment does not bring up the other parts for review in the appellate court").

Indeed, Fisher made clear in his objection to both the settlement itself and the fee request that his concern was the $8.17 million in fees and expenses sought by plaintiffs' counsel.  In particular, Fisher challenged whether they could properly claim "credit" for the executive compensation clawbacks and corporate governance reforms encompassed by the settlement, which was central to their fee motion.  Heimann Sanctions Decl. Ex. A (Fisher Obj. in Cal. State Derivative Action) at 1-2.  In opposing final approval, Fisher argued "the two components of the California Settlement provide no benefits to Wells Fargo," as "[t]he $60 million in Clawbacks were independently negotiated by the Independent Directors with the aid of their law firms and advisors without Plaintiffs' Counsel playing any role," and "the Reforms were copied and pasted from the Federal Settlement and there is no credit given for copying the settlement of another case." *Id.* at 17; *see generally id.* at 6-17.

Fisher made the identical arguments against plaintiffs' counsel's fee request, asserting "the $60 million in Clawbacks was obtained following the investigation of the Independent Directors' [sic]," and "[t]he Reforms were obtained and implemented as a result of the Federal Settlement." *Id.* at 21-22.  Under those circumstances, Fisher asserted, "there has been no benefit, much less a substantial benefit conferred on Wells Fargo," thus "the California Settlement should not be approved and this Court should not award any attorney fees to Plaintiffs or Plaintiffs' Counsel." *Id.* at 22.  The state court likewise recognized that the bases for Fisher's objections to

1   final approval and attorneys' fees were coextensive.  *See* Heimann Sanctions Decl. Ex. C (Cal.

2   State Derivative Action Tentative Ruling Re Final Approval) at 4 & n.6.

3          Given Fisher's focus on the requested attorneys' fees, the only credible explanation for his

4   gratuitous appeal of final approval was that he intended to hold up this Settlement and coerce the

5   Bank to pay him off—which it did, handsomely.  Fisher thus subverted the rights of all other

6   Wells Fargo shareholders for his own gain, violating his duty to "at the very least" pursue the

7   appeal in good faith.  *Young*, 324 U.S. at 210.

8                        **2.    Fisher's appeal was frivolous as a matter of law, further
                                 demonstrating he acted in bad faith.**

9

10         "An appeal is frivolous when the result is obvious or the appellants' arguments are wholly

11  without merit."  *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991) (granting appellees'

12  motion for attorneys' fees where appellants' standing arguments were "wholly without merit").

13  California law holds a non-plaintiff shareholder can become a party either by properly intervening

14  before judgment is entered or unsuccessfully moving to vacate the judgment.  *Hernandez v.*

15  *Restoration Hardware, Inc.*, 4 Cal. 5th 260, 273 (2018).  As the California state court (twice)

16  denied Fisher's motion to intervene and Fisher did not subsequently move to vacate the judgment,

17  he lacked standing to appeal.  Fisher's $1.75 million "settlement" payment from Wells Fargo thus

18  did not reflect the potential success of his appeal, but rather the prospect that the meritless appeal

19  would delay the finality of the state action as well as this case.

20         California Code of Civil Procedure § 902 provides "[a]ny party aggrieved" can appeal

21  from an adverse judgment, and California Supreme Court precedent leaves no room for doubt as

22  to the provision's scope.  Nearly fifty years ago, the Court observed "[i]t is generally held . . . that

23  only parties of record may appeal; consequently one who is denied the right to intervene in an

24  action ordinarily may not appeal from a judgment subsequently entered in the case."  *County of*

25  *Alameda v. Carleson*, 5 Cal. 3d 730, 736 (1971).  "Instead, he may appeal from the order denying

26  intervention."  *Id.*  Additionally, one who is denied intervention "may become a party of record

27  and obtain a right to appeal by moving to vacate the judgment pursuant to Code of Civil

28  Procedure, section 663."  *Id.*  Fisher's motion to intervene in the California state case was denied,

CO-LEAD PLAINTIFFS' MOTION FOR SANCTIONS
AGAINST OBJECTOR FISHER AND HIS COUNSEL
LEAD CASE NO. 4:16-CV-05541-JST

1   and he did not appeal that ruling.  Nor did he move to vacate the final judgment.  He was

2   accordingly foreclosed from appealing any aspect of the judgment.

3         In moving to intervene, Fisher claimed that while California law "clearly requires

4   objectors to class actions to move to intervene to preserve their rights, it is still an open question

5   whether stockholders in representative derivative actions must take the same actions."  Heimann

6   Sanctions Decl. Ex. B (Cal. State Derivative Action Renewed Mot. to Intervene) at 5 n.1.  But the

7   law is settled.  While the California Supreme Court in *Hernandez* addressed appellate standing in

8   the class context—holding an absent class member who did not intervene in the case or move to

9   vacate the judgment lacked standing to appeal—the Court was merely applying long-established

10  precedent from both class and non-class actions, as well as Section 902, which is not specific to

11  class cases.  *See, e.g.*, *Hernandez*, 4 Cal. 5th at 273 ("The Legislature has limited the right of

12  unnamed class members to appeal by expressly requiring that class action objectors who wish to

13  appeal be parties of record who have been aggrieved by the court's decision.") (citing Cal. Code

14  Civ. Proc. § 902).

15              **3.      Fisher and Ridley's attempt to recast the $1.75 million payoff as**
                          **compensation for "saving" Wells Fargo attorneys' fees in the state**
16                        **settlement is belied by the record.**

17        The "settlement" agreement between Fisher and Wells Fargo states the $1.75 million

18  payment to Fisher "reflects a portion of the savings achieved for Wells Fargo in the form of the

19  reduction in fees awarded to plaintiffs' counsel in the State Action after Objector filed his

20  Objections."  ECF No. 327-7 ¶ 2(d).  If that were the actual basis for getting paid by Wells Fargo,

21  however, Fisher was required to move the trial court for attorneys' fees and an incentive award.

22  *See Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1808 (1996) ("[T]horough judicial review of

23  fee applications is required in all class action settlements[.]").  But Fisher and Ridley knew the

24  state court would not award them anywhere near the outsize payment they secured by leveraging

25  Fisher's appeal to extort Wells Fargo.

26        Fees to objectors' counsel, like fees to plaintiffs' counsel, must be proportionate to the

27  benefit objectors afforded to the corporation.  *See Woodland Hills Residents Ass'n, Inc. v. City*

28  *Council of L.A.*, 23 Cal. 3d 917, 945 (1979) (fee award must "bear a reasonable relation to the

1    benefits" conferred); *Mark v. Spencer*, 166 Cal. App. 4th 219, 229 (2008) ("an award of attorney

2    fees in class action litigation must be tied to counsel's actual efforts to benefit the class").  Here,

3    even assuming Fisher's arguments caused the state court to award plaintiffs' counsel less than the

4    fee they requested,[4] any award by the state court would have paled in comparison to the $1.75

5    million Fisher and Ridley extracted from Wells Fargo, particularly given the minimal amount of

6    time they devoted to the case.  *See, e.g.*, Heimann Sanctions Decl. Ex. C (Cal. State Derivative

7    Action Tentative Ruling Re Final Approval) at 10 ("[G]iven the number of plaintiffs and *the*

8    *limited time commitment that was apparently involved*—for example, there do not appear to have

9    been depositions or formal discovery—an award of *$2,000* per person appears reasonable."); ECF

10   No. 312 at 30 (observing "[a]n incentive award of $5,000 is presumptively reasonable, and an

11   award of $25,000 or even $10,000 is considered quite high").[5]

12       In reality, the only "benefit" Fisher provided to Wells Fargo was the dismissal of his

13   appeal, an impediment *Fisher himself* had imposed on the Bank.  That would not constitute a

14   compensable benefit under governing fee jurisprudence.  Fisher and Ridley thus could only obtain

15   such compensation through extra-judicial means.  Had Co-Lead Counsel not brought Fisher and

16   Ridley's scheme to this Court's attention, their "settlement" with Wells Fargo would have

17   escaped the scrutiny required of requests for attorneys' fees and incentive awards.

18               **4.    Self-serving statements in the Fisher "settlement" agreement and**
                         **Ridley's declaration are belied by the record, and in any event do not**
19                       **obviate this Court's independent scrutiny.**

20       Fisher and Ridley point to generic self-serving statements contained in their negotiated

21   "settlement" agreement with Wells Fargo as proof that they have acted properly.  *See, e.g.*, ECF

22   No. 327-7 ¶ 2(e) ("Wells Fargo and Objector represent that at all times, all Parties and counsel for

23   all Parties acted in good faith and that all Parties were represented and advised by counsel."); *id.* ¶

24   ――――――――――――――
     [4] Wells Fargo does not stipulate that Fisher's objection caused the state court to award a lower

25   fee; the agreement states only that the fee reduction occurred "after" Fisher filed his objection.
     *See Aparicio v. Comcast, Inc.*, 274 F. Supp. 3d 1014, 1031 (N.D. Cal. 2017) (Tigar, J.) (noting

26   "the classic logical fallacy of 'post hoc ergo propter hoc' (after the fact, therefore because of the
     fact'") (quoting *Chen v. County of Orange*, 96 Cal. App. 4th 926, 931 (2002)).

27   [5] The "settlement" agreement between Fisher and Wells Fargo does not address what amount or
     percentage of the payment will go toward fees to the Ridley firm, and neither Fisher nor Ridley

28   addresses it in their reply in support of attorneys' fees in this case.

CO-LEAD PLAINTIFFS' MOTION FOR SANCTIONS
                                             AGAINST OBJECTOR FISHER AND HIS COUNSEL
                                             LEAD CASE NO. 4:16-CV-05541-JST

1    2(g) ("Wells Fargo and Objector represent that at all times, counsel for all Parties acted ethically

2    and consistently with all Rules of Professional Conduct of the State Bar of California, and Federal

3    Rule of Civil Procedure 11, and California Code of Civil Procedure § 128.7.").  None of those

4    statements, which Ridley almost certainly helped craft, can paper over the factual record

5    discussed above.  Nor do they obviate the need for the Court to examine the facts and draw its

6    own conclusion.

7          Nor does it matter whether Wells Fargo exercised its "business judgement" in determining

8    it would pay Fisher $1.75 million to go away so that the Bank could collect its $240 million cash

9    payment from this Settlement, or that (according to Fisher and Ridley) "Wells Fargo insisted

10   upon a global resolution of the California Action before reaching an agreement on whether it

11   would oppose fees in this action."  ECF No. 327 at 12.  Under the circumstances, Wells Fargo

12   acted rationally.  But those circumstances, which involved the prospect of indefinite delay in

13   receiving the Settlement payment due to the pendency of Fisher's appeal—were *created by*

14   *Fisher and Ridley*.  Wells Fargo's acquiescence to their extortion does not lessen their culpability.

15         Ridley's suggestion that neither he, Frost, nor Fisher could have extorted Wells Fargo

16   because the Bank is a large corporation whereas he and Frost are but modest Denver lawyers and

17   Fisher "lives in Alabama" (ECF No. 327-1 ¶ 23) is nonsense.  Depending on the circumstances,

18   the generally powerful can be extorted just as readily as the generally powerless.  *See Fireman's*

19   *Fund Ins. Co. v. Black*, 2014 WL 5783562, at *14 (Cal. Ct. App. Nov. 6, 2014) ("We discern no

20   compelling policy reasons why one who has engaged in extortionist behavior should be excused

21   from accountability simply because the money sought was to be paid by an entity with a

22   corporate form.").[6]  The pendency of Fisher's appeal afforded Fisher and his counsel

23   extraordinary, and ill-gotten, leverage over the Bank.  And they used that leverage to extract a

24   payoff.  Indeed, Wells Fargo's ability to pay a hefty sum to rid itself of parasitic litigation

25   rendered it *more* susceptible to objector blackmail, not less.

26   _____

27   [6] While California Rules of Court, rule 8.115 restricts the citation of unpublished opinions in
     California state courts, federal courts "may consider unpublished state decisions, even though
     such opinions have no precedential value."  *Emp'rs. Ins. of Wausau v. Granite State Ins. Co.*, 330

28   F.3d 1214, 1220 n.8 (9th Cir. 2003).

1   Finally, Fisher's attempt to distort California and Ninth Circuit policy favoring

2   settlements, and to claim hypocrisy whereby "settlement of claims is favored when done by

3   Plaintiffs' Counsel, but constitutes an extortion [sic] if done by Mr. Fisher and his counsel" (ECF

4   No. 327 at 13), is sophistry.  Settlements to resolve good-faith disputes are, of course, appropriate

5   and favored.  But abusing the judicial process and undermining shareholders' interests to secure a

6   personal payment furthers no legitimate policy.

7   **B.      This Court Can, and Should, Sanction Fisher and His Counsel by Ordering
         Them to Disgorge Their Ill-Gotten Payoff from Wells Fargo.**

8

9   This Court is the proper forum to address Fisher and Ridley's misconduct.  Under the

10  Final Judgment, the Court "retains jurisdiction over all matters relating to the administration and

11  consummation of the Settlement and all Parties hereto for the purpose of construing, enforcing

12  and administering the Settlement."  ECF No. 314 ¶ 18.  Fisher and Ridley's actions unequivocally

13  relate to the administration and consummation of the Settlement, and thus implicate this Court's

14  jurisdiction.  Further, it is appropriate for this Court, rather than the state court, to intervene

15  because Fisher and Ridley's actions impeded this Settlement and Wells Fargo's ability to obtain

16  its recovery from it.  The Court should exercise its authority to sanction Fisher and Ridley for

17  "abus[ing] the judicial process."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).

18  "It has long been understood that '[c]ertain implied powers must necessarily result to our

19  Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a

20  Court, because they are necessary to the exercise of all others.'"  *Id.* at 43 (quoting *United

21  States v. Hudson*, 7 Cranch 32, 34 (1812)).  Those powers are "governed not by rule or statute but

22  by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly

23  and expeditious disposition of cases."  *Id.*  Disgorgement is an appropriate equitable remedy

24  where, as here, a litigant and counsel have obtained ill-gotten gains.  *See Porter v. Warner

25  Holding Co.*, 328 U.S. 395, 398-99 (1946) (holding that unless otherwise provided by statute,

26  district courts may exercise "all inherent equitable powers" to fashion equitable relief, including

27  disgorgement).  The Court should preclude Fisher and Ridley from profiting from their extortion

28  of Wells Fargo.

1    The dispositive question in determining whether to assess sanctions under the Court's

2    inherent authority is whether Fisher and Ridley have acted "in bad faith," which "includes a broad

3    range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).  A finding

4    of bad faith is warranted, for example, "where an attorney knowingly or recklessly raises a

5    frivolous argument." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997).

6    But a finding of bad faith "does not require that the legal and factual basis for the action prove

7    totally frivolous"; sanctions may lie even where a litigant asserts "a colorable claim," if he "is

8    substantially motivated by vindictiveness, obduracy, or mala fides." *Fink*, 239 F.3d at 992; *see*

9    *also Primus*, 115 F.3d at 649 (finding of bad faith warranted where attorney "argues a meritorious

10   claim for the purpose of harassing an opponent").  In short, "sanctions are justified when a party

11   acts *for an improper purpose*—even if the act consists of making a truthful statement or a non-

12   frivolous argument or objection." *Fink*, 239 F.3d at 992 (emphasis in original).  Such an

13   improper purpose can include "an attempt to influence or manipulate proceedings in one case in

14   order to gain tactical advantage in another case." *Id.* at 994.  Fisher and Ridley have done

15   precisely that: abusing the terms of this Settlement and the settlement in the state case to extract a

16   payoff from Wells Fargo.  Sanctions are warranted.  *See, e.g.*, *In re Petrobras Sec. Litig.*, 2018

17   WL 4521211, at *6 (S.D.N.Y. Sept. 21, 2018) (awarding sanctions where objector made

18   "frivolous" arguments and repeatedly misrepresented the facts and law, in an attempt "to extort a

19   payment from the Class Plaintiffs in order that they may avoid costly delay, in other words,

20   extortion").

21   **II.    IF THE COURT BELIEVES FURTHER INQUIRY IS NECESSARY, IT SHOULD**
         **PERMIT DISCOVERY AND HOLD AN EVIDENTIARY HEARING**
22

23          While Co-Lead Plaintiffs submit the record is sufficient to direct Fisher and his counsel to

24   return the $1.75 million payment to Wells Fargo, if the Court believes further inquiry is

25   necessary, it should permit Co-Lead Plaintiffs to conduct limited discovery aimed at fully

26   revealing the circumstances that culminated in the "settlement" between Fisher and the Bank.

27   Such discovery should include communications preceding the agreement and following its

28   execution, communications between Fisher (or his counsel) and Cashman (or his counsel)

- 13 -

1    regarding the agreement, and all drafts of the agreement.  An order permitting discovery is

2    appropriate, moreover, because Ridley already has refused FPPA's counsel's request for those

3    documents.  *See* Heimann Sanctions Decl. ¶ 6.

4          Discovery would allow Co-Lead Plaintiffs to further inquire into the motivations

5    animating the "settlement," and would assist the Court in determining whether disgorgement is

6    warranted (if the Court concludes the present record is not sufficiently developed).  It would also

7    afford insight into whether Objector John Cashman and his counsel Ted Frank—who

8    communicated with Ridley regarding the potential "settlement" and received a draft agreement

9    before it was filed (ECF No. 325-1 ¶¶ 11-23)—understood that the "settlement" was to include

10   Wells Fargo's agreement not to object to either Fisher's *or Cashman's* request for attorneys' fees

11   in this case.  That is, discovery may reveal whether Cashman and Frank knowingly benefited

12   from the "objector blackmail" Frank claims to abhor.  *See* ECF No. 325 at 1 n.1.

13         A similar procedure was adopted in *Pearson v. NBTY, Inc.*, 2019 WL 4597367 (N.D. Ill.

14   Sept. 23, 2019), a case in which Frank participated (and is currently pursuing an appeal).  Frank

15   there sought to disgorge side payments made to resolve appeals by three other objectors that were

16   dismissed before any briefing was filed, asserting the dismissals were part of an improper scheme

17   to obtain money from defendants that otherwise would have gone to the class.  The district court

18   denied Frank's motion, holding that because the court already had dismissed the case with

19   prejudice, it lacked jurisdiction.  *Id.* at *2.

20         The Seventh Circuit reversed, determining Frank had potentially identified "objector

21   blackmail"; in that regard, the court noted "three objectors voluntarily dismissed their appeals

22   before appellate briefing began."  *Pearson v. Target Corp.*, 893 F.3d 980, 982-83 (7th Cir.

23   2018).  The court of appeals thus concluded the district court should have permitted Frank to

24   formally raise his suspicion that the settling objectors acted in bad faith.  On remand, the district

25   court "provided Frank with the opportunity to pursue his theory"; to that end, "[t]he parties

26   conducted discovery, filed motions, and argued the matter."  2019 WL 4597367, at *2.  If this

27   Court does not believe the present record suffices to order disgorgement, it should afford Co-Lead

28   Plaintiffs that same opportunity.

**CONCLUSION**

Fisher and his counsel have abused the judicial process and obstructed the finality of this Settlement solely to secure a payoff from Wells Fargo, whose $240 million payment under the Settlement would have been delayed indefinitely during the pendency of Fisher's appeal. Far from serving Wells Fargo's interests, Fisher and Ridley used the leverage *they created* by filing that appeal to extort the Bank. This Court, in the exercise of its inherent authority, should impose sanctions against Fisher, Ridley, and Frost, directing that they return their ill-gotten gains to Wells Fargo and its shareholders. Alternatively, if the Court decides further inquiry is necessary, it should allow Co-Lead Plaintiffs to conduct limited discovery relating to the "settlement" between Fisher and Wells Fargo, followed by supplemental briefing and a hearing to determine whether disgorgement is appropriate.

Dated: June 12, 2020

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

By: */s/ Richard M. Heimann*

Richard M. Heimann (063607)
*rheimann@lchb.com*
Katherine C. Lubin (259826)
*kbenson@lchb.com*
Michael K. Sheen (288284)
*msheen@lchb.com*
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

1      Steven E. Fineman (140335)
       *sfineman@lchb.com*
2      Daniel P. Chiplock *(Pro hac vice)*
       dchiplock@lchb.com
3      Nicholas Diamand *(Pro hac vice)*
       *ndiamand@lchb.com*
4      Michael J. Miarmi *(Pro hac vice)*
       *mmiarmi@lchb.com*
5      Sean A. Petterson *(Pro hac vice)*
       *spetterson@lchb.com*
6      250 Hudson Street, 8th Floor
       New York, NY 10013-1413
7      Telephone: (212) 355-9500
       Facsimile: (212) 355-9592
8
       *Attorneys for Co-Lead Plaintiff Fire & Police Pension*
9      *Association of Colorado and Co-Lead Counsel*

10
       **SAXENA WHITE P.A.**
11
       Maya Saxena *(Pro hac vice)*
12     *msaxena@saxenawhite.com*
       Joseph E. White, III *(Pro hac vice)*
13     *jwhite@saxenawhite.com*
       Lester R. Hooker (241590)
14     *lhooker@saxenawhite.com*
       Adam D. Warden *(Pro hac vice)*
15     *awarden@saxenawhite.com*
       Dianne M. Pitre (286199)
16     *dpitre@saxenawhite.com*
       7777 Glades Road, Suite 300
17     Boca Raton, FL 33434
       Telephone: (561) 394-3399
18     Facsimile: (561) 394-3382

19     Steven B. Singer *(Pro hac vice)*
       *ssinger@saxenawhite.com*
20     Kyla Grant *(Pro hac vice)*
       *kgrant@saxenawhite.com*
21     Sara DiLeo *(Pro hac vice)*
       *sdileo@saxenawhite.com*
22     10 Bank Street, 8th Floor
       White Plains, NY 10606
23     Telephone: (914) 437-8551
       Facsimile: (888) 631-3611
24
       *Attorneys for Co-Lead Plaintiff The City of Birmingham and*
25     *Co-Lead Counsel*

26

27

28

                           - 16 -