1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Patrick L. Ridley
Kristen M. Frost
RIDLEY, MCGREEVY & WINOCUR, P.C.
303 16th St. Mall #200
Denver, CO 80202
303-629-9700
ridley@ridleylaw.com
frost@ridleylaw.com

*Counsel for Shareholder/Objector Kevin Fisher*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION,<br><br>This Document Relates to:<br>ALL ACTIONS | Case No. 4:16-cv-05541-JST<br><br>**OBJECTOR KEVIN FISHER RESPONSE TO LEAD PLAINTIFFS' MOTION FOR SANCTIONS**<br><br>Judge:     Hon. Jon S. Tigar<br>Courtroom: 6, 2nd Floor (Oakland)<br>Date:      Filed without hearing date<br>              per shelter-in-place order |

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................................................i

TABLE OF AUTHORITIES .......................................................................................................ii

INTRODUCTION ........................................................................................................................1

I.      ARGUMENT .....................................................................................................................2

        A.      The Motion Must Be Denied Under Civil L.R. 7-8(d)..........................................2

        B.      Wells Fargo Has Confirmed To Mr. Fisher That There Was No Extortion..............2

        B.      Mr. Fisher Lacked The Ability To "Hold Up" Final Approval Of This Settlement. ........5

        C.      Wells Fargo's Desire To Settle Mr. Fisher's California Action Appeal Is Strong
                Evidence That No Extortion Took Place.................................................................5

        D.      Each Of Lead Plaintiffs' Four Arguments In Support Of Sanctions Are Wrong. ........6

                1.      Mr. Fisher Does Not Owe A Fiduciary Duty To Wells Fargo. .........6

                2.      Mr. Fisher's California Action Appeal Was Not Frivolous. .............8

                3.      Mr. Fisher's California Action Objection Saved Wells Fargo $3.5 Million –
                        And A Successful Appeal Would Have Saved Another $4.7 Million..........10

                4.      Wells Fargo's Business Judgment Is Entitled To Deference........................11

        E.      Lead Plaintiffs' Motion For Sanctions Was Brought In Bad Faith And For A
                Vindictive Purpose.............................................................................................12

        F.      Discovery Is Unnecessary And Not Appropriate..................................................13

CONCLUSION............................................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*ADO Fin., AG, v. McDonnell Douglas Corp.,* 938 F. Supp. 590 (C.D. Cal. 1996) ...................................... 12

*Albano v. Shea Homes Ltd. P'ship*, 2012 U.S. Dist. LEXIS 141340 (D. Ariz. Sep. 30, 2012) ................................ 12

*Gottlieb v. Wiles*, 11 F.3d 1004 (10th Cir. 1993) ........................................................... 6, 7

*In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986) ........................................................... 12

*In re Oracle Corp. Derivative Litig.*, No. 2017-0337-SG, 2019 Del. Ch. LEXIS 1381 (Ch. Dec. 4, 2019) .................................................................................................... 8

*Nat.-Immunogenics Corp.*, 2016 U.S. Dist. LEXIS 197855 (C.D. Cal. June 16, 2016) .......................... 12

*Pearson v. Target Corp.* 893 F.3d 980 (7th Cir. 2018) ........................................................... 14

*Unocal Corp. v. Mesa Petroleum Co.,* 493 A.2d 946 (Del. 1985) ........................................ 11

*Young v. Higbee Co.*, 324 U.S. 204 (1945) .......................................................................... 6

## Rules

California Code of Civil Procedure § 128.7 .......................................................................... 4

California Rules of Professional Conduct, Rule 3.3(a)(1)(2) ...................................................... 9

California Rules of Professional Conduct, Rule 3.6….. ........................................................... 13

Civil L.R. 7-8(d) .................................................................................................... 2

Fed. R. Civ. P. 11 .................................................................................................... 4

Fed. R. Civ. P. 23 .............................................................................................. 6, 7

Fed. R. Civ. P. 23.1 ............................................................................................ 6, 7

**INTRODUCTION**

Mr. Patrick Ridley and Ms. Kristen Frost (collectively "counsel") and their client, Mr. Kevin Fisher have not engaged in any inappropriate or sanctionable behavior. Rather, the only "bad faith" in this case is attributable to Lead Plaintiff's Counsel who is operating based on a vendetta rooted in anger because Mr. Fisher contributed to a reduction of over $15 million to their pocketbooks. On the one hand, most of Lead Plaintiffs' Motion for Sanctions (the "Motion") is simply a rehashed version of their Opposition to Kevin Fisher's Joint Motion for Attorneys' Fees. Yet, on the other hand, Lead Plaintiffs' do an about-face in other parts of the Motion - taking new positions which contradict arguments previously made in this case and in their Opposition.

The Motion should be denied in its entirety because each and every argument made is without merit. The real question the Motion raises is whether this Court should now, without delay, put an end to Lead Plaintiffs and Lead Plaintiffs' Counsel's repeated and categorically false accusations that Mr. Fisher and his counsel have "extorted" Wells Fargo and stop the continued threats and bullying by Lead Plaintiffs' Counsel. The answer to that question is an unequivocal yes.

Lead Plaintiffs' Counsel's vendetta against Mr. Fisher and his counsel is certainly understandable. Mr. Fisher played a pivotal role in exposing Lead Plaintiffs' Counsel's attempt to take credit for Wells Fargo's corporate reforms and compensation clawbacks, neither of which they had any role in obtaining. Mr. Fisher's work exposed that Lead Plaintiffs' Counsel: (i) hid from this Court critical documents that proved that the corporate reforms and compensation clawbacks were not caused by Lead Plaintiffs, and (ii) that Lead Plaintiffs' Counsel's attorneys' fee request was improperly inflated. Being caught red-handed is undoubtedly embarrassing to Lead Plaintiffs' Counsel. Yet, this relevant information was utilized by the Court when it determined the appropriate attorneys' fees to be awarded to Lead Plaintiffs' Counsel. Mr. Fisher not only aided this Court on the merits of the Settlement, but then impacted the holy grail of Lead Plaintiffs' Counsel - their attorneys' fees.

The question is: what lengths will Lead Plaintiffs' Counsel go to in order to punish someone for exposing the Settlement's non-monetary components that were obtained by Wells Fargo, without any aid or efforts from Lead Plaintiffs' Counsel, and also taking $15.2 million out of Lead Plaintiffs' Counsel's collective pocket? The answer to this question is now abundantly clear. Lead Plaintiffs' Counsel will file multiple briefs

that falsely state that Mr. Fisher and his counsel committed extortion, make misstatements of both law and fact, including in sworn affidavits, and then issue public comments in the news media which repeats these unfounded claims. *See* Ridley Decl. at Ex. 1. Their behavior has been carefully calculated to intimidate Mr. Fisher and, as Mr. Heimann has stated to the media, to serve as a warning to future objectors that anyone who objects to one of his settlements will pay a high price for exercising their legal rights as stockholders.

## I.    ARGUMENT

### A.    The Motion Must Be Denied Under Civil L.R. 7-8(d).

As an initial matter, the Local Rules of this Court prohibit any motion for sanctions "served and filed more than 14 days after entry of judgment by the District Court." Civil L.R. 7-8(d). The Court entered the Final Judgment and Order of Dismissal on April 20, 2020. ECF No. 314. Fourteen days after April 20, 2020 was May 4, 2020. Thus, Lead Plaintiffs' Motion is prohibited by local rule and is untimely by more than five weeks. Lead Plaintiffs did not seek leave of the Court for relief from the timing restrictions in Civil L.R. 7-8(d) prior to filing their Motion and have failed to indicate any reason for their delay, despite knowing that Mr. Fisher's California Action was pending at that time and knowing of settlement negotiations between Wells Fargo and Mr. Fisher for weeks. Because Lead Plaintiffs' failed to comply with Civil L.R. 7-8(d) their Motion should be denied.

### B.    Wells Fargo Has Confirmed To Mr. Fisher That There Was No Extortion.

Mr. Fisher and his counsel did not "extort" Wells Fargo. Wells Fargo has unequivocally denied that extortion or attempted extortion took place.

On May 18, 2020, Lead Plaintiffs' Counsel filed their Opposition to Objectors John Cashman and Kevin Fisher's Joint Motion for Attorneys' Fees. ECF No. 322. This is the first time Lead Plaintiffs made any accusation that the Fisher-Wells Fargo settlement negotiations were a product of extortion.[1] *Id.* Mr. Fisher and his counsel were frankly shocked at this accusation and on May 20, 2020, Mr. Ridley contacted counsel for Wells Fargo, Mr. Sverker Högberg, of Sullivan and Cromwell, LLP and asked him directly if in his view he believed that Mr. Fisher had extorted or attempted to extort Wells Fargo. Ridley Decl. at ¶9. Mr. Hogberg unequivocally replied "no". *Id.* On May 29, 2020, prior to filing Mr. Fisher's Reply, Mr. Ridley called

---

[1]      At this time, there was no settlement agreement and settlement negotiations were ongoing.

Mr. Högberg to inform him that he intended to reference the May 20, 2020 conversation in which Mr. Högberg had confirmed the obvious – that there was no attempt to extort Wells Fargo or any extortion of any kind. Mr. Högberg indicated that including the May 20th conversation was unnecessary because the allegation of extortion was baseless. Though not obligated to do so, Mr. Ridley honored Mr. Högberg's request that he not be mentioned out of respect for his position. *Id.* Given the escalation by Lead Plaintiffs in filing the Motion, however, the Court needs to be informed of Wells Fargo's stated position.

Mr. Ridley is not only an experienced civil and criminal attorney, but he routinely represents lawyers subject to disciplinary proceedings with the Colorado Supreme Court's Office of Attorney Regulation. Ridley Decl. at ¶2. Had Wells Fargo informed Mr. Ridley that it believed he was extorting them, acting unethically or engaging in unprofessional conduct, he would have done whatever was necessary to address Wells Fargo's concerns, including retain ethics counsel to provide advice on the issue and/or withdraw from negotiations. *Id.* at ¶8. None of these actions were necessary given Wells Fargo's adamant denial that extortion occurred.

The purported "victim" has denied the fundamental premise of Lead Plaintiffs' Motion and unequivocally stated that no extortion occurred. This should end the inquiry. On this basis alone, the Court should deny Lead Plaintiffs' Motion for Sanctions.

## A.   The Settlement Agreement Confirms That No Extortion Occurred.

Lead Plaintiffs made their first accusation of extortion on May 18, 2020 without having seen the actual Fisher-Wells Fargo settlement agreement because negotiations were ongoing and no agreement had been executed. Consequently, Lead Plaintiffs' first accusation of extortion was made without even knowing the terms of the Fisher-Wells Fargo settlement agreement. Their mind was made up. Any settlement, regardless of its terms, would be a product of extortion. The Fisher-Wells Fargo settlement agreement was disclosed on May 29, 2020. ECF No. 327-7. The terms of the settlement agreement confirm that no wrongdoing occurred. In the settlement agreement, Wells Fargo stipulates:

1.  Wells Fargo has determined that it is in its best interests to enter into this Settlement Agreement.

2.  Wells Fargo acknowledgment that the payment to Fisher reflects a portion of the savings achieved for Wells Fargo in the form of the reduction in fees awarded to plaintiffs' counsel.

3.  Wells Fargo's acknowledgement that Fisher acted in good faith and that all parties were represented and advised by counsel.

4.   Wells Fargo and Fisher at all times during the negotiation of this settlement agreement acted at arm's length.

5.   Fisher acted ethically and consistently with all Rules of Professional Conduct of the State Bar of California, and Federal Rule of Civil Procedure 11, and California Code of Civil Procedure § 128.7.

Words matter, particularly the words in a legal document executed by Wells Fargo and negotiated by its counsel Sullivan and Cromwell, LLP. The settlement agreement could have easily been written and agreed to without any of these representations and warranties by Wells Fargo. A more simplified agreement could have been negotiated that only provided for a payment to Mr. Fisher in exchange for a withdrawal of the California Action Appeal. Indeed, if Wells Fargo believed that extortion or any other untoward or unethical action had been occurring, Wells Fargo would not have executed a settlement agreement with these extensive representations.

For this Court to order sanctions against Mr. Fisher or his counsel it must find three things. First, it must find that Wells Fargo is lying in its settlement agreement which states that Mr. Fisher and his counsel "acted ethically and consistently with all Rules of Professional Conduct of the State Bar of California, and Federal Rule of Civil Procedure 11, and California Code of Civil Procedure § 128.7." Extortion cannot coexist with ethics compliance and compliance with California's Rules of Professional Conduct. They are mutually exclusive. Second, this Court must also find that Wells Fargo's counsel was lying when he informed Mr. Ridley that no extortion occurred. Third, it must further determine that Wells Fargo is knowingly wasting its corporate funds by settling with Mr. Fisher. Here, none of these conditions are even remotely plausible, let alone probable.

It is also important to note that Mr. Fisher voluntarily submitted the Fisher-Wells Fargo settlement agreement to this Court on his own volition, even though he was under no legal obligation to do so. This act of transparency by Mr. Fisher should be juxtaposed to the actions taken by Lead Plaintiffs' Counsel who affirmatively hid from this Court the April 4, 2017 Independent Directors Report which categorically denied that Lead Plaintiffs played any role in the Clawbacks for which they claimed credit for. *See* ECF No. 318 at 7. Mr. Fisher and his counsel have been open and honest with this Court. Lead Plaintiffs' Counsel have not.

**B.      Mr. Fisher Lacked The Ability To "Hold Up" Final Approval Of This Settlement.**

Lead Plaintiffs' extortion fallacy rests on the underlying assumption that Mr. Fisher possessed leverage over Wells Fargo that allowed it and its sophisticated counsel to be knowingly extorted by a shareholder. That supposed leverage was that Mr. Fisher had the ability to prevent the Federal Settlement from becoming final by pursuing his California Action Appeal. However, that is not true. It was a legal impossibility for Mr. Fisher's California Action Appeal to be the cause of this Settlement not becoming Final. Three weeks before the Fisher-Wells Fargo settlement was executed, two separate appeals of the final judgment in this Action had already been filed. *See* ECF Nos. 316 and 319. These two appeals were and are preventing the Settlement from becoming final. Mr. Heimann has not directed his fury towards the two parties who have appeals pending, but those parties are not responsible for reducing his fees by $15.2 million. Mr. Fisher simply did not have the leverage that Lead Plaintiffs' argument requires him to have.

**C.      Wells Fargo's Desire To Settle Mr. Fisher's California Action Appeal Is Strong Evidence That No Extortion Took Place.**

Wells Fargo conditioned its consent to the Motion for Attorneys' Fees on a global settlement of Mr. Fisher's California Action Appeal. ECF No. 327-1 at ¶26. In other words, Wells Fargo would only agree to a global settlement that included both Mr. Fisher's attorneys' fee motion in this Action and Mr. Fisher's California Action Appeal. *Id.* Wells Fargo's position was understandable. It wanted global resolution from Mr. Fisher. Mr. Fisher's counsel negotiated with Wells Fargo, in good faith, to reach the global resolution Wells Fargo demanded. Ridley Decl. at ¶ 11. In an effort to be fully transparent, Mr. Fisher then acted with complete transparency and informed the Court of this resolution and even provided the settlement agreement to the Court when it had no obligation to do so. ECF No. 327-7 at ¶ 28. Lead Plaintiffs have twisted Wells Fargo's demand for a global resolution with Mr. Fisher into wrongdoing by Mr. Fisher and his counsel against Wells Fargo. This is not only illogical, but contradicted by the facts. It was Wells Fargo that required a global resolution. ECF No. 327-1 at ¶ 26. Wells Fargo has exercised its legally-protected independent business judgment to enter into a global settlement with Mr. Fisher. Through counsel, Wells Fargo made Mr. Fisher a reasonable offer of settlement, which he accepted. Mr. Heimann's allegations that Mr. Fisher received "ill-gotten gains" is contradicted by the facts.

**D.      Each Of Lead Plaintiffs' Four Arguments In Support Of Sanctions Are Wrong.**

**1.      Mr. Fisher Does Not Owe A Fiduciary Duty To Wells Fargo.**

Lead Plaintiffs unequivocally state that Mr. Fisher **owed** and **broke** a fiduciary duty to Wells Fargo by appealing the state court settlement. ECF No. 329 at 5-8. Given the thousands of shareholder derivative lawsuits and class action lawsuits which have produced opinions in the United States, one would think that Lead Plaintiffs could find voluminous authority for the position essential to the crux of their Motion – that Mr. Fisher had a duty to Wells Fargo which he violated. One would be mistaken. Lead Plaintiffs **only** authority for this necessary proposition is the misleadingly cited *Young v. Higbee Co.*, 324 U.S. 204, 209-10 (1945). ECF No. 239 at 5. Lead Plaintiffs' Counsel argues that this single 75-year old opinion stands for the proposition that Mr. Fisher had a fiduciary duty to Wells Fargo that he violated by appealing the California Action. ECF No. 239 at 5. The problem with this position is that the *Young* case was, by its very terms, limited to an action brought under Section 203 of the Chandler Act in a bankruptcy proceeding. *Young,* 324 U.S. at 213. The statute itself under which *Young* was appealed provided specific duties which were allegedly violated. *Id.* As this Court is well aware, this Action is not an action brought under Section 203 of the Chandler Act in the course of a bankruptcy. It is a shareholder derivative action brought under Fed. R. Civ. P. 23.1 and Delaware state law. *Young* is simply inapplicable given there is no similar statutory requirement analogous to the Chandler Act in Rule 23.1. Critically, *this deliberately misleading citation is the only legal authority provided by Lead Plaintiffs for the proposition that Mr. Fisher, as an objector, owed a fiduciary duty to Wells Fargo that he violated* by appealing the sham California Action settlement.

Similarly, Lead Plaintiffs' Counsel's authority regarding the duties of objectors in a class action is likewise inapplicable. ECF No. 329 at 9-10. Class actions under Fed. R. Civ. P. 23 are fundamentally different than derivative actions under Fed. R. Civ. P. 23.1. Courts have recognized these important differences. For example, in *Gottlieb v. Wiles*, 11 F.3d 1004 (10th Cir. 1993), the Tenth Circuit denied standing to a non-named party in a class action securities lawsuit due to that party's failure to intervene but stated that such relief was available for a derivative plaintiff. *Id.* at 1009-10. Importantly, the court noted the important differences between the derivative plaintiff and the class plaintiff. *Id.* at 1011. For example, a class member who objects to a class action settlement and is denied by the court always has the ability to opt-out of the class-wide

settlement and file their own lawsuit. *See Id.*  On the other hand, no such protection exists for a derivative settlement objector. *See Id.* Once the court grants approval of a derivative settlement, there is no remedy available for a stockholder as there is in the class action context. *See Id.* Thus, the critical difference is that all shareholders are bound by the outcome of derivative settlements *regardless of their objections*. [2]

Finally, the Tenth Circuit also noted that one of the risks peculiar to shareholder derivative actions is that "plaintiffs' attorneys and the defendants may settle in a manner adverse to the interests of the plaintiffs by exchanging a low settlement for high fees." *Id.* (citing *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1310 (3rd Cir. 1993)). The court stated that "such a risk cautions against creating obstacles to challenging derivative action settlement agreements." *Id.* This is precisely what has happened here. Mr. Fisher objected to a sham settlement between the California Action plaintiffs and defendants which provided absolutely zero consideration to Wells Fargo in exchange for which the defendants received releases, and the plaintiffs' attorneys were to be paid $8.25 million. Mr. Fisher believed that the State Court ignored these crucial facts and its approval of the settlement (and the reduced $4.75 million in attorneys' fees) directly contravenes this Court's analysis of the "value" of the Reforms and Clawbacks. Unlike in a class action, Mr. Fisher could not opt out of the California Action settlement and thus his only recourse was to appeal. This is precisely why courts have not constrained shareholder derivative objectors from the judicial process in the same manner they have done for class action objectors. Lead Plaintiffs' deliberate ignorance of the differences between class and derivative actions and Rules 23 and 23.1 are fatal to their argument.

Despite the fact that Mr. Fisher does not stand in a fiduciary relationship with Wells Fargo as a first-time, non-professional objector his efforts were wildly successful. He aided this Court in its decision to reduce Lead Plaintiffs' Counsel's attorneys' fees in the amount of $15.2 million (22%) and lead counsel's attorneys' fees in the California Action in the amount of $3.5 million (43%). He then accepted a reasonable

---

[2] Lead Plaintiffs' class action authority also reveals a similar theme wherein the class action objectors contact the lead plaintiffs' counsel and demand fees to dismiss their objection or appeal. Mr. Fisher never asked or demanded anything from Lead Plaintiffs' Counsel, particularly attorneys' fees to dismiss his appeal. Mr. Fisher would have been perfectly content to litigate the California Action Appeal to conclusion and would have done so if Wells Fargo had not made a reasonable and compelling settlement offer following good faith negotiations. The fact pattern of this dispute simply does not fit the objector extortion pattern in the cases cited by Lead Plaintiffs because Mr. Fisher never contacted Lead Plaintiffs' Counsel to demand anything. This distinction is vitally important and ignored by Lead Plaintiffs.

settlement offer from Wells Fargo. As stated previously, Mr. Fisher can do nothing right in Lead Plaintiffs' eyes no matter what actions he takes.[3]

### 2.    Mr. Fisher's California Action Appeal Was Not Frivolous.

As Mr. Fisher more fully explained in his Reply In Support of Motion for Attorneys' Fees, ECF No. 327 at 11-13, Mr. Fisher argued that the consideration in the California Action settlement, which Mr. Fisher twice objected to and then subsequently appealed, consisted of the exact same Reforms and the exact same Clawbacks that Plaintiffs' Counsel sought credit for in this Settlement and which this Court denied provided any compensable value to Wells Fargo. *Compare* ECF No 327-2 at 3-7 with ECF 270-1 at 38-44. The settlement of the California Action consisted of two supposed benefits to Wells Fargo: the exact same corporate Reforms and Clawbacks presented in this Action, and for which this Court rejected as providing a compensable value to Wells Fargo. Those identical Clawbacks and Reforms were the entirety of the California Action settlement. There was no money paid to Wells Fargo as there was in this Action. The State Court approved that settlement, but reduced the attorneys' fee award from $8.25 million, to approximately $4.75 million based on arguments made in Mr. Fisher's objections. Mr. Fisher preserved all appellate issues on the record, appealed the final judgment and attorneys' fee award, based on among other things, this Court's own ruling that found those non-monetary benefits were not of value to compensable Wells Fargo.

Mr. Fisher's California Action appeal was anything but frivolous. For this Court to find the appeal to be frivolous, it must necessarily find that the very Clawbacks and Reforms it ruled valueless in this Action and not compensable provided sufficient value, ***on their own***, to both warrant final approval of a settlement and to provide for attorneys' fees of $4.75 million (or $8.25 million, before it was reduced following Mr. Fisher's objections). Such an argument is not only illogical but turns this Court's prior reasoning on its head. If the Reforms and Clawbacks did not provide value to Wells Fargo sufficient for Lead Plaintiffs' Counsel to obtain attorneys' fees in this Action, there is no justification for a completely opposite result in the

---

[3] It should be noted that although Mr. Fisher does not owe any fiduciary duty to Wells Fargo, Lead Plaintiffs do. *In re Oracle Corp. Derivative Litig.*, No. 2017-0337-SG, 2019 Del. Ch. LEXIS 1381, at *44 (Ch. Dec. 4, 2019). Yet, when Mr. Fisher aids Wells Fargo in obtaining millions of dollars in savings, he is condemned and his actions are allegedly sanctionable. If Lead Plaintiffs' were truly taking their fiduciary duties to Wells Fargo seriously, they would be applauding Mr. Fisher's actions and the results he has achieved on behalf of Wells Fargo.

California Action. Particularly where, the California Action plaintiffs' lawyers, just like Plaintiffs' Counsel here, had no role in causing either the Clawbacks or the identical Reforms. The California Action Appeal can only be found frivolous if this Court's ruling on the non-monetary benefits in this Action was wrong. No one, including Lead Plaintiffs, have appealed this Court's ruling that the non-monetary benefits were not compensable.

California law does not permit the settlement of a derivative action wherein the individual defendants obtain releases and the Company (who is the alleged victim) received nothing. That is precisely what happened in the California Action. Importantly, while Mr. Fisher moved to intervene in the California Action twice and was denied twice, Lead Plaintiffs' Counsel had successfully moved to intervene and were parties in the California Action. Thus, Lead Plaintiffs could have, at any time, filed a motion or pleading with the California court alleging Mr. Fisher's California Action objections were frivolous - or even wrong - and that it should be dismissed. They did not. Similarly, lead plaintiffs' counsel in the California Action could also have moved for sanctions against Mr. Fisher and his counsel on the basis of his arguments being frivolous. They did not. Wells Fargo could have argued that Mr. Fisher's arguments were frivolous. It did not. Not a single party has ever characterized any statement, motion or other pleading by Mr. Fisher as misleading or improper until Lead Plaintiffs' Counsel's fees were reduced by this Court. Lead Plaintiffs' Counsel was content to claim their tens of millions in attorneys' fees in this Action without regard to the Company's financial interests in the California Action. Only when their own financial interests were impaired did Mr. Fisher's actions become improper extortion according to Lead Plaintiffs.

In alleging Mr. Fisher's California Action Appeal was frivolous, Lead Plaintiffs have also painted a moving target based on numerous contradictions. Lead Plaintiffs initially condemned Mr. Fisher for allegedly "waiving" his appeal to the settlement of the California Action and argued that he should have appealed both the attorney fee award and the final judgment. ECF No. 322 at 5-6. This false allegation that any waiver occurred was supported by a false affidavit from Mr. Heimann – one which has yet to be corrected. *See* C.R.P.C., Rule 3.3(a)(1)(2). Mr. Fisher did in fact appeal both the attorney fee award and the final judgment in the California Action and his counsel never "waived" anything. This was clearly stated in the Notice of Appeal and in Mr. Fisher's Reply in Support of his Motion for Attorneys' Fees. ECF No. 327-1 at ¶20. Now, however, in the Motion for Sanctions, Lead Plaintiffs' Counsel does a complete about-face. In complete

contradiction to what Lead Plaintiffs' Counsel stated before, Lead Plaintiffs now condemn Mr. Fisher for appealing both the attorney fee order and the final judgment, stating that Mr. Fisher should only have appealed the attorney fee order and thus his appeal is frivolous.[4] Lead Plaintiffs first demonized Mr. Fisher for allegedly "waiving" his appeal of the final judgment and now demonize him for doing the exact opposite. Lead Plaintiffs, or more likely, Lead Plaintiffs' Counsel, are so blinded with rage at losing $15.2 million dollars in attorneys' fees in this Action resulting from Mr. Fisher's objection that they do not care about inconsistencies in their argument. Nor, apparently do they care about correcting glaring factual inaccuracies on their part, instead having chosen to ignore them.[5]

### 3. Mr. Fisher's California Action Objection Saved Wells Fargo $3.5 Million – And A Successful Appeal Would Have Saved Another $4.7 Million.

The California court adopted many of Mr. Fisher's arguments and reduced the attorneys' fees from $8.25 million to $4.7 million – a reduction of 43%. This reduction of approximately $3.5 million in attorneys' fees was a direct monetary benefit to Wells Fargo and was based solely on Mr. Fisher's two separate California Action objections in which he was the lone objector. If Mr. Fisher's appeal was successful and the California Court of Appeals reversed the judgment and the attorney fee award, Wells Fargo would have received an additional $4.7 million. In this light, Wells Fargo's offer to settle Mr. Fisher's appeal for $1.75 million is entirely reasonable, while also providing closure of the California Action for Wells Fargo, which Wells Fargo determined was in its best interest. Mr. Fisher believes that Wells Fargo appreciated the risk that the judgment and attorneys' fee award stood a good chance of being reversed in its entirety because this Court rejected the same Reforms and Clawbacks that provided the entirety of the consideration for the California Action settlement. Wells Fargo used its sound business judgment to offer Mr. Fisher $1.75 million to put an end to

---

[4] Lead Plaintiffs in this Action are the only parties to have characterized Mr. Fisher's arguments in the California Action as frivolous. Wells Fargo didn't do so and neither did the California Action lead plaintiffs' counsel. In fact, following the court's tentative order adopting Mr. Fisher's objection arguments and reducing the attorneys' fees from $8.25 million to $4.75 million, lead plaintiffs' counsel did absolutely nothing to object to the judge's ruling and allowed Mr. Fisher's arguments to stand and their fees to be cut by 43%. Only Lead Plaintiffs in this Action have raised any argument calling Mr. Fisher's strategy into question – not Wells Fargo, not any individual defendant and not any plaintiff's counsel in the California Action.

[5] Notwithstanding the one hundred and eighty degree turn Lead Plaintiffs have made, implicit in this argument in the Motion for Sanctions is that Mr. Fisher did in fact appeal both the attorney fee order and the final judgment. Mr. Heimann has yet to correct his false affidavit. *See* CRPC, Rule 3.3(a)(1)(2).

1    an appeal that it faced a legitimate risk of losing. That business judgment, which the Fisher-Wells Fargo

2    settlement explicitly incorporates, is entitled to deference.

3                    **4.      Wells Fargo's Business Judgment Is Entitled To Deference.**

4            Wells Fargo is a Delaware corporation and thus Delaware law applies to decisions of the Company

5    and its board of directors under the internal affairs doctrine. Delaware law presumes that "in making a

6    business decision the directors of a corporation acted on an informed basis, in good faith and in the honest

7    belief that the action taken was in the best interests of the company." *Unocal Corp. v. Mesa Petroleum Co.,* 493

8    A.2d 946, 954 (Del. 1985). The Fisher-Wells Fargo settlement agreement states that "Wells Fargo has

9    determined that it is in its best interests to enter into this Settlement Agreement." ECF No. 327-7 at ¶2. Lead

10   Plaintiffs are improperly trying to substitute their own business judgment for that of Wells Fargo with respect

11   to Wells Fargo's decision to settle with Mr. Fisher, even though Lead Plaintiffs' Counsel was not involved in

12   the negotiation process or settlement conversations. There is no provision in Delaware law for an outside,

13   third-party to substitute its decision-making for the board's, absent a derivative claim against Wells' Fargo's

14   directors, which Lead Plaintiffs have not pursued.

15           The irony of Lead Plaintiffs' attacking Wells Fargo's business judgment now should not be lost.

16   Previously, Lead Plaintiffs' Motion for Final Approval in this Action argued that Wells Fargo's and its

17   directors' approval of the settlement was an important factor this Court must consider in favor of the

18   Settlement.

19                      Wells Fargo and its Board have approved the Settlement, including the
                        monetary relief, Reforms, Clawbacks and attorneys' fees, and concluded that
20                      the Settlement of the Action under the terms set forth in the Stipulation was
                        in the best interests of the Company and conferred a substantial benefit to
21                      Wells Fargo—an acknowledgement that underscores that the Settlement is
22                      fair, reasonable and adequate.

23   *See* ECF No. 276 at 10:5-9.

24           Now, however, according to Lead Plaintiffs, Wells Fargo's business judgment cannot be trusted. This

25   begs the question . . . what has changed? Nothing has changed, except that Lead Plaintiffs' Counsel is not

26   the financial beneficiary of the Fisher-Wells Fargo settlement as they were with the settlement of this Action.

27   That's the only difference. This also leads to a very problematic conclusion. If Wells Fargo's business

28   judgment cannot be trusted, the Court must also now question whether the Settlement of this Action should

1   have been approved in the first place and may *sua sponte* order discovery into Lead Plaintiffs and the

2   negotiation of the terms of the Settlement and Wells Fargo's apparently unreliable business judgment.

3       **E.   Lead Plaintiffs' Motion For Sanctions Was Brought In Bad Faith And For A**
4           **Vindictive Purpose.**

5       The only "bad faith" that exists here is on the part of Lead Plaintiffs' and Lead Plaintiffs' Counsel.

6   The imposition of sanctions under the inherent power of the court is proper where counsel has "willfully

7   abused judicial process or otherwise conducted litigation in bad faith." *In re Itel Sec. Litig.*, 791 F.2d 672, 675

8   (9th Cir. 1986) (citing *Toombs v. Leone*, 777 F.2d 465, 471 (9th Cir. 1985)). Neither Mr. Fisher nor his counsel

9   have abused the judicial process or conducted any litigation in bad faith. In fact, the exact opposite has

10  occurred. Mr. Fisher's objection in this Action and the California Action have exposed the overreaching by

11  both Lead Counsel and California Action lead plaintiffs' counsel in their attempts to mislead the respective

12  courts as to the merits of the two settlements and the false claims of credit that both Lead Plaintiffs and

13  California Action plaintiffs' counsel took for identical Reforms and Clawbacks that neither caused.

14      Lead Plaintiffs' Counsel are incensed that due, in part, to Mr. Fisher's objection, this Court reduced

15  their award of attorneys' fees by $15.2 million. A reading of Lead Plaintiffs' papers (both the Opposition to

16  Mr. Fisher's Motion for Attorneys' Fees and this Motion for Sanctions) proves this point. Both pleadings are

17  laced with caustic and inflammatory language which is completely unnecessary to the arguments Lead

18  Plaintiffs have attempted to make. Similarly, both pleadings included substantial misstatements of both

19  relevant facts, including Mr. Heimann's false testimony regarding events in the California Action, and the

20  law, which could only be the product of willful bad faith. Other Ninth Circuit courts have held that similar

21  behavior was sanctionable. *See, e.g., ADO Fin., AG, v. McDonnell Douglas Corp.,* 938 F. Supp. 590, 595 (C.D.

22  Cal. 1996) (sanctioning counsel for "misrepresenting the nature of the Swiss proceedings to th[e] Court.");

23  *Albano v. Shea Homes Ltd. P'ship*, 2012 U.S. Dist. LEXIS 141340, at *32 (D. Ariz. Sep. 30, 2012) (conduct

24  sanctioned when it demonstrated "a consistent pattern of misrepresentations"); *Nat.-Immunogenics Corp.*, 2016

25  U.S. Dist. LEXIS 197855, at *8 (C.D. Cal. June 16, 2016) ("an attorney's reckless misstatements of law and

26  fact, when coupled with an improper purpose, . . . are sanctionable under a court's inherent power.").

27      Mr. Heimann has gone so far as to litigate Lead Plaintiffs' Motion in the media, commenting to the

28  legal website LAW360 that "Given the egregiousness of this particular instance of objector extortion I would

think that Judge Tigar would take the matter seriously." Ridley Decl. at Ex. 1. He further confirmed that the goal of the Motion was to deter future objectors: "as important is the precedent I hope it will set for objectors and counsel like Mr. Ridley in the future." *Id.* Mr. Heimann's statement is not only unprofessional, but potentially violates Rule 3.6 of the California Rules of Professional Conduct. ("A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows* or reasonably should know* will (i) be disseminated by means of public communication and (ii) have a substantial* likelihood of materially prejudicing an adjudicative proceeding in the matter."). Lead Plaintiffs' Counsel's repeated disregard of the Rules of this District Court and the Rules of Professional Conduct clearly demonstrate the true motive behind this improper Motion.

It should be readily apparent why Lead Plaintiffs have opposed Mr. Fisher's Motion for Attorneys' Fees and why they have filed this frivolous Motion for Sanctions.[6] They are furious that Mr. Fisher had the temerity to interfere with "their money" and cause them to receive $15.2 million less in attorneys' fees. There is simply no other explanation for the vitriol, the perjured testimony, the legal misstatements and the lengths they are going to vilify a first-time objector for being tremendously successful. The timing of events is a strong confirmation. Lead Plaintiffs raised no issues with Mr. Fisher's objections or strategy at any time during the California Action. Lead Plaintiffs never filed anything in the California court arguing his objections were frivolous or asking for sanctions in that court—which Lead Plaintiffs have acknowledged is the proper forum for complaints about conduct in the California Action. It was only after Lead Plaintiffs Counsel's attorneys' fees were reduced by $15.2 million in this Action that Lead Plaintiffs' began arguing Mr. Fisher's appeal was frivolous and his conduct was improper. In short, Lead Plaintiffs did not care until Lead Plaintiffs' Counsel's bottom line was impacted. Lead Plaintiffs and Lead Plaintiffs' Counsel's Motion for Sanctions is nothing more than a naked attempt at vengeance against Mr. Fisher, Mr. Ridley and Ms. Frost.

### F.   Discovery Is Unnecessary And Not Appropriate.

Lead Plaintiffs' demand for discovery must also be denied. Wells Fargo agrees and has told Lead Plaintiffs' Counsel that they are not entitled to any discovery into the Fisher-Wells Fargo settlement

---

[6] Mr. Heimann only resorted to filing his motion for sanctions after it became clear that the Court would likely not permit him to file a sur-reply on Mr. Fisher's motion for fees, and that both Wells Fargo and Mr. Fisher would object to such a sur-reply. *See* Ridley Decl. at Exs. 2, 3.

agreement. Ridley Decl. at Ex. 3. The law is not that a party can throw around a highly-charged word, here "extortion," and then obtain discovery based on that unfounded allegation. For example, Mr. Fisher could have argued that Lead Plaintiffs' Counsel "extorted" Wells Fargo by requiring it to agree to the Reforms and Clawbacks that they did not cause only to increase their prospects of obtaining $15.2 million in additional attorneys' fees. Mr. Fisher could have argued that Lead Plaintiffs' Counsel refused to be content with the attorneys' fees generated by the $240 cash recovery and refused to settle, and thus to provide peace to Wells Fargo, unless valueless non-monetary benefits were added to the settlement pot so that they could increase their attorneys' fees request. Mr. Fisher could have moved for discovery of Lead Plaintiffs' settlement efforts with Wells Fargo and blindly accused Lead Plaintiffs' and Lead Plaintiffs' Counsel of extortion. However, given that the Settlement in this Action was purportedly based on Wells Fargo's best interests in the estimation of its board of directors and contained extensive representations and warranties to that effect, such a discovery demand would been a textbook example of a fishing expedition. Mr. Fisher, being a responsible litigant, did not, and would not, make such allegations of "extortion" and then attempt to bootstrap that highly-charged word, which indicates criminal conduct, into a basis for discovery. For these same reasons, and given that there is not a single indication of wrongdoing, Lead Plaintiffs' Counsel's request for discovery must be denied.

Lead Plaintiffs demand for discovery is based on a single Seventh Circuit opinion – *Pearson v. Target Corp.* 893 F.3d 980 (7th Cir. 2018). ECF No. 329 at 13-15. Lead Plaintiffs claim that the Seventh Circuit ordered discovery because the objector had "potentially identified 'objector blackmail.'" ECF No. 329 at 14. This is yet another gross misstatement of the law by Lead Plaintiffs. The court actually said that "we have nothing to say about the merits of [the objector's] challenge." *Pearson*, 893 F.3d at 987. The court's holding was based on the fact that "the Post-Appeal Judgment ***constructively revised the settlement agreement itself.*" *Id.* at 986 (emphasis added). This constituted a "material alteration" to the class action settlement which required a "new round of notice to the class and a new Rule 23(e) hearing." *Id.* The situation in *Pearson* is simply not analogous to what has occurred here.[7] Mr. Fisher was not a member of any class. His settlement

---

[7] *Pearson* actually contains a far more analogous example, wherein the Seventh Circuit stated that it "found no cause for alarm" in the scenario where a side agreement between an objector and a defendant where "all class members were sophisticated" and the appeal implicated strong individual claims distinct from those of the class." *Id.* at 985.

with Wells Fargo did not affect the payment amount to other class members because the insurance payment is payable to Wells Fargo. Mr. Fisher's California Action Appeal was completely separate from his objection in this Action and was based on a fundamental miscarriage of justice in the California Action. Simply put, Lead Plaintiffs' sole authority does not support a fishing expedition into Mr. Fisher or the California Action settlement under the guise of a "discovery request" that is unsupported by the law. Notably, when Mr. Ridley asked Mr. Heimann what his legal basis was for this discovery request, Mr. Heimann was unable to provide one. Ridley Decl. at Ex. 3. The belated citation to *Pearson* fares no better.

Instead, Mr. Heimann postured, bullied and threatened a "fair warning" – in that he would be "bringing this to the attention of Judge Tigar next week." *Id.* Lodging threats against a legitimate and successful objector and his counsel, in lieu of providing a respectful response with relevant law to support one's position, is behavior that is far from commensurate with standards of professionalism. This exchange exemplifies the pattern of conduct that has occurred on the part of Lead Plaintiffs' Counsel for weeks now, and Mr. Fisher and his counsel respectfully move this Court to put it to a stop, and deny the Motion.

## CONCLUSION

For these reasons, Mr. Fisher respectfully asks the Court to reject Lead Plaintiffs' Motion for Sanctions and to impose sanctions on Lead Plaintiffs and Lead Plaintiffs' Counsel in an amount to deter future bad faith conduct by Mr. Heimann and the other attorneys from their respective firms appearing on Lead Plaintiffs' Motion for Sanctions.

Respectfully submitted,

*/s/ Patrick L. Ridley*
Patrick L Ridley
Kristen M. Frost
RIDLEY, MCGREEVY & WINOCUR, P.C.
303 16th Street Mall #200
Denver, CO 80202
Telephone:    (303) 629-9700
Facsimile:     (303) 629-9702
Email:          ridley@ridleylaw.com

*Counsel for Objector Kevin Fisher*

1

<u>PROOF OF SERVICE</u>

2

    I hereby certify that on this day I electronically filed the foregoing Reply in Support of Objectors'

3

Motion for Attorneys' Fees using the CM/ECF filing system thus effectuating service of such filing on all

4

ECF registered attorneys in this case.

5

    DATED this 26th day of June, 2020.

6

                                              */s/ Patrick L. Ridley*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28